IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 01-591 L |
| | ) Judge Francis M. Allegra |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**DEFENDANT'S STATUS REPORT**

Defendant hereby submits this status report on the matters identified in the Court's Order of December 17, 2004.

Plaintiffs' original Complaint, which alleged only takings claims, was filed on October 11, 2001.[1] Complaint (filed Oct. 11, 2001) (Docket # 1).[2] Approximately eighteen months later, Plaintiffs amended their Complaint to allege contract claims based on the same facts as their takings claims. Amended Compl. (filed Mar. 24, 2003) (Docket # 67). Because the contract claims were added to this case after litigation of the takings claims was well underway, these related claims have, thus far, proceeded on different but sometimes overlapping schedules. For this reason, Defendant's status report addresses the outstanding motions and related issues for

[1]Plaintiffs' original Complaint alleges a taking of water rights without just compensation and an impairment of water rights under the Klamath Basin Compact. As explained in Defendant's summary judgment briefs, the Compact did not create or confer any new rights, so the claim that there has been an impairment of rights under the Compact is simply a restatement of Plaintiffs' takings claims. See Def.'s S.J. Brief at 31-34 (filed Oct. 3, 2003) (Docket # 101); Def.'s S.J. Resp. Brief at 54-55 (filed March 31, 2004) (Docket # 167).

[2]All docket references are to the docket number assigned to each document on the Court's PACER civil docket report for this case.

each set of claims separately. In so doing, Defendant does not mean to suggest that the takings and contract claims should remain on separate schedules.

## I. Plaintiffs' Fifth Amendment Takings Claims

### A. Class Certification

RCFC 23 provides that "[a]s soon as practicable after the commencement of the action brought as a class action, the court shall determine by order whether it is to be so maintained" RCFC 23(c)(1). Consistent with RCFC 23, Plaintiffs moved for class certification when they filed their original Complaint, seeking certification of a class of "all landowners who possess appurtenant water rights in the Klamath Basin and who receive their irrigation water from the Upper Klamath lake through the Link River Dam." Pls.' Mot. for Class Cert. at 2 (filed Oct. 11, 2001) (Docket # 3). However, Plaintiffs simultaneously requested that the Court hold that motion in abeyance "until the issue of liability is determined." Pls.' Mot. to Hold in Abeyance Mot. for Class Cert. (filed Oct. 11, 2001) (Docket # 4). Defendant agreed that plaintiffs' motion for class certification as to their takings claims should be held in abeyance, "but only until the parties have had the opportunity to complete discovery related to certification and the related issue of whether the irrigation districts themselves have standing or are authorized to sue on behalf of the putative class members." Def.'s Resp. to Pls.' Mot. for Class Cert. (filed Dec. 10, 2001) (Docket # 11); see also JPSR at 7 (filed Feb. 8, 2002) (Docket # 19).

The Court has not ruled on the pending motion for class certification, but instead has effectively stayed that motion pending briefing and a determination on the threshold question of whether Plaintiffs' right to receive water from the Klamath Project is a constitutionally protected property interest. The Court's prior decision to address this threshold question first (prior to class certification and prior to any liability proceedings) makes sense because if the named

Plaintiffs (and proposed class representatives) cannot establish that they have a constitutionally protected property right, their takings claims fail as a matter of law and it would be unnecessary to determine whether class certification is appropriate and, if so, to go through the class certification process. Accordingly, Defendant agrees with the Court's prior determination that Plaintiffs' pending motion for class certification as to their takings claims should remain stayed pending a ruling on the parties' cross-motions for summary judgment on the threshold question of whether any of the Plaintiffs have a compensable property right. If the Court determines that such a right exists and that Plaintiffs' takings claims may proceed, Defendant submits that Plaintiffs' motion for class certification must be addressed in advance of any proceedings on liability.

B. Defendant's Motion for Partial Dismissal

In May 2002, Defendant moved to dismiss Plaintiffs' claim for a taking of water rights for 2002 and for any future years on the ground that these claims as to future years were entirely speculative and not yet ripe (Docket # 38). Plaintiffs have indicated that they intend to file a motion to amend their Complaint that limits their takings and contract claims to the events of 2001. Defendant does not oppose Plaintiffs' proposed amendments, which will render Defendant's motion for partial dismissal moot.

C. The Parties' Cross-Motions for Summary Judgment on the Threshold Property Rights Question

As a result of a number of motions and hearings, the Court determined that the litigation of Plaintiffs' takings claims necessarily must begin with resolution of the threshold question of whether the Plaintiffs can establish that their right to receive and use water from the Klamath Project is a compensable property right. At the outset, Defendant raised the issue of whether

plaintiffs' claimed property right in Klamath Project water could be determined in this case prior to the adjudication of claims for water rights filed by some of the same plaintiffs and the United States in an Oregon State general stream adjudication for the Klamath Basin (the Oregon Klamath Basin Adjudication is addressed below in Part III (B)). A number of orders have been issued that define and clarify the scope of the briefing on this threshold question, beginning with the Court's Order of May 12, 2003, which provided that:

> plaintiffs shall file a motion for summary judgment on the question of whether their water rights in the Klamath River Valley, allegedly taken by the government in 2001, are property the taking of which is compensable under the Fifth Amendment to the Constitution, notwithstanding any adverse determination, including a retroactive one, regarding the existence, extent or character of such rights by the Hearing Officer Panel in Case No. 003 of the State of Oregon's ongoing Klamath Basin Adjudication.

Order, dated May 12, 2003, at 1 (Docket # 77); see also Order of Aug. 22, 2003 (Docket # 87). The Court subsequently accepted Plaintiffs' representation "that their water interests are not property interests at issue in the [Klamath Basin] Adjudication," granted Plaintiffs' motion on that specific question, denied Defendant's motion to stay this case pending completion of the Adjudication, and held that "plaintiffs are barred from making any claims or seeking any relief in this case based on rights, titles, or interests that are or may be subject to determination in the Adjudication." Order, Nov, 13, 2003, at 2 (Docket # 131). The Court then ordered briefing on "the precise nature and scope of the property interest" claimed to have been taken and on the question of whether these interests are compensable property interests. Id. at 3-4. See also Order, March 23, 2004 (Docket # 160) (limiting the briefing to "the threshold issue of the precise scope and nature of the property rights plaintiffs allege to have been taken by the government").

As a result of these Orders, the parties have now completed briefing on cross-motions for

summary judgment on "the question of whether plaintiffs' beneficial interests in Klamath Project water is a vested property right under Oregon law, protected by the Fifth Amendment, or whether it is a contractual right, created under federal reclamation law and defined by contracts between the plaintiffs and the United States." Order, Dec. 17, 2004 (Docket # 202). This briefing began with Defendant's cross-motion for summary judgment (filed Oct. 3, 2003) (Docket # 101). Plaintiffs' response and cross-motion for partial summary judgment on this threshold question is set forth in its filing of January 27, 2004 (Docket # 141).[3] Defendant's response and reply in support of its motion was filed on March 31, 2004 (Docket # 167), and Plaintiffs' reply brief was filed on April 19, 2004 (Docket # 171). A number of amicus briefs have also been filed. See Docket # 127-129. Because briefing on the threshold property rights question is complete, Defendant respectfully suggests that the Court schedule oral argument on the parties' cross-motions on this question.

D. Plaintiffs' Cross-Motion for Summary Judgment to Establish Takings Liability

On two occasions, Plaintiffs have attempted to move for partial summary judgment on the question of liability on their takings claims without first allowing for resolution of certain threshold issues, including the question of class certification and the question of whether any of the Plaintiffs have a compensable property interest. Plaintiffs' first motion for partial summary judgment on the ultimate question of takings liability was filed on July 21, 2003 (Docket # 81). This motion was stricken from the record by the Court "with leave to refile at such time as the court may direct." Order, Aug. 22, 2003 (Docket # 87). No such leave has been granted.

---

[3]As noted below, the portion of Plaintiffs' cross-motion for summary judgment that was directed to the question of takings liability has been held in abeyance by the Court's Order of March 23, 2004 (Docket # 160).

Plaintiffs' second motion for partial summary judgment on the ultimate question of takings liability was filed as part of Plaintiffs' response to Defendant's cross-motion for summary judgment on the question of whether Plaintiffs' so-called "Klamath Project water right" is a compensable property right that is protected by the Fifth Amendment. Def.'s Cross-Mot. (filed Oct. 3, 2003) (Docket # 101); Pls.' Cross-Mot. for Part. S.J. (filed Jan. 27, 2004) (Docket # 141). In response to Defendant's motion for clarification as to the proper scope of this briefing (Docket # 142), the Court held Plaintiffs' motion for partial summary judgment on the question of takings liability in abeyance. See Order, March 23, 2004 (Docket # 160) (holding "in abeyance the portion of plaintiffs' brief that deals with matters other than the threshold issue of the precise scope and nature of the property rights plaintiffs allege to have been taken by the government"). The first portion of Plaintiffs' cross-motion, which was properly directed to the threshold property rights question, was not held in abeyance and briefing on that threshold question is now complete. See Section I..C., supra.

Defendant's position regarding briefing on takings liability issues is unchanged from prior submissions. Defendant believes the threshold question of whether the Plaintiffs have a compensable property interest – which Defendant believes to be dispositive of Plaintiffs' takings claims – should be addressed and resolved before proceeding to liability issues. In addition, if the Court's ruling on this threshold question allows Plaintiffs' takings claims to proceed, the parties and the Court must then address Plaintiffs' pending motion for class certification. If a class is certified, notice to the class and an opportunity to opt-in to the class must be given to all potential class members. In addition, discovery specific to the takings claims has not occurred in this case and the discovery needs of the parties must be addressed before briefing on liability is scheduled.

II. Plaintiffs' Contract Claims

On March 24, 2003, Plaintiffs amended their Complaint to add contract claims arising out of the same facts as their takings claims. Amended Compl. (filed Mar. 24, 2003) (Docket # 67). The district plaintiffs assert the contract claims "on their own behalf, in a representative capacity on behalf of all water users within the district in 2001, and as representatives of the class of all water users within the Klamath Project who would have received water in 2001, pursuant to RCFC 23." Pls.' Amended Compl., ¶ 46. The individual plaintiffs assert contract claims as intended third party beneficiaries of the contracts between the district plaintiffs and the United States, and as representatives of the class of all water users within the Project. Id., ¶ 47.

A. Class Certification

Although Plaintiffs bring their contract claims as a proposed class action under RCFC 23, they have not yet filed a motion for class certification with respect to their contract claims, but instead ask that the issue be deferred until after the Court determines the question of liability. Pls'. Supp. Filing (dated March 24, 2003) (Docket # 68).

It is Defendant's position that if Plaintiffs seek certification of a class with respect to their contract claims, they must file a motion for class certification, define the class they seek to have certified, establish that the requirements of RCFC 23 have been met with respect to the contract claims, and establish that the proposed class representatives are qualified to represent the class. Def.'s Resp. to Pls.' Suppl. Filing (filed Apr. 14, 2003) (Docket # 72). However, the question of whether class certification is necessary with respect to the contract claims turns on whether the Court finds that the individually named plaintiffs are, as plaintiffs assert, intended third party beneficiaries of the contracts between the district plaintiffs and defendant. If the Court determines that the individual plaintiffs are intended third party beneficiaries of the subject

contracts and thus have standing to sue the United States on those contracts, then the Court will need to determine whether it is necessary to certify a class of intended third party beneficiaries, with the individuals currently named as plaintiffs serving as the representatives of that class. Joint Resp. to Court's Order of Sept. 17, 2003 (filed Sept. 22, 2003) (Docket # 94). If, however, the Court finds that the individual plaintiffs are not intended third party beneficiaries of the subject contracts, then the contract claims asserted by the district plaintiffs who are parties to the subject contracts may proceed without class certification.[4]

Accordingly, Defendant submits that the question of class certification as to the contract claims should be deferred until after the Court rules on the parties' cross-motions for summary judgment on whether the individual plaintiffs are intended third party beneficiaries of the contracts between the district plaintiffs and the United States. If the Court finds that the individual plaintiffs are intended third party beneficiaries and Plaintiffs still seek to certify a class, they should be required to file a motion for class certification under RCFC 23 and that motion should be ruled on before any briefing or ruling on the question of contract liability.

B. Standing/Proper Plaintiffs

The parties have agreed that the question of contract liability and damages should be bifurcated. Corrected Suppl. JPSR at 2 (Sept. 16, 2003) (Docket # 97). The Court's Order of September 17, 2003, bifurcated the contract claims and further ordered that the question of "which parties must/may participate in this suit" would be addressed and resolved in advance of any briefing on the question of contract liability (Docket # 92). In accordance with a schedule subsequently proposed by the parties and adopted by the Court, the parties have filed cross-

---

[4]All of the named district plaintiffs have contracts with the United States except for Klamath Hills District Improvement Company.

motions for summary judgment on the question of whether the individually named plaintiffs are intended third-party beneficiaries of the contracts between the district plaintiffs and the United States. Pls.' Mot. for S.J. (filed Mar. 31, 2004) (Docket # 165); Def.'s Cross-Mot. for S.J. (filed Apr. 26, 2004) (Docket # 175).

Subsequent to the completion of briefing on the question of whether the individual plaintiffs in this case are intended third party beneficiaries of the contracts between the district plaintiffs and defendant, the Supreme Court granted a petition for a writ of certiorari in Orff v. United States, a 9th Circuit case cited by Defendant in its summary judgment briefs and distinguished by Plaintiffs in their briefs. Orff v. United States, 358 F.3d 1137 (9th Cir. 2004), cert. granted, 125 S. Ct. 309 (Oct. 12, 2004) (No. 03-1566). Briefing is underway in Orff, with oral argument scheduled for February 23, 2005. A number of amici curiae briefs have been filed in Orff, including one by the thirteen district plaintiffs in this case and two other district plaintiffs from another pending Court of Federal Claims case.[5] Orff v. United States, 2004 WL 2758216 (Amici Curiae Brief) (U.S. Nov. 24, 2004) (No. 03-1566). In their brief, Plaintiffs – as amici curiae – make reference to their pending takings and contract claims against the United States in this Court and assert that "[h]ow the Court defines intended third-party beneficiary status could have a profound effect on the rights and obligations of all Reclamation Act project contract holders, including amici curiae." Id., 2004 WL 2758216, *2.

Given the proceedings in Orff, and the fact that the Orff case raises a question as to the correct legal standard for determining intended third party beneficiary status based on facts that are similar to those in this case, Defendant suggests that the Court defer hearing argument on and

[5]The two other water districts named as amici are plaintiffs in Stockton East Water Dist. v. United States, No. 04-541L (Fed. Cl.).

ruling on the parties' cross-motions for summary judgment on the third party beneficiary issue until after the Supreme Court issues its decision in Orff. In addition, following the Supreme Court's decision in Orff, it may be appropriate for the parties to file supplemental briefs addressing the applicability of the Orff decision to this case before the Court rules on the parties' pending motions.

III. Other Litigation

A. Tulare

The Court notes in its Order of December 17, 2004, that this case may be affected by future course of Tulare Lake Basin Water Storage Dist. v. United States, No. 98-00101 (Fed. Cl.). However, shortly after the issuance of that Order, a settlement agreement was entered into in Tulare. The settlement agreement states, *inter alia*, that,

> This agreement is the result of compromise and settlement, and shall not be construed as an admission by Defendant of any legal or specific monetary liability as to any or all of Plaintiffs' claims for just compensation, interest, attorneys' fees and other litigation expenses, or any other kind of legal or equitable relief, nor shall this settlement be interpreted to constitute a precedent or argument in this or any other case.

Tulare Settlement Agreement, ¶ 5 (dated Dec. 20, 2004) (attached hereto as Exhibit 1). The agreement provides that the parties will enter into a voluntary dismissal with prejudice of the Tulare case under RCFC 41(a)(1). Id., ¶ 3.

As a result of the settlement of Tulare, there will be no future proceedings in that case that might impact this action. Moreover, with respect to the proceedings that occurred in Tulare prior to the settlement, for the reasons explained in Defendant's summary judgment briefs, Tulare is factually distinguishable from this case and provides no guidance on the issues presented to the Court in this case. Def.'s S.J. Resp. at 40-41 (March 31, 2004) (Docket # 167);

Def.'s S.J. Mem. at 23 n.22 (Oct. 3, 2003) (Docket # 101).

B. Klamath Basin Adjudication

The Klamath Basin Adjudication (Adjudication) is a state law process undertaken by the State of Oregon, acting through the Oregon Water Resources Department, to adjudicate and determine the rights of all claimants to the waters of the Klamath River in Oregon. See Or. Rev. Stat. §§ 539.005-539.240 (2001); see also United States v. Oregon, 44 F.3d 758, 764 (9th Cir. 1994) (describing the adjudication process), cert. denied sub nom, Klamath Tribe v. United States, 516 U.S. 943 (1995). Although Defendant initially sought to stay Plaintiffs' takings claims pending completion of the Adjudication, the Court denied that motion when it accepted Plaintiffs' representation in this case "that their water interests are not property interests at issue in the Adjudication" and narrowed the potential scope of this litigation by holding that "plaintiffs are barred from making any claims or seeking any relief in this case based on rights, titles, or interests that are or may be subject to determination in the Adjudication." Order, Nov, 13, 2003, at 2 (Docket # 131). As a result of this Order, the status of the Adjudication is no longer directly relevant to the resolution of Plaintiffs' claims in this case. However, for the sake of completeness, Defendant notes that the Adjudication is proceeding and that the hearing in Case No. 003 (the claims and contests involving the Klamath Project) was held in April 2004. Post-hearing briefing is scheduled to be concluded in June 2005.

C. PCFFA v. BOR

In 2002, the Klamath Project was able to deliver a full water supply to the district plaintiffs under the contracts at issue in this case while operating in conformity with Biological Opinions issued in 2002 by the National Marine Fisheries Service ("NMFS") and the U.S. Fish and Wildlife Service ("FWS") respectively. Although the events of 2002 did not give rise to

takings or contract claims by the district and individual plaintiffs in this case against the United States, it has given rise to other claims. Specifically, the Pacific Coast Federation of Fishermen's Associations and several other organizations ("PCFFA") filed suit against the Bureau of Reclamation ("BOR") and NMFS in federal district court alleging that the Biological Opinion issued by NMFS on the effects of Klamath Project operations on the coho salmon, and BOR's management of the Klamath Project in 2002, did not comply with the Endangered Species Act. Following a major die-off of adult salmon on the lower Klamath River in September, 2002, the Yurok and Hoopa Valley Tribes intervened and alleged that the operation of the Klamath Project in 2002 was a major contributing cause of the fish die-off and constituted a breach of the government's tribal trust duties with respect to the threatened coho salmon and other tribal fisheries. PCFFA v. BOR, No. 02-2006 SBA (N.D. Cal.).[6] The government settled with the Hoopa Valley Tribe, and that Tribe's breach of trust claim was dismissed last October. A hearing on the federal defendant's and the intervenor water users' motions to dismiss the Yurok Tribe's breach of trust claim was held on January 13, 2005, at which the district court granted the defendant's and the intervenors' motions and dismissed that claim for lack of jurisdiction. The district court previously remanded portions of the 2002 Biological Opinion to NMFS, but denied PCFFA's request for preliminary injunctive relief. The denial of preliminary injunctive relief is on appeal to the Ninth Circuit, and oral argument is scheduled for February 16, 2005.

## IV. Requests for *Amicus Curiae* Participation and Intervention

As noted in the Court's Order of December 17, 2004, PCFFA's Motion to Intervene as

[6]Many of the same parties who filed suit against the United States in PCFFA v. BOR have moved to intervene as defendants in this action or are participating in this action as amici curiae.

Defendants (filed Mar. 7, 2002) (Docket # 24) remains pending. PCFFA's motion correctly notes that the United States takes no position on this motion. For that reason, Defendant has not filed a formal response to PCFFA's motion.

With respect to the participation of PCFFA and others as amici curiae, Defendant has not opposed the motion of any organization or party to participate in this case as an amicus curiae. Although the Rules of the United States Court of Federal Claims do not address the participation of amicus curiae, it is well established that the Court has inherent authority to allow participation by amici and the decision as to whether to allow such participation, as well as the extent of that participation, is committed to the Court's sound discretion. American Satellite Co. v. United States, 22 Cl. Ct. 547, 548-49 (1991); Freeman v. United States, 50 Fed. Cl. 305 (2001).

In this case, the Court has exercised its discretion to allow participation by amici curiae at several stages of the proceedings. Most recently, the Court allowed the filing of amicus briefs by Natural Resources Defense Counsel (NRDC), PCFFA, and the Klamath Tribes and Yurok Tribe in connection with the parties' cross-motions for summary judgment on the question of whether Plaintiffs have a compensable property interest in the Klamath Project water.[7] See Order, Nov. 6, 2003, at 2 (Docket # 126). In so doing, the Court indicated that these amicus briefs "may prove helpful to the court in sorting out the complex property interests in this case, not only of plaintiffs, but also of other water users whose uses may affect the nature and extent of plaintiffs' ownership interests, as well as the existence and extent of damages. If not, they will be disregarded." Id.

[7]Defendant did not oppose a motion for leave to file an amicus brief in support of Plaintiffs submitted by Pacific Legal Foundation (PLF). However, that motion and brief were returned to PLF as unfiled because of failure to conform with RCFC 83.1(c)(1) (Docket # 133).

Defendant continues to take the position that the participation of amici may be useful to the Court and, therefore, generally should be permitted. See Def.'s Resp. to Mots. for Leave to File Amici Briefs (filed Oct. 10, 2003) (Docket # 106). With respect to the question of how to deal systematically with various requests for amicus curiae participation in this case, Defendant respectfully suggests that those parties who have filed amicus briefs in this case be permitted to continue their participation as amicus curiae. The participation of additional parties as amicus curiae should be determined by a motion for leave to so participate to which Plaintiffs and Defendant may respond in accordance with the Court's rules.

In addition, there have been past questions in this case about the extent of the parties' obligations to serve or provide notice of all briefs and other filings to the intervener-applicants and amicus curiae participants. This issue was addressed by the Court in several orders that predated the designation of this case as an ECF case. See Order, Feb. 27, 2004 (Docket # 153); Order, Mar. 5, 2004 (Docket # 157). To the extent there remain concerns regarding service and notice, Defendant does not oppose the addition of counsel for the amicus curiae participants and the intervener-applicants to the ECF service list for this case so that these interested parties will receive electronic notices of all filings and docket entries.

## V. Other Matters: Discovery

### A. Discovery on Plaintiffs' Takings Claims

There has been no formal discovery period ordered or conducted with respect to Plaintiffs' takings claims. Although the Court has directed the parties to "cooperate on informal discovery" with respect to the issues that are the subject of the parties' cross motions, Order, Mar. 23, 2004 (Docket # 160), the filing of the pending cross-motions for summary judgment on the threshold question of whether Plaintiffs' right to receive Klamath Project water is a

compensable property right has not required any formal discovery. Discovery related to takings liability and damages remains premature.

B. Discovery on Plaintiffs' Contract Claims

The parties agreed to conduct contract claim discovery on the issues of liability and the proper party issues simultaneously. Corrected Suppl. JPSR at 13 (Docket # 97). Formal discovery limited to these issues was ordered by the Court, and has been extended twice on motions from Defendant. Orders of Sept. 17, 2003 (Docket # 92), May 7, 2004 (Docket # 178), and June 10, 2004 (Docket # 186). The formal discovery period on contract claim liability issues is scheduled to end on February 15, 2005. Order, June 10, 2004 (Docket # 186). Although the parties have conducted some written discovery,, no depositions have been taken at this juncture. Instead, counsel for the parties have agreed to defer the scheduling of any depositions until after the status conference scheduled for February 14, 2005, and agree that discovery will need to be extended in this case.

C. Proposal Regarding Coordination of Further Discovery

The need for further discovery and the scope of further discovery is likely to be affected by the resolution of the pending summary judgment motions as to both the contract and takings claims. Accordingly, although further discovery will be needed in this case, Defendant respectfully suggests that such discovery be deferred until after the Court rules on the pending motions. Defendant further suggests that, following such rulings, it would be appropriate to coordinate further proceedings, including discovery, on all remaining claims to avoid any unnecessary duplication of effort or costs.

Dated: January 28, 2005

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division

s/Kristine S. Tardiff
KRISTINE S. TARDIFF
Attorney of Record for the Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
55 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583
Fax: (603) 225-1577
E-Mail: kristine.tardiff@usdoj.gov

STEPHEN M. MACFARLANE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, CA 95814-232
Tel: (916) 930-2204/Fax: (916) 930-2210

REGINALD T. BLADES, JR.
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 514-7300/Fax: (202) 307-0972