IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 01-591L |
| | ) | Judge Francis M. Allegra |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' STATUS REPORT**[1]

For nearly a century, through drought and flood, Klamath Project farmers, had received all of the water from the Klamath Project that they could put to beneficial use on their farmlands.[2] In 2001, Defendant, the United States Bureau of Reclamation (Reclamation), retained Plaintiffs' water in Klamath Lake[3] to protect three species of fish listed under the Endangered Species Act.[4] In this lawsuit, Plaintiff farmers seek just compensation for the taking of their water in 2001. Plaintiff water districts additionally seek damages for Reclamation's breach of their contracts resulting from Reclamation's

[1] On January 27, 2005, the parties met and conferred by telephone. This status report reflects agreements reached in that conference.
[2] The sole exceptions occurred in 1992 and 1994, when Klamath farmers received most, but not all of the water they requested.
[3] Klamath Project water is stored in Klamath Lake. The water is released through headgates controlled by Defendant.
[4] Those species are the endangered Lost River sucker (*Deltistes luxatus*), the endangered shortnose sucker (*Chasmistes brevirostris*), and the threatened southern Oregon/northern California (SONC) coho salmon (*Oncorhynchus kisutch*). A subsequent report by the National Academies of Science, commissioned by the Department of Inteior, concluded that Reclamation's 2001 operations at Klamath Lake did not benefit these species. *See also* COMMITTEE ON ENDANGERED AND THREATENED FISHES IN THE KLAMATH RIVER BASIN, NATIONAL RESEARCH COUNCIL, NATIONAL ACADEMIES, ENDANGERED AND THREATENED FISHES IN THE KLAMATH RIVER BASIN: CAUSES OF DECLINE AND STRATEGIES FOR RECOVERY (2003), *available at* http://www.nap.edu /catalog/10838.html ("There is no evidence of a causal connection between water level and water quality or fish mortality over the broad operating range in the 1990s, the period for which the most complete data are available for Upper Klamath Lake. Neither mass mortality of fish nor extremes of poor water quality shows any detectable relationship to water level."), Pls.' Ex. 37, Supp. App. at 261.

refusal to deliver their water to them in 2001. The legal claims raised in this case are not novel, and the material facts are sufficiently undisputed so that the issue of liability can be disposed of without trial, and by summary judgment. The parties have agreed to bifurcate liability and damages in this case.[5]

## I. Parties and Claims

Plaintiffs are fourteen Oregon and California irrigation districts, drainage districts, water improvement districts, water control districts, and corporations for irrigation, drainage, water supply or flood control. Plaintiff districts seek relief on their own behalf, and in their representative capacity on behalf of the approximately 1,400 farm families in the Klamath Project to whom they deliver irrigation water.[6] To forestall a motion to dismiss for lack of standing, thirteen individuals have also joined as Plaintiffs suing on their own behalf, and on behalf of the class of all Klamath Project water users (farmers) in 2001. *See* Plaintiffs' Motion to Certify Individual Water Users as a Class (filed Oct. 12, 2001) (Docket No. 3). Both parties have agreed that a ruling on Plaintiffs' motion for class certification should be deferred at present.[7] Plaintiffs further note that this class

---

[5] *See* Joint Preliminary Status Report at 7 (filed Feb. 8, 2002) (Docket No. 19) (first and second claims for relief (just compensation)); Corrected Supplemental Joint Preliminary Status Report at 3 (filed Sept. 30, 2003) (Docket No. 98) (third claim for relief (breach of contract)).

[6] *See Tulare Lake Basin Water Storage District v. United States*, 49 Fed. Cl. 313 (2001) (districts sued in their representative capacity); *see also* ORS 545.225 (1)(b) & (2) ("The Board of Directors may . . . institute and maintain all actions and proceedings, suits in law or in equity necessary or proper in order to fully carry out the Irrigation District law, or to enforce, maintain, protect or preserve rights, privileges, and immunities created by the Irrigation District Law, or acquired in pursuance of the Irrigation District Law."); Cal. Water Code §§ 22075, 22654 ("A district may commence, maintain, . . . any action or proceeding involving or affecting the ownership or use of waters or water rights within the district used or useful for any purpose of the district or of benefit to any land."); Cal. Water Code § 43700 ("A district may commence and maintain any actions and proceedings to carry out its purposes or protect its interests and may defend in any action or proceeding brought against it.").

[7] Plaintiffs requested deferral until determination of the liability issue; Defendant requested deferral until completion of discovery. *See* Pls.' Mot. to Hold in Abeyance Mot. for Class Certification (filed Oct. 11, 2001) (Docket No. 4); Def.'s Resp. to Pls.' Mot. for Class Certification & Mot. to Hold Class Certification in Abeyance & Def.'s Unopposed Request to Address Class Certification After Completion of Discovery (filed Dec. 10, 2001) (Docket No. 11).

certification will become moot if the Court rules that the irrigation districts may bring these claims in their representative capacity on behalf of their water users (who also constitute the class sought to be certified).

The Amended Complaint states three overlapping (but not identical) causes of action for (1) just compensation for the taking of property under the Fifth Amendment, (2) just compensation for the impairment of water rights under the Klamath River Basin Compact, and (3) damages for breach of contract. The elements of the claims and the measure of damages are different for each cause of action. Plaintiffs seek non-duplicative recovery of their losses, together with interest, costs, and attorney's fees as provided by law.

Finally, Plaintiffs continue to oppose the Motion to Intervene filed by Pacific Coast Federation of Fishermen's Associations, and other parties (collectively, PCFFA), on March 7, 2002, because PCFFA's intervention would unduly delay and complicate this proceeding for no good reason. Indeed, PCFFA has raised issues in its briefs which are far afield from Plaintiffs' claims for money damages and fall far outside the purview of the Tucker Act. PCFFA cannot satisfy the requirements for intervention set forth in RCFC 24. Their interests will not be directly and immediately affected by an award of just compensation to Plaintiffs, nor will PCFFA receive any part of any money judgment, if Plaintiffs prevail. Given that the Court has allowed PCFFA to file multiple *amicus curiae* briefs, and the Klamath Tribes, the Yurok Tribe, the Natural Resources Defense Council, and the State of Oregon have each also been allowed to file *amicus curiae* briefs in this

case, *amici* have had ample opportunity to express their views on the policy implications of the pending claims. Further *amicus curiae* filings should be at the discretion of the Court.[8]

## II. Procedural History of the Case

Over three years ago, on October 11, 2001, Plaintiffs filed their Complaint stating two causes of action for just compensation, one for the taking of property under the Fifth Amendment and one for the impairment of water rights under the Klamath River Basin Compact.[9] On March 24, 2003, Plaintiffs filed an Amended Complaint to add a third claim for relief for breach of contract.[10] To date, no substantive issue in this case has been resolved by the Court.

At Defendant's request, on April 9, 2002 all proceedings on the first and second claims for relief were stayed until the Court ruled on Defendant's Motion to Stay this lawsuit pending completion of the Klamath Basin Adjudication. Although Defendant's Motion for Stay was denied on November 13, 2003, the Court's prohibition on discovery relating to Plaintiffs' claims for just compensation under the Fifth Amendment and the Klamath River Basin Compact remains in effect.[11] On May 12, 2003, August 22, 2003,

---

[8] To the extent that this Court continues to allow PCFFA and other *amici* to participate in this case, Plaintiffs request that the Court continue to ensure that a party's failure to respond to an *amicus curiae*'s argument not be deemed a waiver of that party's legal argument. At a March 10, 2004 status conference, the Court stated: "[P]articipation by amicus will have to be decided upon by the Court on motion for leave, because I can't have amici getting involved in side disputes with the parties. I certainly am not going to entertain any argument that a party's argument is waived because they didn't respond to an amicus brief. That just doesn't fly. . . . I would discourage, as I say, this side-briefing between one of the parties and one of the amici. I would like the amici to limit themselves to filing briefs on major motions and not get involved in procedural issues and who said what to whom and what did the Court's order say and all that kind of stuff." Tr. at 59-60 (Mar. 10, 2004) (Docket No. 169).

[9] Klamath River Basin Compact, art. XIII(B)(2), Pub. Law 85-222, 71 Stat. 497 (Aug. 30, 1957) ("The United States shall not, without payment of just compensation, impair any rights to the use of water for use (a) [domestic] or (b) [irrigation] within the Upper Klamath River Basin by the exercise of any powers or rights to use or control water . . . .").

[10] Proceedings on this claim have not been stayed.

[11] "During the pendency of defendant's motion to stay this case, no formal discovery has been conducted by either party, and no schedule for discovery has been ordered by the Court." Def.'s

and November 13, 2003, the Court ordered the parties to file Cross-Motions for Partial Summary Judgment on the nature of the property right, but those motions, which were set for hearing on December 8, 2004,[12] have not yet been heard.[13] Moreover, on March 23, 2004, the Court ordered that the portion of Plaintiffs' Motion for Partial Summary Judgment addressing liability be held in abeyance.[14]

The parties subsequently also filed Cross-Motions for Partial Summary Judgment on the third-party beneficiary issue, relating to Plaintiffs' third claim for relief (breach of contract). This issue has been fully briefed, but not argued.[15]

**III. Discovery**

In compliance with the Court's order staying all discovery on the first and second claims for relief for just compensation (under the Fifth Amendment and the Klamath River Basin Compact), the parties have conducted no discovery regarding those two claims. The parties have commenced, but not completed, discovery on the third claim for relief (breach of contract) for which February 15, 2005 is the cutoff date. Because much of the evidence for all three claims will come from the same witnesses and files, Plaintiffs request that the

---

Mot. for an Order Requiring Pls. to Re-file at 4 (filed July 25, 2003) (Docket No. 83); *see also* Tr. at 45 (Mar. 10, 2004) (Docket No. 169); Order at 1 (Mar. 23, 2004) (Docket No. 160).

[12] That date was vacated when this case was reassigned. Order (Dec. 3, 2004).

[13] At the May 5, 2003 hearing, the Court ordered Plaintiffs to "file a motion for summary judgment, assuming that the government does win the adjudication on the takings issue." Tr. at 86 (May 5, 2003) (Docket No. 78); *see also* Order (May 12, 2003) (Docket No. 77) ("[P]laintiffs shall file a motion for summary judgment on the question of whether their water rights in the Klamath River Valley, allegedly taken by the government in 2001, are property the taking of which is compensable under the Fifth Amendment to the Constitution, notwithstanding any adverse determination, including a retroactive one, regarding the existence, extent or character of such rights by the Hearing Office Panel in Case No. 003 of the State of Oregon's ongoing Klamath Basin Adjudication."); Order (Aug. 22, 2003) (Docket No. 87) ("[P]laintiffs shall file a motion for partial summary judgment as to their contention that the property rights determination in the Adjudication is irrelevant to plaintiffs' interests here."); Order (Nov. 13, 2003) (Docket No. 131) (denying Defendant's Motion to Stay).

[14] The Court "grant[ed] defendant's motion to hold in abeyance the portion of plaintiffs' brief that deals with matters other than the threshold issue of the precise scope and nature of the property rights plaintiffs allege to have been taken by the government." Order at 1 (Mar. 23, 2004).

[15] These motions were set for hearing on December 8, 2004, but that date was vacated on December 3, 2004. Order (Dec. 3, 2004).

Court remove any stay on discovery and establish a six-month discovery period for all three claims on liability to commence after determination of the pending Cross-Motions for Partial Summary Judgment on the nature of the property right.

Plaintiffs further note that resolution of some issues in this case could significantly decrease the discovery required to prepare this case for trial. For example,

(1) resolution of the Plaintiffs' Pending Motion for Partial Summary Judgment on the nature of the property right and liability on the first or second claim for relief could moot most of the third claim for relief for breach of contract;

(2) a determination that the irrigation districts can bring this suit in a representative capacity on behalf of the water users (allowing dismissal of the individual Plaintiffs) would obviate the need for any discovery on the issues regarding class certification and the named individual water users.

## IV. Pending Dispositive Motions

With respect to the dispositive motions currently pending before the Court, Plaintiffs propose proceeding as follows:

### A. Defendant's Motion for Partial Dismissal (filed May 10, 2002) (Docket No. 38)

Plaintiffs anticipate being able to file a Second Amended Complaint, with written consent of Defendant pursuant to RCFC 15(a), limiting their claims to 2001 water losses, thus mooting Defendant's Motion for Partial Dismissal filed on May 10, 2002.

### B. Defendant's Cross-Motion for Partial Summary Judgment (filed Oct. 3, 2003) (Docket No. 101) and Plaintiffs' Cross-Motion for Partial Summary Judgment (filed Jan. 27, 2004) (Docket No. 141)

Plaintiffs believe that prompt resolution of these Cross-Motions for Partial Summary Judgment, which have been fully briefed, will significantly advance final

resolution of this case by defining the nature and extent of their property right. Accordingly, Plaintiffs ask that the Court hear these cross-motions at its earliest convenience.

**C. Plaintiffs' Cross-Motion for Partial Summary Judgment on Status of Individual Plaintiffs as Third-Party Beneficiaries (filed Mar. 31, 2004) (Docket No. 165) and Defendant's Cross-Motion for Partial Summary Judgment on the Question of Whether the Individual Plaintiffs Have Standing to Bring Contract Claims as Intended Third-Party Beneficiaries (filed Apr. 26, 2004) (Docket No. 175).**

Plaintiffs and Defendant agree that a hearing on these motions should be held in abeyance until the Supreme Court decides *Orff v. United States*, 125 S. Ct. 309 (2004). Plaintiffs again note, however, that these motions will become moot if the Court determines that the irrigation districts are the proper parties to bring the contract claim in a representative capacity on behalf of their water users.

## V. Related Cases

The case of *Tulare Lake Basin Water Storage District v. United States*, 61 Fed. Cl. 624 (2001), has been settled. The case of *Orff v. United States*, 125 S. Ct. 309 (2004) is pending before the U.S. Supreme Court on the merits, and will be argued on February 23, 2005.

Respectfully submitted,

s/ Nancie G. Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
202-822-6760
202-822-6774 (fax)

January 28, 2005

Counsel for plaintiffs