# In The United States Court of Federal Claims

No. 01-591 L

(Filed: February 28, 2005)

KLAMATH IRRIGATION DISTRICT, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant,

PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, THE WILDERNESS SOCIETY, KLAMATH FOREST ALLIANCE, OREGON NATURAL RESOURCES COUNCIL, WATERWATCH OF OREGON, NORTHCOAST ENVIRONMENTAL CENTER, and SIERRA CLUB,

Defendant-Intervenor-Applicants.

Takings and contract case involving waters of the Klamath Basin; Motion to intervene, as of right, under RCFC 24(a)(2); 1966 amendments to Fed. R. Civ. P. 24(a); Practical impairment; Impact of *stare decisis* in impairing or impeding putative intervenor's interests; Types of "interests" covered by RCFC 24(a); Commercial fishing interests; *American Maritime* – proper interpretation; Rejection of artificial barriers to intervention as devoid of substance; Adequate representation; Intervention of PCFFA allowed.

## ORDER

*Nancie Gail Marzulla and Roger J. Marzulla*, Marzulla & Marzulla, Washington, D.C., for plaintiffs.

*Kristine Sears Tardiff*, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Thomas L Sansonetti*, for defendant.

*Todd Dale True*, Earthjustice Legal Defense Fund, Seattle, Washington, and *Robert B. Wiygul*, Waltzer & Associates, Biloxi, Mississippi, for defendant-intervenor-applicants.

**ALLEGRA, Judge:**

In the case *sub judice*, a group of water districts and individual farmers seek just compensation under the Fifth Amendment, as well as damages for breach of contract, owing to restrictions placed by the U.S. Bureau of Reclamation on the use, for irrigation purposes, of the water resources of the Klamath Basin of southern Oregon and northern California. Eight organizations – Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, The Wilderness Society, Klamath Forest Alliance, Oregon Natural Resources Council, WaterWatch of Oregon, Northcoast Environmental Center, and the Sierra Club – have moved for leave to intervene in this action under RCFC 24(a)(2). These organizations all have been involved in recent disputes involving the waters of the Klamath Basin, *see, e.g.*, *Kandra v. United States*, 145 F. Supp. 2d 1192 (D. Ore. 2001); *Pacific Coast Federation of Fishermen's Ass'ns v. Bureau of Reclamation*, 138 F. Supp. 2d 1228 (N.D. Cal. 2001). They assert varying interests relating to the allocation and ownership of that water, which interests, they contend, may be impacted by this litigation. Defendant takes no position on this motion, but plaintiffs vigorously oppose it, asseverating that intervention of any of these organizations, either as of right or via permission, is not authorized by RCFC 24.

As originally adopted in 1937, Rule 24(a) of the Federal Rules of Civil Procedure provided for intervention of right only in two limited circumstances: when "the applicant is or may be bound by a judgment in the action" or "is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or an officer thereof." Fed. Rule Civ. Proc. 24(a)(2) and (3) (1937). In 1966, the scope of the rule was substantially expanded. In explaining this change, the Advisory Committee noted that the earlier wording of the rule was "unduly restricted" and prone to "poor results," finding instead that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Advisory Committee's Notes on 1966 Amendments to Fed. Rule Civ. Proc. 24, 28 U.S.C.App., p. 756. Toward that end, it deleted the "bound by a judgment" language to "free[] the rule from undue preoccupation with strict construction of *res judicata*," and "imported practical considerations" into the rule by no longer requiring that the property at issue be held in the custody of the court or an officer thereof. *Id.*[1] The version of Rule 24(a)(2) that emerged from this amendatory process has, with minor

[1] Various courts had held that the "bound by a judgment" language applied only where a decree in the pending litigation would be "*res judicata* of the rights sought to be protected through intervention." *Sutphen Estates, Inc. v. United States*, 342 U.S. 19, 21 (1951); *see also Sam Fox Publ'g Co., Inc. v. United States*, 366 U.S. 683, 694 (1961). By comparison, although intervention under former Rule 24(a)(2) was authorized only if there was a fund or other property subject to the control or disposition of the court, many courts broadly construed this requirement, to the point where the 1966 Committee's Notes indicated that some courts "virtually disregarded the language of this provision." *See* Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, 7C Federal Practice and Procedure (hereinafter "Federal Practice and Procedure") § 1907 at 261 (2d ed. 1986).

modifications not pertinent herein, survived to this day and forms the basis, *haec verba*, for RCFC 24(a)(2). The latter rule reads:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

By way of further analogy to the Federal Rules, the findings required by RCFC 24(a)(2) are identical to those required by RCFC 19(a)(2), dealing with joinder of persons needed for just adjudications, revealing an obvious symmetry between these two gatekeeper provisions.[2]

Reflecting the breadth of the 1966 amendments, courts interpreting the newer version of Rule 24(a)(2) generally have concluded that "the requirements for intervention are to be construed in favor of intervention." *Am. Maritime Transp., Inc v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989).[3] These and other courts, often noting that the rule was modified to divorce it from strict *res judicata* considerations, have repeatedly concluded that the potential for generating adverse precedent, applicable in other related cases under the doctrine of *stare decisis*, may "as a practical matter impair or impede" an applicant's ability to protect an interest relating to the property or transaction which is the subject of the action. *See Freeman v. United States*, 50 Fed. Cl. 305, 309 (2001) ("When analyzing this element, the court has considered the impact of *stare decisis*."); *Anderson Columbia Envtl., Inc. v. United* States, 42 Fed. Cl. 880, 882 (1999) ("The potential *stare decisis* effect of a decision often supplies the 'practical impairment' required by Rule 24(a)."); *see also Stone v. First Union Corp.*, 371 F.3d 1305, 1309-10 (11th Cir. 2004) ("the potential for a negative *stare* decisis effect 'may supply that practical disadvantage which warrants intervention of right'" (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989)); *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dept. of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) ("the *stare decisis* effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2)"); *Oneida Indian Nation*

---

[2] The same findings are also required to certify a class under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure, but that provision finds no corollary in this court's rules.

[3] *See also Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors."); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."); *Federal Savings & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors"); *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (Rule 24 should be "broadly construed in favor of potential intervenors").

*of Wisc. v. State of New York*, 732 F.2d 261, 265 (2d Cir. 1984). In assessing the practical impact of *stare decisis*, court have looked not only to the likely ultimate disposition of a case, but also to potential subsidiary factual and legal findings. *See, e.g., FDIC v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987) (noting that under Rule 24(a), *stare decisis* considerations apply to rulings on a "legal point" or "factual issues").

This court must also focus on the nature of the "interest relating to the property or transaction which is the subject of action" that is required for intervention of right under RCFC 24(a)(2). Several decisions of the Supreme Court shed light on what is a qualifying "interest." In *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967), the Court, citing the Advisory Committee Notes as evidence that "some elasticity was injected" into the new rule, *id.* at 134 n.3, held that a private business with an interest in the solvency of a corporation to be formed pursuant to a consent decree could intervene in the antitrust suit considering that decree, thereby suggesting that the term "interest" is not limited to particular property interests, but includes economic interests threatened by a ruling. Five years later, in *Donaldson v. United States*, 400 U.S. 517, 531 (1971), the Court held that a taxpayer could not intervene of right in a proceeding to enforce a summons against a third party, concluding that the phrase "interest" "obviously" means "a significantly protectable interest." More recently, Justice O'Connor, in her concurring opinion in *Diamond v. Charles*, 476 U.S. 54, 75 (1986), stated that the "significantly protectable interest" required under *Donaldson* is a "direct and concrete interest that is accorded some degree of legal protection."

These decisions, though informative, hardly occupy the field, leaving to lower courts the task of mapping further the contours of what is meant by an "interest." Numerous courts, including the Federal Circuit, have risen to that task in observing that such an "interest" must be direct, substantial, and legally protectable. *See American Maritime*, 870 F.2d at 1561; *see also, e.g., Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997); *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1509 (11th Cir. 1988); *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).[4] Not surprisingly, many of the cases in which a sufficient "interest" has been found under Rule 24(a)(2) involve readily identifiable interests in land or other property. *See* Federal Practice and Procedure § 1908 at 272-75 (citing numerous cases); *see also Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) ("Interests in property are the most elementary type of right that Rule 24(a) is designed to protect."). But, as Judge Posner has reminded, Rule 24(a) "does not require that the intervenor

---

[4] The court does not mean to suggest that these cases represent unanimity on this point, with some courts certainly adopting a more relaxed definition of "interest" and others espousing a stricter view. *See* Brian Hutchings, *Waiting for Divine Intervention: The Fifth Circuit Tries to Give Meaning to Intervention Rules in Sierra Club v. City of San Antonio*, 43 Vill. L. Rev. 693, 714-19 (1998) (discussing cases across the spectrum); *see also Harris v. Reeves*, 946 F.2d 214, 219 (3d Cir. 1991) (noting that "an exact definition of the kind of interest justifying intervention remains elusive and that courts [have] described the level of interest required as 'significantly protectable,' 'legally protectable,' and 'direct' as opposed to contingent or remote.").

prove a property right, whether in the constitutional or any other sense." *United States v. City of Chicago*, 870 F.2d 1256, 1260 (7th Cir. 1989); *see also Brennan v. N.Y.C. Bd. of Educ*., 260 F.3d 123, 130 (2d Cir. 2001) ("Rule 24(a)(2) requires not a property interest, but, rather, 'an interest relating to the property or transaction which is the subject of the action.'"). Thus, other types of interests have been found to justify intervention, among them economic and business interests, as well as those involving access to public resources or the enforcement of statutory rights conferred by Congress, provided these interests were legally protectable and not contingent. *See, e.g., Cascade Natural Gas*, 386 U.S. at 134-35; *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *Utahns for Better Transp. v. U.S. Dept. of Transp*., 295 F.3d 1111, 1115 (10th Cir. 2002); *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350, 351-52 (2d Cir. 1975).

With these principles as reference points, the court concludes that at least one of the applicants is entitled to intervene in this case, as a matter of right: the Pacific Coast Federation of Fishermen's Associations (the PCFFA), a group of 25 West Coast fishermen's organizations representing approximately 3,000 small commercial fishermen, most of whom derive all or part of their income from Pacific salmon that spawn in the waters of the Klamath Basin. In the court's view, the PCFFA possesses a legally protectable interest involving the water of the Klamath Basin that is "related to the property or transaction" at issue, one that lies in maintaining access to that water and ensuring that it is allocated in a fashion that promotes its fishing interests. One looking for evidence of the nexus between that interest and this litigation need go no further than the motion filed by plaintiffs herein which urges this court to find that they have a property interest in the waters of the Klamath Basin. A finding that such a property interest exists undoubtedly would impair or impede PCFFA's ability to claim, in the future, that the same waters should be used in a less-restricted or unrestricted fashion that promotes their fishing interests. And it is no answer to assert, as plaintiffs have, that the Endangered Species Act (ESA), 16 U.S.C. §§ 1531, *et seq*., requires the Bureau of Reclamation to protect endangered fish in the Klamath Basin, whether or not its actions occasion a taking. To the contrary, there is indication neither that the ESA is designed to protect commercial fishing interests of the sort asserted by the PCFFA, *see* 16 U.S.C. §§ 1532(3), 1533(f), nor that the steps required by the ESA are so clearly identified as to dictate the Bureau's choices in accomplishing the goals of that statute. Indeed, with commendable candor, government counsel has admitted that a finding by this court that plaintiffs are entitled to just compensation would cause the Bureau of Reclamation to think twice before allocating water to fishing interests at the expense of further irrigation, potentially causing the Bureau to allocate less water to the former interests than it might otherwise.[5]

---

[5] *See also* Barton H. Thompson, Jr., *The Endangered Species Act: A Case Study in Takings & Incentives*, 49 Stan. L. Rev. 305, 335 (1997) ("How the government executes the ESA depends not on prior decisions alone, but also on how the government and property owners believe courts will resolve future takings claims.").

The interests that link the PCFFA to this case thus are central, rather than collateral; they are not contingent. They are similar to those successfully invoked by intervenors in other cases involving limited water resources. *See, e.g., Georgia v. Army Corps of Engineers*, 302 F.3d 1242, 1251-52 (11th Cir. 2002) (Florida permitted to intervene in dispute involving water allocation in order to protect endangered and threatened species and the stock of fish and seafood available for harvest); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (trade association representing farmers allowed to intervene in suit to cut off federal subsidies to those who pumped water from an aquifer because of potential impact on access to irrigation water); *see generally, New Jersey v. New York*, 283 U.S. 336, 342-43 (1931) (stating that an interstate river "offers a necessity of life that must be rationed among those who have power over it"). And, by all indications, they are the exact interests that prompted the United States District Court for the District of Oregon to allow PCFFA to intervene in the related proceedings there involving the Klamath Basin. *See Kandra*, 145 F. Supp. 2d at 1192; *Kandra v. United States*, Minute Entry of Order Granting Motion to Intervene, No. 01-6124-TC (D. Ore. Apr. 26, 2001).

In the court's view, it is also beyond peradventure that the disposition of this case "may as a practical matter impair or impede the applicant's ability to protect" its interest. For one thing, there is the distinct possibility that other courts, under *stare decisis,* would credit any findings adverse to PCFFA made here (particularly if those findings were affirmed by the Federal Circuit). And even were this not true, PCFFA's interests could be impaired or impeded to the extent that the United States, via the doctrines of *res judicata* or collateral estoppel, was prohibited from relitigating in other fora questions involving plaintiffs' entitlement to the water in question. In other words, although the interests of the United States and PCFFA do not entirely coincide, they considerably overlap – certainly enough to give rise to the distinct possibility that a ruling against the United States would have significant impacts on the allocation of the water in the Klamath Basin and corresponding negative impacts on PCFFA's fishing interests. That the precise relationship between the availability of such water and the health of the Pacific fisheries remains debatable does not render PCFFA's interest "contingent." To rule otherwise would be tantamount to requiring PCFFA to prove what might be the entirety of its case elsewhere in order to intervene here, a proof requirement that runs counter to the general thrust of courts in construing the new version of Rule 24(a) in favor of intervention. *See, e.g., Brennan*, 260 F.3d at 129 ("an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention"); *Turnkey Gaming Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (9th Cir. 1999) ("An application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face.").

In arguing to the contrary, plaintiffs dwell on that portion of *American Maritime*, which states that "[i]ntervention is proper only to protect those interests which are ''of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.''" 870 F.2d at 1561 (quoting *United States v. American Telephone and Telegraph Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (quoting *Smith v. Gale*, 144 U.S. 509, 518 (1892)). But, at the outset, it is critical to note that, read in context, the quoted language was

employed merely to define what is an "interest" within the meaning of RCFC 24(a) – the *ratio decidendi* of the Federal Circuit's opinion – and surely was not intended as *obiter dicta* commentary on that portion of the rule which requires a court to decide whether the disposition of the action "may as a practical matter impair or impede the applicant's ability to protect that interest." Were this court to subscribe to plaintiffs' more sweeping construction of this language, it would have to conclude that the Federal Circuit intended to emasculate the changes wrought by the 1966 amendments, and did so indirectly, in the guise of defining what is an "interest" within the meaning of the new rule. If plaintiffs are correct, the Federal Circuit could scarcely have selected a worse case for this proposition than *AT&T, supra*. There, the D.C. Circuit, quoting liberally from the 1966 Advisory Committee notes, broadly applied the practical impairment requirement of the rule in granting intervention status to parties whose only claim was that enforcement of a discovery order against a third party would compromise their defense of an entirely separate action. *AT&T*, 642 F.2d at 1291-93.[6] Notably, in an earlier opinion, that same court, sitting *en banc* in *Smuck v. Hobson*, 408 F.2d 175 (D.C. Cir. 1969), explicitly rejected the notion that the term "interest," as used in the new version of Rule 24, could be construed narrowly so as effectively to reinstate the "bound by" language of the prior rule, stating that it would be unfortunate "to allow the inquiry to be led once again astray by a myopic fixation upon 'interest.'" *Id*. at 179. In light of these considerations, not to mention the plain wording of the rule and the wealth of authority construing it, the court has no hesitation in concluding that the language employed in *American Maritime* was intended only to emphasize that qualifying interests under RCFC 24(a)(2) must not be indirect or contingent, and not to preclude a finding of practical impairment based, for example, upon the application of *stare decisis*. To accept plaintiff's contrary contention is to rise above its source and eviscerate the rule.

Nonetheless, several decisions in this court have read the quoted language in *American Maritime* broadly and restrictively – but only in mistakenly erecting artificial barriers to intervention. For example, while expressing nominal adherence to the practical impairment language of RCFC 24(a), at least two decisions have suggested that applicants must show that legal "repercussions . . . are certain to develop if plaintiffs succeed." *Hage v. United States*, 35 Fed. Cl. 737, 741 (1996); *see also Karuk Tribe of California v. United States*, 27 Fed. Cl. 429, 431 (1993). To be sure, along with predictability and consistency, certainty is one of the core values of the law, indeed, one of the pillars that supports the doctrine of *stare decisis*. But, no Federal law of which this court is aware has ever imposed certainty as a requirement of proof,

[6] Notably, the Supreme Court's decision in *Smith*, cited both in *American Maritime* and *AT&T,* did not involve some predecessor to the current intervention rules, but rather section 90 of the Dakota Code of Civil Procedure, which simply provided for intervention where an applicant had "an interest in the matter in litigation." *Smith*, 144 U.S. at 517. Thus, the only common strand between section 90 and Rule 24(a) was the use of the word "interest;" the former did not have a practical impairment requirement like the latter. Perhaps because of this, Justice Stewart, in his dissent in *Cascade Natural Gas*, indicated that the language in *Smith* is "of limited use in deciding particular cases" involving Rule 24. *Cascade Natural Gas*, 386 U.S. at 145 (Stewart, J., dissenting).

particularly at the outset of litigation – and RCFC 24(a) is no exception, as it only requires that the disposition of the case "may" impede or impair an applicant's interests. *Hage*, *Karuk Tribe* and any other case requiring more than this basic, threshold showing require too much, and run counter to the overwhelming weight of authority. *See United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002) ("the relevant inquiry is whether [the action] 'may' impair rights 'as a practical matter' rather than whether [it] will 'necessarily' impair them."); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1989) (reading the term "may" as requiring only that an interest "potentially" be impaired or impeded).

Other cases have flipped the Federal Circuit's teaching that RFC 24 "be construed in favor of intervention," *American Maritime*, 870 F.2d at 1561, on its head, holding instead that intervention in this court is "disfavored" because this court is one of "limited" jurisdiction. *See, e.g., Freeman v. United States*, 50 Fed. Cl. 305, 308 (2001); *Anderson Columbia Envtl. v. United States*, 42 Fed. Cl. 880, 881-82 (1999). Tellingly, these decisions fail to translate their view of this court's "limited" jurisdiction into any discernible limitation on intervention. If, as has been hinted, the concern is that this court does not have jurisdiction over disputes between two private individuals (*i.e.*, the plaintiff and the intervenor), that would be universally true and render RCFC 24(a) moribund. If, instead, the concern is that this court does not have independent jurisdiction over the intervenor – that the applicant, for example, is not covered by the Tucker Act – that likely would be true of every putative intervening defendant, wiping out the most common form of intervention here. The answer to these enigmas is that, at least for intervening defendants, this court's "limited" jurisdiction is no limitation at all, for two reasons. First, it is well-accepted that defendants intervening as a matter of right need not have independent jurisdictional grounds, but instead are covered by the doctrine of ancillary jurisdiction.[7] In the court's view, this well-established jurisdictional doctrine, which rests on "considerations of judicial economy and fairness," *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 617 n. 14 (1966), and is

[7] S*ee Phelps v. Oaks*, 117 U.S. 236 (1886); *Sweeney v. Athens Reg'l Med. Ctr.*, 917 F.2d 1560, 1566 (11th Cir. 1990) ("ancillary jurisdiction can support" intervenor of right); *Int'l Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 346 (1st Cir. 1989) ("As a general rule, parties entitled to intervention as of right under Rule 24(a) fall within a federal court's ancillary jurisdiction; no independent basis of jurisdiction is, therefore, necessary."); *Curtis v. Sears, Roebuck & Co.*, 754 F.2d 781, 783 (8th Cir.1985) ("intervention of right is a proper vehicle for the exercise of the court's ancillary jurisdiction"); *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 540 (8th Cir. 1970) ("[w]here intervention is of right . . . the courts and authorities are in substantial agreement that there need be no independent jurisdictional grounds to support the intervenor's claim"); *Lesnik v. Pub. Indus. Corp.*, 144 F.2d 968, 973-74 (2d Cir. 1944) ("the adding of parties under the rules has been viewed in the light of the ancient and well-established principle that a federal court has 'ancillary' jurisdiction to complete adjudication of interrelated matters where its jurisdiction has once been competently invoked"); *see also Zahn v. Int'l Paper Co.*, 414 U.S. 291, 306 (1973) (Brennan, J. dissenting) (the Supreme Court has sustained the exercise of ancillary jurisdiction, "where a party's intervention was held to be a matter of right, as is now provided by Rule 24(a)").

especially tailored for "courts of limited jurisdiction," *Morrow v. District of Columbia*, 417 F.2d 728, 738 (D.C. Cir. 1969), is as applicable here as in any Federal court, all of which, of course, are of "limited" jurisdiction.[8] Moreover, no separate waiver of sovereign immunity is required for intervening defendants, which are filing not against, but in support of the United States. *See Int'l Mortgage & Inv. Corp. v. Von Clemm*, 301 F.2d 857, 863-64 (2d Cir. 1962) (while the "United States must consent to be sued," it need not "consent to be defended"); *Chalmers v. United States*, 43 F.R.D. 286, 291 (D. Kan. 1967) (same). Accordingly, like the Carrollian Jabberwock, the concerns over intervention previously expressed about this court's "limited" jurisdiction ultimately prove a fiction.

Nor can this court agree with decisions that hold that *stare decisis* can supply the practical impairment required by Rule 24(a), but conclude that such is not the case if the precedent is not binding, with the potential intervenor "free to assert its rights in a separate action." *Anderson Columbia Envtl.*, 42 Fed. Cl. at 882; *see also John R. San & Gravel Co. v. United States*, 59 Fed. Cl. 645, 655 (2004). Snatching with the right hand what they dangle with the left, these cases blur the distinction between *res judicata* and *stare decisis*, essentially defining the latter to mean the former, at least in any trial court – after all, in our Federal system, no trial court opinion is binding in a separate proceeding, except by application of *res judicata* or collateral estoppel principles. Yet, there is no indication that, in holding that *stare decisis* concerns can support intervention, courts have used that term in such a cramped fashion – to refer only to binding, rather than persuasive, authority – the narrowness of which would clash with accepted meanings of the doctrine.[9] To the contrary, several courts have explicitly granted intervention based upon

---

[8] Under ancillary jurisdiction, a court acquires "jurisdiction of a case or controversy as an entirety, and it may, as an incident to the disposition of a matter properly before it, possess jurisdiction to decide other matters raised by the case of which it could not take cognizance were they independently presented." Federal Practice and Procedure § 1917, at 460; *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379-80 (1994). Because such jurisdiction springs from the necessity of effectively exercising the jurisdiction Congress actually grants, the court sees no reason why it should be distinguished from other Federal courts in this regard, at least for the limited purpose of allowing intervention by a defendant. For district courts, this ancillary jurisdiction is now subsumed under the "supplemental" jurisdiction provided by 28 U.S.C. § 1367, enacted as part of the Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089.

[9] *See, e.g., Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 953 (1992) (Rehnquist, C.J., concurring in the judgment, in part, and dissenting, in part) ("*Stare decisis* is defined in Black's Law Dictionary as meaning 'to abide by, or adhere to, decided cases.' Black's Law Dictionary 1406 (6th ed. 1990)"); *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 374 (5th Cir. 1987) (quoting *Flowers v. United States*, 764 F.2d 759, 761 (11th Cir.1985) ("[*s*]*tar*e *decisis* means that like facts will receive like treatment in a court of law"). Also describing the doctrine in more general terms, Justice Cardozo once wrote:

concerns that, under the doctrine, an adverse opinion would have persuasive impact in another circuit. *See, e.g., Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967) ("a decision by the District Court here, the first judicial treatment of this question, would receive great weight, whether the question arose again in this jurisdiction or in the federal court in Wisconsin"); *In re Oceana Int'l, Inc.*, 49 F.R.D. 329, 332 (S.D.N.Y. 1970). Decisions of this court that have suggested otherwise essentially construe Rule 24(a) as if it had not been amended in 1966 to delete the requirement that a putative intervenor be "bound by" a decision. *See Sam Fox Publ'g Co.*, 366 U.S. at 694 (practical impact "is not at all the equivalent of being legally bound"). That, this court will not do.[10]

Admittedly, this court is loath to disagree with the cited decisions, but, in the end, it is compelled to conclude that the limitations these cases impose are devoid of substance.[11] Guided by the plain language of RCFC 24(a), this court simply cannot ignore the practical reality that,

---

> [I]n a system so highly developed as our own, precedents have so covered the ground that they fix the point of departure from which the labor of the judge begins. Almost invariably, his first step is to examine and compare them. If they are plain and to the point, there may be need of nothing more. Stare decisis is at least the every day working rule of our law.

Benjamin Cardozo, The Nature of the Judicial Process 20 (1921); *see also Gilman v. City of Philadelphia*, 70 U.S. 713, 724 (1865) (describing broadly the philosophical underpinnings of the doctrine).

[10] The court does not mean to suggest that intervention may be had in every case in which a decision might have an adverse effect as *stare decisis*. Here, there is the potential that rulings will be rendered with respect to the very water and related transactions that might be at issue in a later proceeding. The court only holds that such a conjunction of issues and subject matter warrants intervention.

[11] Curiously, to this court's knowledge, the limitations on intervention imposed in these cases rarely, if ever, have been applied by this court in regularly granting intervention to awardees in contract bid protest actions. Indeed, this court's rules anticipate that intervention will be granted to such awardees, *see* RCFC Appendix C, para. 8, despite the fact that: (i) it is not "certain" that their interests will be adversely impacted by this court's ruling; (ii) this court would lack jurisdiction over a direct dispute between the awardee (none of which, mind you, have claims against the United States) and the protester; and (iii) this court's rulings would not be binding precedent, except where law of the case or *res judicata* considerations applied. In addition, there is no indication that this court has applied anything approaching these rigorous limitations in construing the identical requirements for joinder in RCFC 19. *See Perch Assocs. L.P. v. United States*, 20 Cl. Ct. 456, 456-57 (1990) ("Public policy would have all courts greatly liberalize joinder of parties and claims in order to provide for effective settlement of all disputes at one time, when essential portions of a dispute are already before the court.").

whether formally under *stare decisis* or not, a succeeding court, even if not bound by precedent, will – and should – be impacted by a prior opinion dealing with the same issues and subject matter. Indeed, the Supreme Court has observed that such consistency principles "are at their acme in cases involving property and contract rights." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). Where, as here, the potential of additional litigation involving the same resources looms large, a putative intervenor should be allowed to prevent the development of adverse precedents that undoubtedly will be wielded against it in the future. To the extent prior decisions of this court are to the contrary, this court finds them, with all due respect – and notwithstanding *stare decisis* – to be erroneous.

Finally, under RCFC 24(a), the applicant must also show that its interest is not "adequately represented by existing parties." The burden of demonstrating inadequacy of representation is not heavy: according to the Supreme Court, this requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United States*, 404 U.S. 528, 538 n.10 (1972). As to PCFFA, the court finds that this requirement is met because the government's interest in this litigation does not coincide with the economic concerns of the Pacific fishing industry. Colloquially speaking, PCFFA cannot expect the government to "carry its water" – at least all of it. *See Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (U.S. Forest Service would not adequately represent interests of timber industry in defending lawsuit brought by environmental group, because the "government must represent the broad public interest, not just economic concerns of the timber industry."). Defendant does not claim to the contrary, nor, in good faith, could it, given the tensions that arose when defendant recently settled *Tulare Lake Basin Water District, et al. v. United States*, No. 98-101L (Fed. Cl.), a case involving similar issues. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) (applicants interests not adequately represented by government where past conduct revealed divergence). The fact that this court concludes that PCFFA should be allowed to intervene, however, does obviate the necessity of determining whether the remaining applicants should be granted intervenor status because, in the court's view, PCFFA will adequately represent those applicants' interests, as reflected by the fact that, to date, they share common counsel.[12]

In sum, this court finds that PCFFA has met all the requirements of RCFC 24(a)(2)[13] and thus is entitled to intervene as a defendant in this action, as a matter of right. The court does not believe that granting this intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Though plaintiffs' counsel views with alarm the consequences of a ruling

---

[12] The court thus does not decide whether these applicants meet the other requirements of RCFC 24(a)(2). Should they wish, these parties may continue to join PCFFA in making filings in this case, albeit as *amici*.

[13] Plaintiffs have not raised any serious question regarding the timeliness of the intervention application here. Given the nascent status of these proceedings, the court believes that the application most certainly was timely.

permitting this intervention, it bears emphasis that the court has adequate facility to limit the issues which may be presented in a proceeding and, in particular, to prevent extraneous issues that might prove disruptive from being injected into this already complex suit. Accordingly, the court **GRANTS, IN PART**, the motion filed by PCFFA, insofar as it applies to PCFFA itself and to the extent consistent with this opinion.

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge