IN THE UNITED STATES COURT OF FEDERAL CLAIMS

KLAMATH IRRIGATION DISTRICT, et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 01-591 L

Judge Francis M. Allegra

**DEFENDANT'S SUPPLEMENTAL BRIEF CONCERNING NEW LEGAL AUTHORITY RELEVANT TO THE PROPERTY RIGHT QUESTION**

Pursuant to the Court's Order of February 15, 2005, Defendant submits this supplemental brief on the question of whether any of the named Plaintiffs have a compensable property right in Klamath Project water. In accordance with the Court's instructions, this supplemental brief is limited to a discussion of relevant legal authorities decided since December 1, 2003.

I. Oregon Law Does Not Recognize an "Appurtenant Water Right" Separate and Distinguishable from an Appropriative Water Right Acquired Under State Law

A central theme of Plaintiffs' case is the assertion that the individual plaintiffs possess an "appurtenant water right" that is independent of appropriative water rights that can be acquired under Oregon state law and that are the subject of the Klamath Basin Adjudication. See Def. SJ Resp. Brief at 3-13 (Docket #167); Pls. SJ Brief at 6-7, 9, 22, 31 (Docket #141); Pls. SJ Reply at 1-2 (Docket #171). At least two recent Oregon state court decisions contradict this theory.

Recent decisions from the Court of Appeals of Oregon, consistent with the decisions previously cited by Defendant, make clear that the term "water right" – as used in Oregon law – is a term of art. To acquire a "water right" under Oregon law, one must comply with the

requirements of the state's prior appropriation system.[1] Hannigan v. Hinton, 97 P.3d 1256, 1258-59 (Or. App. Sept. 15, 2004); Waterwatch of Oregon, Inc. v. Water Resources Comm'n, 88 P.3d 327, 336-38 (Or. App. April 21, 2004), review allowed, 99 P.3d 1235 (Or. Sept. 28, 2004). Under the "Water Rights Act" currently in effect, "all water rights seekers must apply for a permit . . . ." Hannigan, 97 P.3d at 1259. As is frequently explained by the Oregon courts, "[t]he permit itself does not represent a perfected and vested water right" under Oregon law. Waterwatch, 88 P.3d at 338 (quoting Teel Irrig. Dist. v. Water Resources Dept., 323 Or. 663, 667 (Or. 1996)). Accord Hanson v. Turney, 94 P.3d 1, 3 (N.M. Ct. App. Apr. 1, 2004) (holding, under New Mexico law, that "[a] water permit is an inchoate right, and 'is the necessary first step' in obtaining a water right"). Instead, the permittee must perfect the right by appropriating the water and applying it to a beneficial use. Waterwatch, 88 P.3d at 338. The permittee then must prepare a "final proof survey" that the statutory requirements have been met. Id. If the state Water Resources Department determines that the requirements have been met, it will issue a certificate that "represents a vested, perfected water right" under Oregon law. Id. (quoting Teel, 323 Or. at 668). See also Hannigan, 97 P.3d at 1258-59 and 1259 n.2 (citing ORS 537.250 and

---

[1]The determination of claims to pre-1909 appropriative water rights (those asserting a priority date prior to February 24, 1909, the date of the enactment of Oregon's "Water Rights Act" or Water Code) occurs through a general stream adjudication under state law, the end result of which is the issuance of a decree that defines the water right. As discussed in prior submissions in this case, the Klamath Basin Adjudication is an ongoing general stream adjudication in which the relative rights of all persons claiming to have acquired an appropriative water right under Oregon state law to the waters of the Klamath River prior to 1909, as well as certain federal reserved water rights and riparian rights, will be determined. See Def.'s Mot. to Stay at 7-13 (Docket # 38). Plaintiffs have represented in this case "that their water interests are not property interests at issue in the [Klamath Basin] Adjudication[.]" Order, Nov. 13, 2003, at 2 (Docket #131) (citing Pls. Revised SJ Mem., filed Sept. 22, 2003, at 10 (Docket #99)). The Court accepted this representation and held that Plaintiffs therefore are now "barred from making any claims or seeking any relief in this case based on rights, titles, or interest that are or may be subject to determination in the Adjudication." Order, Nov. 13, 2003, at 2 (Docket #131).

explaining that a water right certificate will not be issued until the requirements of the Water Rights Act have been met).

In addition to creating and recognizing appropriative water rights, in 1997 the Oregon legislature "created a new type of water right called an instream water right." Waterwatch, 88 P.3d at 331 n.6 (quoting OAR 690-077-0000). Like other water rights that can be acquired under Oregon law, instream water rights are established through a process that results in the issuance of a certificate that defines the parameters of the right. Id. Although the Klamath plaintiffs are not claiming that they own instream water rights, the critical point here is that the acquisition of any "water right" under Oregon law can occur only pursuant to the statutory schemes enacted by the Oregon legislature.

The recent decisions cited here, coupled with the case and statutory citations referenced by the parties in their briefs, establishes that Oregon law does not create, recognize or allow for the acquisition of an "appurtenant water right" that is separate and distinct from an appropriative water right that may otherwise be acquired under the state's system for administering water rights. Instead, as explained in Defendant's prior submissions and confirmed in the recent cases cited herein, appurtenancy is merely a feature or element of an appropriative water right under state law. See Def. SJ Resp. Brief at 3-9 (Docket #167). As explained by the Hannigan court, water rights acquired under Oregon law "are appurtenant to specific parcels of land; the right to use water is tied to the location on which the water right was perfected ('the premises upon which it is used'), which necessarily is also the location named in the water right certificate." Hannigan, 97 P.3d at 1260 (citing ORS 537.250). See also Waterwatch, 88 P.3d at 338 ("Perfected water rights are appurtenant to the land, so that they travel with the land, unless the seller specifically withholds those rights on sale"; a certificate issued by the state Water

Resources Department will include "a description of the land to which the water is appurtenant" (quoting Teel, 323 Or. at 668)).

In sum, the recent decisions of the Oregon courts discussed above confirm that the term "water right" is a term of art and refers to an appropriative water right acquired in accordance with state law. These decisions also contradict Plaintiffs' theory that Oregon law is the source of a so-called "appurtenant water right" that is separate and distinguishable from an appropriative water right. Finally, contrary to Plaintiffs' arguments (Pls. SJ Reply at 14-16 (Docket #171)), these recent decisions clarify that a permit from the Water Resources Department is not a perfected and vested water right under Oregon law.

## II. The Named Plaintiffs With Contract Rights May Pursue Contract Claims, But Not Takings Claims

To the extent that Plaintiffs are alleging a taking of their contract rights,[2] several recent decisions of the Court of Federal Claims reaffirm an important legal principle applicable in this case: "when a contract between a private party and the Government creates the property right subject to a Fifth Amendment claim, the proper remedy for infringement lies in a contract claim, not one for a taking." Franconia Associates v. United States, 61 Fed. Cl. 718, 740 (Aug. 30, 2004). Accord Allegre Villa v. United States, 60 Fed. Cl. 11, 18 (March 22, 2004).

For example, in Franconia Associates, the plaintiffs – property owners that entered into mortgage contracts with an agency of the United States – alleged that the enactment of legislation that deliberately and specifically targeted and modified their right to prepay their

---

[2]Defendant does not dispute that 13 of the 14 district plaintiffs named in the Amended Complaint have contracts with the United States and thus have standing to bring a contract claim against the United States based on those contracts. The question of whether the individual plaintiffs have standing to pursue contract claims based on these same contracts is at issue in the parties' cross-motions for summary judgment on the question of whether those individuals are intended third-party beneficiaries of the contracts.

mortgages constituted a breach of contract and, alternatively, a taking of their property. In addressing whether the plaintiffs could pursue a takings claim, this Court examined two distinct but frequently intermingled lines of authority that courts have relied on in assessing whether a plaintiff can pursue a contract-based takings claim when the United States is a party to the contract in question. In one line of cases, including those arising in the Winstar[3] context, courts have focused on the right allegedly taken (a contract right), and "the refusal to invoke takings principles has been explained as directly resulting from the availability of contract remedies." 61 Fed. Cl. at 737. In the second line of cases, the courts "have focused not on the nature of the property impacted, but on the nature of the governmental action giving rise to the alleged taking." 61 Fed. Cl. at 738. If the government was acting in its commercial or proprietary capacity, rather than its sovereign capacity, those actions may give rise to a breach of contract claim, but they do not effect a taking. Id.

Applying these principles in Franconia Associates, this Court ruled that the government acted in a proprietary capacity when it enacted legislation specifically targeting the plaintiffs' contractual prepayment rights. The Court then ruled that,

> it follows, *a fortiori*, that defendant, while repudiating its contracts, did not effectuate a taking. Because this conclusion stems from the nature of the power invoked by Congress in impacting plaintiffs' property, rather than the nature of the property itself, it applies, with equal force, to plaintiffs' contract rights and the complexes they acquired under the program. As to the former, it remains that when a contract between a private party and the Government creates the property right subject to a Fifth Amendment claim, the proper remedy for infringement lies in a contract claim not one for a taking. . . . The same holds true as to the complexes themselves–no regulatory taking occurred because the Congress did not appropriate those properties in its sovereign capacity for public use. Accordingly, the court holds that plaintiffs' takings

[3] United States v. Winstar Corp., 518 U.S. 839 (1996).

claims are not well-taken.

61 Fed. Cl. at 739-40 (citations and footnotes omitted). See also Allegre Villa, 60 Fed. Cl. at 18 (holding that when a plaintiffs' claim is based on a contractual right created by a contract between the plaintiff and the United States, the plaintiff's recovery "lies in a theory of breach, not takings").

In this case, Plaintiffs allege that they have a contractual right to the delivery and use of Klamath Project water. The alleged taking of these contractual rights was the result of the government's operation of the Klamath Project in 2001, with specific emphasis by Plaintiffs on the government's compliance with the Endangered Species Act in its operation of the Project. Pls. SJ Reply Brief at 1, 11-14 (Docket #171); Pls. SJ Opp. Brief at 35-37 (Docket #141). The cross-motions for summary judgment pending before the Court focus on the first line of authority discussed in Franconia Associates: the nature and source of Plaintiffs' alleged property right. Applying the principles explained in Franconia Associates to this case, to the extent that any of the named Plaintiffs (district or individual) have a contractual right to receive Klamath Project water that was allegedly impacted by the operation of the Klamath Project in 2001, because those rights are derived from contracts between a private party (the district plaintiffs) and the United States (acting through the Bureau of Reclamation), the proper remedy for the alleged infringement of those rights lies in a contract claim and not a takings claim. Franconia, 61 Fed. Cl. at 739-40; Allegre Villa, 60 Fed. Cl. at 18.

## III. Plaintiffs' Alleged "Appurtenant Water Rights" Cannot Be Separated From the Land to Which Said Rights are Appurtenant for the Purposes of the Fifth Amendment

The individual Plaintiffs in this case are owners of land within the area served by the Klamath Project. These Plaintiffs allege that they have a right to use Klamath Project water that

is appurtenant to their land. Assuming that the individual Plaintiffs possess such an appurtenant right (which Defendant disputes), it does not follow that Plaintiffs can treat this appurtenancy as a property right that is separate and independent from the land for the purposes of the Fifth Amendment. Recent Federal Circuit precedent confirms this point.

In American Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir. Aug. 16, 2004), rehearing en banc denied (Fed. Cir. Dec. 9, 2004), the plaintiff was the owner of a fishing vessel, the *Atlantic Star*, that had permits from the United States authorizing it to fish for Atlantic mackerel in the Exclusive Economic Zone ("EEZ") of the United States in the Atlantic Ocean. The plaintiff brought a takings claim after certain legislation resulted in the cancellation of its permits, alleging that the permits and related authorizations were "appurtenant to the use and operation" of its fishing vessel. American Pelagic, 379 F.3d at 1373 (quoting the plaintiff's complaint and brief). The Federal Circuit held that the plaintiff "did not and could not possess a property interest in its fishery permits and authorization letter." Id. at 1374. The appellate court's ruling turned in part on the fact that the plaintiff lacked authority "to assign, sell, or transfer its permits and authorization letter" and that the government could revoke or modify the permits. Id. The Federal Circuit further held that although it was undisputed that the plaintiff possessed a property right in its fishing vessel, the use of that vessel to fish for Atlantic mackerel in the EEZ "does not equate to a cognizable property interest for the purposes of a takings analysis." Id. at 1377.

The Federal Circuit's decision in American Pelagic is relevant to this case in several respects. First, the Federal Circuit's reversal of a $37 million judgment in American Pelagic based on the determination that the plaintiff lacked a property right highlights the fact that the determination of whether a compensable property interest exists is a critical threshold inquiry in

all Fifth Amendment takings cases. Second, the Federal Circuit declined to treat an alleged appurtenant right as severable from the property to which that right was appurtenant for the purposes of its takings analysis. This decision is consistent with cases previously cited and relied on by Defendant, such as Arctic King Fisheries, Inc. v. United States, 59 Fed. Cl. 360 (2004), and Alves v. United States, 133 F.3d 1454 (Fed. Cir. 1998). Def. SJ Resp. Brief at 42-45 (Docket #167). In American Pelagic, the appurtenant right was the fishing permit and the underlying property was the fishing vessel. In this case, the alleged appurtenant right is defined by Plaintiffs as the right to use Klamath Project water and the underlying property to which that right is appurtenant is the land owned by the individual plaintiffs. Here, as in American Pelagic, the Klamath plaintiffs cannot separate their alleged appurtenant right from the land to which that right is appurtenant for the purposes of claiming a taking of the former without regard to the latter.[4] Moreover, the use of the individual plaintiffs' land for agricultural purposes (a use that generally requires irrigation water from the Klamath Project) – like the use of the *Atlantic Star* to fish in the EEZ – is not a property right that can be severed from the land itself for the purposes of the Fifth Amendment.

## CONCLUSION

For all of the reasons set forth in more detail in Defendant's previously submitted summary judgment briefs, the relevant legal authorities issued since December 2003 support the

[4]Defendant does not contend that a water right can never be severed from the land to which it is appurtenant. However, a landowner who acquires an appropriative water right under state law cannot sever that water right from the land to which it is appurtenant and use the water for another purpose or change the location of the water use except upon application to, and approval of, the Oregon Water Resources Department in accordance with Oregon's Water Code. See Def. SJ Resp. Brief at 7-9 (Docket #167). The concept of appurtenancy is also a limitation on the use of Project water under federal reclamation law. Under Section 8 of the Reclamation Act of 1902, 43 U.S.C. § 372, Project water is appurtenant to irrigable lands within the Project area and cannot be severed and used on lands outside that area. See Def. SJ Resp. Brief at 9-13 (Docket #167).

conclusion that Plaintiffs do not possess an "appurtenant water right" under Oregon state law or federal law that constitutes a property right. In the absence of such a property right, Plaintiffs' takings claims are, in the recent words of the Federal Circuit, "fatally defective." American Pelagic, 379 F.3d at 1383. Summary judgment should therefore be granted in favor of Defendant at to Plaintiffs' takings claims.

Dated: March 14, 2005

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division

s/Kristine S. Tardiff
KRISTINE S. TARDIFF
Attorney of Record for the Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
55 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583/Fax: (603) 225-1577
E-Mail: kristine.tardiff@usdoj.gov

STEPHEN M. MACFARLANE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, CA 95814-232
Tel: (916) 930-2204/Fax: (916) 930-2210

REGINALD T. BLADES, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 514-7300/Fax: (202) 307-0972