IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 01-591 L |
| UNITED STATES OF AMERICA, | ) | Judge Francis M. Allegra |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE STANDING OF THE DISTRICTS TO BRING THESE CLAIMS ON BEHALF OF THEIR WATER USERS**

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
202-822-6760
202-822-6774 (facsimile)

Dated: March 14, 2005

# TABLE OF CONTENTS


TABLE OF AUTHORITIES.........................................................................................……........ii

QUESTION PRESENTED..………………………………………………………………...v

FACTUAL AND PROCEDURAL BACKGROUND.......................................………........…2

ARGUMENT……………………………………………………………………………...…3

I. RCFC 17 Governs the Standing of the Districts in This Case…………………………….3

II. The Plaintiff Districts Have Standing Under RCFC 17 Because Their Enabling Statutes Authorize Them to Bring Suit on Behalf of Their Water Users………………....7

1. Oregon Irrigation Districts……………………………………………………….7

2. California Irrigation Districts…………………………………………………….8

3. Oregon Drainage District………………………………………………………..9

4. Oregon Water Improvement Districts…………………………………………...9

5. Oregon Water Corporations…………………………………………………….10

III. The Districts Also Have Standing as Trustees for Their Water Users………………….15

IV. The Districts Further Have Associational Standing to Sue for Damages Collectively on Behalf of Their Members……………………..……………………..16

V. The Districts Also Possess *Parens Patriae* Standing to Assert This Claim…..………...17

CONCLUSION..........................................................................................................…..……20

INDEX TO APPENDIX AND EXHIBITS Page(s)

Ex. A – Transcript, *Orff v. United States*, No. 03-1566 (S. Ct. Feb. 23, 2005)………………....1-2

## TABLE OF AUTHORITIES

<u>Cases</u> <u>Page(s)</u>

*Aldridge v. United States*, 59 Fed. Cl. 387 (2004)…………………………………………………...5

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982)…………………………...17-18

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp*., 40 F.3d 1416 (3d Cir. 1994)……………..6

*Butler & Thompson Co. v. City of Ashland*, 222 P. 346 (Or. 1924)…………………………..7, 13

*California v. Fed. Power Comm'n*, 296 F.2d 348 (D.C. Cir. 1961), *rev'd on other grounds*, 369 U.S. 482 (1962)…………………………………………....……………………20

*California v. United States*, 438 U.S. 645 (1978)……………………………............………..19

*Caviness v. La Grande Irr. Co.*, 119 P. 731 (Or. 1911)……………………………………….16

*Cent. Delta Water Agency v. State Water Res. Control Bd.*, 21 Cal.Rptr.2d 453 (Cal. Ct. App. 1993)……………………….……………………………12, 14

*City of Chino v. Superior Court of Orange County*, 63 Cal.Rptr. 532 (Cal. Ct. App. 1967)……………..……………………………………………12

*Coachella Valley County Water Dist. v. Stevens*, 274 P. 538 (Cal. 1929)……………….10-11, 12

*Guam v. Fed. Mar. Comm'n*, 329 F.2d 251 (D.C. Cir. 1964)……………………...…………..19

*Harney Valley Irrigation Dist. v. Weittenhiller*, 198 P. 1093 (Or. 1921)……………………12-13

*H.F. Allen Orchards v. United States*, 749 F.2d 1571 (Fed Cir. 1984) …………………………13

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977)……………………..16-17

*Ivanhoe Irrigation Dist. v. All Parties*, 306 P.2d 824 (Cal. 1957), *rev'd on other grounds*, 357 U.S. 275 (1958)……………………………………………………...…….15

*Kansas v. Colorado*, 533 U.S. 1 (2001)……………………...………………………………..18

*Lans v. Digital Equip. Corp*., 252 F.3d 1320 (Fed. Cir. 2001)……………………………………4

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315 (D.C. Cir. 2000)…………………...4

*New York v. United States*, 331 U.S. 284 (1947)……………………………………………...19

*Orange County Water Dist. v. City of Riverside*, 343 P.2d 450 (Cal. Ct. App.1959)...11-12, 14-15

*Oregon Const. Co. v. Allen Ditch Co.*, 69 P. 455 (Or. 1902)……………………………………13

*Pennsylvania by Shapp v. Kleppe*, 533 F.2d 668 (D.C. Cir. 1976)……………………………18

*Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672 (1954)……………………………………...19

*Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc.*,
620 F.2d 1 (1st Cir. 1980)……………………………………………………………………6

*Puerto Rico v. Fed. Mar. Bd.*, 288 F.2d 419 (D.C. Cir. 1961)…………….……………………19

*River Road Water Dist. v. City of Eugene*, 492 P.2d 812 (1972)………………………………...12

*Rogers v. Samedan Oil Corp.*, 308 F.3d 477 (5th Cir. 2002)……………………………………..5

*Smith v. Enterprise Irr. Dist.*, 85 P.2d 1021 (Or. 1939)…………………………..........…15-16

*Standard Fed. Bank v. United States*, 51 Fed. Cl. 695 (2002)……………………………………4

*Tulare Lake Basin Water Storage Dist. v. United States*,
49 Fed. Cl. 313 (2001)……......................................................................................…………..3, 6

*United Health Care Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563 (8th Cir. 1966)……..…..………...4

*United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184 (D.N.J. 1999)……………………...18

*Wall Industries, Inc. v. United States*, 15 Cl. Ct. 796 (1988), *aff'd*, 883 F.2d 1027
(Fed. Cir. 1989)……………………………………………………..………………….……....4

*Washington Util. and Transp. Comm'n v. FCC*, 513 F.2d 1142 (9th Cir. 1975)………………..19

*Westlands Water Dist. v. United States, Dep't of Interior, Bureau of Reclamation*,
No. 93-5327, 1994 U.S. Dist. LEXIS 6276 (E.D. Cal. Apr. 28, 1994)…………………………17

*Wisconsin v. FPC*, 373 U.S. 294 (1963)……………………………………………………19

Statutes

Cal. Civ. Pro. Code § 369 (2004)………………………………………………………11, 16

Cal. Water Code § 22650 (1984 & Supp. 2005)……………………………………….....8, 13

Cal. Water Code § 22654……………………………………………………………..….8, 13

Cal. Water Code § 22655……………………………………………………………..….8, 13

Cal. Water Code § 23950………………………………………………………………….8-9

Or. Rev. Stat. § 30.310 (2003)…………………………………………………………….9

Or. Rev. Stat. § 545.225 (2003)………………………………………………………….8, 14

Or. Rev. Stat. § 547.305……………………………………………………………………...9

Or. Rev. Stat. § 552.305……………………………………………………………...9-10, 14

Or. Rev. Stat. § 554.080…………………………………………………………………….10

Reclamation Act of 1902, ch. 1093 § 8, 32 Stat. 388 (1902)………………………………...18-19

Rules

Or. R. Civ. P. 26(A)………………………………………………………………………...16

RCFC 17……………………………………………………………2, 3, 4, 5, 6, 7, 14, 15, 16

Other Authorities

Transcript, *Orff v. United States*, No. 03-1566 (S. Ct. Feb. 23, 2005)…………………………1-2

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A Fed. Prac. & Proc., Civ.2d § 1543 (1990 & Supp. 2004)……………………………………………………………6

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A Fed. Prac. & Proc., Civ.2d § 1548 (1990 & Supp. 2004)……………………………………………………………6

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A Fed. Prac. & Proc., Civ.2d § 1550 (1990 & Supp. 2004)……………………………………………………………6

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A Fed. Prac. & Proc., Civ.2d § 1552 (1990 & Supp. 2004)……………………………………………………………6

## QUESTION PRESENTED

Whether the plaintiff districts have standing to bring the claims in this case on behalf of their water users?

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., | ) | |
| Plaintiffs, | ) | No. 01-591 L |
| v. | ) | Judge Francis M. Allegra |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE STANDING OF THE DISTRICTS TO BRING THESE CLAIMS ON BEHALF OF THEIR WATER USERS**

The fourteen district[1] Plaintiffs in this case are surrogates for their water users in the distribution of Klamath Project water, the collection and remission of payments for that water, and in the defense of those water rights. The unique character of fluid water, particularly when it derives from a single source, controlled by a single dam (which is in turn controlled by the Bureau of Reclamation), places these districts in a unique position to represent their water users in this common claim for damages. The alternative, a class action, might achieve a similar result, but through a much more cumbersome procedure than that provided by the well-established doctrine that districts may represent their water users in defense of their common (albeit individual) water rights.

As the Assistant to the Solicitor General told the Supreme Court in the oral argument in *Orff v. United States* in support of the government's position that the water district, and not individual water users, was the proper party to prosecute a damages

[1] The term "district" is used here to denominate the different types of district Plaintiffs in this case, including: Oregon and California irrigation districts (seven plaintiffs), an Oregon drainage district (one plaintiff), Oregon and California Water Improvement Districts (three plaintiffs), and Oregon corporations for irrigation, drainage, water supply or flood control (four plaintiffs).

claim for water losses: "Now, Westlands itself is a governmental unit. It is comprised of the -- of the very farmers here, among others, who have brought this suit. And it has the authority to act in a representative capacity on behalf of all its members." Transcript at 28, *Orff v. United States*, No. 03-1566 (S. Ct. Feb. 23, 2005) (relevant pages attached as Ex. A).

The standing of the districts to bring these claims in a representative capacity is confirmed by Rule 17 of the U.S. Court of Federal Claims: "[A] party authorized by statute may sue in that person's one name without joining the party for whose benefit the action is brought . . . ." RCFC 17(a); *see also* RCFC 17(b) ("In all other cases capacity to sue or be sued shall be determined by the law of the applicable state . . . ."). The Plaintiff districts are statutorily authorized by the laws of Oregon and California, respectively, to bring suit to protect the rights of their water users. Alternatively, RCFC 17(a) provides that a "trustee of an express trust" may also sue on behalf of the beneficiary of the trust without the need to join the trust beneficiary. The Plaintiff water districts and corporations in this case are recognized as trustees of the water rights of the water users under California or Oregon law. Finally, the Plaintiff water districts and corporations have standing to bring the collective damages claims of their members in this lawsuit as an association and under the *parens patriae* doctrine. For all of these reasons, this Court need not join the individual water users (whether by class action or individually) as necessary parties in this lawsuit.

**Factual and Procedural Background**

In its order of February 15, 2005, this Court required Plaintiffs to "file a memorandum in support of their position that the irrigation districts have standing to

represent the interests the individual farmers." Order (Feb. 15, 2005). Unlike the jurisdictional concept of "constitutional standing," the "prudential standing" which the districts claim is, at bottom, largely a tool of judicial administration. A favorable ruling on this motion would obviate other, more cumbersome proceedings to certify and administer a class of water users by allowing the districts to act as their surrogate. In short, Rule 17 of the Court of Federal Claims clearly vests this Court with authority to make this determination while the interests of judicial efficiency strongly support it.

In drafting their Complaint, Plaintiffs intentionally built redundancy into their standing by naming both the districts and individuals as parties to prosecute the claims. They did so, however, in the firm belief that the districts have the right and authority to prosecute these claims on behalf of their water users, and that a class action is superfluous and wasteful.

Because "prudential standing" is not jurisdictional, the parties here could (as they did in *Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed. Cl. 313 (2001)) agree that the districts have standing to represent their water users, obviating the need to retain individual water users as plaintiffs, either individually or as a class. Even in the absence of such agreement, however, the Court clearly has the authority to permit these districts to prosecute the claims of their water users within the terms of RCFC 17.

**Argument**

## I. RCFC 17 Governs the Standing of the Districts in This Case.

RCFC Rule 17 states:

> (a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract

> has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. . . .

RCFC 17(a) (2002); *see also Standard Fed. Bank v. United States*, 51 Fed. Cl. 695, 707 (2002) ("In pertinent part, RCFC 17(a) is identical to Rule 17(a) of the Federal Rules of Civil Procedure.").

The purpose of the "real party in interest" requirement is two-fold. First, the rule is designed to insure that a lawsuit be initiated only by those persons whose interests will be materially affected by the outcome. *See, e.g., United Health Care Corp. v. Am. Trade Ins. Co*., 88 F.3d 563, 569 (8th Cir. 1966) (Rule 17(a) "requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced"); *Wall Industries, Inc. v. United States*, 15 Cl. Ct. 796, 803 (1988) ("The term 'real party in interest' is often defined within the context of Fed. R. Civ. P. 17(a) as the party that possesses the substantive right under which suit is brought."), *aff'd*, 883 F.2d 1027 (Fed. Cir. 1989). Second, the requirement insures that defendants will only have to face one suit over the same interest. *See, e.g., Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 318 (D.C. Cir. 2000) ("Rule 17(a) protects a defendant against a subsequent claim for the same debt underlying a previously entered judgment.").

The requirement set forth in RCFC 17 that the person bringing a lawsuit be the real party in interest is sometimes referred to as prudential standing. *See Lans v. Digital Equip. Corp*., 252 F.3d 1320 (Fed. Cir. 2001) ("Prudential standing requires, among other things, that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). As a prudential requirement, as opposed to a

jurisdictional requirement, Rule 17 can be waived.[2] *See, e.g., Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 483 (5th Cir. 2002) ("[T]he defense is waived when it is not timely

---

[2] The "real party in interest" requirement under RCFC 17, prudential standing, and the requirement for constitutional standing are not the same, as explained by this Court in *Aldridge v. United States*, 59 Fed. Cl. 387, 388-390 (2004):

> A fundamental jurisdictional consideration for any federal court, including Article I courts, is whether the plaintiff has constitutional standing. *Glass v. United States*, 258 F.3d 1349, 1355-56 (Fed.Cir.2001); *Sterling Savings v. United States*, 57 Fed.Cl. 234, 236 (2003). The inquiry is a reflection of the concern that there be an actual "case or controversy" before the court. *See Arizonans For Official English v. Arizona*, 520 U.S. 43, 64 (1997). The litigant must show, "first and foremost, 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In the absence of standing the court has no jurisdiction to decide the merits of a claim. *See Arizonans For Official English,* 520 U.S. at 67.
>
> Three elements must be present for a plaintiff to satisfy the "case or controversy" requirement of constitutional standing. First, the plaintiff must demonstrate "actual injury." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). Second, the plaintiff must establish a causal link between the injury and the challenged conduct. *Lujan,* 504 U.S. at 560. Third, it "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*
>
> In addition to constitutional considerations, however, standing also implicates concerns that are prudential in nature. Prudential limitations involve the exercise of "administrative discretion" by the court on whether to hear a case. *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1290 (Fed. Cir. 1999). These prudential considerations call for the courts to limit access to those litigants best suited to assert a claim. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979); *see also First Hartford*, 194 F.3d at 1290. The judiciary should refrain from deciding issues involving: 1) mere generalized grievances; 2) litigants who are not "within the zone of interest to be protected or regulated"; and 3) plaintiffs who fail to assert their own legal rights rather than those of third parties. *See Gladstone*, 441 U.S. at 99; *see also Simon*, 426 U.S. 26 (1976); *Warth*, 422 U.S. at 498; *Ass'n of Data Processing Serv. v. Camp*, 397 U.S. 150, 153 (1970).
>
> Lack of real-party-in-interest status is not a jurisdictional defect. 4 MOORE'S FEDERAL PRACTICE, § 17.13 (3d ed.2000). The person before the court simply lacks a claim on which relief can be granted because that person does not own the claim. Indeed the defect is curable by substituting the proper party. *See* RCFC 17(a)(1). These non-jurisdictional considerations make it unnecessary for the court to parse the question of whether such prudential concerns oust the court of the subject matter jurisdiction it otherwise would have under the Tucker Act to hear a statutory pay claim. See 28 U.S.C. § 1491(a)(1) (2000). This is because not every party who meets standing requirements is a real party in interest 4 MOORE'S FEDERAL PRACTICE, § 17.10 (3d ed.2000). This is reflected in RCFC 17(a), the court's real party in interest rule, requiring that "every action shall be prosecuted in the name of the real party in interest."

*Id*. at 388-90.

asserted.”); *Allegheny Int’l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1431 (3d Cir. 1994) (approving denial of Rule 17 defense where party did not raise issue with reasonable promptness); *see also Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed. Cl. 313 (2001) (allowing water districts to sue as real party in interest on behalf of their water users where Rule 17 not raised as a defense).

There may be more than one real party in interest to a claim. For example, if the “applicable substantive law gives the third-party beneficiary an enforceable right, he also will be a real party in interest and may bring an action on the contract on his own. . . . The fact that an absent person could bring the action as a real party in interest does not of itself make that person a necessary or indispensable party.” Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A Fed. Prac. & Proc., Civ.2d § 1543 (1990 & Supp. 2004); *see also Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Management, Inc*., 620 F.2d 1, 4 (1st Cir. 1980). RCFC 17(a) lists several examples of parties who may sue in their “own name without joining the party for whose benefit the action is brought.” RCFC 17(a). One example of such a party is the trustee of an express trust. *See* Wright & Miller, 6A Fed. Prac. & Proc., Civ. 2d § 1548, or a party “authorized by statute” to bring suit on behalf of others may be the real party in interest. *Id.* § 1550. In either instance, “the real party in interest is suing in a representative capacity on behalf of some others.” Wright & Miller, 6A Fed. Prac. & Proc., Civ. 2d § 1548. Likewise, if an incorporated or unincorporated association has the capacity to sue or be sued as provided under RCFC 17(b), it is considered the real party in interest for purposes of enforcing any right it has as an entity. *Id.* § 1552.

## II. The Plaintiff Districts Have Standing Under RCFC 17 Because Their Enabling Statutes Authorize Them to Bring Suit on Behalf of Their Water Users.

Rule 17 affords "real party in interest" status to "a party authorized by statute." RCFC 17(a). The law of Oregon and California, in turn, confers on these districts the authorization to act as real party in interest in a suit to protect the water rights of their constituents.

Although the enabling statutes for the various classes of district vary to some degree, the courts of California and Oregon (which follows California law, *see Butler & Thompson Co. v. City of Ashland*, 222 P. 346, 348 (Or. 1924)) have left no doubt that protection of the water supply for their users is the *sine qua non* for which these districts were organized, and that this protection includes bringing suit in a representative capacity on behalf of their water users.

The Plaintiff districts in this case include irrigation districts, drainage districts, water improvement districts, water control districts, and corporations for irrigation, drainage, water supply or flood control established under California or Oregon law. Each district is entitled under state law to sue on behalf of its water users to protect their water rights.

### 1. Oregon Irrigation Districts

The Klamath Irrigation District, Sunnyside Irrigation District, Shasta View Irrigation District, Malin Irrigation District, Enterprise Irrigation District, and Pine Grove Irrigation District are all irrigation districts established pursuant to, and governed by, Chapter 545 of Oregon Revised Statutes, which explicitly states that these irrigation districts "may: . . . (b) Institute and maintain all actions and proceedings, suits at law or in

equity necessary or proper in order to fully carry out the Irrigation District Law, or to enforce, maintain, protect or preserve rights, privileges and immunities created by the Irrigation District Law, or acquired in pursuance of the Irrigation District Law." Or. Rev. Stat. § 545.225 (2003).

**2. California Irrigation Districts**

Tulelake Irrigation District was established and is governed by Division 11 of the California Water Code, which states under Section 22650 that a California irrigation district has the power to "commence and maintain any actions and proceedings to carry out its purposes or protect its interests and may defend in any action or proceeding brought against it." Cal. Water Code § 22650 (1984 & Supp. 2005). Under Section 22654, Tulelake Irrigation District may "commence, maintain, intervene in, compromise, and assume the costs of any action or proceeding involving or affecting the ownership or use of waters or water rights within the district used or useful for any purpose of the district or of benefit to any land." Cal. Water Code § 22654. Section 22655 also gives the district the power to "commence, maintain, intervene in, defend, and compromise actions and proceedings to prevent interference with or diminution of the natural flow of any stream or natural or artificially created subterranean supply of waters which may: (a) be used or be useful for any purpose of the district. (b) be of common benefit to the land or its inhabitants. (c) endanger the inhabitants or the land." Cal. Water Code § 22655.

Plaintiff Westside Improvement District, within the Tulelake Irrigation District, is governed by these same provisions. Division 11, Part 7 of the California Water Code, Section 23950, states that "[i]n a district containing an improvement district the board and all of the officers of the district each respectively has all the rights, powers, and

privileges as to the improvement district, its land, and the proceedings in relation to the improvement district that each respectively has for the district of which the improvement district is a part, including the right of the district to acquire, own, and hold property." Cal. Water Code § 23950.

**3. Oregon Drainage District**

Klamath Drainage District was established and is governed by Chapters 547 and 548 of Oregon Revised Statutes. Section 547.305(c) states that in the acquisition of property or rights by condemnation, these drainage districts shall have the power to bring proceedings in the name of the district. Or. Rev. Stat. § 547.305(c). Also, as a governmental entity, these drainage districts have a right to sue under Section 30.310 of the Oregon Revised Statutes. *See* Or. Rev. Stat. § 30.310 (2003) ("A suit or action may be maintained by the State of Oregon or any county, incorporated city, school district or other public corporation of like character in this state, in its corporate name, upon a cause of suit or action accruing to it in its corporate character, and not otherwise, in the following cases: (1) Upon a contract made with the public corporation, (2) Upon a liability prescribed by law in favor of the public corporation, . . . (4) To recover damages for injury to the corporate rights or property of the public corporation.").

**4. Oregon Water Improvement Districts**

Klamath Basin Improvement District and Poe Valley Improvement District are governed by Chapter 552 of Oregon Revised Statutes, which provides that their Board of Directors may "sue or be sued in its own name . . . ." Or. Rev. Stat. § 552.305. Section 552.305 further states that the Board of Directors has the power to "[d]o such other acts

or things as may be necessary for the proper exercise of the powers granted to make the greatest beneficial use of the waters of the district." *Id.*

**5. Oregon Water Corporations**

Four of the plaintiffs in this case (Klamath Hills District Improvement Company, VANBRIMMER DITCH COMPANY, Midland District Improvement Company and Poe Valley Improvement District) are "corporations for irrigation, drainage, water supply or flood control" organized under Chapter 554 of the Oregon Revised Statutes.[3]

Section 554.080 of the Oregon Revised Statutes explicitly authorizes these corporations to sue on behalf of their water users: "When the articles of incorporation are filed by the Secretary of State, the persons appointed in the articles as directors, and their successors in office, associates and assigns, by the name assumed in such articles, shall thereafter be deemed a body corporate with power: (1) To sue and be sued." Or. Rev. Stat. § 554.080.

Even in the absence of explicit "sue or be sued" language, California courts have consistently held that water districts are real parties in interest, entitled to sue to protect the water rights of their constituent water users. In *Coachella Valley County Water Dist. v. Stevens*, 274 P. 538 (Cal. 1929), the Coachella Valley County Water District filed suit on behalf of the landowners within its jurisdiction seeking injunctive relief for the taking of water to which it claimed they were legally entitled. Holding that the district was a

[3] Poe Valley Improvement District (PVID) is both an Oregon corporation for irrigation, drainage, water supply or flood control and an Oregon water improvement district.

real party in interest under section 369 of the California Code of Civil Procedure,[4] the California Supreme Court stated:

> [W]hen the statute provides for the organization and government of such public corporations, the power to sue and be sued need not be expressed in the title, for the reason that such power is incidental to the general purposes of the act. It is but natural to assume that, when the creation of such a corporation is provided for and the general purpose is expressed in the title, the corporate body should possess the right to have recourse to the courts for the protection of its rights and the redress of wrongs committed in violation of those rights. . . . Furthermore, we find no objection in providing in the body of the act without specific mention thereof in the title for the prosecution of proceedings to prevent interference with or diminution of the natural flow of any stream or subterranean water supply used or useful for any purpose of the district or a common benefit to the lands within the district or its inhabitants. One of the express purposes of the act is to conserve water for future use and to preserve water and water rights.

*Id*. at 542.

That the water right is held by the landowner (who makes beneficial use of the water) and not the district, said the court, is immaterial: "[t]he fact that the district as such does not assert title in itself to any of such rights is of no consequence . . . ." *Id.* The court noted that "no good reason has been suggested why, under the authority of the statute, the landowners and other water users in the district may not set up such a governmental agency to act in a representative capacity in their behalf. In our opinion, they have done so and having done so they will necessarily be bound by the result of the litigation." *Id.*; *see also Orange County Water Dist. v. City of Riverside,* 343 P.2d 450, 466 (Cal. Ct. App.1959) (holding that the water district could sue on behalf of the private water users of the district in an action for "declaration and definition of respective rights of cities to take water" and stating "[t]hat the District is empowered to represent the

[4] Cal. Civ. Pro. Code § 369 (2004) ("The following persons may sue without joining as parties the persons for whose benefit the action is prosecuted: . . '[a]ny other person expressly authorized by statute.'").

rights of its overlying water users does not, we think admit of a doubt.");[5] *City of Chino v. Superior Court of Orange County*, 63 Cal.Rptr. 532 (Cal. Ct. App. 1967) (upholding denial of a motion to dismiss for improper plaintiffs where Orange County Water District had sued on behalf of its water users for general adjudication of water rights); *Cent. Delta Water Agency v. State Water Res. Control Bd.*, 21 Cal.Rptr.2d 453, 456 (Cal. Ct. App. 1993) (holding that "[w]here a water district or agency is expressly authorized under its enabling statute to sue on behalf of its constituent water users, it may do so even without naming any of those users as party plaintiffs")

Oregon courts, too, have left no doubt that Oregon districts likewise have standing to represent their constituent water users in water rights litigation. The Oregon Supreme Court views irrigation and water districts as "quasi-municipal corporations" that have been given "corporate powers by the legislature, including the powers to sue and be sued; to buy, hold and dispose of property; to enter contracts; to make necessary rules and regulations; and to tax." *River Road Water Dist. v. City of Eugene*, 492 P.2d 812, 819 (1972); *see also Harney Valley Irrigation Dist. v. Weittenhiller*, 198 P. 1093, 1096 (Or. 1921) ("When an irrigation district is organized, it is authorized through its board of directors to acquire property for the purposes of its organization, to sue and be sued, to enforce and maintain its rights, privileges, and immunities, and the court in all acts, suits,

[5] The court further stated: "The power of the State or its duly authorized public agencies to undertake the representation in the courts of interests common to great numbers of its inhabitants, though the particular character and extent of their water rights may greatly differ as between themselves, is generally recognized." *Id*. at 467. The court held that the title of the statute provided sufficient authority to allow the representative suit. *Id*. at 468 ("We think it sufficiently evident, however, from the title itself of the Orange County Water District Act, that the overriding purpose of the Act was to insure an adequate water supply for the whole area within the District and that everything else contained, either in the title or the body of the Act, amounts merely to spelling out some of the means for accomplishing that result."). The court also quoted with approval the Coachella court's holding that the district proceeding as a representative need not assert title itself. *Id*. at 469 (quoting *Coachella Valley County Water Dist. v. Stevens*, 274 P. 538 (Cal. 1929)).

or other proceedings shall take judicial knowledge of the organization and boundaries of such district."); *cf. Oregon Const. Co. v. Allen Ditch Co.*, 69 P. 455 (Or. 1902) ("All of the original owners concur in their testimony that in the formation of the Allen Ditch Company none of them surrendered their water rights previously acquired to the company, and that it was organized merely to facilitate the distribution of the water among those entitled thereto; that they have been selling the use of some water when not employed by those entitled to it, and that the recompense has been expended in keeping the ditch in repair, and not as a matter of profit to the concern. These conditions show such a privity between the Allen Ditch Company and the farmers, or original claimants, as to enable the former to maintain its defense in their behalf.").

Consistent with the California and Oregon courts, the Federal Circuit has also observed:

> The irrigation districts, which contracted with the Bureau, act as a surrogate for the aggregation of farmers. They use no water themselves. The farmers ultimately pay for all the services which the government supplies.

*H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1576 (Fed Cir. 1984).

Oregon has modeled its irrigation district law on that of California. *See Butler & Thompson Co. v. City of Ashland*, 222 P. 346, 348 (Or. 1924) ("The original act providing for the organization of irrigation districts is a substantial copy of the Wright Act of California."); *compare* Cal. Water Code §§ 22650, 22654, 22655 (granting an irrigation district the power to "commence and maintain any actions and proceedings to carry out its purposes or protect its interests," "commence, maintain, intervene in, compromise, and assume the costs of any action or proceeding involving or affecting the ownership or use of waters or water rights within the district used or useful for any

purpose of the district or of benefit to any land," and "commence, maintain, intervene in, defend, and compromise actions and proceedings to prevent interference with or diminution of the natural flow of any stream or natural or artificially created subterranean supply of waters which may: (a) be used or be useful for any purpose of the district. (b) be of common benefit to the land or its inhabitants. (c) endanger the inhabitants or the land") *with* Or. Rev. Stat. § 545.225 (granting irrigation districts power to "[i]nstitute and maintain all actions and proceedings, suits at law or in equity necessary or proper in order to fully carry out the Irrigation District Law, or to enforce, maintain, protect or preserve rights, privileges and immunities created by the Irrigation District Law, or acquired in pursuance of the Irrigation District Law") *and* Or. Rev. Stat. § 552.305 (granting water improvement districts' Boards of Directors power to "sue or be sued in its own name," and "[d]o such other acts or things as may be necessary for the proper exercise of the powers granted to make the greatest beneficial use of the waters of the district").

Thus, this Court may with some comfort accept the guidance of the California courts which, under a provision virtually identical to RCFC 17, *see supra* note 5, have concluded that "a political subdivision of the state may challenge the constitutionality of a statute or regulation on behalf of its constituents where the constituents' rights under the challenged provision are 'inextricably bound up with' the subdivision's duties under its enabling statutes." *Cent. Delta Water Agency v. State Water Res. Control Bd.,* 21 Cal.Rptr.2d 453, 456 (Cal. Ct. App. 1993). For, "[u]nder the statutes cited by the agencies, it is clear that the agencies' duties are bound up with a determination whether the challenged provisions violate the rights of the agencies' constituent water users. We conclude the agencies have standing to pursue their claims." *Id.; see also Orange County*

*Water Dist. v. City of Riverside*, 343 P.2d 450, 469 (Cal. Ct. App.1959) ("[W]e hold, then, both (1) that a cause of action has been stated and (2) that the plaintiff District has the necessary standing in court to maintain it.").[6]

**III. The Districts Also Have Standing as Trustees for Their Water Users.**

RCFC 17 also provides standing to a "trustee of an express trust" to "sue in that person's own name without joining the party for whose benefit the action is brought." RCFC 17(a). The courts of California and Oregon have long held that a district is trustee of the water rights (and other property) for the express benefit of its water users, affording the district standing to assert claims for water loss on behalf of those water users. *See Ivanhoe Irrigation Dist. v. All Parties*, 306 P.2d 824, 840 (Cal. 1957) ("It has long been the established law of the state that an irrigation district is trustee for the landowners within the district . . . ."), *rev'd on other grounds*, 357 U.S. 275 (1958); *Smith v. Enterprise Irr. Dist*., 85 P.2d 1021, 1024 (Or. 1939) ("The relationship between an irrigation district and its constituent landowners as to the water rights and other property of such district is that of trustee and *cestuis que trustent*.")[7] (citing *Jenison v. Redfield*, 87 P. 62, 64 (Cal. 1906) (quoting California Irrigation Act (Wright Act) of 1897, St. 1897 § 29 p. 263 c. 1890) ("The ultimate purpose of a district organized under the irrigation act is the improvement, by irrigation, of lands within the district. . . . Such district holds all

[6] A few of the plaintiff districts hold water rights in their own name, providing additional support for finding that they are real parties in interest in this case. Klamath Drainage District and Klamath Hills District Improvement Company hold post-1909 permits to appropriate public water from the State of Oregon in the districts' names, entitling these two districts to receive identifiable quantities of water from the Klamath Project. (Rev. Pls.' Findings 14, 15 (Aug. 29, 2003).) VANBRIMMER DITCH COMPANY's contract with the United States expressly gives VANBRIMMER the right to the use of 50 cubic feet per second of water from the Klamath Project. (Rev. Pls.' Finding 16 (August 29, 2003).)

[7] The Enterprise Irrigation District named as defendant in the *Smith* case is the same Enterprise Irrigation District that is named as one of the plaintiff districts in this case.

property acquired by it solely in trust for such ultimate purposes, and can divert it to no other use.”).

As trustee for its water users, the district is a real party in interest, entitled to bring suit on behalf of its water users without joining them individually:

> [W]here individual appropriators do not surrender their rights to a corporation which is organized merely to facilitate distribution of the water among them, there exists such a privity of estate as to enable it to defend in their behalf in litigation affecting their rights to the use of the water. The reason for this holding is found by analogy in the provision of our statute allowing a trustee of an express trust to sue without joining with him his *cestui que trust*.

*Caviness v. La Grande Irr. Co.*, 119 P. 731, 736-37 (Or. 1911); *see also* Cal. Civ. Code § 369 (“The following persons may sue without joining as parties the persons for whose benefit the action is prosecuted: . . . (2) A trustee of an express trust.”); Or. R. Civ. P. 26(A) (“[A] trustee of an express trust . . . may sue in that party’s own name without joining the party for whose benefit the action is brought.”).

Under Oregon and California law, the plaintiff districts hold water rights in an express trust for the benefit of their water users. Thus, alternatively, under RCFC 17, the district plaintiffs are the real parties in interest in this case as the trustees of an express trust on behalf of their water users.

## IV. The Districts Further Have Associational Standing to Sue for Damages Collectively on Behalf of Their Members.

An association may also have standing to assert claims on behalf of its members. In *Hunt v. Washington State Apple Adver. Comm’n*, 432 U.S. 333 (1977), the Supreme Court set out the requirements for such associational standing:

> We have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization’s purpose; and (c) neither the claim asserted

> nor the relief requested requires the participation of individual members in the lawsuit.

*Id*. at 343.

Applying the "associational standing" rule to a water district in a suit against the Bureau of Reclamation, the federal court in California found that the district's relationship to its water users afforded standing to assert the claim under FRCP 17:

> Water districts exist for the most part to serve the needs of their members for water supply and drainage. Unlike the circumstances discussed in Warren County, the water districts are advocates to preserve the quantity and quality of water sources for district users. Analogous to facts found relevant in Hunt, only district members serve as directors, and district officers are elected by the landowner members, according to assessment amounts paid or acreage owned within the district. Cal. Water Code §§ 34700; 35003. District operations are funded directly by landowner paid assessments. For all practical purposes, water districts are similar to a traditional trade organization of water users, serving a specialized segment of the state's economic community, farmers, who import water to their lands and benefit from District activities. Districts may prosecute litigation to protect district member's water rights.

*Westlands Water Dist. v. United States, Dep't of Interior, Bureau of Reclamation*, No. 93-5327, 1994 U.S. Dist. LEXIS 6276 at *1, 13-15 (E.D. Cal. Apr. 28, 1994).

**V. The Districts Also Possess *Parens Patriae* Standing to Assert This Claim.**

Finally, a district (like a state, of which it is a political subdivision) may assert a claim on behalf of its constituency where the district's quasi-sovereign interests are implicated. As the Supreme Court explained the rule:

> In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties, *i.e*., the State must be more than a nominal party. The State must express a quasi-sovereign interest. Although the articulation of such interests is a matter for case-by-case development -- neither an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract -- certain characteristics of such interests are so far evident. These characteristics fall into two general categories. First, a State has a quasi-sovereign interest in the health and well-being -- both physical and economic -- of its residents in general. Second, a State has a quasi-

> sovereign interest in not being discriminatorily denied its rightful status within the federal system.

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982).

As the D.C. Circuit has explained, the *parens patriae* doctrine finds its roots in the state's interest in protection of its land and natural resources:

> The earliest cases allowing a state to sue as representative of its citizenry involved the protection or preservation of land or other natural resources. The state's concern did not arise from a direct property interest of its own, but from its sovereignty over all territory within its boundaries. While the state thus lacked standing to sue in its own right, it was found to be a proper party to bring suit because of its residual "interest independent of and behind the titles of its citizens, in all the earth and air within its domain." On this theory of quasi-sovereignty, state actions were allowed contesting diversion of interstate waters and various types of interstate pollution.

*Pennsylvania by Shapp v. Kleppe*, 533 F.2d 668, 673-74 (D.C. Cir. 1976).

Thus, a state may recover damages *parens patriae* for the losses its farmers suffer when an upstream state wrongfully withholds irrigation water. *See, e.g., Kansas v. Colorado*, 533 U.S. 1, 9 (2001) (holding that Kansas could seek damages incurred by individual farmers and the court's "jurisdiction to order a damages remedy" would not be affected by "Kansas' postjudgment decisions concerning the use of the money recovered from Colorado. . . . [I]t is the State's prerogative either to deposit the proceeds of any judgment in 'the general coffers of the State' or to use them to 'benefit those who were hurt'"). *Parens patriae* standing exists not only in the state, but in its political subdivisions as well. as long as the plaintiff has interests congruent with the interests of its constituents, such as the irrigation districts do here. *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184, 190 (D.N.J. 1999) ("The doctrine of *parens patriae* does not extend to municipalities, except to the extent that a municipality's own rights are congruent with those of its residents.") Here, the Reclamation Act itself identifies the

quasi-sovereign interests of the districts. Section 8 of the Act states: "[N]othing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State . . . in, to, or from any interstate stream or the waters thereof . . . ." Reclamation Act of 1902, ch. 1093 § 8, 32 Stat. 388 (1902); *see also California v. United States*, 438 U.S. 645 (1978) (affirming state's right to place conditions on water permit issued to Bureau of Reclamation). Thus, although *parens patriae* claims against the federal government do raise federalism concerns, the particular division of governmental power over water allocation places this case within the line of authorities allowing such suits against the federal government. *See, e.g., New York v. United States*, 331 U.S. 284 (1947) (allowing states to sue United States to enjoin and set aside orders of the Interstate Commerce Commission requiring increase in rates charged by railroads); *Washington Util. and Transp. Comm'n v. FCC*, 513 F.2d 1142 (9th Cir. 1975) (holding state agency had standing to sue federal government for review of FCC order); *Guam v. Fed. Mar. Comm'n*, 329 F.2d 251 (D.C. Cir. 1964) (allowing Guam to sue federal government to review an order of the Federal Maritime Commission approving rate increase); *Puerto Rico v. Fed. Mar. Bd.*, 288 F.2d 419 (D.C. Cir. 1961) (allowing Puerto Rico to sue federal government to review Federal Maritime Board ruling); *Wisconsin v. FPC*, 373 U.S. 294 (1963) (allowing state to sue federal government to review order of Federal Power Commission); *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672 (1954) (same);

*California v. Fed. Power Comm'n*, 296 F.2d 348 (D.C. Cir. 1961) (same), *rev'd on other grounds*, 369 U.S. 482 (1962).

**Conclusion**

For all of these reasons, Plaintiffs urge this Court to grant their motion for partial summary judgment, holding that the Plaintiff water districts can sue on behalf of their water users in this lawsuit either in a representative capacity, as the trustee of the water users, or as an association on behalf of its member water users.

Respectfully submitted,

s/ Nancie G. Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, D.C. 20036
202-822-6760
202-822-6774 (facsimile)

Dated: March 14, 2005

Counsel for Plaintiffs