IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT, et al., ) | |
| Plaintiffs, ) | |
| v. ) | No. 01-591 L |
| ) | Judge Francis M. Allegra |
| UNITED STATES OF AMERICA, ) | |
| Defendant, ) | |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, ) | |
| Defendant-Intervenor. ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE STANDING OF THE DISTRICTS TO BRING THESE CLAIMS ON BEHALF OF THEIR WATER USERS**

KELLY A. JOHNSON
Acting Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583/Fax: (603) 225-1577

STEPHEN M. MACFARLANE
United States Department of Justice
Environment & Natural Resources Division
501 I Street, Suite 9-700
Sacramento, CA 95814-232
Tel: (916) 930-2204/Fax: (916) 930-2210

REGINALD T. BLADES, JR.
Commercial Litigation Branch
Civil Division
United States Department of Justice
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 514-7300/Fax: (202) 307-0972

OF COUNSEL:
STEPHEN PALMER
U.S. Department of the Interior
Office of the Regional Solicitor
Sacramento, CA

MEGAN WALLINE
U.S. Department of the Interior
Office of the Solicitor
Washington, D.C.

CHRISTOPHER KEIFER
U.S. Department of Commerce
NOAA – Office of General Counsel
Long Beach, CA

**Dated: May 4, 2005**

## TABLE OF CONTENTS


I. INTRODUCTION . . . . . . . . . . 1

II. THE DISTRICTS PLAINTIFFS HAVE FAILED TO ESTABLISH THEIR CONSTITUTIONAL STANDING TO ASSERT EACH CLAIM IN THIS CASE AS REPRESENTATIVES OF THE WATER USERS . . . . . . . . . . 3

A. The District Plaintiffs Lack Standing to Assert Any Takings Claim In this Case . . . . . . . . . . 5

B. The District Plaintiffs Lack Standing to Assert a Contract Claim Other Than In their Own Right . . . . . . . . . . 11

C. Plaintiffs' Efforts to Cast the Representational Standing Issue as Merely a Procedural Device Is Without Merit and Should Be Rejected . . . . . . . . . . 13

III. THE DISTRICT PLAINTIFFS CANNOT REPRESENT THE WATER USERS UNDER RCFC RULE 17 EITHER . . . . . . . . . . 16

A. Real Parties in Interest Under RCFC 17 . . . . . . . . . . 17

B. The Plaintiff Districts Lack Authorization Under State Law to Bring Claims Against the United States on Behalf of Water Users . . . . . . . . . . 19

C. The Plaintiffs Do Not Have Standing as Trustees for Their Water Users . . . . . . . . . . 27

D. The District Plaintiffs Do Not Have Associational Standing to Sue the United States in this Case on Behalf of Individual Water Users . . . . . . . . . . 29

E. The Districts May Not Assert Claims Against the United States as *Parens Patriae* . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . 38

## TABLE OF AUTHORITIES

**CASES**


Aldridge v. United States,
59 Fed. Cl. 387 (2004) . . . . . . . . . . 3, 5, 19

Alfred L. Snapp & Son, Inc. v. Puerto Rico,
458 U.S. 592 (1982) . . . . . . . . . . 34, 35, 39

Anderson v. United States,
344 F.3d 1343 (Fed. Cir. 2003) . . . . . . . . . . 12, 33

Applegate v. United States,
35 Fed. Cl. 406 (1996) . . . . . . . . . . 6

Blaze Construction, Inc. v. United States,
27 Fed. Cl. 646 (1993) . . . . . . . . . . 6

Block v. North Dakota,
461 U.S. 273 (1983) . . . . . . . . . . 21

Board of Supervisors of Fairfax County, Va. v. United States,
408 F.Supp. 556 (E.D. Va. 1976), appeal dismissed, 551 F.2d 305 (4th Cir. 1977) . . . . 36

Board of Supervisors of Warren County v. Virginia Dep't of Social Serv.,
731 F. Supp. 735 (W.D. Va. 1990) . . . . . . . . . . 32

Boeing Airplane Co. v. American Trade Ins. Co., Ltd.,
322 F.2d 589 (8th Cir. 1963), cert. denied, 375 U.S. 984 (1964) . . . . . . . . . . 18, 21

California v. Federal Power Comm'n,
296 F.2d 348 (D.C. Cir. 1961), rev'd on other grounds,
369 U.S. 482 (1962) . . . . . . . . . . 38

California v. United States,
438 U.S. 645 (1978) . . . . . . . . . . 37

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002), cert. denied, 123 S. Ct. 2572 (2003) . . . . . . . . . . 13

Caviness v. La Grande Irrigation Co.,
119 P. 731 (Or. 1911) . . . . . . . . . . 29, 30

Chancellor Manor v. United States,
331 F.3d 891 (Fed. Cir. 2003) . . . . . . . . . . 12

Chiles v. Thornburgh,
865 F.2d 1197 (11th Cir. 1989) . . . . . . . . . . 36

City of Chino v. Superior Ct. of Orange County,
255 Cal. App. 2d 747 (Cal. Ct. App. 1967) . . . . . . . . . . 26

City of Olmstead Falls, OH v. Federal Aviation Admin.,
292 F.3d 261 (D.C. Cir. 2002) . . . . . . . . . . 32, 36

City of Rohnert Park v. Harris,
601 F.2d 1040 (9th Cir. 1979), cert. denied, 445 U.S. 961 (1980) . . . . . . . . . . 36

Coachella Valley County Water Dist. v. Stevens,
274 P. 538 (Cal. 1929) . . . . . . . . . . 25, 26

Connecticut v. Cahill,
217 F.3d 93 (2nd Cir. 2000) . . . . . . . . . . 35

Creppel v. United States,
33 Fed. Cl. 590 (1995) . . . . . . . . . . 6

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) . . . . . . . . . . 21

Eastern Minerals Int'l v. United States,
36 Fed. Cl. 541 (1996) . . . . . . . . . . 7

Emerald Int'l Corp. v. United States,
54 Fed. Cl. 674 (2002) . . . . . . . . . . 4, 10

Entergy Nuclear Indian Point 2, LLC v. United States,
___ Fed. Cl. ___, 2005 WL 579525 at 6 (Mar. 9, 2005) . . . . . . . . . . 4, 12

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) . . . . . . . . . . 12

Friends of the Earth, Inc. v. Laidlaw Env't. Serv. (TOC), Inc.,
528 U.S. 167 (2000) . . . . . . . . . . 31

Glass v. United States,
258 F.3d 1349 (Fed. Cir. 2001) . . . . . . . . . . 3, 13

Guam v. Federal Maritime Comm'n,

329 F.2d 251 (D.C. Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

H.F. Allen Orchards v. United States,
749 F.2d 1571 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Hansen v. United States,
2005 WL 832332, 55 (Fed. Cl. Apr. 11, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Harney Valley Irrigation Dist. v. Weittenhiller,
198 P. 1093 (Or. 1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Hodel v. Virginia Surface Mining & Reclamation Ass'n,
452 U.S. 264 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Home Sav. of America v. United States,
51 Fed Cl. 487 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8,

Hunt v. Washington State Apple Adver. Comm'n,
432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

In Re Multidistrict Vehicle Air Pollution,
481 F.2d 122 (9th Cir.), cert. denied, 414 U.S. 1045 (1973) . . . . . . . . . . . . . . . . . . . 34, 36

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Kansas v. Colorado,
533 U.S. 1 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

Kansas v. United States,
16 F.3d 436 (D.C. Cir.), cert. denied, 513 U.S. 945 (1994) . . . . . . . . . . . . . . . . . . . 36, 39

Karras v. Teledyne Indus.,
191 F. Supp. 2d 1162 (SD Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Kingsbury v. United States,
215 Ct. Cl. 136, 563 F.2d 1019 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Marina Management Serv., Inc. v. Vessel My Girls,
202 F.3d 315 (D.C. Cir.), cert. denied, 531 U.S. 985 (2000) . . . . . . . . . . . . . . . . . . . . . . 18

Massachusetts v. Mellon,
262 U.S. 447 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

McKinney v. U.S. Dep't of Treasury,
799 F.2d 1544 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Missouri v. Illinois,
180 U.S. 208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Nat'l Leased Housing Ass'n v. United States,
105 F.3d 1423 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Nevada v. Burford,
918 F.2d 854 (9th Cir. 1990), cert. denied sub nom . . . . . . . . . . . . . . . . . . . . . . . . . 36, 39

Nevada v. Jamison,
500 U.S. 932 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

New York v. United States,
331 U.S. 284 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Orange County Water Dist. v. City of Riverside,
343 P.2d 450 (Cal. Ct. App.1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Oregon Const. Co. v. Allen Ditch Co.,
69 P. 455 (Or. 1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Orff v. United States,
358 F.3d 1137 (9th Cir.), petition for certiorari granted, 125 S. Ct. 309 (2004) . . . . . . . . 33

Pacrim Pizza Co. v. Pirie,
304 F.3d 1291 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Payette-Oregon Slope Irr. Dist. v. Coughanour,
91 P.2d 526 (Or. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Philips Petroleum v. Wisconsin,
347 U.S. 672 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Powers v. Ohio,
499 U.S. 400 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Puerto Rico v. Federal Maritime Bd.,

288 F.2d 419 (D.C. Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Redmond Realty Co. v. Central Oregon Irr. Dist.,
12 P.2d 1097 (Or. 1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

River Road Water Dist. v. City of Eugene,
492 P.2d 812 (Or. Ct. App. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ruhrgas AG v. Marathon Oil Co.,
526 U.S. 574 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ruttenburg v. United States,
___ Fed. Cl. ___, 2005 WL 757172 at 7 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sacramento Mun. Util. Dist. v. United States,
63 Fed. Cl. 495 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Saladino v. United States,
62 Fed. Cl. 782 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Schwartz v. United States,
16 Cl. Ct. 182 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California v. United States,
438 U.S. 645 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

Singleton v. Wulff,
428 U.S. 106 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Smith v. Enterprise Irrigation Dist.,
85 P.2d 1021 (Or. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Snyder v. United States,
63 Fed. Cl. 762 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Standard Mfg. Co. v. United States,
42 Fed. Cl. 748 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Stearns Co. v. United States,
34 Fed. Cl. 264 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Steel Co. v. Citizens for a Better Env't,
523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

Sun Oil Co. v. United States,
572 F.2d 786 (Cl. Ct. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tulare Lake Basin Water Storage Dist. v. United States,
49 Fed. Cl. 313 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Twohy Bros. Co. v. Ochoco Irrig. Dist.,
216 P. 189 (Or. 1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United Healthcare Corp. v. American Trade Ins. Co., Ltd.,
88 F.3d 563 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Dow,
357 U.S. 17 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

United States v. Idaho,
508 U.S. 1 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21

United States v. Shannon,
342 U.S. 288 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. W.R. Grace & Co.-Conn.,
185 F.R.D. 184 (D. N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Washington Util. & Transp. Comm'n v. Federal Communications Comm'n,
513 F.2d 1142 (9th Cir.), cert. denied, 423 U.S. 836 (1975) . . . . . . . . . . . . . . . . . . . . 38, 39

Wisconsin v. Federal Power Comm'n,
373 U.S. 294 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Westlands Water Dist. v. United States Dep't of Interior,
1994 U.S. Dist. LEXIS 6276 (E.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 36

Wyoming ex rel. Sullivan v. Lujan,
969 F.2d 877 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**STATUTES**

43 U.S.C. § 390uu . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Anti-Assignment Act,
31 U.S.C. § 3727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

31 U.S.C. § 3727(a)(1) . . . . . . . . . . 10
31 U.S.C. § 3727(b) . . . . . . . . . . 10

Cal. Water Code § 22654-22655 . . . . . . . . . . 25

McCarran Amendment,
43 U.S.C. § 666(a) . . . . . . . . . . 21

National Environmental Policy Act (NEPA),
42 U.S.C. § 4321 . . . . . . . . . . 32

Omnibus Adjustment Act of 1926,
44 Stat. 649, U.S.C. § 423e . . . . . . . . . . 31

Or. Rev. Stat. §545.025 . . . . . . . . . . 23, 31

Or. Rev. Stat. §545.225(1)(b) . . . . . . . . . . 22

Or. Rev. Stat. §545.239(1) . . . . . . . . . . 23

Or. Rev. Stat. §552.305 . . . . . . . . . . 24

Tucker Act,
28 U.S.C. § 1491(a)(1) . . . . . . . . . . 4, 5

**RULES**

Fed. R. Civ. P. 12(h)(3) . . . . . . . . . . 8
Fed. R. Civ. P. 17(a) . . . . . . . . . . 18
RCFC 12(h)(3) . . . . . . . . . . 8

**OTHER AUTHORITIES**

4 Moore's Federal Practice, § 17.10 (3d ed. 2000) . . . . . . . . . . 19
5C Charles Alan Wright, et al., Federal Practice & Procedure Civil 3d, § 1393 (2004) . . . . . . . 8
29A C.J.S., Eminent Domain § 383 (ed. 1992) . . . . . . . . . . 6
Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. 2d § 1542 . . . . . . . . . . 9
Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. 2d § 1541 . . . . . . . . . . 18
Wright, Miller and Kane, 6A Fed. Prac. & Proc. Civ. 2d § 1543 . . . . . . . . . . 19

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The issue before the court, on plaintiffs' motion for partial summary judgment, is whether the district plaintiffs have standing to assert the takings and contract claims in this case against the United States in a representative capacity on behalf of individual water users within their boundaries. The district plaintiffs ground their arguments on RCFC 17(a), which requires that plaintiffs be real parties in interest. Sidestepping the threshold jurisdictional issue of constitutional standing, the district plaintiffs assert four grounds which allegedly give them prudential standing to bring "these claims" on behalf of individual water users: (1) that the districts have such authority under state statutes; (2) that the districts are trustees of express trusts; (3) that the districts have standing to sue under the concept of associational standing; and (4) that the districts can sue the United States in a parens patriae capacity. Not only are these arguments unpersuasive, they highlight the failure of the district plaintiffs to establish their own constitutional standing to assert the takings claim in this case, and their inability to assert the breach of contract claim other than in their own right.

Plaintiffs confuse the question of proper party status (which Rule 17 addresses) with the question whether the district plaintiffs have standing to sue the United States for either an alleged takings or an alleged breach of their repayment contracts. The issue of standing in this case, when properly framed, is governed by federal law, unlike the question of proper party status in which either federal or state law may authorize a party to represent an absent party in a suit. The standing issue, moreover, involves more than simply the "prudential" standing of the districts, as plaintiffs frame it, and questions of efficient judicial administration. Rather, it involves a fundamental jurisdictional question: whether the *district plaintiffs* have suffered an injury to a legally protected interest fairly traceable to government conduct and redressable by this court.

For example, if the district plaintiffs cannot establish an injury-in-fact to an alleged property interest that *they* own in their own right, then the district plaintiffs lack constitutional standing to assert a claim for a taking of that interest against the United States. The application of Rule 17 to the district plaintiffs does not resolve this jurisdictional question, and plaintiffs cannot avoid it by relying on that rule.

This confusion is compounded by plaintiffs' failure to distinguish between the two claims they have asserted against the United States in this case. The alleged holders of the interest sued upon are quite distinct as between the takings and contract claims. On the takings claim, plaintiffs contend that the Klamath Project water users own compensable property interests in project water deliveries. They do not claim that the districts themselves own an alleged property interest that was allegedly taken by the federal government in 2001. Thus, the district plaintiffs lack standing to assert a claim for an alleged taking of property interests that the districts did not own or claim to own in 2001.

On the contracts claim, it is undisputed that all but one of the district plaintiffs is a party to a repayment contract with the Bureau of Reclamation, and that none of the individual water users are signatories to those contracts. Accordingly, while the districts with repayment contracts have standing to sue for an alleged breach of those contracts in their own right, their authority to assert the contract claim in this case in a representational capacity turns, first, on whether the individual water users were intended to have enforceable rights as third-party beneficiaries under those contracts, and then on whether there is some basis – such as associational standing or class action – that would enable the district plaintiffs to represent the alleged rights of the individual landowners. Whether individual plaintiffs have rights they can enforce under those contracts is the subject of the separate, and fully briefed, cross-motions for

summary judgment on third-party beneficiaries, which this court has stayed pending a decision by the U.S. Supreme Court in the case of Orff v. United States.

Moreover, not only are there jurisdictional defects arising from the district plaintiffs' lack of standing, the question whether the districts are proper parties to advance the claims in this case in a representational capacity is by no means as clear cut as plaintiffs assert. Contrary to plaintiffs' contentions, no state statute authorizes any of the district plaintiffs to bring takings or contract claims against the United States. The notion that the districts' authority resembles the authority of trustees of express trusts is unsupported by any citation to district by-laws or articles of incorporation. The districts' associational standing argument fails for reasons inextricably tied to their lack of standing. And it is settled that the districts, to the extent they are local governmental entities, cannot bring claims in a *parens patriae* capacity against the United States.

In short, and for the reasons set forth more fully below, plaintiffs' instant motion for partial summary judgment should be denied with respect to the takings claim, and deferred on the contract claim.

## II. THE DISTRICTS PLAINTIFFS HAVE FAILED TO ESTABLISH THEIR CONSTITUTIONAL STANDING TO ASSERT EACH CLAIM IN THIS CASE AS REPRESENTATIVES OF THE WATER USERS

"A fundamental jurisdictional consideration for any federal court, including Article I courts, is whether the plaintiff has constitutional standing." Aldridge v. United States, 59 Fed. Cl. 387, 388 (2004) (citing, *inter alia*, Glass v. United States, 258 F.3d 1349, 1355-56 (Fed. Cir. 2001)).[1] "'Fundamentally,' the Federal Circuit has stated, 'the question of standing involves the

---

[1] Plaintiffs include a lengthy quotation from Aldridge in their brief, and cite the case for the proposition that constitutional standing and the real-party-in-interest inquiry under RCFC 17 are not the same, see Pls' Memo at 5 n.2, but they proceed to ignore the requirements of constitutional standing as these pertain to the district plaintiffs.

determination of whether a particular litigant is entitled to invoke the jurisdiction of a federal court to decide the merits of a dispute or of particular issues.'" Emerald Int'l Corp. v. United States, 54 Fed. Cl. 674, 677 (2002) (quoting McKinney v. U.S. Dep't of Treasury, 799 F.2d 1544, 1549 (Fed. Cir. 1986)). Furthermore, a federal court must resolve threshold jurisdictional issues before it addresses the underlying merits of a case, to ensure that the particular plaintiff has presented an actual case or controversy to the court. See Entergy Nuclear Indian Point 2, LLC v. United States, ___ Fed. Cl. ___, 2005 WL 579525 at *6 (Mar. 9, 2005) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-102 (1998)).[2] Although the Court of Federal Claims has jurisdiction over takings claims and contract claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), the question presented in the context of the present motion, when properly framed, is whether the district plaintiffs have the requisite constitutional standing to assert those claims against the United States in this case as representatives of the individual plaintiffs.[3] The answer

[2] The threshold standing inquiry itself breaks down into constitutional and prudential components which are addressed sequentially. As this court has explained, the court must first determine that the litigant "satisfies the core standing requirements to assure itself that it has the judicial power to address the litigant's claims." Emerald Int'l Corp., 54 Fed Cl. at 677 n.4. After this threshold constitutional determination is made, the court then determines if there are any prudential limitations that would restrain the exercise of that power. Id.

[3] In the context of takings and contracts claims brought against the United States, the requirement that a plaintiff demonstrate constitutional standing overlaps conceptually to a degree with the waiver of sovereign immunity under the Tucker Act. The United States, as sovereign, is immune from suit unless it waives that immunity. See Library of Congress v. Shaw, 478 U.S. 310, 315 (1986). "The Tucker Act both confers jurisdiction upon the United States Court of Federal Claims and waives sovereign immunity [ ] for monetary relief brought against the United States." Ruttenburg v. United States, ___ Fed. Cl. ___, 2005 WL 757172 at *7 (2005) (citing United States v. Mitchell, 463 U.S. 206, 212-18 (1983)). With respect to such claims against the United States, the Tucker Act, 28 U.S.C. § 1491(a)(1), provides in pertinent part that

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not

to that question is "no."

There are three elements to constitutional standing. To have constitutional standing, a litigant must demonstrate, first, that it has suffered an injury in fact, that is, "'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent.'" Aldridge, 59 Fed. Cl. at 388 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The plaintiff must then establish a causal connection between the injury-in-fact and the challenged conduct. Lujan v. Defenders of Wildife, 504 U.S. 555, 560 (1992). Finally, the plaintiff must demonstrate that it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. Id. Application of these elements to the district plaintiffs shows that the districts lack constitutional standing to assert takings and contracts claims in a representational capacity, although for different reasons depending on the claim in question.

### A. The District Plaintiffs Lack Standing to Assert Any Takings Claim In this Case

It is well settled that "a Fifth Amendment takings claim is unique to the individual landowner who allegedly has been affected by governmental action." Creppel v. United States, 33 Fed. Cl. 590, 598 (1995). See also Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 295 (1981) (takings inquiries are "'*ad hoc*, factual inquiries' [that] must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant to the unique circumstances."); Blaze Construction, Inc. v. United

---

sounding in tort ....

Thus, although the Tucker Act provides jurisdiction in the Court of Federal Claims over claims "founded ... upon the Constitution" (e.g., Fifth Amendment takings claims), or "upon any express ... contract with the United States," the court must scrutinize the claim at issue to determine if the party asserting the claim, as well as the claim itself, falls within the scope of the Tucker Act's jurisdictional grant and waiver of sovereign immunity.

States, 27 Fed. Cl. 646, 657 (1993) ("The question of whether there is a fifth amendment taking cannot turn simply on general principles of law; it must be based on the particular circumstances of each case.").

In every Fifth Amendment takings case, each plaintiff must prove – as a threshold matter – that it had an ownership interest in the property allegedly taken on the date of the alleged taking. See, e.g., United States v. Dow, 357 U.S. 17, 20-21 (1958) (only the owner of the property at the time of the taking is entitled to compensation under the Fifth Amendment); Applegate v. United States, 35 Fed. Cl. 406, 421 (1996) (holding that the plaintiffs were precluded from recovering damages for any property taken before the date that they acquired each affected property). See generally 29A C.J.S., Eminent Domain, § 383, p. 757 (ed. 1992) (noting that the "general rule . . . is that where property is taken or injured under the exercise of the power of eminent domain, the owner thereof at the time of the taking or injury is the proper person to initiate proceeding or sue therefor."). In short, a takings claim, by its very nature, requires that each plaintiff establish ownership in his or her or its right of the property interest allegedly taken in order to establish the requisite constitutional standing. See, e.g., Hansen v. United States, 2005 WL 832332, *55 (Fed. Cl. Apr. 11, 2005) ("The standing principle is related to a fundamental takings rule: '[i]t is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" (citations omitted)); Eastern Minerals Int'l v. United States, 36 Fed. Cl. 541, 547 (1996) ("Only the owner of property at the time of a taking is entitled to compensation. ... Plaintiff Bernos is the sole shareholder of plaintiff corporations, but he did not hold any personal interest in the leases at the time of the taking. ... Bernos does not have standing via his position as president and sole shareholder of the companies. A shareholder does not have standing to assert a claim in his own name for a wrong to a corporation."). In this

case, the district plaintiffs conspicuously fail this test.

The *district* plaintiffs possess no property interest, or even a claim to a property interest, that is asserted in plaintiffs' takings claim. Plaintiffs' takings claim alleges instead that the curtailment of water deliveries to the Klamath Project in 2001 constituted a compensable taking of property owned by *individual* Klamath Project landowners, not the water districts. See Pls' Second Amended Complt. ¶ 22 (alleging that each of the plaintiffs is a landowner or a legal representative of a landowner "who possess appurtenant water rights"); id. ¶ 32 (alleging a taking of "the water rights of plaintiffs or the landowners they represent"). Of course, defendant contends that none of the plaintiffs in this case has a property interest in Klamath Project water deliveries that rises to the level of a compensable property right against the United States. That issue is the very subject of the cross motions for summary judgment which were argued on March 30 and are now under submission.

It appears undisputed, therefore, that the *district* plaintiffs own no property interests that were allegedly taken by the government in 2001.[4] Yet, in order to assert a takings claim against the United States, the district plaintiffs must establish that they are owners in their own right of the property interest allegedly taken by the government. See Dow, 357 U.S. at 20. Because the district plaintiffs neither own nor claim to own protectable interests that are the subjects of the *takings* claim in this case, the curtailment of water deliveries to the Klamath Project in 2001 did not cause an injury-in-fact to the district plaintiffs. Moreover, the court could direct no relief to

[4] Although the contracts to which most of the district plaintiffs are parties are "property," because the United States is one of the contracting parties any "interference with such contractual rights generally gives rise to a breach claim not a taking claim." Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed Cir. 2001) (quoting Sun Oil Co. v. United States, 572 F.2d 786, 818 (Cl. Ct. 1978)); see also Home Sav. of America v. United States, 51 Fed Cl. 487, 494-95 (2002).

the district plaintiffs based on that claim. The district plaintiffs, therefore, satisfy neither the injury-in-fact nor the redressability elements of a constitutional standing analysis in relation to the takings claim in this case. Accordingly, the *district* plaintiffs simply lack constitutional standing to assert a takings claim against the United States in this case.[5]

If the district plaintiffs lack standing in their own right to assert a takings claim against the United States, they assuredly lack standing to assert a takings claim on behalf of individual water users. The district plaintiffs do not, for example, meet the requirements of third-party standing. As explained in Saladino v. United States, 62 Fed. Cl. 782, 793 (2004), "[w]here a plaintiff asserts the injury of another, [the] plaintiff must overcome a presumption against third-party standing." Despite the presumption against third-party standing, third-party standing is authorized in limited circumstances:

> [t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute, the litigant must have a close relation to the third party, and there must exist some hindrance to the third party's ability to protect his or her own interests.

Id. at 792 (quoting Powers v. Ohio, 499 U.S. 400, 411 (1991) (quoting Singleton v. Wulff, 428 U.S. 106, 112 (1976))). The district plaintiffs, who have no ownership interest in the property

---

[5] This court must monitor its own jurisdiction, and may at any time during the litigation dismiss a jurisdictionally defective claim, either upon the court's own motion or on the suggestion of a party. See RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action."). "[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) (citing Fed. R. Civ. P. 12(h)(3), and Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94-95 (1998)); See generally 5C Charles Alan Wright, et al., Federal Practice & Procedure Civil 3d § 1393 (2004) (discussing the purpose of and practice under Rule 12(h)(3), and citing cases). In this instance, defendants suggest that the two pending cross-motions for summary judgment, on the plaintiffs' alleged threshold property interest and on the alleged status of individual plaintiffs as intended third party beneficiaries of district repayment contracts, also will provide an opportunity for the court to address its jurisdiction over claims and parties.

allegedly taken, have not suffered the requisite "injury in fact." Moreover, although the district plaintiffs may be said to have a "close relation" with their landowners, plaintiffs have not established that some hindrance to the landowners' ability to protect their interests exists in this case. To the contrary, the fact that several individual landowners are named as plaintiffs in this action suggests that no such hindrance exists.[6]

Rule 17(a) of the Rules of the Court of Federal Claims, which we discuss in more detail below, is not to the contrary. The concept of "real party in interest" is not the same as that of constitutional standing. The former principle "is a means to identify the person who possesses the right sought to be enforced." Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. 2d § 1542. Rule 17(a) is thus addressed to proper plaintiff status among parties who have already established their constitutional standing to sue. The district plaintiffs cannot rely on the real party in interest determination under Rule 17(a) to circumvent the constitutional standing requirements necessary to establish jurisdiction over a particular takings claim.

The district plaintiffs' lack of constitutional standing to assert the takings claim in this case is further underscored by the Anti-Assignment Act, 31 U.S.C. § 3727. The Anti-Assignment Act prohibits the "transfer or assignment of any part of a claim against the United States Government or of an interest in the claim . . . ." 31 U.S.C. § 3727(a)(1). Instead, such a transfer or assignment "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for the payment of the claim has been issued." 31 U.S.C. § 3727(b). "This Act precludes even unintentional assignments...." Emerald Int'l Corp., 54 Fed. Cl. at 682. The notion that the district plaintiffs have standing in a representational capacity to assert a

[6] Indeed, this court's Order of April 21, 2005, concerning improper joinder of the plaintiffs, appears to reflect similar concerns.

takings claim on behalf of individual water users, given the individualized nature of takings claims discussed above, runs afoul of the provisions of this statute.

The primary reasons for the enactment of the Anti-Assignment Act are as follows:

> (1) the prevention of claim trafficking by persons of influence who might improperly urge them upon government officers, (2) the prevention of multiple payment of claims, (3) the elimination of the necessity of reviewing alleged assignments, (4) enabling the government to deal only with the original claimant, and (5) preserving the government's defenses against the assignor which might not be applicable to the assignee.

Standard Mfg. Co. v. United States, 42 Fed. Cl. 748 779-80 (1999) (citing United States v. Shannon, 342 U.S. 288, 291-92 (1952)). See also Stearns Co. v. United States, 34 Fed. Cl. 264, 270 (1995); Kingsbury v. United States, 215 Ct. Cl. 136, 563 F.2d 1019, 1024 (1977).

Consistent with these goals – all of which are intended to protect the United States – courts have rejected attempts by plaintiffs to circumvent the statute through narrow or restrictive interpretations of its provisions. See, e.g., Schwartz v. United States, 16 Cl. Ct. 182 (1989) (holding that a claim against the United States that was based on a contingent fee agreement between another government claimant and her attorney was barred by the Anti-Assignment Act where the agreement/assignment was executed before the underlying claim was allowed). Although plaintiffs do not point to a formal assignment of claims to support their standing arguments, by seeking to bring takings claims on behalf of the landowners within their districts, the district plaintiffs are, in effect, seeking to bring the claims of other parties in a manner that is inconsistent with the Anti-Assignment Act.

In short, a takings claim can only be asserted against the United States by an owner of the alleged property interest alleged to have been taken. The district plaintiffs are not such owners. Therefore, they lack constitutional standing in their own right to assert the takings claim in this

case. And because they lack standing in their own right to assert the takings claim, they have no standing to assert that claim in any representational capacity.

**B. The District Plaintiffs Lack Standing to Assert a Contract Claim Other Than In their Own Right**

The analysis is somewhat different with respect to the contract claim in this case, although the ultimate result is the same: the district plaintiffs lack standing in a representational capacity to assert a contract claim against the United States on behalf of water users who are not in privity with the government under the terms of the contracts at issue in that claim. If individual landowners are not intended third-party beneficiaries of repayment contracts between the United States and the district plaintiffs, then these individuals simply have no contract claims in this case for the district plaintiffs to represent. The inquiry into the "representational standing" of the districts ends there with respect to the contract claim. If, on the other hand, the Court determines that individual landowners are intended third-party beneficiaries of those repayment contracts, then it becomes necessary to determine whether there is some basis on which the district plaintiffs can represent the contract claims of individual landowners. The pivotal first step, however, is determining whether the individual plaintiffs in this case can assert claims for breach of the repayment contracts in their own rights against the United States.

Just because a "public contract" exists doesn't mean that a particular plaintiff is entitled to sue the government under that contract. Privity of contract between the plaintiff and the government is required for the plaintiff to bring suit against the government on the contract. See, e.g., Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990) ("To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government . . . ."); Chancellor Manor v. United States, 331 F.3d 891, 899 (Fed.

Cir. 2003) ("This court has consistently held that for the government to be sued on a contract pursuant to the Tucker Act, there must be privity of contract between the plaintiff and the United States"). Indeed, there is no waiver of sovereign immunity under the Tucker Act without privity of contract with the federal government. See, e.g., Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The government consents to be sued only by those with whom it has privity of contract"). Otherwise stated, privity of contract with the United States is "an undisputed prerequisite for standing to sue in the Court of Federal Claims under the Tucker Act." Nat'l Leased Housing Ass'n v. United States, 105 F.3d 1423, 1435 (Fed. Cir. 1997); Entergy Nuclear, 2005 WL 579525 at *7 ("[t]o have standing to bring a breach of contract claim, plaintiffs must ... be in privity of contract with the government or a third party beneficiary of a contract with the government" (citing Anderson v. United States, 344 F.3d 1343, 1351 (Fed. Cir. 2003), and Sacramento Mun. Util. Dist. v. United States, 63 Fed. Cl. 495, 500 (2005))).

The individual plaintiffs in this case have no privity of contract with the United States – and thus have no standing to bring a contract claim based on the district plaintiffs' contracts – unless they can establish that they are intended (not incidental) third party beneficiaries. See Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001); Castle v. United States, 301 F.3d 1328, 1337-39 (Fed. Cir. 2002), cert. denied, 123 S. Ct. 2572 (2003). Defendant has addressed this precise question in its pending cross-motion for summary judgment regarding the status of the individual plaintiffs as third party beneficiaries.

In this case, the district plaintiffs, with one exception,[7] are parties to repayment contracts with the United States pursuant to federal reclamation law, and are therefore in privity with the

---

[7] It is undisputed that the Klamath Hills District Improvement Company has no contract with the United States for water delivery. See Def's Resp. to Pls' Proposed Findings of Uncontroverted Fact (dated March 14, 2005), Proposed Finding No. 6 and response thereto.

federal government as to those contracts. Defendant does not contest the standing of those signatory district plaintiffs to assert the claim in their own right for alleged breaches of those contracts arising out of the curtailment of water deliveries to the Klamath Project in 2001.

Whether the district plaintiffs can assert the contract claim in this case as representatives of individual water users, however, is a different matter, and depends initially on whether the individual water users are intended third party beneficiaries of the repayment contracts between the United States and the districts. Only if the court determines that individual plaintiffs are intended third-party beneficiaries can the court then determine whether grounds have been established for the district plaintiffs to represent individual landowners in asserting claims that those landowners would otherwise be able to assert individually. We discuss plaintiffs' views on the class action mechanism under RCFC 23 in the next subsection of this brief, and respond to plaintiffs' arguments over associational standing in Part III (D) below. Simply stated, however, the individual plaintiffs cannot avoid the question of whether they have standing to bring a contract claim by having the district plaintiffs bring that claim on their behalf. The court will decide whether the individual plaintiffs are intended third party beneficiaries when it rules on the currently-stayed cross motions on that issue.

### C. Plaintiffs' Efforts to Cast the Representational Standing Issue as Merely a Procedural Device Is Without Merit and Should Be Rejected

In arguing that the district plaintiffs have standing to assert "these claims" as representatives of individual Klamath Project water users, plaintiffs make several arguments which attempt to portray the representational standing issue as a mere procedural matter intended only to streamline the litigation. As our discussion of constitutional standing above demonstrates, however, plaintiffs cannot ignore, and have not satisfied, threshold issues of

standing implicating not merely procedure but the heart of the court's jurisdiction over the takings and contract claims in this case. Before responding more fully to plaintiffs' use of RCFC 17, we respond directly and briefly to plaintiffs' procedural arguments.

First, plaintiffs cite to statements made by the Assistant to the Solicitor General during oral argument before the Supreme Court in Orff v. United States to the effect that the Westlands Water District had the authority to act in a representational capacity on behalf of all its members. See Pls' Memo at 1-2 & Exh. A. Plaintiffs take those statements out of context. As the transcript of the oral argument makes clear, the questions posed by the justices to government counsel concerned the terms of the waiver of sovereign immunity under 43 U.S.C. § 390uu, and whether the Orff petitioners had standing, apart from Westlands Water District, to sue the Bureau of Reclamation under that waiver for an alleged breach of the 1963 contract between Westlands and the United States. In the particular colloquy referenced by plaintiffs in Attachment A to their memorandum, government counsel was explaining why Congress had limited the scope of the waiver of sovereign immunity under Section 390uu to suits involving disputes over a contract entered into pursuant to federal reclamation law between the United States and a "contracting entity," i.e., Westlands. While Orff may be relevant to the issue of whether the individual plaintiffs in the instant case are intended third-party beneficiaries of the repayment contracts between irrigation districts and the United States (depending, of course, on what the Supreme Court ultimately decides), plaintiffs' attempt to treat the remarks of government counsel during oral argument as a broad concession regarding a general representational status of Klamath Project irrigation districts is unpersuasive and should be rejected.

Second, plaintiffs assert the existence of an agreement in Tulare Lake Basin Water Storage Dist. v. United States, 49 Fed. Cl. 313 (2001), whereby the parties "agree[d] that the

districts [in that case] have standing to represent their water users, obviating the need to retain individual water users as plaintiffs, either individually or as a class." Pls' Memo at 3. The case is inapposite for several reasons. First, it is fundamental that parties cannot create jurisdiction of a federal court by agreement. See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant"); Pacrim Pizza Co. v. Pirie, 304 F.3d 1291, 1294 (Fed. Cir. 2002) ("only Congress can grant waivers of sovereign immunity; parties may not by contract bestow jurisdiction on a court"). Thus, any alleged "agreement" in Tulare is not germane to the question whether the district plaintiffs have constitutional standing in this case. Second, the United States is unaware of any such agreement that the state water districts in Tulare could "represent" their water users, and the decision cited by plaintiffs makes no mention of such an agreement. Pls' Memo at 3 (citing Tulare Lake Basin Water Storage Dist. v. United States, 49 Fed. Cl. 313 (2001)). Third, the court found in that case that a taking had occurred of the *districts'* property rights in deliveries of particular quantities of water specified in contracts between those districts and the California Water Resources Department as part of the California State Water Project. The property interest found to have been taken was not an alleged property interest in project water deliveries held by individual landowners, but rather an interest found to have been owned by the districts themselves. See Tulare, 49 Fed. Cl. at 318. Thus, Tulare provides no support for plaintiffs' representational standing argument.

Third, plaintiffs' very premise that the representational standing of the district plaintiffs would obviate the need for a class action is itself flawed. Representational standing by the district plaintiffs in this case is not a surrogate for a class action procedure. Because the relief available in the Court of Federal Claims involves a money judgment against the United States,

the scope of class actions under RCFC 23 is narrower than under Rule 23 of the Federal Rules of Civil Procedure. See Rules Committee Note, 2002 Revision, RCFC 23. In particular, RCFC 23 was extensively rewritten in 2002 to limit class actions to "opt-in" classes, and to exclude "opt-out" classes. See id. Thus, a class action in the Court of Federal Claims is not an "alternative" procedure (see Pls' Memo at 1), and the restriction in RCFC 23 to "opt-in" class actions underscores the limitations on "representative" claims against the United States.[8]

In short, the district plaintiffs must establish their constitutional standing to assert the takings and contract claims in this case, including in a representational capacity. This the district plaintiffs have failed to do. None of the procedural shortcuts advocated by plaintiffs can remedy these jurisdictional defects.

## III. THE DISTRICT PLAINTIFFS CANNOT REPRESENT THE WATER USERS UNDER RCFC RULE 17 EITHER

Not only do the district plaintiffs lack constitutional standing to represent the water users in the takings and contract claims in this case, Rule 17(a) of the Rules of the Court of Federal Claims, on which plaintiffs principally rely, provides no support for their motion either. Plaintiffs rely on language in the Rule which accords real party in interest status to parties "authorized by statute to sue" in their own name on behalf of an absent party, and to trustees of

---

[8] The district plaintiffs do not explain the scope of their claimed representative capacity; they do not explain what it would mean for them to "represent" each of the individual landowners. The district plaintiffs appear to claim that they have capacity to prosecute collectively the individual claims of all of the individual landowners, without regard to the individual desires or interests of any individual landowner. The district plaintiffs apparently want to make each of the individual landowners a plaintiff without actually identifying each landowner or naming each a plaintiff, or identifying each individual claim, or determining whether each landowner chooses to join with the districts and any others to pursue a claim. The district plaintiffs do not identify the legal authority that requires or, at least, allows the individual landowners to surrender any individual claims in favor of a collective, representative action by the district. Nor do they identify the legal authority that allows the districts to appropriate the individual claims to create a collective action.

express trusts. In addition, plaintiffs argue that the district plaintiffs have associational standing to represent individual landowners, and may also assert claims for monetary relief against the United States in their capacity as "*parens patriae*." In addition to the constitutional standing problems of the district plaintiffs addressed above, none of these arguments has merit on its own terms, as we now explain.

**A. Real Parties in Interest Under RCFC 17**

Rule 17(a) states in pertinent part that:

> (a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. …

RCFC 17(a). This Rule, identical to Rule 17 of the Federal Rules of Civil Procedure in all ways relevant here, "requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced." United Healthcare Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563, 569 (8th Cir. 1996). See also Boeing Airplane Co. v. American Trade Ins. Co., Ltd., 322 F.2d 589, 591 (8th Cir. 1963) (the "real party in interest" rule under Rule 17(a) "is the one who, under applicable substantive law, has the legal right to bring the suit"), cert. denied, 375 U.S. 984 (1964); Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. 2d § 1541 (Rule 17(a) "states clearly that the action should be brought in the name of the party who possesses the substantive right being asserted under the applicable law, whether that be state or federal."). The Rule performs a valuable function with respect to claim preclusion, in that it "protects a defendant against subsequent claims for the same debt underlying a previously entered judgment." Marina Management Serv., Inc. v. Vessel My Girls, 202 F.3d 315, 318 (D.C. Cir.), cert. denied, 531 U.S. 985 (2000); see also Karras v. Teledyne Indus., 191 F. Supp. 2d

1162, 1170 (SD Cal. 2002) ("The 'real party in interest' provision is intended to protect defendants from multiple liability in actions by subsequent claimants and to ensure that the judgment will have preclusive res judicata effect."); Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. 2d § 1541. "[T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." Advisory Committee Note to the 1966 amendment to Fed. R. Civ. P. 17(a).

The function and limitations of Rule 17(a) are thus distinct from those of constitutional standing. A party may have constitutional standing to sue, but still not qualify as a real party in interest under the Rule. See, e.g., Aldridge, 59 Fed. Cl. at 390 (stating, "Lack of real-party-in-interest status is not a jurisdictional defect. … [N]ot every party who meets standing requirements is a real party in interest. 4 Moore's Federal Practice, § 17.10 (3d ed. 2000)," and indicating that a trustee's ability to sue in the name of the trust's beneficiary may deny to that beneficiary real party in interest status). As this court observed in Aldridge, once one moves beyond the threshold jurisdictional issue of constitutional standing, prudential considerations can still play a role in limiting access to the courts to those litigants "who are best suited to assert a claim." 59 Fed. Cl. at 389.

Plaintiffs rely particularly on the second sentence of Rule 17(a), which provides a non-exclusive list of persons who may be real parties in interest. The purpose of this enumeration of persons in the second sentence of Rule 17(a) "is to provide guidance in cases in which it might not be clear who the real party in interest is and to emphasize that he might not be the person beneficially interested in the potential recovery. Of course, the language assumes that the applicable substantive law gives the persons named in the rule the right to sue." Wright, Miller

and Kane, 6A Fed. Prac. & Proc. Civ. 2d § 1543. Plaintiffs claim that the district plaintiffs qualify as real parties in interest because they are allegedly "authorized by statute [who] may sue in that person's own name without joining the party for whose benefit the action is brought," and also because they are analogous to "trustees of an express trust." Pls' Memo at 2. Thus, in order to determine if any of the district plaintiffs can assert claims as real parties in interest on behalf of absent water users as plaintiffs allege, the court must look to the law which authorizes the district plaintiffs to act. And when one examines that law closely, the status of the district plaintiffs to assert takings and contract claims against the United States as real parties in interest evaporates. Plaintiffs' use of Rule 17 does no more than remind us that *if* an applicable statute creates the right to sue in the name of another, such an action is permissible under the procedural rules of the federal court. The argument that such a right exists under Oregon or California law simply does not, however, hold up under a detailed analysis.

**B. The Plaintiff Districts Lack Authorization Under State Law to Bring Claims Against the United States on Behalf of Water Users**

Plaintiffs first argue that the district plaintiffs, as irrigation or other districts organized under state law, have the authority to bring claims on behalf of water users within their boundaries with respect to water rights. Pls' Memo at 7-15. An irrigation district "is a creature of the statute and possesses only those powers expressly or impliedly granted to it by the legislature." Payette-Oregon Slope Irr. Dist. v. Coughanour, 91 P.2d 526, 527 (Or. 1939). An irrigation district "has no powers, either governmental or proprietary, except those granted to it by the legislature, either express or by clear implication." Redmond Realty Co. v. Central Oregon Irr. Dist., 12 P.2d 1097, 1099 (Or. 1932). See also Twohy Bros. Co. v. Ochoco Irrig. Dist., 216 P. 189, 190 (Or. 1923) (same). Thus, the question here is whether any of the district

plaintiffs has the authority, under state law, to bring takings or contract claims on behalf of individual landowners within the district. The answer is clearly no, and particularly not against the United States in this court.

Plaintiffs' entire Rule 17 analysis ignores the question of sovereign immunity, and role of limited waivers of sovereign immunity, such as that found in the Tucker Act, in defining the terms upon which claims for damages or just compensation can be asserted against the United States. Fundamentally, neither the State of Oregon nor the State of California, through their irrigation district or other laws, can waive the sovereign immunity of the United States, and thereby subject the United States to claims by one party on behalf of an unnamed third party. See United States v. Idaho, 508 U.S. 1, 9 (1993) (holding that Idaho state law did not affect the immunity of the United States under the McCarran Amendment, 43 U.S.C. § 666(a), to the imposition of costs in a comprehensive water right adjudication in state court); Block v. North Dakota, 461 U.S. 273, 280 (1983) (stating,"States of the Union, *like all other entities,* are barred by federal sovereign immunity from suing the United States in the absence of *an express waiver* of this immunity *by Congress*") (citations omitted; emphasis added); United States v. Mitchell, 463 U.S. 206, 218 (1983) ("the Tucker Act provides *the United States' consent* to suit for claims founded upon *statutes or regulations that create substantive rights* to money damages.") (emphasis added). Only Congress can waive the Federal Government's immunity to suit, and waivers of sovereign immunity are to be strictly construed in the government's favor, and must be unequivocally expressed in statutory text. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (citing cases). Accordingly, to the extent that plaintiffs are interpreting state statutes as conferring a right to sue the United States that is inconsistent with the limits imposed on this court's jurisdiction by Congress, the conflict "must be resolved in favor of the

supremacy of federal law" on this issue. Boeing Airplane Co., 322 F.2d at 591.

Moreover, even under state law, most of the district plaintiffs lack the capacity to sue on behalf of their landowners' alleged rights to receive water deliveries from a federal reclamation project. All but two of the district plaintiffs in this case are organized pursuant to Oregon law. Yet plaintiffs appear to place far greater reliance on provisions of California law, which arguably apply only to the Tulelake Irrigation District and the Westside Improvement District, and then try to argue by analogy that Oregon districts have similar powers to those conferred under California law. As we now demonstrate, plaintiffs' arguments do not survive scrutiny.

Plaintiffs fail to point to any provision in the Oregon Irrigation District Law authorizing districts to file water rights claims on behalf of landowners or water users, let alone assert takings or contract claims against the United States. Tellingly, their arguments concerning the authorities for irrigation districts organized under Oregon law fails to cite a single case of an irrigation district bringing suit in a representational capacity with regard to water rights or other similar interests of water users. See Pls' Memo at 7-8. Plaintiffs rely on the Litigation Clause of the Oregon water code, Or. Rev. Stat. §545.225(1)(b), which authorizes irrigation districts to bring suit in certain limited circumstances, but the circumstances required to trigger the districts' authority under that provision are not present in this case. In pertinent part, the Litigation Clause authorizes the districts' boards of directors to "institute and maintain all actions and proceedings, suits at law or in equity necessary or proper in order to fully carry out the Irrigation District Law, or to enforce, maintain, protect or preserve rights, privileges and immunities created by the Irrigation District Law, or acquired in pursuance of the Irrigation District Law." Id. By its terms, the Litigation Clause requires that any "rights, privileges and immunities" asserted by an irrigation district in litigation be the products of the Irrigation District Law itself.

Plaintiffs cite no other provision of Oregon law authorizing irrigation districts to maintain actions in a representational capacity. Instead, they quote Section 545.225(1)(b), and then make the conclusory statement that this section creates the right in Oregon irrigation districts necessary to bring water rights claim on behalf of the water users. But the Litigation Clause does no such thing. Plaintiffs completely ignore the Litigation Clause's requirement of some other supporting provision(s) in the Irrigation District Law as the basis for a suit by the district.[9] In particular, plaintiffs fail to identify any "rights, privileges and immunities" created under the Irrigation District Law or acquired thereunder which are implicated here. Nor have plaintiffs pointed to any evidence that they have acquired the consent of their landowners or water users to sue on their behalf.

The Oregon Legislature, through the Litigation Clause, granted limited litigation powers to irrigation districts to suits carrying out the Irrigation District Law. Under the Oregon Irrigation District Law, irrigation districts have three purposes: (1) building irrigation works, (2) improving irrigation works, or (3) providing for the assumption of indebtedness to the United States incurred under the federal reclamation laws on account of landowners' lands. Or. Rev. Stat. §545.025. None of these purposes authorizes or requires an irrigation district to bring suit in any representational capacity, let alone to assert takings or contracts claims on behalf of landowners against the United States. Therefore, it is not "necessary or proper" under the Litigation Clause for the districts to appear on behalf of others in an action against the United States. The Litigation Clause is simply inapposite to the takings and contracts claims in this

[9] The Legislature does allow irrigation districts to acquire water rights, but only in narrow circumstances which are not present here. The power of an irrigation district to acquire a water right is specified in Or. Rev. Stat. §545.239(1) which allows districts to acquire water rights only when "necessary for the construction, use, supply, maintenance, repair and improvement of any canal and works *proposed to be constructed by the board*." (emphasis added).

case.

None of the other categories of districts fares any better under this analysis. Plaintiffs list the portions of Oregon law which allegedly control the operation of the Klamath Drainage District, mention the situation where a drainage district may acquire property or rights by condemnation, and quote the statutory sections that empower such a district to sue in its own name (Pls' Memo at 9), none of which applies to the questions at issue here. That is, none of the referenced provisions of Oregon law empowers an Oregon Drainage District in any way to represent its customers in the way plaintiffs have implied that it may, including asserting claims in federal court against the United States.

The same conclusion applies to the provisions of Oregon law cited by plaintiffs regarding the powers of Water Improvement Districts and Water Corporations. With respect to Water Improvement Districts, Or. Rev. Stat. § 552.305, relied upon by plaintiffs, merely authorizes such a district to "do other acts or things as may be necessary for the proper exercise of the powers granted" to it. Plaintiffs again fail to point to any relevant "powers granted" to the Improvement District plaintiffs make the cited section relevant to the issue here, or which expressly authorize Improvement Districts to assert claims in any representational capacity. With respect to Water Corporations formed under Chapter 554 of the Oregon Revised Statutes, Plaintiffs assert that the Code "explicitly authorizes these corporations to sue on behalf of their water users," and then cite Section 554.080. That section, however, merely says that the corporation has the "power ... [t]o sue and be sued." It says nothing, explicitly or implicitly, about suing on behalf of the corporation's shareholders.

Plaintiffs attempt to compensate for the absence of express authorization to sue under Oregon law by citing to provisions of *California* state law, claiming that "water districts are real

parties in interest, entitled to sue to protect the water rights of their constituent water users," and arguing by analogy that entities formed under Oregon state law are entitled to the same privilege. Pls' Memo at 10. Plaintiffs fail, however, to cite to any provision of Oregon law containing the same language found in the California irrigation statutes cited in the cases upon which they rely. And while the provisions of the California Water Code cited by plaintiffs are more broadly worded than the Oregon statutes discussed above (see Pls' Memo at 8, citing Cal. Water Code §§ 22654, 22655), none of these California statutes authorize irrigation districts to bring claims for damages or just compensation against the United States. Plaintiffs have failed to cite any federal case in which a California irrigation district established such claims against the United States based upon these statutes.

Instead, plaintiffs appear to rely heavily on Coachella Valley County Water Dist. v. Stevens, 274 P. 538 (Cal. 1929), but their reliance on this case is misplaced. The holding in that case depended explicitly on provisions of the County Water District Act, enacted in 1913 and amended in 1923. Section 6 of this statute included authorization of a county water district

> to appropriate, acquire and preserve water and water rights and for this purpose to sue, intervene and compromise, in the name of the district, and assume the costs of litigation involving the ownership of waters or water rights within the district and those used and useful for the purposes of the district or of any of the lands situated therein....

Id. at 541.[10] The California Supreme Court held that the Coachella Valley County Water District could bring suit against an upstream landowner who had sunk wells on his land which

[10] In the 1923 amendment to Section 6, the California Legislature added the following language to the provision, authorizing county water districts "to commence, maintain, intervene in, defend and compromise actions and proceedings to prevent interference with or diminution of the natural flow of any stream or natural subterranean supply of waters used or useful for any purpose of the district or a common benefit to the lands within the district or its inhabitants; and to commence, maintain and defend actions and proceedings to prevent any such interference with the aforesaid waters as may endanger the inhabitants or lands of the district." 274 P. at 541.

would allegedly deplete the flow of water into a natural reservoir used by the district. Id. at 540. The court in Coachella based its holding on the "power conferred on a county water district to sue and be sued with respect to the preservation and conservation of the sources of water supply used and usable for the lands and inhabitants within the district..." Id. at 542. The court equated this power to "the power to proceed in a representative capacity to protect the rights of all of the land owners and other users of water in the district...." Id. The suit in Coachella, however, did not involve takings or contract claims against the United States, but was an action in state court, against a private defendant. Plaintiffs, moreover, point to no provision of Oregon law that completes the circle, and makes the holding of a California state court based on California law relevant to the authority of Oregon irrigation districts, which must be based on Oregon law.

Similarly, Plaintiffs' use of Orange County Water Dist. v. City of Riverside, 343 P.2d 450, 466 (Cal. Ct. App.1959) (holding that the water district could sue upstream appropriators on behalf of the private water users of the district) fails to acknowledge the fact that the holding in that case was possible only "in conformity with section 369 of [the California Code of Civil Procedure], under the special statute giving the District the power to maintain actions 'to prevent interference with water or water rights used or useful to lands within said District.'" 343 P.2d at 469. In other words, the Orange County Water District had received special authorization from the California Legislature to bring such suits on behalf of its water users. See also City of Chino v. Superior Ct. of Orange County, 255 Cal. App. 2d 747, 749, 754-56 (Cal. Ct. App. 1967) (In a suit for the general adjudication of the Santa Ana River, discussing the special statute that gave the Orange County Water District the capacity to sue on behalf of its water users). Plaintiffs point to no provision under Oregon law that would conceivably be analogous to this "special statute" that enabled the holding in Orange County, and once again the claims in that case did not

involve any claims for taking or breach of contract against the United States.

Plaintiffs' use of River Road Water Dist. v. City of Eugene, 492 P.2d 812, 818 (Or. Ct. App. 1972), likewise provides no support for the representational capacity of the district plaintiffs. The "quasi-municipal" corporate status of irrigation and water districts mentioned in the opinion and cited by Plaintiffs, Pls' Memo at 12-13, is only relevant to the attributes of such entities that were listed in the opinion (such as acquiring property, taxing, suing and being sued), none of which address the representational question. The same point applies to Plaintiffs' use of Harney Valley Irrigation Dist. v. Weittenhiller, 198 P. 1093 (Or. 1921), and Oregon Const. Co. v. Allen Ditch Co., 69 P. 455 (Or. 1902): These cases support a view that such entities formed under state law had the power to carry out some physical and financial activities related to water use, but none of the functions of the entities listed in these opinions which are cited in Plaintiffs' Memo involve the question here, that of the ability of the entities to represent their users in federal court, asserting claims against the United States for money damages. Plaintiffs also cite H.F. Allen Orchards v. United States, 749 F.2d 1571 (Fed. Cir. 1984), following a conclusory statement that the opinion is "[c]onsistent with the California and Oregon courts," for the fact that the districts in that case did not themselves use water, but were "surrogates for the aggregation of farmers." Pls' Memo at 13. Plaintiffs presumably intend to imply that the use of the word "surrogates" meant that the court was holding that the districts had the capacity to sue on behalf of unnamed users, a notion for which plaintiffs cite no actual support in the opinion (just as plaintiffs provide no support for the assertion that such a holding would be, in any event, "consistent with the Oregon courts"). In fact, the cited portion of Allen Orchards was followed immediately by the holding that the farmer-appellants were the real parties in interest, and that it was therefore appropriate for them to bring the suit themselves. 749 F.2d at 1576. Thus, to the

extent that Allen Orchards is at all relevant here, it indicates that the districts do *not* have the right to act as a "surrogate" in bringing such an action.

Thus, plaintiffs have failed to establish that the district plaintiffs are authorized by statute to bring any of the claims in this case against the United States. Accordingly, plaintiffs' use of RCFC 17(a) on this grounds fails.

**C. The Plaintiffs Do Not Have Standing as Trustees for Their Water Users**

Plaintiffs' argument that they have standing to sue on behalf of their water users without naming those users includes another by-analogy assertion, namely that rules of civil procedure in some situations allow a trustee to sue on behalf of the trust's beneficiaries, and that water users are analogous to trust beneficiaries. Plaintiffs' support for this argument is unpersuasive.

First, the federal and state procedural rules cited by plaintiffs, a necessary component of plaintiffs' trust-by-analogy argument, each refer to an "express trust." Such a trust exists, for example, when federal law confers a trustee with standing to bring a suit on behalf of a trust estate, as is the case under federal bankruptcy law. E.g., Snyder v. United States, 63 Fed. Cl. 762, 765 (2005). Plaintiffs do not cite to or rely upon an express trust-instrument in this case.

Second, in the 1939 Oregon case cited by plaintiffs for the proposition that an irrigation district is analogous to a trustee, Smith v. Enterprise Irrigation Dist., 85 P.2d 1021 (Or. 1939), the use of the trustee metaphor was completely unrelated to the way in which plaintiffs would have us understand it. There the dispute was between the district and landowners within the district's boundaries over the district's use of its power to levy assessments in certain ways (the power of taxation being one of the limited powers of an irrigation district under Oregon law, as discussed above). Far from being relevant to the question of whether the district could represent its landowners or water users in an action against a third party, the notion of the district as trustee

was in Smith merely related to the obligations of the district to, and in its direct interactions with, the landowners of the district.

Similarly, Plaintiffs' use of Caviness v. La Grande Irrigation Co., 119 P. 731 (Or. 1911), is not supportive of the trustee analogy. The portion of the Caviness opinion quoted by plaintiffs, in which the court explicitly stated that it was merely drawing an analogy to a trustee, addressed the power of a water corporation to sue in the name of the corporation's "individual appropriators," a group analogous to the shareholders in a corporation formed under state law. However, plaintiffs fail to include in their Memo any reference to the next sentence from the Caviness court after the passage they quote. The Oregon Supreme Court continued as follows:

> But this does not dispense with the requirements that, if such are to be the objects and purposes of the company, they should be specified in their articles of incorporation. The powers of a corporation are defined and limited by its articles. Especially as against a stranger, it cannot go beyond them.

Id. at 737. The Oregon Supreme Court went on to examine the articles of incorporation for each of the district appellants in Caviness, and concluded that these articles of incorporation showed that the districts were acting in their own rights in the litigation, and not on behalf of the rights of their shareholders. Id. at 737 ("These articles quoted above do not prove the character in which the corporate appellants appear on the record. They pose substantially as trustees or holding concerns; but their charters show them to be independent institutions operating in their own rights."). With respect to the individual stockholders of these water corporations, the Oregon Supreme Court concluded that "[w]e cannot approve the decree of the circuit court so far as it attempts to adjudicate the rights of individuals who happen to be stockholders in the several corporations named. These people were not parties to this suit." Id. at 738.

In other words, if the "objects and purposes of the company" were to include the power to

represent in litigation the holders of water rights, it would be necessary for the corporation to derive that power expressly from its articles of incorporation. Here plaintiffs' analogy breaks down. This requirement of articles of incorporation is much like that found in the Oregon Irrigation District Law discussed above: a district is empowered by the Irrigation District Law to litigate over the rights created by the Irrigation District Law, just as a corporation is able to carry out duties it expressly assumes in its articles. Both are creatures of their organic documents – a statute, or articles of incorporation – and cannot exercise powers not expressly authorized in those organic documents. In each case there must be an express, substantive right granted or duty assumed – either by statute or corporate article – in order for the representational capacity to exist. Plaintiffs have not even cited this court to any of the articles of incorporation of the district plaintiffs. The analogy to the powers of a trustee of an express trust fails, and with it fails plaintiffs' attempt to invoke RCFC 17(a) on this basis as well.

**D. The District Plaintiffs Do Not Have Associational Standing to Sue the United States in this Case on Behalf of Individual Water Users**

Two arguments remain. First, plaintiffs claim that the district plaintiffs have associational standing to sue the United States under Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333 (1977). This argument lacks merit principally because plaintiffs cannot establish at this stage in the litigation that they meet the test for associational standing set forth in Hunt for either the takings or contract claims. Moreover, plaintiffs have not established that the district plaintiffs can even invoke associational standing in the first place.

Under Hunt, an association can establish its standing to bring suit on behalf of its members if (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim

asserted nor the relief requested requires the participation of individual members in the lawsuit. 432 U.S. at 343; Friends of the Earth, Inc. v. Laidlaw Env't. Serv. (TOC), Inc., 528 U.S. 167, 181 (2000).

Plaintiffs' argument that the district plaintiffs have associational standing under Hunt begs the question whether any of the district plaintiffs resemble voluntary membership organizatiosn which can invoke the Hunt test in the first place. See Hunt, 432 U.S. at 342. As plaintiffs effectively concede, the district plaintiffs are instrumentalities of state government, organized pursuant to state irrigation, drainage, or improvement district statutes, or, in the case of the Van Brimmer Ditch Co., a corporation. Under Oregon law, the purposes of irrigation districts were to build irrigation works, improve irrigation works, and provide for the assumption of indebtedness to the United States incurred under federal reclamation law. See Or. Rev. Stat. § 545.025. Indeed, one significant feature of irrigation districts organized under state law, from Congress's perspective, was that such districts (as opposed to voluntary water users' associations) had taxing authority making possible the district's assumption of repayment obligations from individual landowners. See Omnibus Adjustment Act of 1926, § 46, 44 Stat. 649, 43 U.S.C. § 423e (stating in pertinent part that "[n]o water shall be delivered upon the completion of any new project or new division of a project until a contract or contracts in form approved by the Secretary of the Interior shall have been made with an irrigation district or irrigation districts organized under State law providing for payment *by the district or districts* of the cost of constructing, operating, and maintaining the works during the time they are in control of the United States...." (emphasis added)). It is, moreover, undisputed that water users pay operation and maintenance assessments to irrigation districts today whether they receive water or not, and the districts's repayment contracts recognize that the *districts* are responsible for

repayment of construction costs to the United States. See generally Exhibits [ ] to [ ] to Pls' Amended Complt. Associational standing has been held not to apply to instrumentalities of local or state government that lack indicia of voluntary membership organizations. See, e.g., City of Olmstead Falls, OH v. Federal Aviation Admin., 292 F.3d 261, 267-68 (D.C. Cir. 2002); Board of Supervisors of Warren County v. Virginia Dep't of Social Serv., 731 F. Supp. 735, 742 (W.D. Va. 1990).

In arguing that the district plaintiffs have associational standing to sue the United States in this case, plaintiffs do not undertake an examination of the districts' enabling legislation, or any by-laws, articles of incorporation, or other organic documents, which might support their claims that *these* districts resemble voluntary membership organizations under Hunt. Instead, plaintiffs rely solely on an unpublished district court opinion from the early stages of the litigation that ultimately became Orff v. United States. See Pls' Memo at 17 (citing Westlands Water Dist. v. United States Dep't of Interior, 1994 U.S. Dist. LEXIS 6276 (E.D. Cal. 1994)). Relying on two district court opinions only, the district court in Westlands examined whether governmental entities such as the water district plaintiffs in that case sufficiently resembled voluntary associations to allow those districts to establish associational standing to assert claims against the federal government under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. The district court in Westlands concluded that the water district plaintiffs in that case were sufficiently like the Washington State Apple Commission in Hunt to allow those districts to establish associational standing. See Westlands, at *10-*15. The persuasiveness of the district court's holding on associational standing is weakened, however, by the fact that the district plaintiffs subsequently dismissed their complaints, leaving only the individual plaintiffs to proceed. See Orff v. United States, 358 F.3d 1137, 1141-42 (9th Cir.), petition for certiorari

granted, 125 S. Ct. 309 (2004). No court of appeals has reviewed the correctness of the district court's application of associational standing to the district plaintiffs in Westlands, therefore, and plaintiffs fail to cite any other authority that the district plaintiffs in this case can establish associational standing under Hunt.

Moreover, the district plaintiffs have not established that they can meet the criteria for associational standing set forth in Hunt. With respect to the takings claim in this case, whether the district plaintiffs can meet the first criterion under Hunt turns on whether individual water users could sue the United States for a taking of their alleged property interests in project water deliveries in 2001. The very interest lying at the heart of the takings claim is, however, disputed, and is the subject of the cross motions for summary judgment presently under submission. A similar situation obtains with the contract claim. With respect to that claim, whether the districts can meet the first criterion of Hunt depends on whether individual water users would have standing to bring claims for the alleged breach of the repayment contracts in their own right. And that inquiry depends on whether the individual water users are intended third-party beneficiaries of those contracts, since none of them is a party to any of those contracts. In other words, plaintiffs would have the court assume the existence of legal interests for the purpose of deciding the associational standing of the district plaintiffs, which are the very subjects of pending cross motions. And plaintiffs' ability to meet the third criterion under Hunt – that neither the claim asserted nor the relief requested requires the participation of the individual members – is undermined by RCFC 23, which limits class actions to opt-in classes, thereby limiting the representational capacity of plaintiffs in this court.

In short, defendants respectfully submit that plaintiffs have failed to carry their burden to establish associational standing on behalf of their "members."

### E. The Districts May Not Assert Claims Against the United States as *Parens Patriae*

Finally, the district plaintiffs argue that they can assert takings and contract claims against the United States as *parens patriae* for individual water users. This argument is unpersuasive, particularly in the light of recent case law.

The doctrine of *parens patriae* often arises in the context of suits brought by a state, in which the state seeks to vindicate its "quasi-sovereign" interest "in the well-being of its populace." Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 602 (1982). Courts have recognized that a state may have a quasi-sovereign interest in the "health and well-being" of its citizens (id. at 607) which is "sufficiently concrete to create an actual controversy between the State and the defendant" and thereby afford standing to the state. Id. at 602. Thus, "the federal government and the states, as the twin sovereigns in our constitutional scheme, may in appropriate circumstances sue as parens patriae to vindicate the interests of their citizens." In Re Multidistrict Vehicle Air Pollution, 481 F.2d 122, 131 (9th Cir.) (citing cases), cert. denied 414 U.S. 1045 (1973).

In the leading case of Alfred L. Snapp & Son v. Puerto Rico, the Commonwealth of Puerto Rico brought suit in its capacity as *parens patriae* against a number of private individuals and companies engaged in the apple industry in Virginia, alleging violations of federal statutes governing the employment of temporary foreign agricultural workers. See Snapp, 458 U.S. at 595-97. Puerto Rico's standing to sue was challenged. In upholding Puerto Rico's standing to sue as *parens patriae* over these alleged violations of federal law, the Supreme Court discussed four types of interests on which a state could claim standing. These were a sovereign interest (the power to create and enforce a legal code; the demand for recognition from other sovereigns);

a proprietary interest; in certain circumstances a nominal interest on behalf of a private interest; and a quasi-sovereign interest (the basis for a *parens patriae* action). Id. at 601-2. In addition to suits brought in a *parens patriae* capacity against private defendants, the Supreme Court and the lower federal courts have held that states may bring suits in their *parens patriae* capacity against other states. See, e.g., Kansas v. Colorado, 533 U.S. 1, 9 (2001); Connecticut v. Cahill, 217 F.3d 93, 97-103 (2nd Cir. 2000) (discussing in detail suits brought by states in their *parens patriae* capacity against other states).

Although plaintiffs quote from Snapp, they ignore a critical exception to a state's standing to sue as *parens patriae*. In Snapp, the Supreme Court explained that a state does *not* have standing as *parens patriae* to bring an action against the *federal* government. See id. at 610 n.16. The Court reiterated its earlier reasoning that "[w]hile the State, under some circumstances, may sue in that capacity for the protection of its citizens (Missouri v. Illinois, 180 U.S. 208, 241 [1901]), it is no part of its duty or power to enforce their rights in respect of their relations with the Federal Government. In that case it is the United States, and not the State, which represents them as *parens patriae*". Id. (quoting Massachusetts v. Mellon, 262 U.S. 447, 485-86 (1923)). This exception has in turn been applied by lower courts, following Snapp, in dismissing claims brought by states as *parens patriae* against the United States or its agencies. See, e.g., Kansas v. United States, 16 F.3d 436, 439 (D.C. Cir.), cert. denied 513 U.S. 945 (1994); Wyoming ex rel. Sullivan v. Lujan, 969 F.2d 877, 883 (10th Cir. 1992); Nevada v. Burford, 918 F.2d 854, 858 (9th Cir. 1990), cert. denied sub nom. Nevada v. Jamison, 500 U.S. 932 (1991); Chiles v. Thornburgh, 865 F.2d 1197, 1208-09 (11th Cir. 1989). Since the citizens of the lesser sovereign (the state) are also the citizens of the paramount sovereign (the United States), as between the two sovereigns only the United States may represent citizens as *parens*

*patriae*. See Massachusetts v. Mellon, 262 U.S. at 485-86.

If states cannot sue the federal government as *parens patriae*, subdivisions of states, such as cities, counties, or irrigation districts organized pursuant to state law, cannot sue the federal government as *parens patriae* either. There are two reasons for this. First, the power of these political subdivisions is derivative of the state and not sovereign. City of Olmstead Falls, 292 F.3d at 268; In Re Multidistrict Vehicle Air Pollution, 481 F.2d at 131. Because they lack sovereign power, political subdivisions lack any capacity to sue as *parens patriae*, "although they might sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants." In Re Multidistrict Vehicle Air Pollution, 481 F.2d at 131. Second, and following the Supreme Court's reasoning in Snapp, political subdivisions of states cannot sue the *United States* in a *parens patriae* capacity because the states themselves cannot do so. City of Olmstead Falls, 292 F.3d at 268; accord City of Rohnert Park v. Harris, 601 F.2d 1040, 1044-45 (9th Cir. 1979), cert. denied, 445 U.S. 961 (1980) (plaintiff city lacked standing to sue, inter alia, a federal agency); Board of Supervisors of Fairfax County, Va. v. United States, 408 F.Supp. 556 (E.D. Va. 1976), appeal dismissed, 551 F.2d 305 (4th Cir. 1977) (county may not bring *parens patriae* action against Federal Government). See also, Westlands Water Dist., 1994 U.S. Dist. LEXIS 6276 at *11 (observing that "the bar against state parens patriae suits against the federal government is the law of the Ninth Circuit."). In short, plaintiffs cite no authority which holds that a political subdivision of a state, such as the district plaintiffs here, has standing in a *parens patriae* capacity to bring takings or contract claims on behalf of individual landowners against the United States.

In support of their *parens patriae* argument, plaintiffs assemble a list of cases which, on close inspection, provide no support for their arguments, particularly in light of the case law that

has developed since the 1982 Snapp decision. For example, the discussion of the standing of states to assert claims for damages on behalf of their citizens in Kansas v. Colorado, 533 U.S. at 9, is simply inapposite, because that case involved damages claims by one state (Kansas) against *a sister state* (Colorado), not against the United States. See Pls' Memo at 18. United States v. W.R. Grace & Co.-Conn., 185 F.R.D. 184, 190 & n.4 (D. N.J. 1999), does not help plaintiffs either, for the court there correctly stated the general rule that municipalities may not sue as *parens patriae* on behalf of their residents, citing the Ninth Circuit's decision in In re Multidistrict Vehicle Air Pollution decision also cited above. See 185 F.R.D. at 190 & n.4. Moreover, the decision in W.R. Grace involved the denial of a New Jersey township's motion to intervene to challenge a consent decree in a CERCLA cost-recovery action for the clean-up of a contaminated site, and the township's intervention was denied in large part because the township was found to be *only* asserting the interests of its citizens, not its own interests. See id. at 189-90. Plaintiffs' citation to Section 8 of the Reclamation Act and California v. United States, 438 U.S. 645 (1978) (see Pls' Memo at 18-19), is likewise unavailing, because neither the statute nor the Supreme Court's decision addresses whether states, municipalities, or water districts have standing to represent their landowners in a *parens patriae* capacity, let alone to vindicate such an interest in a suit against the United States. Indeed, the Supreme Court's opinion in California v. United States is silent on the whole question of standing, and it does not appear from the opinion that California's claims were brought in a *parens patriae* capacity in any event. See California, 438 U.S. at 652 (summarizing the dispute before the Court as whether the California State Water Resources Control Board had authority to impose conditions on the operation of New Melones Reservoir, a facility of the Bureau of Reclamation's Central Valley Project).

The remaining seven cases relied upon by plaintiffs consist of a 1975 Ninth Circuit

decision and six cases cited by the Ninth Circuit in a footnote in that decision. Compare Pls' Memo at 19-20 with Washington Util. & Transp. Comm'n v. Federal Communications Comm'n, 513 F.2d 1142, 1152 n.13 (9th Cir.), cert. denied 423 U.S. 836 (1975). All seven of these cases pre-date Snapp, Five of these cases cited by the Ninth Circuit in footnote 13 of Washington Utility contain no discussion of the plaintiffs' standing whatsoever, do not mention *parens patriae*, and contain little if any discussion from which one can discern the nature of the interest sought to be vindicated by the plaintiff state or commonwealth. See Wisconsin v. Federal Power Comm'n, 373 U.S. 294 (1963); Philips Petroleum v. Wisconsin, 347 U.S. 672 (1954); New York v. United States, 331 U.S. 284 (1947); California v. Federal Power Comm'n, 296 F.2d 348 (D.C. Cir. 1961), rev'd on other grounds, 369 U.S. 482 (1962); Puerto Rico v. Federal Maritime Bd., 288 F.2d 419 (D.C. Cir. 1961); see also Pls' Memo at 19-20 (citing these cases with little if any analysis). Simply because a court entertained a suit by a state against the United States does not mean that the state was suing the United States in a *parens patriae* capacity; states may sue the federal government to vindicate their own interests, apart from a quasi-sovereign interest in the welfare of their citizens. See, e.g., Kansas v. United States, 16 F.3d at 439. In the sixth case, the D.C. Circuit upheld the *parens patriae* standing of the Government of Guam in a suit against the Federal Maritime Commission, but that precedent is inconsistent with Snapp and more recent D.C. Circuit decisions. Compare Guam v. Federal Maritime Comm'n, 329 F.2d 251, 252 (D.C. Cir. 1964) with Snapp, 458 U.S. at 610 n.16, and Kansas v. United States, 16 F.3d at 439 (holding that Kansas may not sue the United States on behalf of its citizens, citing Snapp, but had standing to sue as an employer). Finally, although the Ninth Circuit in 1975 upheld the standing of the Washington Utility and Transportation Commission to challenge, as *parens patriae*, an action of the Federal Communications Commission, the Ninth Circuit later recognized that its

holding on that very issue "must, of course, give way to the Supreme Court's clear statement in Snapp." Nevada v. Burford, 918 F.2d at 858 (discussing Washington Util. & Transp. Comm'n v. FCC, 513 F.2d at 1153). Thus, Washington Utility's precedential value on the very point for which plaintiffs cite it is now virtually nil in light of subsequent developments in the law on *parens patriae* standing. And, tellingly, not one of these seven cases involved an action against the federal government by a political subdivision of a state such as a city or a water district purporting to act as *parens patriae* for its residents.

Accordingly, plaintiffs' argument that the district plaintiffs can bring takings or contract claims against the United States as *parens patriae* should be rejected.

## IV. CONCLUSION

For the reasons set forth above, plaintiffs' Motion for Partial Summary Judgment on the Standing of the Districts to Bring These Claims on Behalf of Their Water Users should be denied.

Dated: May 4, 2005

Respectfully submitted,

KELLY JOHNSON
Acting Assistant Attorney General
Environment & Natural Resources Division

s/Kristine S. Tardiff
KRISTINE S. TARDIFF
Attorney of Record for the Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583
Fax: (603) 225-1577

STEPHEN M. MACFARLANE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, CA 95814-232
Tel: (916) 930-2204
Fax: (916) 930-2210

REGINALD T. BLADES, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-7300
Facsimile: (202) 307-0972