IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT, *et al.*, Plaintiffs, | ) | |
| v. | ) | No. 01-591 L |
| UNITED STATES OF AMERICA, Defendant, | ) | Judge Francis M. Allegra |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT (dated March 14, 2005)**

Pursuant to RCFC 56(h)(2), defendant hereby responds to plaintiffs' proposed findings of uncontroverted fact, dated March 14, 2005, and filed by plaintiffs in support of their motion for partial summary judgment on the standing of the districts to bring takings and contract claims on behalf of their water users. As required by RCFC 56(h)(1), plaintiffs' proposed findings of uncontroverted fact must contain "concise, separately numbered paragraphs setting forth all of the material facts upon which the party bases its motion and as to which the party believes there is no genuine dispute." In addition, each proposed finding of fact is required to "contain citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." RCFC 56(h)(1).

1. Plaintiff, Klamath Irrigation District (KID), is an Oregon municipal corporation, located in Klamath County, Oregon, organized and existing under Oregon Revised Statutes, ch. 545. KID operates and maintains irrigation and drainage facilities that convey irrigation water from the Klamath Project to approximately 1,200 water users for beneficial use on roughly 43,000 acres of agricultural land within the boundaries of KID, and to water users on an additional 12,000 acres of agricultural land outside the district. Landowners within KID were homesteaders who received title to their land, along with appurtenant water rights, by patent from the United States, and private landowners prior to commencement of the Klamath Project. Prior to 2001, Second Decl. of Dave A. Solem Decl. at ¶¶ 2, 7, 8 (July 14, 2003), Pls. Ex. 8, App. 60; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 1:** Defendant does not dispute the proposed findings of fact contained in the first sentence, and further states that KID was formed in 1918. With respect to the second sentence, Defendant agrees that KID operates and maintains certain facilities and works for the delivery of Klamath Project water pursuant to contract with the United States, and that KID delivers water to lands both within its boundaries and outside of the district. See KID Contract (attached as Exhibit 1 to Pls.' [First] Amended Compl. (March 24, 2003) (Doc. No. 67)). Defendant further states that the facilities and works that KID operates and maintains pursuant to its contract with the United States are owned by the United States. Id. With respect to the acreage figures set forth in the second sentence, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts

that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary.

With respect to the proposed facts set forth in the third sentence of proposed fact number 1, defendant responds that the nature and scope of the alleged right of KID and/or the landowners within KID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005. Defendant further responds that the proposed facts in the third sentence are not fully supported by the evidence cited by plaintiffs. In addition, these facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion and require no response from defendant at this time.

2. Plaintiff, Tulelake Irrigation District (TID), is a California irrigation district formed and existing under the California Irrigation District Law, California Water Code, §§ 20510-29978. Under California law, TID was established by and represents landowners and water users on approximately 68,000 acres in Siskiyou and Modoc Counties, California. TID operates and maintains numerous facilities for the delivery of Klamath Project water and drainage of lands within TID. Some lands within TID were under irrigation prior to the authorization of the Klamath Project, which was served through a canal known as the Adams Canal. After authorization of the Klamath Project, the landowners entered into agreements

with the United States, conveying various properties and rights of way in exchange for a perpetual delivery of water from the Klamath Project through the Adams Canal, which was incorporated into the Klamath Project as the D Canal. The majority of acres served by TID, in excess of 40,000 acres, are lands that were homesteaded, where landowners received patents, along with appurtenant water rights, from the United States. Declaration of Earl Danosky at ¶2,3, 4,9(July 16, 2003), Pls. Ex. 9, App. 67; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 2:** Defendant does not dispute the proposed findings of fact contained in the first sentence, and further states that TID was formed in 1952. With respect to the second sentence, defendant admits that the land within TID is located in Siskiyou and Modoc Counties, California. The precise number of acres within TID is not relied on by plaintiffs' in their motion for partial summary judgment on the question of standing, and therefore is not material to that motion and requires no response from defendant at this time. Defendant agrees that TID was established by its landowners, but does not admit that TID represents its landowners in all matters. Indeed, the question of whether TID can represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed.

With respect to the third sentence, Defendant agrees that TID operates and maintains transferred facilities and works for the delivery of Klamath Project water pursuant to contract with the United States, and that TID delivers water to lands within its boundaries. See TID Contract (attached as Exhibit 2 to Pls.' [First] Amended Compl. (March 23, 2003) (Doc. No.

67)). Defendant further states that the facilities and works that TID operates and maintains pursuant to its contract with the United States are owned by the United States. Id.

With respect to the remaining allegations in this proposed finding of fact, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of TID and/or the landowners within TID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

3. Plaintiff, Klamath Drainage District (KDD), is an Oregon municipal corporation (a drainage district), located in Klamath County, Oregon, organized on March 6, 1915, and existing under Oregon Revised Statutes, ch. 547. Under Oregon law, KDD was established by and represents all landowners within its boundaries. KDD was organized for and engages in the distribution of Klamath Project water for irrigation purposes. There are approximately 27,000 acres of high-value agricultural land within KDD's borders. Prior to 1900, landowners were beneficially utilizing the natural irrigation that was provided by nature on the lands surrounding Lower Klamath Lake and presently within KDD. In 1978, KDD obtained a vested and determined water right from the State of Oregon (Klamath Drainage

District Permit No. 43334). Second Decl. of Sam Henzel Decl. at ¶¶ 3, 6, 14 (July 16, 2003), Pls. Ex. 10, App. 71; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 3:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that KDD was established by its landowners, but does not admit that KDD represents its landowners in all matters. Indeed, the question of whether KDD can represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence, but notes that the purposes for which KDD was formed are defined and limited under applicable Oregon law.

With respect to the proposed findings of fact in the fourth and fifth sentences, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary.

With respect to the allegations in the sixth sentence, defendant responds that the nature and scope of the alleged right of KDD or the landowners within KDD to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005. As explained in defendant's briefs

on the question of whether KDD possesses a water right and a compensable property right, the parties agree that KDD holds a permit to appropriate water from the Klamath River that was issued by the State of Oregon Water Resources Department, but disagree over whether KDD has a "perfected and vested" water right under Oregon law because its hold a permit. Compare Pls.' SJ Brf. (dated 1/16/2004) at 29-32 (Doc. No. 141) with Def.'s SJ Brf. (10/3/2003) at 45-46 (Doc. No. 101) and Def.'s Resp. to Pls.' Proposed Findings Nos. 14-15 (10/3/2003) (Doc. No. 103).

4. Plaintiff, Enterprise Irrigation District (EID), is an Oregon municipal corporation, located in Klamath County, Oregon, organized on March 25, 1918, and existing under Oregon Revised Statutes, ch. 545. Under Oregon law, EID was established by and represents all landowners within its boundaries. EID was organized for and engages in the distribution of Klamath Project water for irrigation purposes. EID operates and maintains irrigation and drainage facilities which convey irrigation water for beneficial use to water users on approximately 1,835 acres of high-value agricultural land within the boundaries of EID. All of the lands presently within EID were in private ownership prior to commencement of the Klamath Project. Second Decl. of Bill Essig at ¶¶ 3, 4 (July 14, 2003), Pls. Ex. 11, App. 91; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 4:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that EID was established by its landowners under Oregon law, but does not admit that EID represents its landowners in all matters. Indeed, the question of

whether EID can represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence, but notes that the purposes for which EID was formed are defined and limited under applicable Oregon law.

With respect to the remaining allegations in proposed finding of fact number 4, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of EID and/or the landowners within EID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the parties' pending cross-motions for summary judgment.

5. Plaintiff, Klamath Basin Improvement District (KBID), is an Oregon water improvement district, located in Klamath County Oregon, organized in July of 1961, and existing under Oregon Revised Statutes, ch. 552. Under Oregon law, KBID was established by and represents all landowners within its boundaries. KBID was organized for and engages in the distribution of Klamath Project water for irrigation purposes. KBID receives water from facilities operated by Klamath Irrigation District (KID), Enterprise Irrigation District, Pine Grove Irrigation District, Malin Irrigation District, Shasta View Irrigation

District, and the VANBRIMMER DITCH COMPANY that convey irrigation water for beneficial use to KBID water users on approximately 10,595 acres of high-value agricultural land within the boundaries of KBID. Decl. of Warren Haught at ¶¶ 2, 3 (July 16, 2003), Pls. Ex. 21, App. 147; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 5:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that KBID was established by its landowners under Oregon law, but does not admit that KBID represents its landowners in all matters. Indeed, the question of whether KBID can represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed.

With respect to the remaining allegations in proposed finding of fact number 5, including the acreage included in KBID, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of KBID and/or the landowners within KBID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

6. Plaintiff, Klamath Hills District Improvement Company (Klamath Hills), is an Oregon corporation formed for the use or control of water, located in Klamath County, Oregon, was organized on September 10, 1981 and exists pursuant to Oregon Revised Statutes, ch. 554. Klamath Hills has no contract with the United States for water delivery, and has no claim in the Klamath Basin Adjudication. Under Oregon law, Klamath Hills was established by and represents all landowners within its boundaries. Klamath Hills oversees irrigation facilities such as pumps, pipes, and distribution systems that convey water for beneficial use on high value agricultural land served by the corporation. Klamath Hills obtained vested and determined water rights to Klamath Project water from the State of Oregon to irrigate 732.65 acres. Second Decl. of S.T. Waldrip at ¶¶ 2, 3,5 (July 16, 2003), Pls. Ex. 19, App. 117; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 6:** Defendant does not dispute the proposed findings of fact contained in the first and second sentences. With respect to the third sentence, defendant agrees that Klamath Hills District Improvement Company (KHDIC) was established by its landowners under Oregon law, but does not admit that KHDIC represents its landowners in all matters. Indeed, the question of whether KHDIC can assert claims on its own behalf or represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed.

With respect to the proposed findings of fact in the third sentence, defendant responds that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to

plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary.

With respect to the proposed findings of fact in the fourth sentence, defendant responds that the nature and scope of the alleged right of KHDIC and/or the landowners within KHDIC to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005. As explained in defendant's briefs on the question of whether KHDIC possesses a water right and a compensable property right, the parties agree that KHDIC holds a permit to appropriate water from the Klamath River that was issued by the State of Oregon Water Resources Department, but disagree over whether KHDIC has a "perfected and vested" water right under Oregon law because its hold a permit. Compare Pls.' SJ Brf. (dated 1/16/2004) at 29-32 (Doc. No. 141) with Def.'s SJ Brf. (10/3/2003) at 45-46 (Doc. No. 101), Def.'s Resp. to Pls.' Proposed Findings Nos. 14-15 (10/3/2003) (Doc. No. 103), and Def.'s SJ Resp. Brf (03/31/2004) at 52-54 (Doc. No. 167). Defendant also disputes the assertion that KHDIC's state-issued permit gives it any contractual or other right to receive Klamath Project water, but notes again that this particular proposed fact does not appear to be material to the question of whether KHDIC has standing to assert takings or contract claims on behalf of the landowners within the district. See Def.'s SJ Brf. (10/3/2003) at 45-46.

7. Plaintiff, Malin Irrigation District (MID), is an Oregon municipal corporation, located in Klamath County Oregon, organized on April 12, 1919, and existing under Oregon Revised Statute Chapter 545. Under Oregon law, MID was established by and represents all landowners within its boundaries. MID was organized for and engages in the distribution of water for irrigation purposes. MID operates and maintains irrigation and drainage facilities that convey irrigation water to water users for beneficial use on approximately 3,190 acres of high-value agricultural land within the boundaries of MID. All of the land within MID was in private ownership prior to construction of the Klamath Project, and was being provided water through local irrigation companies. Second Decl. of Harold Hartman at ¶¶ 2, 3, 5 (July 16, 2003), Pls. Ex. 12, App. 95; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 7:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that MID was established by its landowners under Oregon law, but does not admit that MID represents its landowners in all matters. Indeed, the question of whether MID can assert claims on its own behalf or represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence, but notes that the purposes for which MID was organized are defined and limited under applicable Oregon law.

With respect to the remaining allegations in proposed finding of fact number 7, including the acreage included in MID, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of

standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of MID and/or the landowners within MID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

8. Plaintiff, Midland District Improvement Company (MDIC), is an Oregon corporation, located in Klamath County, Oregon, for use or control of water organized and existing under Oregon Revised Statutes, ch. 552. Under Oregon law, MDIC was established by and represents all landowners within its boundaries. MDIC was created on December 7, 1950. MDIC operates and maintains irrigation and drainage facilities that convey Klamath Project water for beneficial use to water users on approximately 565 acres of high-value agricultural land within the boundaries of MDIC. Second Decl. of Frank Anderson at ¶¶ 2, 3 (July 16, 2003), Pls. Ex. 13, App. 99; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 8:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that MDIC was established by its landowners under Oregon law, but does not admit that MDIC represents its landowners in all matters. Indeed, the question of whether MID can assert claims on its own behalf or represent its landowners in this case is

the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence.

With respect to the remaining allegations in proposed finding of fact number 8, including the acreage included in MDIC, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of MDIC and/or the landowners within MDIC to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

9. Plaintiff, Pine Grove Irrigation District (PGID), is an Oregon irrigation district, located in Klamath County, Oregon, organized in 1918, and existing under Oregon Revised Statutes, ch. 545. Under Oregon law, PGID was established by and represents all landowners within its boundaries. PGID was organized for and engages in the distribution of water for irrigation purposes. PGID operates and maintains irrigation and drainage facilities that convey Klamath Project irrigation water to water users for beneficial use on approximately 925 acres of high-value agricultural land in Klamath County, Oregon. All the land within PGID was in private ownership prior to commencement of the Klamath Project,

and were being irrigated by local irrigation companies. Second Decl. of Aubrey Campbell at ¶¶ 2, 3, 4 (July 16, 2003), Pls. Ex. 14, App. 101; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 9:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that PGID was established by its landowners under Oregon law, but does not admit that PGID represents its landowners in all matters. Indeed, the question of whether PGID can represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence, but notes that the purposes for which PGID was organized are defined and limited under applicable Oregon law.

With respect to the remaining allegations in proposed finding of fact number 9, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of PGID and/or the landowners within PGID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on

March 30, 2005.

10. Plaintiff, Poe Valley Improvement District (PVID), is an Oregon corporation, organized on September 3, 1952, and existing under Oregon Revised Statutes, ch. 554. Under Oregon law, PVID was established by and represents all landowners within its boundaries. PVID was created on September 3, 1952. PVID was organized for and engages in the distribution of Klamath Project water for irrigation purposes to lands within the boundaries of PVID to water users for beneficial use on approximately 2,860 acres of high-value agricultural land within the boundaries of PVID. All the land within PVID was in private ownership prior to commencement of the Klamath Project, and were being irrigated by local irrigation companies. Second Decl. of William D. Kennedy at ¶¶ 2, 3, 5, 6 (July 16, 2003), Pls. Ex. 15, App. 105; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 10:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that PVID was established by its landowners under Oregon law, but does not admit that PVID represents its landowners in all matters. Indeed, the question of whether PVID can represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence.

With respect to the remaining allegations in proposed finding of fact number 10, including the acreage included in PVID, defendant states that these proposed facts are not

relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of PVID and/or the landowners within PVID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

11. Plaintiff, Shasta View Irrigation District (SVID), is an Oregon municipal corporation, located in Klamath County, Oregon irrigation district, organized on February 18, 1918, and existing under Oregon Revised Statutes, ch. 545. Under Oregon law, SVID was established by and represents all landowners within its boundaries. SVID was organized for and engages in the distribution of Klamath Project water for irrigation purposes. SVID operates and maintains irrigation and drainage facilities that conveys irrigation water to water users for beneficial use on approximately 4,100 acres of high-value agricultural land within the boundaries of SVID. Many of the landowners within SVID maintained consistent farming practices using natural irrigation that existed before 1904, and all of the land within SVID was in private ownership prior to the institution of the Klamath Project. Second Decl. of Claude Hagerty at ¶¶ 2, 3, 4 (July 14, 2003), Pls. Ex. 16, App. 108; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 11:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that SVID was established by its landowners under Oregon law, but does not admit that SVID represents its landowners in all matters. Indeed, the question of whether SVID can assert claims on its own behalf or represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence, but notes that the purposes for which SVID was organized are defined and limited under applicable Oregon law.

With respect to the remaining allegations in proposed finding of fact number 11, including the acreage included in SVID, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of SVID and/or the landowners within SVID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

12. Plaintiff, Sunnyside Irrigation District (SID), is an Oregon municipal corporation, located in Klamath County Oregon, organized on April 22, 1918, and existing

under Oregon Revised Statutes, ch. 545. Under Oregon law, SID was established by and represents all landowners within its boundaries. SID was organized for and engages in the distribution of Klamath Project water for irrigation purposes. SID was created on April 22, 1918. SID operates and maintains irrigation facilities that convey irrigation water to water users for beneficial use on approximately 675 acres of high-value agricultural land within the boundaries of SID. Second Decl. of Bill Moore at ¶¶ 2, 3, 4 (July16, 2003), Pls. Ex. 17, App. 112; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 12:** Defendant does not dispute the proposed findings of fact contained in the first sentence. With respect to the second sentence, defendant agrees that SID was established by its landowners under Oregon law, but does not admit that SID represents its landowners in all matters. Indeed, the question of whether SID can assert claims on its own behalf or represent its landowners in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed. Defendant does not dispute the proposed findings of fact contained in the third sentence, but notes that the purposes for which SID was organized are defined and limited under applicable Oregon law. Defendant does not dispute that SID was created on April 22, 1918.

With respect to the remaining allegations in proposed finding of fact number 12, including the acreage included in SID, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but

reserves the right to respond at a later date, when and if necessary. Defendant further responds that the nature and scope of the alleged right of SID and/or the landowners within SID to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

13. Plaintiff, VANBRIMMER DITCH COMPANY (VANBRIMMER), is an Oregon business corporation, organized under and Oregon Act of February 18, 1891. VANBRIMMER operates in accordance with Oregon Revised Statutes, ch. 554. VANBRIMMER represents all landowner shareholders within it boundaries. The facilities of VANBRIMMER are located in Klamath County, Oregon, and consist of a headgate on the C Canal, a main canal and lateral canals. These irrigation and drainage facilities convey Klamath Project irrigation water to water users for beneficial use on approximately 5,050 acres of high-value agricultural land. Prior to the Klamath Project, VANBRIMMER obtained its water rights (and ditches) from the VanBrimmer Brothers. However, in 1909, the United States proposed to change the water level of Lower Klamath Lake for purposes of the Klamath Project, which was anticipated to (and did) completely destroy VANBRIMMER'S source of water supply used for irrigation. Therefore, on November 6, 1909, VANBRIMMER executed a water delivery and repayment contract with the United States under which the United States recognized VANBRIMMER'S vested right to the use of fifty second feet of water for irrigation purposes from the Lower Klamath Lake and agreed to deliver this amount to VANBRIMMER. Gary Orem Decl. at ¶¶2, 3, 6, 7 (July 16, 2003),

Pls. Ex. 20, App. 135; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 13:** Defendant does not dispute the proposed findings of fact contained in the first sentence, and further states that VBDC was incorporated under Oregon law in 1903. With respect to the allegations in the second sentence, defendant states that the assertion that VBDC "represents all landowner shareholders within its boundaries" is unsupported by the evidence cited by plaintiffs. Defendant does not admit that VBDC represents its "landowner shareholders" in all matters. Indeed, the question of whether VBDC can represent its shareholders in this case is the disputed question on which plaintiffs' motion for partial summary judgment and defendant's opposition thereto is directed.

With respect to the remaining proposed findings of fact in the third, fourth, fifth and sixth sentences of proposed finding number 13, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary.

Notwithstanding the lack of materiality and relevance of the proposed facts in the third through sixth sentences, defendant notes that these proposed findings of fact are proposed facts previously presented by plaintiffs in connection with the parties' pending cross-motions for summary judgment on the question of whether VBDC or its shareholders possessed a compensable property right in Klamath Project water in 2001. As indicated above, the nature and scope of the alleged right of VBDC and/or its shareholders to receive

Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

In addition, defendant incorporates by reference its prior responses to these proposed findings of fact. Specifically, defendant disagrees with the assertion that the 1909 contract between Van Brimmer and the United States "recognized VANBRIMMER'S vested right. . . ." Instead, that contract recognized only that Van Brimmer "claims that it has established a vested right to the use of fifty second fee of water for irrigation purposes from the water of Lower Klamath Lake." Pls.' [First] Amended Compl., Ex. 13 at 347 (emphasis added) (Doc. No. 67). With the execution of the 1909 contract, the United States thereby recognized "the right as existing in the Company to the perpetual use of said fifty (50) second-feet of water, according to the provisions set forth herein. . . ." Id. at 351 (emphasis added).

Nonetheless, defendant has not disputed – for the purposes of its motion for summary judgment on the threshold property right question – that the Van Brimmer Brothers (the predecessors in interest to plaintiff VBDC) acquired appropriative water rights under Oregon state law prior to the development of the Klamath Project. See Def.'s SJ Brf. (Oct. 3, 2003) at 9 n.9 (Doc. No. 101). However, on November 9, 1909, VBDC entered into a contract with the United States under which VBDC waived any and all of its riparian water rights, and the United States agreed to deliver in perpetuity 50 cfs to the lands within VBDC for a specified payment by VBDC. See VBDC Contract (attached as Exhibit 13 to Pls.' [First] Amended Compl., March 24, 2003 (Doc. No. 67)). The question of whether VBDC's contractual right to receive such water is a compensable property right is not an uncontroverted fact, but is

instead the disputed question that is presented to the Court for resolution in the pending cross-motions for summary judgment that were argued by the parties on March 30, 2005. However, as noted above, this proposed fact does not appear to be material to the question of whether VBDC has standing to bring takings and contract claims on behalf of its shareholders.

14. Plaintiff, Westside Improvement District (Westside), is a California improvement district, which is located in Siskiyou County, California, organized in 1956, and existing under California Water Code § 23647. Westside was created to provide for the maintenance of the dike that separates the farm land, which lies that an elevation below that of Tule Lake, from Tule Lake. Westside also operates pumps which lift seepage and drain water from Westside land and returns it to Tule Lake. The 1,190 acres of high-value irrigated agricultural land within Westside's boundaries is used to grow grain, alfalfa, potatoes, and onions. Second Decl. of Steve Kandra at ¶¶ 2, 3 (July 18, 2003), Pls. Ex. 18, App. 115; *see also* Klamath Project Map (attached as Ex. 1).

**Defendant's Response to Proposed Finding No. 14:** Defendant does not dispute the proposed findings of fact contained in the first sentence.

With respect to the remaining allegations in proposed finding of fact number 14, defendant states that these proposed facts are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and

if necessary. Defendant further responds that the nature and scope of the alleged right of Westlands and/or the landowners within Westlands to receive Klamath Project water, and whether that alleged right is a compensable property right, is not an "uncontroverted fact," but is instead a question of law. This question of law is disputed by the parties and is the question presented for resolution in the pending cross-motions for summary judgment that were argued on March 30, 2005.

15. The Klamath Reclamation Project (Klamath Project), which straddles the southern Oregon and northern California borders, supplies irrigation water for beneficial use on farms and ranches located in Klamath River Basin. The Klamath Project area includes 240,000 acres of irrigable lands. (There are also national wildlife refuge lands within the Klamath Project area.). 200,000 of the 240,000 total irrigable lands within the Klamath Project receive their water from the Klamath River system that is stored in the Upper Klamath Lake. The remaining 40,000 acres are irrigated with water stored in Clear Lake Reservoir and Gerber Reservoir, and delivered through the Lost River system. In 2001, water deliveries from Clear Lake and Gerber Reservoir were not curtailed, and are not part of this lawsuit. The 176,000 privately owned acres of land in the western portion of the Klamath Project, which are irrigated with water from the Upper Klamath Lake, had their water withheld in 2001. *See* KLAMATH PROJECT HISTORIC OPERATION (HISTORIC OPERATION) at 1, 5,6 (Dept. of Interior Bureau of Reclamation Nov. 2000), *available at* http://www.usbr.gov/mp/kbao/docs/Historic%20Operation.pdf; *see also* MAP AND FACTUAL DATA ON THE KLAMATH PROJECT (Bureau of Reclamation Sept. 2000) (hereinafter "MAP AND FACTUAL DATA "), Pls. Ex. 3, App. 50.

**Defendant's Response to Proposed Finding No. 15:** Proposed fact number 15 is the same as proposed fact number 22 in Plaintiffs' Proposed Finding of Uncontroverted Fact (dated January 16, 2004), and is the same as proposed fact number 1 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated August 29, 2003). Accordingly, defendant incorporates its prior responses to this fact by reference. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact, Resp. to Proposed Fact No. 1 (Oct. 3, 2003) (Doc. No. 103).

16. Authorized in 1905, the Klamath Project was one of the first water projects constructed under the Reclamation Act of 1902. In the Reclamation Act, "Congress set forth on a massive program to construct and operate dams, reservoirs, and canals for the reclamation of the arid lands in 17 Western states." *California v. United States*, 438 U.S. 645, 650 (1978). As with other Reclamation Act projects, the Klamath Project was to be self-sufficient. A "revolving fund was established with moneys received from the sale of public lands, and the Secretary of Interior was directed to survey the west and located and construct irrigation projects, opening up the improved lands to settlement under the homestead laws . . . . Construction costs were to be repaid into the fund by the settlers and landowners in ten annual installments without interest." Frank J. Trelease, *Reclamation Water Rights*, 32 ROCKY MTN. L. REV. 464, 465 (1960), Pls. Ex. 7, App. 58.

**Defendant's Response to Proposed Finding No. 16:** Defendant responds that proposed facts in proposed finding of fact number 16 are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are

material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary.

However, defendant further notes that proposed fact number 16 is the same as proposed fact number 27 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated January 16, 2004), and as proposed fact number 7 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated August 29, 2003). Accordingly, defendant incorporates its prior responses to this fact by reference. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact, Response to Proposed Fact No. 7 (Oct. 3, 2003) (Doc. No. 103).

17. In return for their payments, in compliance with the Reclamation Act, Klamath Project farmers were to receive water rights from the Reclamation Service (later the Bureau of Reclamation). "[T]he right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right." 43 U.S.C. §§ 372, 383 (2003).

**Defendant's Response to Proposed Finding No. 17:** Defendant responds that proposed facts in proposed finding of fact number 17 are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary.

However, defendant further notes that proposed finding of fact number 17 is the same

as proposed fact number 28 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated January 16, 2004), and proposed fact number 8 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated August 29, 2003). Accordingly, defendant incorporates its prior responses to this fact by reference. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact (Oct. 3, 2003) (Doc. No. 103).

18. The states of Oregon and California ceded some of their land (notably the former lake bottoms of Tule Lake and Lower Klamath Lake, which were to be drained by the Klamath project) to the United States.

**Defendant's Response to Proposed Finding No. 18:** Defendant responds that proposed facts in proposed finding of fact number 18 are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date, when and if necessary.

However, defendant further notes that portions of the facts alleged in proposed finding number 18 were referenced in a prior summary judgment brief filed by plaintiffs and that defendant, in its responses to plaintiffs' prior proposed findings, did not dispute that the states of Oregon and California ceded some of their land (notably the former lake bottoms of Tule Lake and Lower Klamath Lake, which were to be drained by the Klamath project) to the United States. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact, Response to Proposed Fact No. 6 (Oct. 3, 2003) (Doc. No. 103).

19. To facilitate payment for their Klamath Project water rights, on May 22, 1903 the landowners formed the Klamath Water Users Association (Association), a corporation to which all water right applicants were required to subscribe. The Association entered into a contract with the United States to guarantee "the payments for the water rights to be issued to the shareholders . . ." The function of collecting money from the landowners and making payments to Reclamation was assumed by KID in 1918, and by other districts as additional units of the Klamath Project came on line. The cost of Klamath Project facilities have long since been paid off, and the plaintiff districts have performed all obligations of their contracts. *See* KWUA 1905 Contract at ¶4 (Plfs.' Amended Compl. App. at Ex. 1, pp.1 (Mar. 24, 2003)); Second Solem Decl. at ¶6 (July 14, 2003), Pls. Ex. 8, App. 60; Second Danosky Decl. at ¶5 (July 16, 2003), Pls. Ex. 9, App. 67; Second Henzel Decl. at ¶13 (July 16, 2003), Pls. Ex. 10, App. 71; Second Hartman Decl. at ¶7 (July 16, 2003), Pls. Ex. 12, App. 95; Second Campbell Decl. at ¶6 (July 16, 2003), Pls. Ex. 14, App. 14; Second Hagerty Decl. at ¶6 (July 14, 2003), Pls. Ex. 16, App. 16; Orem Decl. at ¶7 (July 16, 2003), Pls. Ex. 20, App. 135; Second Anderson Decl. at ¶4 (July 16, 2003), Pls. Ex. 13, App. 99; Second Moore Decl. at ¶4 (July 16, 2003), Pls. Ex. 17, App. 112; Haught Decl. at ¶6 (July 16, 2003), Pls. Ex. 21, App. 147.

**Defendant's Response to Proposed Finding No. 19:** Defendant responds that proposed facts in proposed finding of fact number 19 are not relied upon by plaintiffs in their motion for partial summary judgment on the question of standing, and thus are not facts that are material to plaintiffs' motion. Accordingly, under RCFC 56(h), defendant is not required to respond to these proposed facts at this time, but reserves the right to respond at a later date,

when and if necessary.

However, defendant further notes that proposed fact number 19 is the same as proposed fact number 32 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated January 16, 2004), and as proposed fact number 12 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated August 29, 2003). Accordingly, defendant incorporates its prior responses to this fact by reference. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact, Response to Proposed Fact No. 12 (Oct. 3, 2003) (Doc. No. 103).

20. Plaintiff, KDD holds a vested and determined water right from the State of Oregon in the form of Klamath Drainage District Permit (No. 43334) to Appropriate the Public Waters of the State of Oregon (Sept. 5, 1978) issued by the Oregon Water Resources Department. Second Henzel Decl. at ¶ 14 (July 16, 2003), Pls. Ex. 10, App. 71.

**Defendant's Response to Proposed Finding No. 20:** Proposed fact number 20 is the same as proposed fact number 34 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated January 16, 2004), and as proposed fact number 14 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated August 29, 2003). Accordingly, defendant incorporates its prior responses to this fact by reference. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact, Response to Proposed Fact No. 14 (Oct. 3, 2003) (Doc. No. 103).

21. Plaintiff, Klamath Hills holds a vested and determined water right from the States of Oregon in the form of Klamath Hills Improvement District Permit No. 48435 to

Appropriate the Public Waters of the States of Oregon. *See* Second Waldrip Decl. at ¶ 5 (July 16, 2003), Pls. Ex. 19, App. 118.

**Defendant's Response to Proposed Finding No. 21:** Proposed fact number 21 is a portion of proposed fact number 35 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated January 16, 2004), and of proposed fact number 15 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated August 29, 2003). Accordingly, defendant incorporates its prior responses to this fact by reference. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact, Response to Proposed Fact No. 15 (Oct. 3, 2003) (Doc. No. 103).

22. Plaintiff, VANBRIMMER holds a vested and recognized right to the use of fifty second feet of water for irrigation purposes from the Klamath Project. *See* Orem Decl. at ¶7 (July 16, 2003), Pls. Ex. 20, App. 135.

**Defendant's Response to Proposed Finding No. 22:** Proposed fact number 22 is the same as proposed fact number 36 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated January 16, 2004), and as proposed fact number 16 in Plaintiffs' Proposed Findings of Uncontroverted Fact (dated August 29, 2003). Accordingly, defendant incorporates its prior responses to this fact by reference. See Def.'s Resp. to Plaintiffs' Proposed Findings of Uncontroverted Fact, Response to Proposed Fact No. 16 (Oct. 3, 2003) (Doc. No. 103).

Dated: May 4, 2005

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
Environment & Natural Resources Division

s/Kristine S. Tardiff
KRISTINE S. TARDIFF
Attorney of Record for the Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583
Fax: (603) 225-1577

STEPHEN MACFARLANE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, CA 95814-232
Tel: (916) 930-2204
Fax: (916) 930-2210

REGINALD T. BLADES, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-7300
Facsimile: (202) 307-0972