IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT et al., | |
| Plaintiffs, | No. 01-591 L |
| v. | Judge Francis M. Allegra |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE STANDING OF THE DISTRICTS TO <u>BRING THESE CLAIMS ON BEHALF OF THEIR WATER USERS</u>**

Nancie G. Marzulla
Roger J. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, D.C. 20036
202-822-6760
202-822-6774 (facsimile)

Counsel for Plaintiffs

Dated: May 18, 2005

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES....................ii

ARGUMENT....................1

CONCLUSION....................19

# TABLE OF AUTHORITIES

## Cases

*Butler & Thompson Co. v. City of Ashland*, 109 Or. 683 (1924)....................................................... 8

*Aldridge v. United States, 59 Fed. Cl. 387 (2004)*................................................................. 14

*Alexander v. Central Oregon Irrigation Dist.*, 528 P.2d 582 (Or.App. 1974) ............................ 10

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982) ....................................... 17, 18

*American National Red Cross v. S.G.*, 505 U.S. 247 (1992)........................................................ 9

*Butler & Thompson Co. v. City of Ashland*, 109 Or. 683 (1924)....................................................... 8

*Cent. Delta Water Agency v. State Water Res. Control Bd.*, 21 Cal.Rptr.2d 453 (Cal. Ct. App. 1993) ........................................................................................................................ 9

*Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002)......................... 15, 16

*Central Wyo. Law Assocs. v. Denhardt*, 836 F. Supp. 793 (D. Wyo. 1993)................................ 13

*Coachella Valley County Water Dist. v. Stevens*, 274 P. 538 (Cal. 1929).................................. 10

*Disabled Am. Veterans v. Gober*, 234 F.3d 682 (Fed. Cir. 2000)............................................... 16

*Emerald Int'l Corp. v. United States*, 54 Fed. Cl. 674 (2002)....................................................... 4

*Ensley v. Cody Res., Inc.*, 171 F.3d 315 (5th Cir. 1999)........................................................... 14

*Enterprise Irrigation Dist. v. Enterprise Land & Investment Co.*, 300 P. 507 (Or. 1931.) .......... 10

*Florida v. Weinberger*, 492 F.2d 488 (5th Cir. 1974)................................................................ 19

*Georgia v. Pennsylvania R.R.*, 324 U.S. 439 (1945) ................................................................. 19

*Guam v. Federal Maritime Commission*, 329 F.2d 251 (D.C. Cir. 1964) ................................... 19

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) .................. 15, 17

*Institut National des Appellations d'Origine v. Vintners Int'l Co.*, 958 F.2d 1574 (Fed. Cir. 1992) ........................................................................................................................ 16

*International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock*, 477 U.S. 274 (1986) ........................................................................ 17

*Ivanhoe Irrigation Dist. v. All Parties*, 306 P.2d 824 (Cal. 1957)......................................... 10, 11

*Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490 (Fed. Cir. 1987)............ 16

*Kansas ex rel. Hayden v United States*, 748 F. Supp. 797 (D. Kan. 1999) ................................. 18

*Kent v. N. Cal. Reg'l Office of the Am. Friends Serv. Comm.*, 497 F.2d 1325 (9th Cir. 1974).... 13

*Lozano v. Summit Prairie Cattlemen's Association*, 155 Or.App. 32 (1998).............................. 11

*Massachusetts* v. *Mellon*, 262 U.S. 447 (1923) ......................................................................... 18

*McKinney v. U.S. Dept. of Treasury*, 799 F.2d 1544 (Fed. Cir. 1986) ........................................ 17

*Mellon, see, e.g., Oklahoma v. Civil Service Commission*, 330 U.S. 127 (1947)........................ 19

*Orange County Water Dist. v. City of Riverside*, 343 P.2d 450 (Cal. Ct. App.1959).................. 10

*Orff v. United States*, No. 03-1566 (S. Ct. Feb. 23, 2005)....................................................... 1, 2

*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003)............................... 12

*Paralyzed Veterans Ass'n, Inc. v. Sec'y of Veterans Affairs*, 257 F.3d 1352 (Fed. Cir. 2001) .... 17

*Schwartz v. United States*, 16 Cl. Ct. 182 (1989) ......................................................................... 5

*Smith v. Enterprise Irr. Dist.*, 85 P.2d 1021 (Or. 1939)............................................................. 11

*Smith v. Oregon Dept. of Water Resources*, 880 P.2d 503 (Or.App.,1994) .................................. 9

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966).................................................................. 19

*Standard Mfg. Co. v. United States*, 42 Fed. Cl. 748 (1999) ....................................................... 5

*State of Texas v. Mosbacher*, 783 F. Supp. 308 (S.D. Tex. 1992)............................................... 18

*Stearns Co., Ltd. v. United States*, 34 Fed.Cl. 264 (1995)........................................................... 5

*Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed. Cl. 313 (2001) ......................... 2

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982)................................................................................................ 17

*Washington Utils. & Transp. Comm'n v. FCC*, 513 F.2d 1142 (9th Cir. 1975) .......................... 19

*Westlands Water Dist. v. United States, Dep't of Interior, Bureau of Reclamation*, No. 93-5327, 1994 U.S. Dist. LEXIS 6276 at *1, 13-15 (E.D. Cal. Apr. 28, 1994**)** .................................... 10

*Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992)........................................................... 13

*Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002)............................................. 13

## Statutes

28 U.S.C. § 1491 ................................................................................................ 7

31 U.S.C. 3727.................................................................................................... 4

Cal. Civ. Code § 369........................................................................................... 12

Cal. Water Code § 22654...................................................................................... 8

California Water Code Division 11, Chapter 2.............................................................. 15

Or. Rev. Stat. §547.305......................................................................................... 8

Or. Rev. Stat. §545.025......................................................................................... 8

Or. Rev. Stat. §545.225...................................................................................... 7, 8

Or. Rev. Stat. §554.080......................................................................................... 7

## Other Authorities

Bickel, *The Voting Rights Cases*, 1966 Supreme Court Review 79 (1966) ................................ 19

*State Standing to Challenge Federal Administrative Action: a Reexamination of the Parens Patriae Doctrine*, 125 U. Pa. L. Rev. 1069, 1085 (1977)...................................................... 19

## Treatises

4 Moore's Federal Practice, § 17.13 (3d ed. 2000) .......... 14

6 C. Wright & A. Miller, Federal Practice and Procedure § 1542 (1971) .......... 13

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1542 (2d ed. 1990) .......... 12

C. Wright, Law of Federal Courts 561 (3d ed. 1976) .......... 19

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., | ) | |
| Plaintiffs, | ) | No. 01-591 L |
| v. | ) | Judge Francis M. Allegra |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE STANDING OF THE DISTRICTS TO BRING THESE CLAIMS ON BEHALF OF THEIR WATER USERS**

Plaintiffs' reply to Defendant's opposition to partial summary judgment as follows:[1]

1. Defendant attempts to blunt the force of what the Assistant to the Solicitor Jeffrey P. Minear told the Supreme Court in the oral argument in *Orff v. United States*, No. 03-1566 (S. Ct. Feb. 23, 2005), on March 28, 2005, by characterizing it as nothing more than explaining "why Congress has limited the scope of the waiver of sovereign immunity under Section 390uu . . .." Defendant's Opposition at 14. What Mr. Minear told the Supreme Court goes beyond just a simple explanation of sovereign immunity, however, and reaches to the issue before this Court. To wit, should water districts be entitled to represent their water users in this litigation? When urging the Supreme Court to deny the water users third-party beneficiary status to sue under the contracts between the water districts and the Bureau of Reclamation, the United States

[1] Defendant states that Plaintiffs' motion concerns the takings and breach of contract claims. Defendant's Opposition at 1. Since the water districts have directly contracted with the Bureau of Reclamation, however, the districts obviously have standing to sue for breach of contract. Thus, this motion is limited to the standing of the water districts to sue in a representative capacity on behalf of their water users for takings and Klamath Basin Compact claims.

pointed to the ability of the districts to sue in a representative capacity on behalf of their water users:

> Now, Westlands itself is a governmental unit. It is comprised of the -- very farmers here, among others, who have brought this suit. And it has the authority to act in a representative capacity on behalf of all its members. And that is why the United States enters into contracts with irrigation districts precisely because it allows them to reach accord and agreement and to resolve their disputes. Now, the fact is that the United States and Westlands agree on a great many things. Sometimes they disagree, but when we disagree, we're able to – to speak to one another as two governments representing constituencies and hammer out our differences. And that would be impossible if these types of third party beneficiary suits were allowed.

*Orff v. United States,* No. 03-1566 (S. Ct. Feb. 23, 2005), Tr. Oral Argument at 28-29. Now, in this Court, when faced with a representative capacity lawsuit, the United States argues against the availability of such lawsuits. Having also previously argued that the reason why the United States changed from contracting directly with the individual farmers to contracting with the water districts was to promote efficient management of the water projects, *See, e.g.*, Def.'s Cross-motion for Partial Summary Judgment on Third-party Beneficiary Standing at 3-6, it is strange for the Defendant to now argue, apparently only for purposes of this motion, that dealing directly with the water districts is inappropriate.

2. Defendant also now claims that the parties in *Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed. Cl. 313 (2001) did not agree that the water districts could represent their water users in the takings case brought in this Court, but cites nothing in support of this proposition. *See* Defendant's Opposition at 15. (stating that "the United States is unaware of any such agreement that the state water districts in Tulare could 'represent' their water users . . . .") This issue was first raised in the Joint Preliminary Status Report filed by the parties in *Tulare,* in which the parties expressly addressed this issue:

> Plaintiffs' motion for class certification is pending; defendant opposes that motion. If the motion for class certification is granted, any possible joinder would be unnecessary. If denied, joinder of the 270 water users would be sought. As an alternative, both parties are also exploring an alternative to class certification whereby the water agency and the water districts would sue on behalf of their water users in a representative capacity.

*Tulare Lake Basin Water Storage District v. United States*, No. 98-101 L, Joint Preliminary Status Report at 2(Aug 6, 1998). Thereafter, the parties proceeded to litigate the case with the water districts as representatives of the individual water users. As Defendant accurately notes, the trial judge never ruled on the question of whether the water districts could sue on behalf of the water users in a representative capacity, because the parties never asked the trial judge to do so. Likewise, Defendant never filed a motion to dismiss the water districts as lacking standing to represent the individual water users. Indeed, the *Tulare* case was fully litigated, and then settled, all the while with the water districts suing in a representative capacity on behalf of the individual water users.

The final settlement entered into by the parties in the *Tulare* case reflected the parties' understanding that the monetary damages would ultimately be paid to the end-users (the farmers):

> 2. By way of compromise and settlement, the UNITED STATES shall pay to Plaintiffs the sum of Sixteen Million Seven Hundred Thousand Dollars ($16,700,000.00), as full and final payment of all claims arising out this action, including those by Plaintiffs and interests, if any, derivative of Plaintiffs. The payment shall be made by wire transfer in the amount of $16,700,000.00 to the account of WHEELER RIDGE-MARICOPA WATER STORAGE DISTRICT at Wells Fargo Bank, ABA 12/000248, FFC Kern County Treasurer, Acct 4160101358. The distribution of that payment as among the Plaintiffs (and interests, if any, derivative of Plaintiffs' claims) and as between Plaintiffs and their counsel in this dispute shall be a matter left to Plaintiffs and their counsel.
>
> * * *
>
> 6. The parties agree to execute any and all documents necessary to consummate this settlement, including but not limited to signed authorizations from each of the Plaintiffs expressing approval of this Settlement Agreement and such authorizations as will express

> the approval of interests, if any, derivative of Plaintiffs. Such authorizations must be provided by Plaintiffs and received by the United States prior to the distribution of funds and the dismissal of Plaintiffs' complaint.

*Tulare Lake Basin Water Storage District v. United States,* No. 98-101 L, Settlement Agreement at 1-3 (Dec. 20, 2004).

Thus, while Defendant may now claim that it privately did not agree to allowing the water districts to represent the individual water users in the *Tulare* case, its private reservations are obscured by its public acquiescence in the water districts' exercise of their representative capacity in the that case.

3. Contrary to what Defendant argues, the Anti-Assignment Act, 31 U.S.C. 3727, has no application in this case because the individual water users here have not assigned their claims to anyone or any entity. Defendant cites no case holding that an irrigation district representing its water users in court violates the Anti-Assignment Act. Nor logically, would it since it is the individual water users who seek damages for the taking of their water rights, and who are represented in court by their respective water districts. If damages are awarded, the damages amount will reflect the amount of water owed to the individual water users, and the damages will ultimately be paid to the individuals. *See, e.g.*, *Tulare Lake Basin Water Storage District v. United States*, No. 98-101 L, Settlement Agreement at 1-3 (Dec. 20, 2004).

All of the cases cited by Defendant in its Opposition for the proposition that the Anti-Assignment Act bars the water districts from suing on behalf of their water users in this Court have no application here. *See* Defendant's Opposition at 10. For example, in *Emerald Int'l Corp. v. United States,* 54 Fed. Cl. 674, 682 (2002), the plaintiff was a coal purchaser, who as part of his purchase paid an excise tax, to the seller. The seller of the coal had the choice whether to pass along or absorb the tax. The court held that the Act "precludes even

unintentional assignments—even one, for example, that might be occasioned by shifting to a purchaser the financial burden of a tax imposed by the United States." *Id.* Here, there is no intentional or unintentional assignment. Plaintiffs' harm in this case did not arise because a third party chose to shift the burden onto the plaintiffs; Plaintiffs harm arose independent of a third party's action. Additionally, in *Emerald*, the court decision was based in part on a concern about the potential for *ad infinitum* purchasers to be harmed. Here, the number of water users injured is specific and limited.

Defendant also argues that *Standard Mfg. Co. v. United States*, 42 Fed. Cl. 748, 779-80 (1999), stands for the proposition that plaintiffs standing in a "representational capacity to assert a taking claim on behalf of individual water users, given the individualized nature of takings claims discussed above, runs afoul of the provision of this statute [the Anti-Assignment Act]."

Again, there is no assignment of any claims in this case. Thus, having the water districts sue the United States in a representative capacity does not involve any of the "dangers" Congress sought to avoid by enacting the prohibition. The assignment does not (1) encourage claim trafficking; (2) encourage multiple payment of claims; (3) require reviewing alleged assignments; (4) prevent the defendant from dealing only with the original claimant; or (5) prevent the defendant from raising defenses. For the same reason, the court's reasoning in *Stearns Co., Ltd. v. United States*, 34 Fed.Cl. 264 (1995) ("probability that that the United States could suffer injury in respect of outstanding claims."), does not apply in this case.

Finally, this Court's holding in *Schwartz v. United States*, 16 Cl. Ct. 182 (1989), has no applicability in this case. In *Schwartz*, an attorney sought attorney-fees owed to him. Plaintiff alleged that the "[g]overnment's refusal to pay his client's claim in the form of a joint-payee check, payable to the attorney and his client, constitutes a breach of an agreement between

himself and the Government." *Id.* at 183. The court disagreed, and held the government did not waive the Anti-Assignment statute, the assignment was invalid, and found that Plaintiff's claim was against his client and not the government. *Id.* at 186. Having determined that the attorney's suit against the government was a "claim against the government," the issue became whether Mr. Gray in promising a joint-payee check, waived the requirements of the Anti-Assignment Act to render the assignment valid. *Id.* at 183. The court noted that although the Anti-Assignment may be waived by agents in advance of a claim, there was "insufficient evidence in the record to support a factual finding that Mr. Gray waived applicability of the Act." *Id.* at 188-89.

The court's ultimate decision in that case turned on whether "in the absence of the Anti-Assignment Act, the assignment met the Act's requirements to render the assignment in issue valid and binding on the Government." *Id.* at 189. The court held that it was not a valid assignment because the purported assignment "did not specify the warrant, nor was it attested by two witnesses as the statue explicitly requires; nor did the notary public's certification state that she completely explained the assignment at the time it was acknowledged." *Id.* Therefore, the court concluded that the assignment was not executed with the Act's statutory requirements."

4. Defendant also fails to acknowledge that some of the Plaintiff districts hold water rights in their own name, and thus are unquestionably real parties in interest in this case.[2] *See* Defendant's Opposition at 7 (arguing that "[i]t appears undisputed, therefore, that the *district* plaintiffs own no property interests that were allegedly taken by the government in 2001.") Specifically, Klamath Drainage District and Klamath Hills District Improvement Company hold post-1909 permits to appropriate public water from the State of Oregon in the districts' names, entitling these two districts to receive identifiable quantities of water from the Klamath River.

[2] Arguably, this is what the Court had in mind when it issued its April 21, 2005 Order concerning improper joinder of the Plaintiffs. *But see* Defendant's Opposition at 9 n. 6.

(Rev. Pls.' Findings 14, 15 (Aug. 29, 2003).) VANBRIMMER DITCH COMPANY's contract with the United States expressly reserves to VANBRIMMER its pre-existing right to the use of 50 cubic feet per second of water from the Klamath River system. (Rev. Pls.' Finding 16 (August 29, 2003).)

5. The Defendant's statement that, "[N]either the State of Oregon nor the State of California, through their irrigation district or other laws, can waive the sovereign immunity of the United States," is correct but irrelevant. Defendant's Opposition at 20. The waiver of sovereign immunity on which the districts rely is found in the Tucker Act, the Fifth Amendment and the Klamath Compact, under which claims may be brought by any "real party in interest." RCFC 17. What the districts do contend is that, under RCFC 17, they are real parties in interest in this case, entitled to bring suit under the Tucker Act in "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (2001).

First, each district relies on its status as "a party authorized by statute [which] may sue in that person's own name without joining the party for whose benefit the action is brought." RCFC 17(a). Six of the Plaintiff districts, (Klamath Irrigation District, Sunnyside Irrigation District, Shasta View Irrigation District, Malin Irrigation District, Enterprise Irrigation District, and Pine Grove Irrigation District) are Oregon irrigation districts authorized to "[i]nstitute and maintain all actions and proceedings, suits at law or in equity necessary or proper in order to fully carry out the Irrigation District Law..." Or. Rev. Stat. 545.225(1)(b). Four others (Klamath Hills District Improvement Company, Van Brimmer Ditch Company, Midland District Improvement Company and Poe Valley Improvement District) are "bod[ies] corporate with power: (1) To sue

and be sued," Or. Rev. Stat. §554.080. Two districts (Tulelake Irrigation District and Westside Improvement District) are authorized to "commence, maintain, intervene in, compromise, and assume the costs of any action or proceeding involving or affecting the ownership or use of waters or water rights within the district used or useful for any purpose of the district or of benefit to any land." Cal. Water Code § 22654. Finally, Klamath Drainage District has the authority to file suit "in the acquisition of property or rights by condemnation." Or. Rev. Stat. § 547.305(c).

The Defendant's argument that this case falls outside the authority of the districts to maintain suits under Oregon irrigation district law is refuted by a substantial body of Oregon case law explaining the breath of that authority. Describing Irrigation District Law, the Oregon Supreme Court has held that the purpose of irrigation district law is "the utilization of the water of a stream to irrigate arid and semi-arid lands. The irrigation district law is for the common good and should be liberally construed." *Butler & Thompson Co. v. City of Ashland*, 109 Or. 683 (1924). Accordingly, Or. Rev. Stat. §5445.225(1)(b)'s grant of authority to bring suits necessary and proper to "fully carry out the Irrigation District Law" should be broadly construed. Thus, construed the irrigation district plaintiff in this case have the authority to institute and maintain suits necessary and proper to ensure the utilization of water for the irrigation of the districts lands because the primary purpose of Irrigation District Law is the irrigation of semi-arid and arid land. *Butler & Thompson Co. v. City of Ashland*, 109 Or. 683 (1924); *See also* Or. Rev. Stat. §545.225(1)(b); Or. Rev. Stat. §545.025 (listing as a purpose for organizing an irrigation district the desire to provide for the operation of irrigation works). It follows then that among those suits necessary and proper to fully carry out Irrigation District Law are contract and takings claims

occasioned by the Defendant's failure to deliver water to which the districts' water users have a right.[3]

The logic behind these provisions is self-evident—absent the ability to defend their water users' water rights the districts would be unable to carry out their primary purpose. Specifically, in the absence of the delivery of water the irrigation districts could not be able to operate in a manner such that the lands within their respective boundaries are irrigated.

The Defendant cites no authority whatever for the proposition that the districts' authority is insufficiently broad to encompass this suit, nor that the authorization must somehow specifically mention just compensation and contract claims, or this Court, or federal jurisdiction. *Compare American National Red Cross v. S.G.*, 505 U.S. 247 (1992)(holding federal courts have original federal jurisdiction in all cases involving the Red Cross because of "a separate and independent jurisdictional grant, in this case, the Red Cross Charter's "sue and be sued" provision.") Nor can the Defendant explain the myriad of cases brought by or against Oregon and California districts to accomplish their statutory purposes. *See, e.g.*, *Smith v. Oregon Dept. of Water Resources***,** 880 P.2d 503 (Or.App.,1994)( Farmer brought action for declaratory and injunctive relief and damages against Department of Water Resources and irrigation district for failure to provide him with irrigation water.); *Cent. Delta Water Agency v. State Water Res. Control Bd.*, 21 Cal.Rptr.2d 453, 456 (Cal. Ct. App. 1993); *Alexander v. Central Oregon*

[3] This statutory grant of authority to sue or be sued is echoed in the districts by-laws. For example, Klamath Irrigation District's by-laws provide that:

> The primary goal of the Klamath Irrigation District shall be to acquire and maintain an assured, adequate supply of water and to deliver the water for beneficial use on qualified land within the Klamath Project. Subsidiary objectives in the administration of District affairs shall be … To represent its water user members before governmental agencies, the legislature, Congress, and in such other forums as appropriate for the perfection and protection of their water rights.

Klamath Irrigation District By-laws at Section II.

*Irrigation Dist.*, 528 P.2d 582 (Or.App. 1974)( Plaintiffs, owners of lands within the boundaries of defendant Central Oregon Irrigation District, brought a declaratory judgment suit seeking to have certain water rights acquired by defendant district in 1958 impressed with a constructive trust in plaintiffs' favor); *Orange County Water Dist. v. City of Riverside*, 343 P.2d 450, 469 (Cal. Ct. App.1959) ("[W]e hold, then, both (1) that a cause of action has been stated and (2) that the plaintiff District has the necessary standing in court to maintain it."); *Ivanhoe Irrigation Dist. v. All Parties*, 306 P.2d 824, 840 (Cal. 1957); *Enterprise Irrigation Dist. v. Enterprise Land & Investment Co.***,** 300 P. 507 (Or. 1931.); *Coachella Valley County Water Dist. v. Stevens,* 274 P. 538 (Cal. 1929); *Westlands Water Dist. v. United States, Dep't of Interior, Bureau of Reclamation*, No. 93-5327, 1994 U.S. Dist. LEXIS 6276 at *1, 13-15 (E.D. Cal. Apr. 28, 1994).

Thus, the general "sue and be sued" language is sufficient to support this action, and that no more specific enumeration of the causes of action that may be brought or the courts in which they may be filed is necessary to qualify these districts as authorized to bring this suit under Rule 17.

6. Defendant mistakenly identifies the districts' argument that they are trustees for their water users as another "by-analogy assertion," ignoring that the courts of both Oregon and California have held that such districts are actual trustees, and that their water users are truly beneficiaries to whom the districts owe a fiduciary obligation. Defendant's Opposition at 27.

Oregon courts have described a trust as follows:

> A trust is an equitable obligation, either express or implied, resting upon a person by reason of a confidence reposed in him to apply or deal with property for the benefit of some other person, or for the benefit of himself and another or others, according to such confidence. An express trust is one in which the circumstances show that the grantor of the property intended to create a trust. …An essential aspect of an express or a resulting trust is that the putative trustee has received property under conditions that impose a fiduciary duty to the grantor or a third person.

*Lozano v. Summit Prairie Cattlemen's Association*, 155 Or.App. 32, 36-8 (1998)(discussing Oregon Supreme Court precedent)(internal citations and quotations omitted).

First, contrary to Defendant's suggestion, the creation of an express trust does not require execution of a document by the beneficiaries. Thus, although the Defendant chides the districts because they "do not cite to or rely upon an express trust-instrument in this case," the Defendant subsequently admits that an express trust may be created statutorily "for example, when federal law confers a trustee with standing to bring a suit on behalf of a trust estate, as is the case under federal bankruptcy law." Defendant's Opposition at 27. That is precisely what the legislatures of Oregon and California have done with respect to the districts they have created, granting them authority to sue as trustees on behalf of their water users (for whom they hold property, including water they deliver, in trust).

Second, Defendant's characterization of the Oregon Supreme Court's holding in *Smith v. Enterprise Irr. Dist*. as "the use of the trustee metaphor," Defendant's Opposition at 27, is contradicted by the language of the opinion itself, which uses neither metaphors nor analogies but expressly holds: "The relationship between an irrigation district and its constituent landowners as to the water rights and other property of such district is that of trustee and *cestuis que trustent*." 85 P.2d 1021, 1024 (Or. 1939) (citing *Jenison v. Redfield*, 87 P. 62, 64 (Cal. 1906) (quoting California Irrigation Act (Wright Act) of 1897, St. 1897 § 29 p. 263 c. 1890)

Importantly, the Defendant does not even challenge the California Supreme Court's holding that the California districts (Tulelake and Westside) qualify as trustees of express trusts. *See Ivanhoe Irrigation Dist. v. All Parties*, 306 P.2d 824, 840 (Cal. 1957) ("It has long been the established law of the state that an irrigation district is trustee for the landowners within the

district . . . ."), *rev'd on other grounds,* 357 U.S. 275 (1958); *see also* Cal. Civ. Code § 369 ("The following persons may sue without joining as parties the persons for whose benefit the action is prosecuted: . . . (2) A trustee of an express trust.").

7. Defendant also falls into the trap of confusing Article III standing, a jurisdictional issue, with the procedural issue of whether the districts have the capacity under RCFC 17 to bring this suit. *See* Defendant's Opposition at 9, 17-19. "Courts and attorneys frequently have confused the requirements for standing with those used in connection with real party in interest or capacity principles." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1542 (2d ed. 1990). Under the Defendant's analysis, Rule 17's authorization for "[a]n executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute" to bring suit "in that person's own name without joining the party for whose benefit the action is brought" would be unconstitutional, for it authorizes persons who have not themselves suffered the injury in fact to sue in their own name on behalf of the party who has, in fact, been injured. *See* Defendant's Opposition at 17-19.

In *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003), the Federal Circuit illustrated the distinction between the Rule 17 determination of capacity to sue and standing by finding first that the plaintiff (a dissolved corporation) was a real party in interest under Rule 17, but that it nevertheless lacked standing because it did not own the patent on which it sued for infringement. The Federal Circuit explained:

> It appears that under Florida law, the appellant had capacity to sue at the time of the complaint, at least insofar as the suit for patent infringement was "necessary to wind up and liquidate its business and affairs." Under Federal Rule of Civil Procedure 17(b), "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." . . . [However,] at the time the appellant filed its suit, it agrees that it did not have enforceable rights to the

> patent and did not have standing to assert federal jurisdiction. It cannot rely on the Florida corporate revival statute to retroactively claim enforceable patent rights on the day it filed its complaint, in order to assert standing.

*Id.* at 1307, 1310 (internal citation omitted).

Because standing is jurisdictional, it may be raised for the first time on appeal, but lack of capacity to sue is a waivable defect. *See Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) ("Standing and real-party-in-interest questions do overlap to the extent that both ask whether the plaintiff has a personal interest in the controversy. But the question whether the suit should be brought by the Whelans or the Corporation really depends, as we have noted, on considerations and conventions of corporate law.") *See also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532-33 (6th Cir. 2002) (noting that the Fifth Circuit, the Ninth Circuit and the District of Columbia Circuit have acknowledged that there is a distinction between questions of Article III standing and Rule 17(a) real party in interest objections); *Kent v. N. Cal. Reg'l Office of the Am. Friends Serv. Comm.*, 497 F.2d 1325, 1329 (9th Cir. 1974) ("There is no doubt that as to the trust fund, the trustees are the real party in interest by virtue of Fed. R. Civ. P. 17(a). But Rule 17(a) means only that the trustees have a real interest in the trust fund. Rule 17(a) does not give them standing; 'real party in interest' is very different from standing." (citing 6 C. Wright & A. Miller, Federal Practice and Procedure § 1542, at 641 (1971)); *Central Wyo. Law Assocs. v. Denhardt,* 836 F. Supp. 793, 799 (D. Wyo. 1993), *rev'd on other grounds*, 60 F.3d 684 (10th Cir. 1995) ("Defendants' brief uses the phrase "real party in interest" and "standing" interchangeably. The Court notes that while there is some overlap between these two doctrines, they are not synonymous since each serves a distinct purpose.") Thus, in determining standing, the Court must look to the claim of the injured party rather than the personal claim of his or her guardian,

executor or trustee; otherwise, the claim of a minor or incompetent, a decedent or a beneficiary of a trust might never be brought.

In this case, the Court has before it both the representatives (the districts) and the injured parties (i.e., the water users). The issue is not, as the Defendant asserts, whether a case or controversy exists. *See Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) ("The real issue is not whether there is jurisdiction, but the prudential limitation on our exercise of that jurisdiction over a jus tertii/third party plaintiff. Although the cases Cody cites refer to lack of standing as a shareholder, not one holds that the inquiry is jurisdictional or that the objection may not be waived.") (emphasis added); but merely whether the districts have the capacity under Rule 17 to bring this claim on behalf of the injured water users.[4] Lack of real party in interest status, however, is not a jurisdictional defect. *Aldridge v. United States*, 59 Fed. Cl. 387, 390 (2004) (citing 4 Moore's Federal Practice, § 17.13 (3d ed.2000)). Nor is every party who meets standing requirements also a real party in interest. *Id.* (citing 4 Moore's Federal Practice, § 17.10 (3d ed.2000)).

Accordingly, the sole issue before the Court on this motion is whether the districts have the capacity to sue on behalf of their water users under RCFC 17. This is a different issue from the standing question of whether the water users have an injury in fact sufficient to afford this Court "case or controversy" jurisdiction over this case.

8. The Defendant's assertion that the districts (although they are government agencies) lack the indicia of voluntary membership organizations which led the Supreme Court to hold that the Washington State Apple Advertising Commission (also a state government agency) had associational standing overlooks unambiguous statutory and case law to the contrary. *See Hunt v.*

*Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). For example, Or. Rev. Stat. § 545.025 describes the voluntary formation of irrigation districts:

> *When owners of land* that is irrigated or susceptible to irrigation *desire to provide* for the construction of works for irrigation of their land, to provide for the reconstruction, betterment, extension, purchase, operation or maintenance of works already constructed, or to provide for the assumption of indebtedness to the United States incurred under the federal reclamation laws on account of their lands, *they may propose the organization of an irrigation district* under the Irrigation District Law by signing a petition and filing it with the county court of the principal county, as defined in ORS 198.705. The petition must be signed by a majority of the owners of land or 50 owners of land within the exterior boundaries of the proposed district.

(emphasis added.)The formation of irrigation districts in California is similarly voluntary. *See* California Water Code Division 11, Chapter 2.

*Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) is a Ninth Circuit holding directly on point. Holding that two California water agencies had associational standing to represent their water users, the court there stated:

> Because the Central Delta and South Delta Water Agencies are charged by the State of California with protecting a dependable supply of high-quality water for the Delta areas concerned here, CAL. WATER CODE APPENDIX, § 116-4.1, both agencies have standing to bring this action under the test established by the Supreme Court in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977).
>
> …
>
> The organizational plaintiffs here are government agencies, not private associations. Nevertheless, the associational standing analysis prescribed in Hunt is applicable to the question whether the Central and South Delta Water Agencies have standing. The plaintiff in Hunt was a state commission formed to support the apple-growing industry; the Supreme Court concluded that "the Commission, while admittedly a state agency, for all practical purposes, performs the functions of a traditional trade association representing the Washington apple industry ...."

*Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002).

[4] Defendant did not cross move to dismiss for lack of jurisdiction. Should the Court consider dismissal of any claim or plaintiff to be pending before it, plaintiffs request the opportunity to brief and argue that issue separately from the Rule 17 capacity to sue issue.

The Defendant's chicken and egg paradox (i.e., the court must assume for purposes of this motion that the water users have a cause of action, but it cannot reach that issue until the liability case is decided either on motion or at trial) should give the Court little pause, for this is true of all standing inquiries. To require every member of an association to first prove up his or her individual claim prior to granting standing to the association (so that all of the individual members would not have to prove up their separate cases) is no part of the Supreme Court's *Hunt* analysis, and would defeat the whole purpose of associational standing. The Federal Circuit has never made this a requirement for associational standing, so far as Plaintiffs are aware. *See, e.g., Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 491, 493-94 (Fed. Cir. 1987) (holding that a nonprofit jewelry trade association whose stated purpose was to "protect public confidence in the jewelry industry, develop and maintain trade standards, and promote fair dealing in the jewelry industry" had standing to oppose a trademark application that allegedly infringed on a member's slogan, even where the association lacked proprietary or other rights in that trademark, as long as the association alleged an adverse effect on its own or its members' interests); *Institut National des Appellations d'Origine v. Vintners Int'l Co.*, 958 F.2d 1574 (Fed. Cir. 1992) (holding that a French government agency has standing to challenge a trademark which might impair the value of wines made in the Chablis region); *Disabled Am. Veterans v. Gober*, 234 F.3d 682 (Fed. Cir. 2000) (holding that several veterans organizations had standing to assert rights of individuals regarding Veterans Administration rules affecting some members individually).

The Federal Circuit has also clarified that it is the injury to the individual members which affords "case or controversy" standing in such cases, and that an organization which has not itself suffered an injury still has standing to assert the injury of its members. *See, e.g., McKinney*

*v. U.S. Dept. of Treasury*, 799 F.2d 1544, 1550 (Fed. Cir. 1986)("The Supreme Court has also recognized that an organization may have standing to assert the claims of its members, even where the organization itself has not suffered an injury from the putatively unlawful action. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). But this doctrine does not vitiate the injury requirement imposed by Article III, for the organization derives its standing in part by showing that its members have incurred an actual or threatened injury. *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock*, 477 U.S. 274 (1986); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 476 n.14 (1982))(parallel citations omitted).

Finally, the Defendant's point that the result here should somehow be different because the Court of Federal Claims has an "opt in" rather than an "opt out" preference in class actions has no bearing on the associational standing issue. Only if the districts are found not to have the capacity to represent their members in this case does the fallback of a class action become relevant. To the extent that the Defendant means to suggest that associational standing does not apply where some (but not all) members are injured (not that that is this case), it is simply incorrect. *See, e.g.*, *Paralyzed Veterans Ass'n, Inc. v. Sec'y of Veterans Affairs*, 257 F.3d 1352 (Fed. Cir. 2001) (holding that veterans' association may challenge medical rules affecting at least two of its members).

9. Defendant relies exclusively on a footnote in the case of *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982), to defeat the districts' *parens patriae* standing. That footnote, however, is a slender reed on which to rest the Defendant's entire argument, as a federal district court cogently notes:

> The defendants claim a state may not sue the federal government in its parens patriae capacity by citing Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S.

> 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). In a footnote the Court stated "[a] State does not have standing as parens patriae to bring suit against the Federal Government," Id. at 610 n. 16, 102 S.Ct. at 3270 n. 16, citing Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). It is not clear how definitive this assertion is, however. The statement was made in light of a case which did not raise the issue of whether a state might have parens patriae standing when bringing suit against the United States. In fact Mellon, the case which the footnote relied on for its authority, stated "[w]e need not go so far as to say that a state may never intervene by suit to protect its citizens against any form of enforcement of unconstitutional acts of Congress." Mellon, 262 U.S. at 485, 43 S.Ct. at 600. The Eleventh Circuit was faced with deciding a state's capacity to sue in a parens patriae capacity and recognized Alfred L. Snapp did not decisively deal with the question. Chiles v. Thornburgh, 865 F.2d 1197, 1209 (11th Cir.1989). The Chiles court declined to rule on the issue because it felt the case was not a proper one with which to break new ground.

*State of Texas v. Mosbacher*, 783 F. Supp. 308, 316 (S.D. Tex. 1992) (footnote citations omitted).

Rejecting the *Snapp* footnote, another district court granted *parens patriae* standing to a state to sue the federal government:

> Moreover, the plaintiff has articulated a second basis for standing under the doctrine of *parens patriae* by its assertion of its interest in assuring that its citizens are not denied the "full benefit of federal laws designed to address [unemployment caused by disasters]." Therefore, the court finds that the plaintiff has standing and, in accordance with the preceding section, has alleged a claim for which relief may be granted. Therefore, the court will deny defendants' motion to dismiss for lack of subject matter jurisdiction on grounds that the plaintiff lacks standing.

*Kansas ex rel. Hayden v United States*, 748 F. Supp. 797, 802 (D. Kan. 1999) (alteration in original), *dismissed on reconsideration on other grounds*, 751 F. Supp. 1495 (D. Kan. 1990).

Commentators have questioned the reliability of the Supreme Court's holding in *Massachusetts* v. *Mellon*, 262 U.S. 447 (1923) (cited in *Snapp* as the sole authority for footnote 16). *See, e.g.*, C. Wright, Law of Federal Courts 561 (3d ed. 1976); Bickel, *The Voting Rights Cases*, 1966 Supreme Court Review 79 (1966); *see also State Standing to Challenge Federal Administrative Action: a Reexamination of the Parens Patriae Doctrine*, 125 U. Pa. L. Rev.

1069, 1085 (1977) ("Thus, the Court took a less than coherent view of the propriety of a state parens patriae suit to prevent the federal government's enforcement of unconstitutional acts: the Court first acknowledged that such suits might be allowed in unspecified circumstances, but then a few sentences later all but foreclosed such suits by asserting that the United States represents a state's citizens as parens patriae against the federal government. Another ambiguity is that the Court's holding is limited to barring state parens patriae suits against the federal government's enforcement of allegedly unconstitutional laws, although the language of the Court's opinion might be read to extend to all federal government activity, thereby denying a state a parens patriae role in enforcing its citizens' rights 'in respect of their relations with the Federal Government.'").

Thus, Defendant's cavalier dismissal of the numerous cases disregarding the holding in *Mellon*, *see, e.g.*, *Oklahoma v. Civil Service Commission*, 330 U.S. 127 (1947); *South Carolina v. Katzenbach*, 383 U.S. 301 (1966); *Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 450-51 (1945); *Washington Utils. & Transp. Comm'n v. FCC*, 513 F.2d 1142 (9th Cir. 1975); *Florida v. Weinberger*, 492 F.2d 488 (5th Cir. 1974); *Guam v. Federal Maritime Commission*, 329 F.2d 251 (D.C. Cir. 1964), simply because they were decided prior to *Snapp*, is untenable. In any event, the Federal Circuit does not seem to have ruled on this issue and, since neither the *Snapp* footnote nor the holding in *Mellon* (allowing that exceptions may exist where states do have authority to sue the federal government *parens patriae*) forecloses such a holding. Accordingly, the better view is that the *parens patriae* standing of the water districts is not foreclosed.

**Conclusion**

For all of these reasons, Plaintiffs urge this Court to grant their motion for partial summary judgment, allowing the water districts to represent their water users in this litigation.

Respectfully submitted,

s/ Nancie G. Marzulla
Nancie G. Marzulla
Roger J. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, D.C. 20036
202-822-6760
202-822-6774 (facsimile)

Dated: May 18, 2005

Counsel for Plaintiffs