IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT, et al., | |
| Plaintiffs, | |
| v. | No. 01-591 L |
| UNITED STATES OF AMERICA, | |
| | Judge Francis M. Allegra |
| Defendant, | |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, | |
| Defendant-Intervenor. | |

**DEFENDANT'S SUPPLEMENTAL BRIEF ON THE PROPERTY RIGHT ISSUE**

Pursuant to the Court's Order of April 21, 2005, defendant submits this supplemental brief responding to the arguments raised in plaintiffs' motion for reconsideration (Doc. 225) regarding the property right issue currently pending before the Court.

Plaintiffs assert that they possess a property right to use Klamath Project water for irrigation purposes, and that the United States has no authority to "reallocate" their alleged water right to other uses. Plaintiffs further assert that there is no right to use Klamath Project water "for any fish protection purpose" or "for species habitat maintenance." Pls.' Mot. at 15-16. In making these assertions, which are premised on the unsupported assumption that plaintiffs own the Klamath Project water, plaintiffs ask this Court to take a myopic view of Klamath Project operations. The Klamath Project does not exist and operate in a vacuum, and the water delivered by the Project is not a stand-alone quantity of water that is always available, every year, for irrigation purposes and irrigation purposes alone. The use of the waters of the Klamath River Basin cannot be so easily compartmentalized in this way.

Instead, there are many resources and interests that depend on water from the Klamath

River Basin, including Indian trust resources, irrigation interests (including Reclamation's contractual obligations to deliver water for irrigation purposes), and fish and wildlife resources (including several National Wildlife Refuges and the obligation to comply with the Endangered Species Act). All of these resources and interests are impacted, directly or indirectly, by the operation of the Klamath Project. The United States thus has an obligation to manage and operate the Klamath Project in a manner that is consistent with senior water rights, tribal trust resources, contractual rights to irrigation water, the National Wildlife Refuges within the Basin, the Endangered Species Act ("ESA") and other requirements mandated by law and within the authority of the Secretary. Pl. Ex. 2; Pl. Ex. 28. Accordingly, the question is not whether the United States "reallocated" Klamath Project water to a use other than irrigation in 2001, it is whether water was available, pursuant to the contract terms and applicable state and federal law, to satisfy Reclamation's contractual obligations.

In asserting that the United States has no authority to reallocate Klamath Project water to uses other than irrigation, plaintiffs rely on and repeatedly quote from a 1996 letter from an Oregon Assistant Attorney General to the Director of Oregon's Water Resources Department (OWRD). Pl. Ex. 43. Several points bear mentioning with respect to this 1996 letter. First, this letter was written in the context of anticipating and describing "the types of claims likely to be asserted by the federal government in the Klamath Basin adjudication." Pl. Ex. 43 at 286. The letter occurred one year before the claims were filed and does not represent a determination by OWRD of the United States' water right claims, which are still pending.

Second, plaintiffs make no reference to a 1997 written review and response to the Oregon letter prepared jointly by two Regional Solicitors' offices of the Department of the Interior. This 1997 memorandum "reaffirms long-standing positions of the United States regarding

management of water projects for irrigation, wildlife protection, and Indian rights, and builds on the July 25, 1995, memorandum from the Regional Solicitor, Pacific Southwest Region, to the Regional Director, Bureau of Reclamation, Mid-Pacific Region (July 25 memorandum)." 1997 Reg. Solicitor's Mem. at 2 (Pl. Ex. 28 at 208). The 1997 memorandum describes Reclamation's obligations in managing and operating the Klamath Project as follows:

> [p]ending completion of the adjudication, Reclamation is authorized and obligated to manage and operate the Klamath Project consistent with all of Reclamation's responsibilities and obligations concerning senior water rights, tribal trust resources, Project water users' contractual rights, the Endangered Species Act and other requirements mandated by law and within the authority of the Secretary.

Pl. Ex. 28 at 217. The 1995 memorandum referenced in the 1997 memorandum also discusses Reclamation's obligations with respect to Klamath Project water users, the wildlife refuges, the tribes, and under the ESA. Pl. Ex. 2 at 46-47. With respect to the contractual obligation of the United States to deliver water for irrigation, the 1995 memorandum states that this obligation is "subject to the availability of water[,]" explaining further that "[w]ater would not be available, for example, due to drought, a need to forego diversions to satisfy prior existing rights, or compliance with other federal laws such as the Endangered Species Act."[1] Id. at 46. The contracts at issue in this case nearly all include language expressly recognizing that water may not be available for delivery under the contract due to drought or other causes, and limiting the liability of the United States when such a shortage occurs. See Def. SJ Brief at 19-24 (Doc. 101) (discussing shortage provisions in the contracts).

---

[1]Some of plaintiffs' arguments stem from the characterization of Upper Klamath Lake (UKL) as a storage facility where water is "impounded" and the assertion that such water is thereafter not available for any use except irrigation. This characterization is misleading and inaccurate. UKL is a natural lake that existed prior to the development of the Klamath Project. The development of the Project included construction of a dam that would allow water in UKL to be released below its natural outlet, thereby lowering the lake's water level. Pl. Ex. 5 (Act of Feb. 9, 1905); Def. Ex. 1 at 32-33, 44-47. Thus, not all UKL water is impounded or stored water.

The availability of Klamath Project water for irrigation purposes is limited by the existence of treaty-based or otherwise federally reserved tribal fishing and water rights in the Klamath River basin that are "senior" in priority to the Klamath Project water rights under Oregon's prior appropriation system. First, the Klamath Tribes have an implied water right with a priority date of time immemorial to support their right to hunt, gather, and fish that was guaranteed by an 1864 treaty. United States v. Adair, 723 F.2d 1394, 1408-15 (9th Cir. 1983), cert. denied sub nom, Oregon v. United States, 467 U.S. 1252 (1984). These rights affect the operation of the Klamath Project because the Upper Klamath Lake serves as habitat for the endangered Lost River and shortnose sucker fish, both of which are a traditional food source for the Klamath Tribes.[2] Second, the Yurok and Hoopa Tribes in California (downstream of the Klamath Project area) also hold rights to take fish within their reservations through a series of nineteenth century executive orders and as confirmed to them by the 1988 Hoopa-Yurok Settlement Act, 25 U.S.C. § 1300i, *et seq*. See United States v. Eberhardt, 789 F.2d 1354, 1359 (9th Cir. 1986); Parravano v. Babbitt, 70 F.3d 539, 547 (9th Cir. 1995), cert. denied, 518 U.S. 1016 (1996). These tribal rights may affect the amount of water that must flow from the Klamath Project into the lower Klamath River.

The United States must operate the Klamath Project consistent with these senior tribal fishing rights. See, e.g., Kittitas Reclamation Dist. v. United States, 763 F.2d 1032 (9th Cir.

[2]The precise quantification of the Klamath Tribes' water rights will be initially determined in the Adjudication. The federal Indian reserved water right claims filed in the Adjudication by the Klamath Tribes and by the United States on behalf of the Klamath Tribes include: the right to instream flows in the tributaries above Upper Klamath Lake ("UKL") and instream flows in the Klamath River below UKL; water levels in UKL to protect trout and the endangered sucker fish in the Lake; water levels in the Klamath Marsh; and seeps and springs within the boundaries of the former Klamath Reservation. See Def's Reply to Mot. to Stay, Ex. 14, Attachment 2 (BIA's claim to water from UKL) (Doc. 59).

1985), cert. denied, 474 U.S. 1032 (1985); see also 1997 Reg. Sol. Mem. at 4-7 (Pl. Ex. 28). Water that is needed to satisfy senior tribal water rights may not be available to satisfy other uses, including contractual rights to receive Project water.[3] See Def. SJ Brief at 25-27 and cases cited therein (Doc. 101).

The availability of water for irrigation pursuant to the contracts at issue in this case may also be affected by ESA. Reclamation is obligated to manage and operate the Klamath Project pursuant to its contracts for water delivery and in a manner that meets its other legal responsibilities, including obligations to avoid jeopardy to species listed as threatened or endangered under the ESA. Contrary to plaintiffs' assertion, Reclamation's operation of the Klamath Project in a manner that complies with federal laws, including the ESA, is not a reallocation of Project water, although such compliance is a factor that may affect how much water is available for irrigation contracts. See Pl. Ex. 2 at 48; Pl. Ex. 28; Def. SJ Brief at 22-24 (Doc. 101).

Plaintiffs assert that Klamath Project water cannot be used "for species habitat protection." Pls.' Mot. at 16. In addition to the need for fish habitat protection described above, this assertion also ignores the fact that the Klamath Basin is "[a] strategic junction in the routes of the Pacific Flyway" and "annually receives the largest concentration of migratory waterfowl in North America." Pl. Ex. 3 (factual data on back of map). In recognition of the importance of this area to these species, several National Wildlife Refuges ("NWRs") were created in the Basin, including two that are within the Klamath Project boundaries and depend on Project operations. See Pl. Ex. 3. The Lower Klamath NWR was created by Executive Order in 1908

[3]Defendant notes that the Klamath Basin Compact, which plaintiffs rely on, expressly acknowledges the existence and status of Indian water rights, and provides that nothing in the Compact shall be deemed to affect adversely such rights. Compact, Art. X (Pls. Ex. 1, p. 38).

"as a preserve and breeding ground for native birds." Pl. Ex. 2 at 42. In addition, the Tule Lake NWR, encompassing approximately 39,000 acres, was created by Executive Order in 1928 "as a refuge and breeding ground for birds." Id. Both NWRs receive water through Klamath Project facilities. Some of this water is used for irrigation on NWR lands that are leased to farmers. The remaining water delivered to the NWR lands serves to carry out the migratory waterfowl and other wildlife purposes for which the refuges were created and are managed. Id. The operations of these NWRs are thus "integral with the operations of the Klamath Project."[4] Def. Ex. 2 at 174. The United States has filed claims for water rights in the Adjudication for its NWR lands. The United States claims the same 1905 priority as the Project for those federal lands that are leased for agricultural purposes and for certain seasonal wetlands in the NWRs, and also claims a federal reserved water right for other NWR lands with a later priority date.

The interrelation between the management of the Klamath Project for irrigation purposes and NWR purposes was expressly addressed by Congress in the 1964 Kuchel Act. Act of September 2, 1964, Pub. L. 88-567, 78 Stat. 850, 16 U.S.C. §§ 695k-695r. The declared purpose of the Act, reflected throughout the Act and in the "policy" statement in Section 1 of the Act, is:

> to stabilize the ownership of land in the Klamath Federal reclamation project, . . . as well as the administration and management of the Klamath Federal reclamation project and [the NWRs], to preserve intact the necessarily existing habitat for migratory waterfowl in this vital area of the Pacific flyway, and to prevent depredations of migratory waterfowl on agricultural crops in the Pacific Coast States.

16 U.S.C. § 695k. The Kuchel Act reaffirms that the NWRs within the Klamath Project area

---

[4]An example of the integrated operation of the NWRs for wildlife purposes and the Project for irrigation purposes is the operation of the Tule Lake sumps. These sumps, which are operated and maintained by Tulelake Irrigation District under its contract with the United States, are used to benefit both agricultural land and NWR land within the Project. See Def. Ex. 1 at 91-92, 114-16; Def. Ex. 2 at 161-62, 171-72, 174-76, 181, 185.

"are hereby dedicated to wildlife conservation" and that "[s]uch lands shall be administered by the Secretary of the Interior for the major purpose of waterfowl management, but with full consideration to optimum agricultural use that is consistent therewith."[5] 16 U.S.C. § 695l.

Finally, as noted above, plaintiffs' motion includes the repeated assertion that this case stems from a "reallocation" or "conversion" of plaintiffs' right to use Klamath Project water. This characterization simply begs the question of whether any of the named plaintiffs have a compensable property right in Klamath Project water to begin with.[6] Plaintiffs' assertions in their reconsideration motion that the individual plaintiffs (the landowners) "own the water rights" associated with the Klamath Project remain conclusory and unsupported by fact or law. Pls.' Mot. at 12-13, 16-17 n.8. For example, plaintiffs contend that they "own the water rights developed under [the Oregon Act of Feb. 22, 1905,]" which is the Oregon statute that authorized the United States to appropriate all unappropriated waters of the Klamath River in connection with its development of the Klamath Project. Pls.' Mot. at 13-14. Yet they provide no proof that the United States has transferred the water rights it properly acquired under this provision to any of the plaintiffs. See Def. Ex. 22 at 311. The question of who owns rights to use the waters of the Klamath River, including the right of use appropriated by the United States in connection with the development of the Klamath Project, remains the central question to be determined in the Klamath Basin Adjudication. The United States has stated unequivocally in the Adjudication

---

[5]The Kuchel Act postdates and addresses the issues raised in the 1932 opinion of the Interior Solicitor relied on by plaintiffs at page 15 of their reconsideration motion.

[6]Moreover, even if the Court were to find that some of the plaintiffs have a compensable property right – a conclusion defendant submits is not supported by the facts of this case or the applicable law – the question of whether the operation of the Klamath Project in 2001 resulted in a "reallocation" or "conversion" of plaintiffs' alleged property that constituted a taking is a question that has not yet been addressed by the parties.

that it has not transferred its interest in the Klamath Project water right to the water users.

Moreover, apart from the Adjudication, during the time period at issue in this case (2001), the interest that the individual plaintiffs (the landowners and water users) have in Klamath Project water lacks the indicia of a compensable property right. The water itself is not owned by any of the plaintiffs, but is instead owned by the State of Oregon. O.R.S. § 537.110 (1988)). Any rights that the individual plaintiffs have to receive water appropriated by the United States is derived from their ownership of land within an irrigation district that has contracted with the United States for the delivery of water. The delivery of water to the districts under those contracts is contingent upon the availability of water. See Def. SJ Mem. at 19-24 (Doc. 101). In addition, plaintiffs do not have the right to sever the contractually-derived right to receive and use project water from their lands and sell it. Moreover, any right that the plaintiffs have to receive and use project water is not recognized and enforceable, except under the terms of the applicable contracts. For all of these reasons, the arguments in plaintiffs' motion for reconsideration do not support their claim that they have a property right in this case.

Dated: May 19, 2005

Respectfully submitted,

KELLY JOHNSON
Acting Assistant Attorney General
Environment & Natural Resources Division

s/Kristine S. Tardiff
KRISTINE S. TARDIFF
Attorney of Record for the Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583
Fax: (603) 225-1577

STEPHEN M. MACFARLANE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, CA 95814-232
Tel: (916) 930-2204/Fax: (916) 930-2210

REGINALD T. BLADES, JR.
United States Department of Justice
Civil Division
Commercial Litigation Branch
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 514-7300/Fax: (202) 307-0972