IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., Plaintiffs, v. | ) | |
| UNITED STATES OF AMERICA, Defendant, | ) | No. 01-591 L<br>Judge Francis M. Allegra |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, Defendant-Intervenor. | ) | |

**PLAINTIFFS' MEMORANDUM SUPPORTING MOTION TO CERTIFY INTERLOCUTORY APPEAL OR, IN THE ALTERNATIVE, FOR ENTRY OF JUDGMENT UNDER RULE 54(b)**

Plaintiffs respectfully ask this Court to amend its August 31, 2005 Order to include the express findings required by 28 U.S.C. §1292 (d), and to certify the Order for interlocutory appeal, or, in the alternative, to enter judgment on the Plaintiffs' takings claims under Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC"). The standards for certification of this Order have been amply met in this case. First, the determination of whether Plaintiffs have a constitutionally protected property right is in this case (as in any other just compensation case under the Fifth Amendment) a controlling issue of law. Second, there is a conflict in the Court of Federal Claims on this issue. Compare *Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed.Cl. 313 (2001) (holding that the right to receive water from a state water project is a constitutionally protected property right) with *Klamath Irrig. Dist. v. United States*, 67 Fed. Cl. 504 (2005) (holding that the right to receive water from a federal Reclamation project is not a constitutionally protected property right). Finally, certification and

resolution of this issue by the Federal Circuit will result in the material advancement of the ultimate termination of this litigation, avoiding possibly duplicative depositions and document productions and two separate trials (in the event of reversal).

In the alternative, Plaintiffs request that the Court enter final judgment, pursuant to RCFC 54(b), with respect to their claims for just compensation for their water rights and just compensation for the impairment of their water rights. RCFC 54(b) provides for the "entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon direction for the entry of judgment." RCFC 54(b). In this case, there is no just reason why the Plaintiffs should have to delay seeking review of the Court's August 31, 2005 Order, denying them relief on their takings claims, while they await adjudication of the remaining contract claims.

**Factual Background**

Plaintiffs in this case are thirteen individually named agricultural landowners and fourteen water, drainage or irrigation districts in the Klamath River Basin area of Oregon that receive, directly or indirectly, water from irrigation works constructed or operated by the Department of the Interior, Bureau of Reclamation ("Bureau"). The fourteen districts, in turn, represent approximately 1,400 families that own farm and ranch land that is irrigated with water from the Klamath Project, including land that has been irrigated with water from the Klamath Project for a century. The Klamath Project area includes 240,00 acres of irrigable lands. At issue in this case is the water that was to be used to irrigate 176,000 privately owned acres of land in the western portion of the

Klamath Project which was withheld from them in 2001 under the authority of the Endangered Species Act.

**Procedural Background**

On October 11, 2001, Plaintiffs filed suit in this Court asserting claims for just compensation for the taking of their property rights in Klamath Project water under the Fifth Amendment, and for impairment of their vested rights to the use of water under the Klamath Compact. Klamath River Basin Compact, art. XIII(B)(1), Pub. Law 85-222, 71 Stat. 497 (Aug. 30, 1957). In May 2002, Defendant filed a motion to stay proceedings in this case pending the resolution of the state's adjudication process for the Klamath River Basin ("Adjudication"), which involves approximately 350,000 acres and thousands of claimants outside the Klamath Project. Plaintiffs filed an amended complaint adding a breach of contract count, on March 24, 2003. In September 2003, Plaintiffs filed a motion for partial summary judgment seeking a determination that their interests in Klamath Project water were not property interests at issue in the Adjudication. On October 3, 2003, defendant filed a cross-motion for summary judgment on the issue of the nature and scope of Plaintiffs' property interest in Klamath Project water. On November 13, 2003, this Court denied Defendant's motion to stay and granted Plaintiffs' motion for partial summary judgment, concluding that Plaintiffs' claim did not present a property interest determinable in the Adjudication. The Court then permitted this case to proceed upon condition that Plaintiffs may not assert any claims in this case that may be subject to determination in the Adjudication.

Thus, on January 27, 2004, Plaintiffs filed a cross-motion for summary judgment on the issues of the nature and scope of their property interest and whether the United

States was liable to pay just compensation for the taking of that interest. On March 23, 2004, the Court granted Defendant's motion to hold in abeyance the portions of Plaintiffs' brief addressing the issue of ultimate liability. This case was transferred to Hon. Francis M. Allegra on December 9, 2004. On August 31, 2005, this Court issued its decision on partial summary judgment, determining that Plaintiffs lack any constitutionally protected property right under the Fifth Amendment, and any vested right to the use of water as defined in the Klamath Compact.

**Argument**

This Court has the discretion to certify an order for an interlocutory appeal when there is "a controlling question of law" for which "there is a substantial ground for difference of opinion" and "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(d)(2). *In re Convertible Rowing Exerciser Patent Litigation*, 903 F.2d 822 (Fed. Cir. 1990); *Aleut Tribe v. United States*, 702 F.2d 1015,1019 (Fed. Cir. 1983). As stated in *Favell v. United States*, 22 Ct. Cl. 132 (1990), this Court has identified the following three factors that must be present to certify an interlocutory appeal:

(1) a controlling question of law; as to which there is;

(2) substantial ground for difference of opinion; and

(3) possible material advancement of the ultimate termination of the litigation will occur if the certification order is issued.

*Id.* at 143; *see also Aleut Tribe*, 702 F.2d at 1019.

This three-prong test is designed to fairly assess the relative burdens and benefits associated with an immediate appeal. *American Tel. & Tel. Co. v. United States*, 33 Fed.

Cl. 540, 541 (1995). In deciding a motion for certification, the Court may also consider factors such as "[t]he difficulty and general importance of the question presented, the probability of reversal, the significance of the gains from reversal, and the hardship on the parties in their particular circumstances." 16 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* §3930 at 415-16 (2d ed. 1996). *See Vereda, LTDA v. United States*, 46 Fed. Cl. 569,570 (1990).

## I. Whether Plaintiffs Possess a Constitutionally Protected Property Right or Vested Water Right Is a Controlling Question of Law.

A controlling question of law is often defined as one that could materially affect the course of litigation with resulting savings of the court's or the parties' resources. *Brown v. United States*, 3 Cl. Ct. 409, 411 (1983) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982), aff'd, *Arizona v. Ash Grove Cement Co.* 459 U.S. 1190 (1983); s*ee generally* 16 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* §3930 at 415-16 (2d ed. 1996). ("[A] question is 'controlling' if its incorrect disposition would require reversal of a final judgment . . . a dismissal that might have been ordered without the ensuing [trial] court proceedings.")

The determination that a plaintiff lacks a constitutionally protected property right is outcome determinative in a Fifth Amendment taking claim. *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004) (finding no taking where the plaintiff the could not meet the "threshold requirement of a recognized property interest"); *American Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts task is at an end"). It follows that the same is true of rights to the use of upper Klamath basin

water for irrigation which, under the Klamath Compact, may not be impaired without payment of just compensation.

Hence, this Court's determination in its August 31, 2005 Order that Plaintiffs' right to receive water from the Klamath Project, and their beneficial interest in that water, is not a constitutionally protected property right compels dismissal of Plaintiffs' First Claim for Relief (Just Compensation for Taking). Moreover, this same determination disposes of Plaintiffs' Second Claim for Relief (Impairment of Water Rights/Klamath Compact). Indeed, as this Court noted: "[N]othing in the Compact enhances the rights of any of the plaintiffs here as against the United States." 67 Fed. Cl. at 539.

Although this Court's August 31 Order did not dispose of Plaintiffs' Third Claim for Relief (Breach of Contract), it significantly crippled Plaintiffs' case by rejecting their theory that the water, delivery of which is the subject of those contracts, belongs to Plaintiffs by right. As Plaintiffs argued to this Court, these contracts are analogous to those involving moving companies or overnight delivery services; they do not deal with ownership of the object moved or delivered, but only with how and when it will be delivered—and for what price. Moreover, this Court's August 31, 2005 Order itself left little reason to hold much optimism for a favorable result on Plaintiffs' contract claims:

> First, for most of the district contracts *sub judice,* plaintiffs' "beneficial interest" in the Klamath Project water is not, as they claim, an absolute right, limited only by appurtenancy and beneficial use. . . . The plain language of these provisions expressly absolves the United States from liability for all types of water shortages—not only hydrologic causes, as claimed by plaintiffs, but also any other cause that impacts the availability of water through the system.

67 Fed. Cl. at 535. Moreover, the Court stated that "plaintiffs face an uphill battle in showing that the ESA was designed to abrogate their various contracts. *Id*. at 537.

Plainly, thus, the issue presented in this case is a controlling question of law.

## II. There Is a Substantial Ground for Difference of Opinion on This Controlling Question of Law.

Certification for interlocutory appeal is appropriate where there is a "substantial ground for difference of opinion" on the controlling question of law. Usually, an issue upon which there is substantial ground for difference of opinion is one upon which courts have disagreed. *Coast Federal Bank FSB v. United States*, 49 Fed. Cl. 11, 13 (2001). Likewise, a substantial ground for difference of opinion may exist if there is a dispute among judges on the trial court on the issue and the Federal Circuit has not ruled on the issue, *see, e.g., Rodriguez v. Banco Cent*., 917 F.2d 664 (1st. Cir. 1990), or where difficult and novel issues of first impression are presented. *See, e.g., Am. Management Sys. v. United States*, 57 Fed. Cl. 275, 277 (2003).

In this case, as this Court expressly notes, there is a conflict in the Court of Federal Claims on the question of whether a beneficial interest in water is a constitutionally protected property right:

> In that case [*Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed.Cl. 313 (2001)], various districts in California had argued that their contractually conferred water rights were taken as a result of the Bureau's restrictions on water use as required by the ESA. This court ruled that a physical taking had occurred as a result of the restrictions and granted the plaintiffs summary judgment. But, with all due respect, *Tulare* appears to be wrong on some counts, incomplete on others and, distinguishable, at all events.

67 Fed. Cl. at 538. (citations omitted).

Having reviewed the *Tulare* decision, the Court's Order added: "On these counts, this court disagrees with the approach taken in *Tulare* and concludes that decision lends no support to the views espoused by plaintiffs here." *Id.* These sharp differences of opinion by two experienced and highly respected judges of this court, resulting in diametrically opposing outcomes, are precisely the kind which the Federal Circuit should resolve, particularly in light of the pendancy of other cases raising similar issues.[1]

The gravamen of the Court's determination—an issue of Oregon state law—is one that has remained unexamined until now:

> Although research reveals no other case that has directly examined this issue, a number of prior opinions proceeded from the uncontested assumption that the United States, in 1905, appropriated all unappropriated water rights in the Basin.

67 Fed. Cl. at 524 n. 32.

Moreover, this Court's holding that "pursuant to relevant Oregon law, in 1905, the United States obtained rights to the unappropriated water of the Klamath Basin and associated tributaries," (67 Fed. Cl. at 526), is at odds with (because it potentially renders moot) the ongoing state proceedings in the Klamath Basin Adjudication that commenced in 1975. That proceeding involves thousands of post-1905 claims to Klamath basin water which, under this Court's decision, could be considered invalid because the United States owns them all.[2] Indeed, tribal interests have made such an argument to the adjudicators:

---

[1] *See, e.g.*, *Casitas Municipal Water Dist. v. United States*, No.05-168 L; *Stockton East Water Dist. v. United States*, No. 04-541 L.

[2] For instance the Klamath Drainage District and the Klamath Hills District Improvement Company, both plaintiffs in this case, hold water rights permits issued by the State of Oregon after the state repealed the 1905 law in 1953. 67 Fed. Cl. at 530. However, if the Court is correct, and the United States owns the water, those permits are invalid.

> The Klamath Tribes hereby provide Notice to the Administrative Law Judge of a pending related case involving the claimants Bureau of Reclamation and KPWU, *Klamath Irrigation District, et al. v. United States*, NO. 01-591 L (United States Court of Federal Claims). The related case addresses, among other things, the extent to which these competing claimants own water rights for the Klamath Project.
>
> The Court in *Klamath Irrigation District* entered an opinion [2005 WL 2100579] dated August 31, 2005 (attached hereto as supplemental authority), which may be dispositive of the "proper holder" contentions advanced by KPWU in Case 003. The opinion also holds that the Oregon Water Resources Department's Closing Brief (no reference no.), which had been submitted to the Court of Federal Claims is flawed. *See*, attached Slip Opinion at p. 28, n. 35.
>
> We urge the ALJ's immediate attention to this related case, because the Court's legal analysis and holdings in Klamath Irrigation District are, at a minimum, persuasive legal precedent on the "proper holder" issues currently on submission to the ALJ in Case 003 and may be dispositive of such issues; and because KPWU may now be precluded from relitigating those holdings in Case 003.

*See* Klamath Adjudication attached as Ex. 1 (footnote omitted).

Certification of the issue to the Federal Circuit would help to resolve these differences of opinion on this important question of law.

**III. Certification of This Question of Law Will Result in the "Possible Material Advancement of the Ultimate Termination of the Litigation."**

Certification will also result in the material advancement of the ultimate termination of the litigation. *See Kennard v. United Parcel Serv*., 531 F.Supp. 1139, 1149 (E.D. Mich. 1982) (Court should also consider "the extent to which additional time and expense may be saved by an interlocutory appeal.") First, if Plaintiffs are correct, that they do possess a constitutionally protected property right in the beneficial use of Klamath Project water, this case will proceed to resolution on the takings claim, possibly

obviating the need to move forward on adjudicating the breach of contracts claims, which will be time-consuming and resource intensive.

Moreover, there has been virtually no discovery in this case. There has only been a nominal written discovery, and no depositions have been taken. In order to prepare all three claims for trial (taking, breach of contract, and violation of the Klamath Compact), the parties will need to review and analyze largely the same documents and depose the same witnesses. If this Court does not certify an appeal of the takings and Compact issues, and the parties move forward to prepare the contract claims for trial, a reversal later by the Federal Circuit on the takings or Compact issue would require the parties to start the same discovery all over again, this time focusing on these two issues. Sound economy supports a strategy that results in preparing all of the issues that will ultimately be tried at one time, and not piece-meal. "[M]uch can be gained by having the court of appeals address the controlling question in the case on an interlocutory basis rather than at the conclusion of what could otherwise prove to be a much protracted lawsuit." *American Tel. & Tel. Co. v. United States,* 33 Fed. Cl. 540, 541 (1995).

Thus, the interest of judicial economy strongly favors permitting an interlocutory appeal in this case to resolve an issue that looms large and is largely dispositive of all of the claims in the case.

## IV. Moving Forward if Certification is Denied

In the Court's October 12, 2005, Order, the Court requested that Plaintiffs discuss their "view on how this case would proceed if the motion to certify were denied, including whether the remaining issues are amenable to resolution via summary judgment or would require a trial." At the outset, Plaintiffs must note that proceeding forward in

this case will be complicated whether or not certification is granted; however, certification will assure that the future proceedings in this case only occur once. Although the Plaintiffs in this case can be concisely described as thirteen individuals and fourteen irrigation districts, such a description is probably a bit overly simplistic. That is to say, the interests of the various Plaintiffs did not spring into existence at the same time, through the same document, or with the same conditions—the Opinion references this point. *See, e.g.*, *Klamath*, 67 Fed. Cl. at 530-31(noting that "various plaintiffs' interests in the Klamath Project water fall into five basic categories"); *id*. at Appendix A. In other words, examining the Plaintiffs all as one monolithic group may not be possible, thus making further proceedings in this case complex. Thus, when deciding whether to certify this case, the Court should be mindful of the resources that will be exhausted if discovery and, potentially the trial, have to be repeated. Simply put, certification may save resources.

To answer the Court's question directly, if the motion to certify is denied, Plaintiffs believe that a trial of this case will be necessary. The circumstances surrounding the execution of the 13 district contracts, as well as the way in which the parties have performed them over the years, are relevant to proper contract interpretation. *David Nassif Assocs. v. United States*, 557 F.2d 249, 256 (Ct. Cl. 1977) (holding that the parol evidence rule does not bar introduction of all evidence extrinsic to a contract because "it is not the writing alone which attests to its own finality and completeness but the circumstances surrounding its execution, including the negotiations which produced it"); Contracts must also be read in the context of the historical events and legal framework in which they were formed; *Metric Constructors, Inc. v. National Aeronautics*

*& Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999) (holding that contracts must also be read in the context of the historical events and legal framework in which they were formed).

At a minimum, substantial discovery must be done in order to determine the facts in this case. No depositions have been taken, very little document production has occurred, and only limited written discovery on specific points (not involving contract) has been exchanged. A great deal of work is yet to be done to prepare this case for trial and, since the witnesses and documents for all three claims are closely intertwined and overlapping, Plaintiffs would much prefer to have the legal issue resolved first rather than risk the need to re-depose witnesses and re-produce documents in the event of a reversal. As Plaintiffs have met the above-listed statutory criteria for certification, Plaintiffs believe that certification would facilitate the best use of the resources of this Court and the parties.

**V. Entry of Judgment**

Finally, if this Court decides not to certify the its August 31, 2005 Order, Plaintiffs request that the Court enter final judgment pursuant to RCFC 54(b) on their two takings claims. Under RCFC 54(b):

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

RCFC 54(b). In this case there is clearly no just reason for delaying the review of Plaintiffs' takings claims while they await the outcome of the Court's decision of their remaining breach of contract claims. *See, e.g.*, *Independence Park*

*Apartments v. United States*, 61 Fed. Cl. 692, 718 (2004) ("Because these contract claims have an independent, albeit related, basis from the takings claims addressed in this remanded proceeding, the court directs the clerk to enter final judgment pursuant to RCFC 54(b) as to the takings claims based on this opinion and order.") According, the Court should enter final judgment on Plaintiffs' takings claims if it decides against certification.

**Conclusion**

For all of these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to certify for interlocutory appeal and amend its Order dated August 31, 2005, to include the following finding:

> The Court finds that controlling questions of law are involved with respect to which there are substantial grounds for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

In the alternative, Plaintiffs request that the Court enter final judgment on their takings claims, as any delay in their ability to seek review would be unjust.

Respectfully submitted,

__s/ Nancie G. Marzulla______

Nancie G. Marzulla
Roger J. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W., Suite 410
Washington, D.C. 20036
202-822-6760
202-822-6774 (fax)

Dated: October 21, 2005