IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | ) | No. 01-591L The Honorable Francis M. Allegra |

**BRIEF AMICI CURIAE OF OREGON FARM BUREAU FEDERATION, CALIFORNIA STATE GRANGE, GREENHORN GRANGE AND PACIFIC LEGAL FOUNDATION**

ROBIN L. RIVETT
SCOTT ANDREW SHEPARD
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, California 95834
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
sas@pacificlegal.org

Attorneys for Amici Curiae Oregon Farm Bureau Federation, California State Grange, Greenhorn Grange and Pacific Legal Foundation

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF AMICI CURIAE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## TABLE OF AUTHORITIES

**Cases** **Page**

*County of Okanogan v. National Marine Fisheries Service*, 347 F.3d 1081 (9th Cir. 2003) . . . . . 2

*Hage v. United States*, 35 Fed. Cl. 147 (1996) . . . . . 2

*Klamath Irrigation District v. United States*, 67 Fed. Cl. 504 (2005) . . . . . 3-5

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) . . . . . 5

*Tulare Lake Basin Water Storage District v. United States*, 49 Fed. Cl. 313 (2001) . . . . . 2

*Vereda, LTDA v. United States*, 46 Fed. Cl. 569 (1990) . . . . . 3

**Statutes**

16 U.S.C. § 1536 . . . . . 2

28 U.S.C. § 1292(d)(2) . . . . . 3

**Miscellaneous**

16 Wright, C., Miller, A. & Cooper, E., *Federal Practice & Procedure* (2d ed. 1996) . . . . . 3

Ware, Stephen J., *A Critique of the Reasonable Expectations Doctrine*, 56 U. Chi. L. Rev. 1461 (1989) . . . . . 5

## INTEREST OF AMICI CURIAE

Oregon Farm Bureau Federation (OFBF) has represented the interests of farmers, ranchers and small timber owners for the past 77 years as the largest general agricultural organization in that state. With more than 20,000 members, OFBF represents one of the largest blocks of private landowners in Oregon. Because of the climate and geography that prevail there, many farms and ranches contain forestland. Thus, many of Oregon's agricultural producers are primarily forest managers. As such, they are directly affected by decisions determining the situs of ownership of water resources. The impact of restrictions on water distribution is especially dramatic on small landowners. A judicial decision concerning whether and in what circumstances the public must compensate private property owners who are restricted in their use and possession of resources will have a direct effect on the members of OFBF.

The California State Grange is affiliated with the National Grange and has more than 10,000 members located throughout the State of California. It was organized in 1873 to safeguard the family farm as a way to furnish the nation with affordable food and fiber. For more than 130 years, the California State Grange has worked locally, statewide and nationally to protect the environment while promoting agriculture and the family unit. Grange members regularly hunt, fish, camp, boat, photograph and otherwise enjoy California's wildlife.

Greenhorn Grange, in Siskiyou County, is affiliated with the State and National Granges. The Greenhorn Grange represents farmers and ranchers in the Klamath Basin. To protect agricultural interests, the Grange has been very involved in the relicensing of dams in the Klamath Basin, filed delisting petitions for coho salmon and other fish, and participated in ESA reform activities. The activities at issue in this case have directly affected members of the Greenhorn Grange.

Pacific Legal Foundation is the largest and most experienced nonprofit public interest law firm of its kind in the United States. Founded in 1973 and headquartered in Sacramento, California, PLF provides a voice in the courts for Americans who believe in limited government, private property

rights, individual freedom and free enterprise. PLF litigates nationwide in state and federal courts with the support of thousands of citizens from coast to coast.

PLF has participated in numerous cases concerning water rights, both in the Pacific Northwest and around the western United States. *See, e.g.*, *Hage v. United States*, 35 Fed. Cl. 147 (1996), *Tulare Lake Basin Water Storage District v. United States*, 49 Fed. Cl. 313 (2001), and *County of Okanogan v. National Marine Fisheries Service*, 347 F.3d 1081 (9th Cir. 2003). PLF seeks to augment the arguments of Plaintiffs by providing this Court with both an additional discussion of water-right importance and the well-founded policy grounds for supporting Plaintiffs' position. PLF believes its public policy perspective on water rights and other relevant issues will aid this Court in resolving the issues presented by Plaintiffs' motion.

## INTRODUCTION

In 2001, the Bureau of Reclamation, faced with an apparent agency obligation under Section 7 of the Endangered Species Act (ESA), 16 U.S.C. § 1536, diverted the entire historic water appropriation of the Plaintiffs—some 508,000 acre-feet—to preserve in-stream flows for the coho salmon and to maintain the critical habitat of the suckerfish in Upper Klamath Lake. Although there was a drought, there was enough water in the Klamath Project to provide to the Plaintiffs *all* of their historic water allotment; yet initially the Plaintiffs received none of their allocation. Only after the Klamath Project captured additional water from a late-season rain were the Plaintiffs given any of their water, and then just 70,000 acre-feet-less than 14% of their historic allotment and far too little to be of any commercial value. The agricultural production of the farmers who depend upon the Klamath Project essentially was wiped out. This litigation, involving takings and breach of contract claims against the United States, followed.

In its August 31, 2005, order (the "Order") this Court determined that "plaintiffs' various interests in the use of Klamath River Basin water" do not "constitute cognizable property interests for purposes of the Takings Clause." 67 Fed. Cl. 504, 506. Plaintiffs asked the Court to issue an interlocutory order per 28 U.S.C. § 1292(d)(2) permitting that an appeal be taken from that Order to the United States Court of Appeals for the Federal Circuit.

Plaintiffs have demonstrated that granting an interlocutory appeal in this instance would best serve the parties to and the material facts that constitute this case. Amici write in support of Plaintiffs' motion to demonstrate that non-parties that will be affected by the ultimate conclusion of the relevant questions of law, and therefore the public interest, warrant this Court's grant of Plaintiffs' motion.

**ARGUMENT**

This Court may, in deciding whether to certify the instant order for interlocutory appeal, consider "'[t]he difficulty and general importance of the question presented, the probability of reversal, [and] the significance of the gains from reversal.'" 16 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3930 at 415-16 (2d ed. 1996); citing *Vereda, LTDA v. United States*, 46 Fed. Cl. 569, 570 (1990)).

The general legal issues addressed in the Order, and the final settlement of those issues, are matters of the first import not only for the parties to this action, but to Amici, to other similarly situated agricultural and other water users and therefore to the public—all members of which ultimately are, of course, water users. At its heart, the question that this Court has decided is whether the federal government, the State of Oregon or the individuals and private associations of which Plaintiffs are representatives own the relevant water. It thus directly implicates issues of federalism, individual liberty, environmental regulation, contract law and property law. And because of the centrality and universal necessity of the *res* of the dispute—water—the correct and final settlement of these implicated legal issues will determine the feasibility or failure of crops, farms, ranches and related livelihoods.

For Amici the California State Grange, the Greenhorn Grange and the Oregon Farm Bureau, the questions addressed in the Order will affect every aspect of their lives and businesses. These businesses and livelihoods depend upon certainty as to the locus of ownership of the water without which they cannot run their ranches and farms. They cannot run their operations without a certain set range of water, and cannot make any plans for future operation, growth, development or other business decisions without a reasonably fixed understanding of whether they compete only against drought for relied-upon or otherwise promised water resources, or whether the determinations of government—however made and for whatever purpose—can stand between them and the regular acquisition of this vital commodity. This is especially true if, as here, they face the prospect of governments' expropriation of the expected water without compensation for the business losses resulting from the expropriation.

The importance of the question and its resolution are further demonstrated by the numerous live controversies that may be affected by the content and timing of that settlement. These include *Pacific Coast Federation of Fishermen's Associations v. United States Bureau of Reclamation* (9th Cir. No. 03-16718) and *Trout Unlimited v. United States Department of Agriculture* (10th Cir. No. 04-1317). In each case environmentalist parties have sued the federal government to force the government to reallocate water delivery away from existing and historically secure users for in-stream uses intended to benefit various fish populations. The locus of ownership of the water proposed to be diverted could prove determinative of these issues. And, in fact, the Order already been raised in the Oregon Water Resources Department's *Matter of the Determination of the Relative rights of the Waters of the Klamath River, a Tributary of the Pacific Ocean* (003F00040) (*See* Plaintiffs' Memorandum Supporting Motion to Certify Interlocutory Appeal or, in the Alternative, for Entry of Judgment Under Rule 54(b) at 5 ("Memorandum") Exh. 1.). In that mammoth proceeding, considered extensively as "the Adjudication" in the Court's Order, *see* 67 Fed. Cl. at 512, certain plaintiffs provided notice of the Order, claiming that the Order's legal conclusions "may be dispositive of" certain issues in the case. *See* Exh. 1 at 3.

The public importance of immediate appellate review of the Order is heightened by the conflict it creates both within the United States Court of Federal Claims and between the Court of Federal Claims and the State of Oregon. As this Court indicated in its Order, it thought "wrong ... and incomplete" the opinion in *Tulare Lake Basin Water Storage District v. United States* that "various districts['] contractually conferred water rights were taken as a result of the Bureau's restrictions on water use as required by the ESA[, and] that a physical taking had occurred as a result of the restrictions." 67 Fed. Cl. at 538-39. The Court also considers legal positions of the Oregon Attorney General, and conclusions relied upon by the state for the better part of a century, holding that "the United States, by filing its notice under the 1905 Act, acquired the unappropriated water of the Klamath Basin 'reasonably necessary' to the Project, but only to the extent the United States put those waters to 'beneficial use,' " to be "flaw[ed]." *Id.* at 525, 526 n.35.

While having no opinion about the likelihood of this Court's Order being reversed, Amici recognize that either the Order's legal conclusions or those reached by the court in *Tulare Lake Basin Water Storage District v. United States* and by Oregon's Attorney General must yield. Given the breadth of effect that these conclusions, once reached, must have, Amici pray along with Plaintiffs that the law be settled, and the conflicts resolved, as quickly as possible. The public always benefits from a regime of settled, coherent and non-contradictory legal understanding. *See, e.g.*, *Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."); Stephen J. Ware, *A Critique of the Reasonable Expectations Doctrine*, 56 U. Chi. L. Rev. 1461, 1488-89 (1989).

## CONCLUSION

For the reasons foregoing, Amici Curiae support Plaintiffs' request that this Court certify its Order of August 31, 2005, for interlocutory appeal to the United States Court of Appeals for the Federal Circuit.

DATED: November 4, 2005.

Respectfully submitted,

ROBIN L. RIVETT
SCOTT ANDREW SHEPARD

By /s/ Scott Andrew Shepard
SCOTT ANDREW SHEPARD
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, California 95834
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
sas@pacificlegal.org

Attorneys for Amici Curiae Oregon Farm Bureau Federation, California State Grange, Greenhorn Grange and Pacific Legal Foundation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief was filed with the Clerk this 4th day of November, 2005, via the Court's electronic filing system. I further certify that a copy of the foregoing brief was served this day via the Court's electronic filing system upon each of the following:

Todd D. True
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104

Robert B. Wiygul
Waltzer & Associates
1025 Division Street, Suite C
Biloxi, MS 39530

Roger J. Marzulla
Nancie G. Marzulla
Marzulla & Marzulla
1350 Connecticut Avenue, N.W., Suite 410
Washington, DC 20036

Kris Tardiff
U.S. Department of Justice
Environment & Natural Resources Division
c/o U.S. Attorney's Office
55 Pleasant Street, Suite 352
Concord, NH 03301

Curtis G. Berkey
Alexander, Berkey, Williams & Weathers, LLP
2000 Center Street, Suite 308
Berkeley, CA 94704

John D. Echeverria
Georgetown Environmental Law and Policy Institute
600 New Jersey Avenue, N.W.
Washington, DC 20001-2075

Richard Whitman
David E. Leith
Assistant Attorneys General
Oregon Attorney General's Office
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301-4096

/s/ Scott Andrew Shepard
SCOTT ANDREW SHEPARD