IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 01-591 L |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Francis M. Allegra |
| Defendant, | ) | |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL OR FOR ENTRY OF JUDGMENT UNDER RCFC 54(b)**

Defendant United States hereby opposes plaintiffs' motion to certify the Court's Opinion of August 31, 2005 (Doc. 246) ("Opinion") for interlocutory appeal or, alternatively, to enter a partial judgment under RCFC 54(b). For the reasons set forth below, this case does not meet the requirements for interlocutory appeal, nor is an entry of a partial judgment necessary in this case. Instead, defendant submits that this case should proceed to summary judgment on plaintiffs' contract claims. Any appeals can be taken following the entry of final judgment as to all of plaintiffs' claims.

I. This Case Does Not Meet the Requirements for an Interlocutory Appeal

The certification of a decision of this court for interlocutory appeal is governed by 28 U.S.C. § 1292(d)(2), which provides:

> [W]hen any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference

> of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order.

This multi-factor test "is designed to weigh the relative benefits of an immediate appeal." American Tel. & Telegraph Co. v. United States, 33 Fed. Cl. 540, 541 (1995), interlocutory appeal granted, 66 F.3d 344 (Fed. Cir. 1995). Interlocutory relief is available under the statute "only in exceptional cases where there is a possibility of unnecessary delay and expense or protracted and expensive litigation." Coast Federal Bank v. United States, 49 Fed. Cl. 11, 13 (2001) (citing Northrop Corp. v. United States, 27 Fed. Cl. 795, 798-99 (1993)). As set forth below, the requirements for certification under 28 U.S.C. § 1292(d) have not been met in this case. Plaintiffs' request for certification therefore should be denied.

To begin with, although the Court's Opinion is interlocutory with respect to this case as a whole, it is not interlocutory as to plaintiffs' takings claims. Section 1292(b) "'applies only to orders that would be considered interlocutory even if presented in a simple single-claim, two-party case.'" Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 338 F.3d 1353, 1359 (Fed. Cir. 2003) (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2658.2 (3d ed. 1998)). By contrast, if the order in question is final as to an individual claim that is part of a multiple claim action, the proper vehicle for pursuing an appeal prior to an entry of final judgment as to the entire action is to request an entry of a partial final judgment under RCFC 54(b). Id., 338 F.3d at 1358. See also W.L. Gore & Assocs., Inc. v. Int'l Medical Prosthetics Research Assocs., Inc., 975 F.2d 858, 861-65 (Fed. Cir. 1992) (addressing finality in the context of Rule 54(b)). Here, the Court's Opinion is "an *ultimate* disposition of an *individual* claim [plaintiffs' takings claims] entered in the course of a multiple claims action."

Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956) (quoted in W.L. Gore, 975 F.2d at 861-62 and Ultra-Precision Mfg., 338 F.3d at 1358). Accordingly, § 1292(b) does not apply. Moreover, even assuming *arguendo* that § 1292(b) does apply, the requirements for certification of an interlocutory appeal under this statutory provision have not been met in this case.

The first requirement of § 1292(d)(2) is that a "controlling question of law" be at issue. Plaintiffs assert that this requirement is met because "[t]he determination that a plaintiff lacks a constitutionally protected property right is outcome determinative in a Fifth Amendment taking claim." Pls.' Mem. at 5. Plaintiffs' analysis misses the mark. Questions of law are "controlling" within the meaning of § 1292(d)(2) "when they 'materially affect issues remaining to be decided in the trial court.'" Marriott Int'l Resorts, LP v. United States, 63 Fed. Cl. 144, 145 (2004) (quoting Pikes Peak Family Housing, LLC v. United States, 40 Fed. Cl. 673, 686 (1998)) (emphasis added). Here, the Court's determination that plaintiffs do not possess a compensable property interest that is separate and distinguishable from their contractual rights is controlling and dispositive of their takings claims, but is not controlling as to plaintiffs' contract claims. Indeed, although the Court's Opinion provides guidance to the parties regarding further proceedings on the contract claims, the decision acknowledges that the controlling issues of law on the contract claims have not yet been adequately briefed. See Opinion at 44 (noting that many of the contract issues "have not been adequately briefed and, in the court's view, should be decided only in the context of determining whether, in fact, a breach of the various water contracts here occurred in 2001."). Accordingly, this is not a case in which a different outcome on the certified question would resolve the remaining claims or end the litigation. American Tel. & Telegraph Co., 33 Fed. Cl. at 540.

Plaintiffs assert that the second requirement for certification – that there is a "substantial ground for difference of opinion" on the controlling question of law – is met because of a "conflict" between this Court's Opinion and the decision in Tulare Lake Basin Water Storage District v. United States, 49 Fed. Cl. 313 (2001). Regardless of the question of whether the holding in Tulare was legally correct, as this Court correctly noted, Tulare is distinguishable. Opinion at 45-46. Factually, Tulare involved the operation of a state project by California's Department of Water Resources (DWR), where the project operator had been issued water permits by the State of California, and the plaintiffs received water from the state project pursuant to contracts between irrigation districts and DWR. Because the United States was not a party to the contracts in question, the Tulare court viewed the actions taken by the federal government under the Endangered Species Act as infringing upon the contractual rights of the plaintiffs, and found that those actions resulted in a physical taking. This case, in contrast, involves the operation of a federal reclamation project and the contracts in question are contracts between the district plaintiffs and the United States. Because of the different factual context, the Tulare decision failed to reach and analyze a number of questions that must be addressed in this case, including the questions of whether the shortage provisions contained in some of the subject contracts limit plaintiffs' contractual rights and the applicability of the sovereign acts doctrine. Opinion at 44-45. Accordingly, the Tulare decision is factually and legally distinguishable from, rather than in conflict with, the Court's decision in this case.[1]

---

[1]Plaintiffs' suggestion that the Court's decision is "at odds with" the Klamath Basin Adjudication is also incorrect. Pls.' Mem. at 8. The decision may be at odds with the position taken by the water users in the Adjudication, but the Adjudication is an ongoing process that has not yet resulted in any final determination. Moreover, in view of plaintiffs' prior representations to the Court that the water interests alleged to have been taken in this case are not property

The third requirement for certification of an interlocutory decision is whether certification "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2). Plaintiffs appear to be asserting that this requirement is met because if an appeal on their takings claims is successful, they would prefer to pursue those claims instead of their contract claims. Pls.' Mem. at 9-10. However, the fact that plaintiffs may prefer to frame this case as a takings case and pursue their takings claims instead of their contract claims does not satisfy the third criterion, which looks at whether the appellate court's decision on the interlocutory issue – rather than the actions of the plaintiffs – will "materially advance the ultimate termination of the litigation." If plaintiffs do not wish to pursue their contract claims, they have the option of dismissing those claims. Such a dismissal would allow the Court to enter final judgment as to their takings claims, making the Court's decision as those claims final and appealable as a matter of right. 28 U.S.C. § 1295(a)(3).

Plaintiffs also raise concerns regarding discovery, noting that adjudicating their contract claims "will be time-consuming and resource intensive[,]" that "substantial discovery must be done in order to determine the facts in this case[,]" and that "a trial of this case will be necessary." Pls.' Mem. at 10-12. Plaintiffs further suggest that continuing discovery on the contract claims pending appeal could lead to duplicative discovery. Pls.' Mem. at 11-12.

First of all, the concerns raised by plaintiffs in their request for certification of an interlocutory appeal are contrary to their prior statements to the Court that "[t]he legal claims in

---

interests at issue in the Adjudication, which resulted in a denial of the government's motion to stay this case pending the outcome of the Adjudication, Order, Nov. 13, 2003, at 2 (Doc. 131), plaintiffs should not be permitted to reverse course and contend now that the dismissal of their takings claim should be certified for interlocutory appeal on grounds that it is "at odds" with the Adjudication.

this case are not novel, and the material facts are sufficiently undisputed so that the issue of liability can be disposed of without trial, and by summary judgment." Pls.' Status Report at 2 (Jan. 28, 2005) (Doc. 208). Indeed, one of the few things the parties have agreed on with respect to plaintiffs' contract claims is that the question of liability could be resolved on summary judgment. See (Corrected) Suppl. JSPR (addressing Plaintiffs' breach of contract claims), dated Sept. 16, 2003 (Doc. 97) (p. 3, "the parties further agree that liability should be resolved on summary judgment); (p. 4, "The parties anticipate that liability can be resolved on summary judgment pursuant to Rule 56, following a nine-month discovery period.") (p. 12-13, "At this time, the parties do not believe that a trial to determine the liability issue will be necessary.").

There are several questions of law that are potentially dispositive of plaintiffs' contract claims and that are well-suited for resolution by summary judgment. These issues, which were identified by the parties in their Supplemental Joint Preliminary Status Report addressing the contract claims (Corrected JPSR, dated Sept. 16, 2003; Doc. 97), and in this Court's Opinion at 42-44, include the questions of whether the shortage provisions contained in some of the subject contracts limit plaintiffs' contractual rights and whether the reductions in available water in 2001 did not result in a breach of contract under the sovereign acts doctrine. Resolution of these issues is not affected by the Court's rulings on plaintiffs' takings claims. Accordingly, certification of the Court's Opinion on those claims will not materially advance resolution of the pending contract claims.

Further, although no depositions have been taken in this case, there has been rather extensive document production during the prior discovery period on the contract claims. See Def.'s Mot. for Enlargement of Discovery at 3 (March 5, 2004) (Doc. 158) (describing plaintiffs'

document production through March 2004, including approximately 1,500 pages of paper documents and a compact disc containing an additional 2,184 pages of documents). Defendant believes that the document production already completed by the parties is sufficient to allow these contract issues described above to be presented to the Court on cross-motions for summary judgment without the need for further discovery at this time.[2] Accordingly, defendant submits that the risk of duplicative discovery is negligible.

For all of these reasons, defendant submits that the requirements of 28 U.S.C. § 1292(b) are not met in this case. Defendant therefore requests that plaintiffs' request that the Court certify its Opinion of August 31, 2005, for interlocutory appeal be denied.[3]

II. Plaintiffs Have Not Demonstrated That the Entry of a Partial Judgment Under RCFC 54(b) is Warranted

In the event that the Court declines to certify its decision for interlocutory appeal, plaintiffs request in the alternative that the court enter final judgment as to their takings claims pursuant to RCFC 54(b), arguing there is no just reason for delaying the review of their takings claims while they await a final decision on their contract claims. Pls.' Mem. at 12. To the extent that plaintiffs seek an immediate appeal of the Court's ruling as to their takings claims, defendant agrees that Rule 54(b) is the correct rule under which to pursue such an appeal. However, for the

---

[2]If resolution of contract liability requires the parties to go beyond these discrete issues, some further discovery may be required.

[3] The Court's Opinion of August 31, 2005, resolved plaintiffs' takings claims on the threshold question of whether the plaintiffs had a compensable property interest, but the Opinion also addressed a number of issues that relate to plaintiffs' contract claims. Plaintiffs only seek to take an interlocutory appeal with respect to their takings claims. Defendant agrees that an interlocutory appeal of the contract issues is not appropriate or necessary at this time. Accordingly, should the Court elect to certify its decision for interlocutory appeal, defendant requests that the Court expressly limit its order to plaintiffs' takings claim.

reasons explained below, defendant does not agree that the entry of a partial final judgment under Rule 54(b) is necessary or appropriate in this case.

Rule 54(b)[4] provides in relevant part that,

> [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Under Rule 54(b), a trial court can sever an individual claim that has been finally resolved, thus allowing an appeal of that final decision to be taken without waiting for a final decision on all pending claims. Sears, Roebuck, 351 U.S. at 432; W.L. Gore, 975 F.2d at 861. Proper factors for a trial court to consider in determining whether to enter a final judgment under Rule 54(b) include "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined is such that no appellate court would have to decide the same issues more than once even if there [are] subsequent appeals." Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8 (1980). Accordingly, the entry of a partial final judgment under Rule 54(b) is not appropriate if the court determines "that two distinctly pleaded claims were actually one for purposes of Rule 54(b) because of the factual overlap between them." W.L. Gore, 975 F.2d at 864.

The basis for plaintiffs' request for an entry of judgment under Rule 54(b) appears to be that their takings claims are "independent, albeit related" to their contract claims, and that there is thus no reason to delay review of their takings claims. Pls.' Mem. at 13 (quoting Independence

---

[4]The relevant provision of RCFC 54(b) is identical to Fed. R. Civ. P. 54(b).

Park Apartments v. United States, 61 Fed. Cl. 692, 718 (2004)). This argument is, of course, contrary to plaintiffs' arguments in favor of an interlocutory appeal, which are based in part on the assertion that "all three claims are closely intertwined and overlapping . . ." Pls.' Mem. at 12. See also Pls.' Status Report at 3 (Jan. 28, 2005) (Doc. 208) ("The Amended Complaint states three overlapping (but not identical) causes of action . . ."). Indeed, plaintiffs assert that the Court's decision on their takings claim "significantly crippled" their contract claims as well "by rejecting their theory that the water, delivery of which is the subject of those contracts, belongs to Plaintiffs by right." Pls.' Mem. at 6. Plaintiffs' theory of the case thus links their takings claims with their contract claims.[5] In addition, all of the claims alleged by plaintiffs arise out of the operation of the Klamath Project in 2001, so the factual basis of the claims is the same.

Given the factual overlap between plaintiffs' claims, and the fact that plaintiffs' theory of the case links their contract claims to their takings claims, plaintiffs have not demonstrated that the entry of partial final judgment under Rule 54(b) as to their takings claims is appropriate at this time.

III. Further Proceedings on Plaintiffs' Contract Claims

As noted above, defendant disagrees with plaintiffs' assertion that extensive discovery and a trial is needed to resolve the question of contract liability in this case. The original deadline for completing all liability-related discovery on plaintiffs' contract claims was June 15, 2004. Order, dated Sept. 17, 2003, at 1 (Doc. 92). This deadline was extended twice at

---

[5]Defendant notes that it does not agree with plaintiffs' theory. To the contrary, defendant's position in this case is that plaintiffs' rights to or in Klamath Project water are derived from their contracts with the United States and that any alleged interference with those contractual rights thus gives rise to a contract claim, but does not support a takings claim.

defendant's request. Order, dated June 10, 2004 (Doc. 186) (extending deadline to Oct. 15, 2004); Order, dated Oct. 13, 2004 (Doc. 192) (extending deadline to Feb. 15, 2005). Cross-motions for summary judgment on contract liability were originally due on June 15, 2004; however, this deadline was stayed pending resolution of the parties' cross-motions for partial summary judgment on the takings claims and the third-party beneficiary issues. Order, dated May 7, 2004 (Doc.178). Those pending motions were fully resolved in the Court's Opinion of August 31, 2005.

Accordingly, defendant proposes that liability-related discovery as to plaintiffs' contract claims not be reopened at this time. Defendant further proposes to file a motion for summary judgment as to plaintiffs' contract claims within sixty (60) days of the Court's ruling on Plaintiffs' Motion to Certify For Interlocutory Appeal, with responses and replies to be due in accordance with the standard deadlines set forth in RCFC 7.2(c).

Dated: November 4, 2005

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
Attorney of Record for the Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583
Fax: (603) 225-1577

STEPHEN M. MACFARLANE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, CA 95814-232
Tel: (916) 930-2204
Fax: (916) 930-2210

REGINALD T. BLADES, JR.
United States Department of Justice
Civil Division
Commercial Litigation Branch
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 514-7300
Fax: (202) 307-0972