*BILL LOCKYER*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1511 CLAY STREET, 20TH FLOOR
OAKLAND, CA 94612

Public: (510) 622-2000
Telephone: (510) 622-2136
Facsimile: (510) 622-2270
E-Mail: tara.mueller@doj.ca.gov

April 11, 2006

**VIA OVERNIGHT MAIL**

Presiding Justice Huffman
and the Honorable Associate Justices
California Court of Appeal
Fourth Appellate District, Division One
750 B Street, Suite 300
San Diego, California 92101

RE: Request for Publication (Cal. Rules of Court, Rule 978)
*Allegretti & Co. v. County of Imperial*
Fourth District Court of Appeal Case No. D 045156, Division One

Dear Presiding Justice McConnell and the Honorable Associate Justices:

Pursuant to Rule 978 of the California Rules of Court, amicus curiae Attorney General of the State of California, on behalf of the people of the State, respectfully requests that this Court certify for publication its opinion in this case. The Court's decision rejects the claims of appellant Allegretti & Company, an overlying groundwater user, that the County of Imperial's decision to issue a conditional use permit constituted a physical and regulatory taking of Allegretti's land and groundwater rights. The County's permit allowed Allegretti to reopen a well on its property, but restricted the total amount of groundwater that it could pump from both the reopened well and other existing wells on the property.

The Court's scholarly, thorough and well-reasoned decision meets all four criteria for publication. First, it applies current, well-established rules concerning physical and regulatory takings to the special context of water rights, and thereby involves "a set of facts significantly different from those stated in published opinions." (Cal. Rule of Court, Rule 976, subd. (c)(1).) Second, the opinion resolves an apparent conflict between two cases concerning claimed physical takings of state water rights: *Tulare Lake Basin Water Storage Dist. v. United States* (2001) 49 Fed. Cl. 313 and *Klamath Irrig. Dist. v. United States* (2005) 67 Fed. Cl. 504. (Cal. Rule of Court, Rule 976, subd. (c)(2).) Third, the opinion addresses a legal issue of continuing public interest in the State of California—that is, the question whether regulatory limitations on the right to use water constitute a physical or regulatory taking under the United States or California Constitutions. (Cal. Rule of Court, Rule 976, subd. (c)(3).) Finally, the opinion makes a significant contribution to the legal literature by reviewing the current development and application of principles of physical and regulatory takings jurisprudence to water and land rights in California. (Cal. Rule of Court, Rule 976, subd. (c)(4).) Each of these points is discussed in more detail below.

**The Court's Opinion Applies Existing Rules to a Set of Facts Significantly Different From Those Stated in Published Opinions**

The Court's opinion in this case provides a thorough discussion and application of modern principles of physical and regulatory takings jurisprudence to water rights in California, and thus it applies existing rules to a set of facts significantly different from those stated in published opinions. (Cal. Rules of Court, Rule 976, subd. (c)(1).) While several California cases,[1/] have discussed (and rejected) the general concept of vested rights in water, the last major decision to address a takings claim as applied to water rights in California was *Joslin v. Marin Municipal Water Dist.* (1967) 67 Cal. 2d 132. In that case, certain riparian landowners who owned and operated a sand and gravel business on their property alleged that the defendants' construction of an upstream dam diminished the amount of sand, rock and gravel carried onto plaintiffs' land by the adjacent stream. The California Supreme Court held that there was no taking because, under Article X, section 2 of the California Constitution, there is no property interest in an unreasonable use of water. (*Id.* at 143.) The Court found plaintiffs' use of water unreasonable because the amassing of sand and gravel served no valid public policy. (*Id.* at 140-141.) Therefore, the Court held, the plaintiffs were not entitled to just compensation. (*Id.* at 143-144.)

There are only three subsequent California appellate court cases addressing alleged takings of water rights. The First District Court of Appeal decided the first two cases, and the Third District Court of Appeal decided the most recent case. None of these cases address the issues raised in *Allegretti*. First, in *Niles Sand & Gravel Co. v. Alameda County Water Dist.* (1974) 37 Cal.App.3d 924, 935-937, the court addressed an inverse condemnation claim against a water district for flooding the appellant's quarries through a groundwater recharge program. (*Id.* at p. 926). As in *Joslin*, the court held that no taking had occurred because the appellant did not possess the right to waste the groundwater to protect its gravel operation, and because the district's groundwater recharge program was a permissible exercise of its police powers. (*Id.* at pp. 935-937.)

Second, the *Forni* case briefly addressed and rejected a takings *defense* to a state enforcement action against riparian landowners who were alleged to be employing an unreasonable method of diversion. Like the California Supreme Court in *Joslin*, the First District Court of Appeal found the defense invalid on the ground that there is no property interest in an unreasonable use of water. (*Forni*, *supra*, 54 Cal. App. 3d at p. 753, citing *Joslin*, *supra*, 67 Cal. 2d at p. 144.)

---

1. See e.g., *National Audubon Society v. Superior Court* (1983) 33 Cal. 3d 419, 437, 445, 452 [no vested right to use of water in violation of the public trust doctrine]; *People of the State of California v. Forni* (1976) 54 Cal. App. 3d 743, 753 [no vested right in unreasonable use of water].

Finally, in *People v. Murrison* (2002) 101 Cal.App.4th 349, 362-363, the appellant raised a regulatory takings challenge to the Department of Fish and Game's potential future regulation of the appellant's diversions, but the court did not decide the takings claim because it concluded that the claim was not ripe.

Unlike *Allegretti*, the *Joslin*, *Niles Sand & Gravel* and *Forni* cases did not involve a challenge to a regulation but rather were inverse condemnation actions or defenses based on diminishment of the plaintiffs' claimed water rights through non-regulatory means. The *Allegretti* opinion is thus the first California decision involving a challenge to the *regulation* of water rights as a taking without compensation.

Furthermore, because the courts in *Joslin, Niles Sand & Gravel* and *Forni* held that the plaintiffs did not possess the property interest they claimed to have, the courts in those cases, unlike the Court in this case, did not have occasion to apply either a physical or a regulatory takings test to determine whether a taking had occurred as a result of the restriction on the plaintiffs' water use. Additionally, all of these cases were decided many years prior to the development of the legal principles of modern takings jurisprudence that the state and federal courts rely on today. With respect to regulatory takings, for example, all three cases were issued at least 15 years before the U.S. Supreme Court's development of the categorical test for a total regulatory taking in *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, and at least two years before the U.S. Supreme Court's enunciation of the three-pronged test for determining a "less than total" regulatory taking in *Penn Central Transp. Co. v. City of New York* (1978) 438 U.S. 104. The *Allegretti* case therefore is the first California appellate case to discuss and apply both the *Lucas* and *Penn Central* tests in the special context of water rights. It is also only the second California appellate case to consider and apply the U.S. Supreme Court's most recent regulatory takings decision, *Lingle v. Chevron, U.S.A., Inc.* (2005) 544 U.S. 528, and the only California appellate case to apply *Lingle* in the water rights context. (See *Herzberg v. County of Plumas* (2005) 133 Cal. App. 4th 1, 12-13.)

The *Allegretti* opinion likewise breaks new ground with regard to physical takings jurisprudence, as it is the only California decision applying the modern physical takings doctrine, as enunciated by the U.S. Supreme Court in *Lorretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, to the regulation of water rights. The *Allegretti* opinion provides an important discussion of the general circumstances under which a physical as opposed to a regulatory taking might be found in the water rights context. (Slip. opn. at pp. 8-12.) Particularly helpful is the Court's distinction between cases in which the government diverts water for its own consumptive use or decreases the amount of water accessible to a water rights holder, which the federal courts have analyzed under a physical taking theory, from the more common situation in which the government conditions or limits a water rights holder's use of water through regulatory means, which this Court held must be analyzed under a regulatory taking theory. (*Id.* at pp. 11-12.) Issues concerning physical versus regulatory takings of water rights arise frequently in the administration of water rights in California and the Court's decision in this case will be useful both to litigants in other cases as well as to the administration of water rights in general.

Finally, the Court's decision clarifies that groundwater users cannot claim an unlimited right to use as much water they claim they need to irrigate their land, as that use is limited by the doctrine of reasonable use under Article X, section 2 of the California Constitution. (*Id.* at p. 22.) The Court's decision also notes that overlying groundwater users challenging a regulatory limitation on their ability to extract groundwater must be able to point to some evidence that their proposed use is reasonable within the meaning of Article X, section 2. (*Ibid.*) Although other courts have discussed the doctrine of reasonable use, no other California appellate court has discussed the applicability of this doctrine to the specific context of a takings challenge to a regulatory limitation on groundwater use.

For all of these reasons, the *Allegretti* opinion meets the first standard for publication under Rule 976, subdivision (c)(1) of the California Rules of Court, by applying existing rules of law to a set of facts significantly different from those stated in published opinions.

**The Court's Opinion Resolves an Apparent Conflict in the Law**

The *Allegretti* opinion also is the first California appellate case to address the controversial ruling of the U.S. Court of Federal Claims in *Tulare Lake Basin Water Storage Dist. v. United States* (2001) 49 Fed. Cl. 313.[2] *Tulare Lake* was a case brought by several State Water Project (SWP) water contractors against the federal government for a Fifth Amendment taking of their contract rights to receive water from the SWP. The plaintiffs alleged that, due to certain restrictions imposed by the federal Endangered Species Act (ESA) on the timing, rate and amount of deliveries by the SWP, they did not receive their full contractual entitlements in certain years. The Court of Federal Claims agreed with the plaintiffs, finding the United States liable for a physical taking of plaintiffs' contract rights to receive water. Although the *Tulare Lake* decision is non-precedential in California, it is regularly cited, both in judicial and administrative proceedings, by water rights holders wishing to take advantage of the *per se* physical takings rule enunciated in that case.

More recently, in *Klamath Irrig. Dist. v. United States* (2005) 67 Fed. Cl. 504, a Fifth Amendment takings case brought by federal reclamation project water users in the Klamath Basin, another Court of Federal Claims judge criticized and declined to follow the holding and reasoning in *Tulare Lake*. Although the *Klamath* decision is also non-precedential in California, it too has been cited and discussed in various judicial and administrative fora.

This Court's decision in *Allegretti* discusses and analyzes both the *Tulare Lake* and the *Klamath* decisions. The Court followed the *Klamath* court's criticism of *Tulare Lake* and similarly declines to rely on the *Tulare Lake* court's reasoning. The Court found the reasoning of

---

2. The *Murrison* court noted the *Tulare Lake* decision in a footnote but did not address that decision because it found that the takings claim in the case before it was not ripe. (*Murrision, supra,* 101 Cal.App.4th at p. 363, fn. 8.)

*Tulare Lake* flawed for all the reasons stated in *Klamath* and also because the *Tulare Lake* decision disregarded "the hallmarks of a categorical physical taking, namely actual physical occupation or physical invasion of a property interest." (Slip. opn. at p. 15.) Although *Tulare Lake* and *Klamath* are federal decisions, because they involved alleged takings of state water rights, it is important to have a published California appellate court decision addressing these courts' conflicting legal interpretations concerning the scope of permissible regulation of water rights in California. Only a California appellate court can authoritatively determine the nature and scope of water rights in California. (See *United States v. Gerlach Livestock Co.* (1950) 339 U. S. 725, 742-744 [nature and scope of water rights is determined by California law].) By resolving the apparent conflict between the *Tulare Lake* and *Klamath* decisions concerning the extent of the government's ability to regulate water rights in California, this Court's decision in *Allegretti* meets the second standard for publication under Rule 976, subdivision (c)(2) of the California Rules of Court.

**The Court's Opinion Involves a Legal Issue of Continuing Public Interest**

The Court's opinion also meets the third standard for publication under Rule 976, subdivision (c)(3) of the California Rules of Court in that it "involves a legal issue of continuing public interest." As the Attorney General pointed out in his amicus brief, the issues raised by the *Allegretti* case concerning the extent of the government's ability to regulate water rights in California are significant to the State of California, because of the importance of water resources to the environmental and economic well-being of the State and its people. (See *State of California v. Superior Court of Riverside County* (2000) 78 Cal. App. 4th 1019, 1030; Cal. Const., art. X, § 2 Wat. Code, §§ 100, 102, 104.)

The Court's decision in this case provides guidance to the State Water Resources Control Board and other state and local government agencies, water rights holders and the general public regarding the government's ability to regulate water rights and the circumstances under which such regulation may or may not constitute a taking. The decision will assist state and local government agencies in appropriately managing and protecting the state's water resources in the public interest and for the general public welfare. (Wat. Code, §§ 100, 104.) Therefore, the *Allegretti* decision concerns "a legal issue of continuing public interest" within the meaning of Rule 976, subdivision (c)(3) of the California Rules of Court.

**The Court's Opinion Makes a Significant Contribution to the Legal Literature**

Finally, the Court's opinion meets the fourth standard for publication under Rule 976, subdivision (c)(4) of the California Rules of Court by making a significant contribution to the legal literature. It contains a scholarly and thorough discussion and analysis of modern principles of physical and regulatory takings jurisprudence, and as discussed above, is the first California appellate decision to apply these principles in the context of water rights.

In addition to the applicability of the Court's analysis to water rights takings cases, the Court's discussion and application of regulatory takings principles also will be useful for land-based regulatory takings cases. For example, the opinion contains a helpful discussion and analysis of the meaning of the "denial of all economically beneficial use" standard for a categorical, total regulatory taking (slip opn. at p. 16, citing *Lucas*, 505 U.S. at p. 1015). The Court rejected Allegretti's claim that its inability to farm its entire acreage amounted to a total regulatory taking. (*Id.* at p. 17.) In so holding, the Court clarified that, in determining whether a categorical regulatory taking has occurred, "we do not assess whether a regulation deprives some or even a vast majority of economic use," rather, it "must deprive an owner of *all* economically beneficial use." (*Ibid.*; emphasis in original.) The Court's analysis and holding on this point will provide helpful guidance in other regulatory takings cases.

The Court's decision likewise contains an important analysis of the *Penn Central* factors for determining a less-than-total regulatory taking. (Slip opn. at pp. 18-22.) The opinion contains particularly useful guidance regarding the economic impact and investment-backed expectations factors of *Penn Central*, and the type of evidence that is required to establish these factors.[3/] For example, the Court's decision clarifies that the economic impact of a regulation on the landowner must "unreasonably impair[] the value or use of the property in view of the owners' general use of their property," and must be "considered in the context of other laws and regulatory schemes." (*Id.* at p. 19.) Importantly, the Court rejected Allegretti's argument that a regulatory taking could be established even if there remained "some economically beneficial use" of the property. (*Ibid.*) The Court also found that unspecific lay testimony regarding reduced profits or mere diminution in the value of the property is insufficient to demonstrate any economic impact as a result of the regulation. (*Id.* at p. 20.)

With respect to the investment-backed expectations factor, the Court held that such expectations must be distinct, as opposed to abstract and general, and that a "claim of loss of anticipated profits or gain is not compensable." (*Id.* at pp. 21-22.) The Court also held that general testimony that the landowner was not able to make all of his anticipated profits is inadequate to establish that the regulation interfered with his reasonable investment-backed expectations. (*Ibid.*)

The Court's discussion and application in *Allegretti* of all of these aspects of the *Lucas* and *Penn Central* tests will provide useful guidance for practitioners and other courts in other regulatory takings cases involving water or land. Publication of such thorough and well-reasoned regulatory takings decisions is important because regulatory takings cases by definition are highly fact-specific, and practitioners and courts alike regularly rely on other courts' application of established legal principles to particular factual circumstances in order to evaluate the potential

---

3. The Court's opinion also contains a significant discussion of the application of the "character of government action" factor of the *Penn Central* test to the water rights context, holding that, because the County's action in this case "did not physically invade or appropriate Allegretti's property or groundwater," the character of the governmental action did not support a taking. (Slip. opn. at. p. 19.)

outcome of a particular case. (See slip. opn. at p. 7, citing *Lingle*, 124 S. Ct. at p. 2081 and *Penn Central*, 438 U.S. at p. 124 ["regulatory takings challenges are governed by the 'essentially ad hoc, factual inquiries' set forth in *Penn Central*"].)

Thus, the Court's opinion in this case also meets the fourth standard for publication under Rule 976, subdivision (c)(4) of the California Rules of Court, in that it "makes a significant contribution to the legal literature by reviewing . . . the development of . . . a provision of a constitution . . . or other written law."

For all of the foregoing reasons, the Attorney General respectfully requests that the Court certify for publication its opinion in *Allegretti v. County of Imperial.*

Respectfully submitted,

Tara T. Mueller

TARA MUELLER
Deputy Attorney General

For BILL LOCKYER
Attorney General

# PROOF OF SERVICE

**Case Name:** ***Allegretti & Company v. County of Imperial***
**Case No.:** **California Court of Appeal, Fourth Appellate District, Division One Case No. D045156**

I am employed in the County of Alameda, California. I am over the age of 18 years and not a party to the within entitled cause; my business address is 1515 Clay Street, 20th Floor, Oakland, California 94612-1413. On **April 11, 2006**, I served the following document(s):

**REQUEST FOR PUBLICATION (Cal. Rules of Court, Rule 978) LETTER TO PRESIDING JUSTICE MCCONNELL AND THE HONORABLE ASSOCIATE JUSTICES**

on the parties through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below for service as designated below:

**(A)** **By First Class Mail**: I caused each such envelope to be placed in the internal mail collection system at the Office of the Attorney General with first-class postage thereon fully prepaid in a sealed envelope, for deposit in the United States Postal Service that same day in the ordinary course of business.

**(B)** **By Messenger Service**: I caused each such envelope to be delivered by a courier employed by Clark Courier, with whom we have a direct billing account, who personally delivered each such envelope to the office of the address on the date last written below.

**(C)** **By Overnite Mail**: I caused each such envelope to be placed in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for.

**(D)** **By Facsimile**: I caused such document to be served via facsimile electronic equipment transmission (fax) on the parties in this action by transmitting a true copy to the following fax numbers listed under each addressee below.

**(E)** **By Personal Service**: I caused such envelope to be hand delivered.

| TYPE OF SERVICE | ADDRESSEE |
|---|---|
| A | **Jeffrey L. Marcus**<br>**Law Offices of Jeffrey L. Marcus**<br>**340 N. Westlake Boulevard, Suite 220**<br>**Westlake Village, California 91362**<br>***Attorneys for Appellant/Plaintiff*** |

A

**Michael M. Berger, Esq.**
**Manatt, Phelps & Phillips, LLP**
**11355 West Olympic Boulevard**
**Los Angeles, California 90064**
***Attorneys for Appellant/Plaintiff***

A

**Antonio Rossman**
**Law Offices of Antonio Rossman**
**380 Hayes Street, #1**
**San Francisco, California 94102**
***Attorneys for Respondent/Defendant***

A

**Michael T. Gibbs, Esq.**
**Gibbs & Fuerst**
**600 "B" Street, Suite 2300**
**San Diego, California 92101**
***Attorneys for Respondent/Defendant***

A

**Donald R. Worley, Esq.**
**Stephenson, Worley, Garratt, Etc.**
**401 "B" Street, Suite 2400**
**San Diego, California 92101-4200**
***Attorneys for Respondent/Defendant***

A

**Clerk of the Court**
**California Supreme Court**
**350 McAllister Street**
**San Francisco, California 94102 (5 copies)**

A

**Clerk of the Court**
**Imperial County Superior Court**
**939 W. Main Street**
**County Courthouse**
**El Centro, California 92243-2842**

I declare under penalty of perjury the foregoing is my true and correct and that this declaration was executed on **April 11, 2006**, at Oakland, California.

SARAH L. ANDERSON