**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., Plaintiffs, | ) | |
| v. | ) | |
| UNITED STATES OF AMERICA, Defendant, | ) | No. 01-591 L<br>Hon. Francis M. Allegra |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, Defendant-Intervenor. | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE BRIEF *AMICUS CURIAE* OF NATURAL RESOURCES DEFENSE COUNCIL**

In compliance with this Court's Order of May 1, 2006, Plaintiffs hereby file this memorandum responding to NRDC's arguments,[1] which are at sharp variance with the position put forward by the United States: "NRDC observes, however, that the presentation by the United States appears to reflect some of the deep confusion that infects this field of law." *Amicus* Br. at 2. NRDC's memorandum rejects not only the reasoning of Defendant's brief, but also the reasoning of the Supreme Court's decision in *United States v. Winstar*, 518 U.S. 839 (1996), as contrary to "first principles"[2] and as a mere "viewpoint" which NRDC is free to reject in its brief. Whatever the value of NRDC's criticisms of the Supreme Court, as well as decisions of

[1] Plaintiffs submit this memorandum responding solely to that portion of NRDC's brief *amicus curiae*, Argument III, that concerns the sovereign acts and unmistakability doctrines. *See* Order, May 1, 2006 (stating "that response shall be restricted to the issues raised in this court's order of December 20, 2005"); *see also* Order, December 20, 2005 (stating that "defendant shall file a motion for summary judgment concerning the application herein of the sovereign acts and/or unmistakability doctrines").

[2] *Amicus* asserts that "as a matter of first principles, the approach taken in the *Winstar* plurality opinion is nonsensical," *Amicus* Br. at 28, and "fallacious." *Id*. at 21.

this Court and the Federal Circuit, in a law review symposium, they provide no guidance to this Court which, after all, is bound by those precedents in deciding the pending motion.

**PROCEDURAL HISTORY**

On December 20, 2005, the Court ordered Defendant, on or before, January 20, 2006, to file "a motion for summary judgment concerning the application herein of the sovereign acts and/or unmistakability doctrines." Order, December 20, 2005. Pursuant to that order, Defendant filed a motion for summary judgment on February 17, 2006. Plaintiffs, on April 28, 2006, filed their opposition to Defendant's motion for summary judgment. Defendant's reply brief is due June 5, 2006.

On February 27, 2006, NRDC filed its brief *amicus curiae* in support of Defendant's motion for summary judgment. In addition to *Amicus'* brief in support of Defendant's motion, *Amicus* has filed by leave several documents with this Court that it contends are relevant to the Court's decision on Defendant's motion. Specifically, on March 15, 2006, *Amicus* filed a motion for leave to file the decision of the California Court of Appeals in *State Water Resources Control Board*, 39 Cal.Rptr.3d 189 (Cal. Ct. App. 2006). The decision in *SWRCB* dealt with State Water Resources Control Board's Revised Water Right Decision 1641. On April 3, 2006, *Amicus* filed a motion for leave to file the California Court of Appeals decision in *Allegretti & Co v. County of Imperial*, 2006 WL 773036 (Cal. Ct. App. 2006); a motion for leave to file the published version of the *Allegretti* decision on April 27, 2006. The *Allegretti* decision examined whether a physical, categorical, or *Penn Central* taking occurred where the County placed conditions on the issuance of a conditional use permit to activate a well on Allegretti's property. In addition, on April 21, 2006, *Amicus* filed a motion for leave to file a letter from the Attorney General of California requesting that the *Allegretti* decision be published.

On April 28, 2006, Plaintiffs filed a motion for leave to file a consolidated response to all of these filings by *Amicus* NRDC. This Court, on May 1, 2006, entered an order granting this motion in part and denying it in part. Specifically, this Court granted Plaintiffs leave to file a response "restricted to the issues raised in this court's order of December 20, 2005, and, in particular, [Plaintiffs] shall not reargue issues and points already decided by this court." Accordingly, in compliance with this Court's May 1 order, Plaintiffs respond only to Argument III (*Amicus* Br. at 15-33) of NRDC's February 27, 2006 brief, which deals with the sovereign acts and unmistakability doctrines.[3]

**ARGUMENT**

The thrust of *Amicus'* argument is that the Court should not follow the precedent set forth in rulings such as *United States v. Winstar*, 518 U.S. 839, 904 (1996),[4] *Mobil Oil v. United States*, 530 U.S. 604, 619 (2000),[5] and *Franconia Associates v. United States*, 61 Fed. Cl. 718, 734 (2004), [6] but should instead adopt NRDC's rather iconoclastic view of what the law should

---

[3] However, to the extent the Court should deem any portion of NRDC's filings other than Argument III of its February 27, 2006 brief relevant to determination of the pending cross motions for summary judgment, Plaintiffs request an opportunity to respond to those filings as well.

[4] Where it suits *Amicus*, *Amicus* rejects the reasoning of *Winstar*: "Finally, as a matter of first principles, the approach taken in the Winstar plurality opinion is nonsensical because it ignores the special considerations that justify granting government broad latitude to take action that may incidentally affect the government's contract obligations and that supported creation of the sovereign defenses in the first place." *Amicus* Br. at 28.

[5] In rejection of the Supreme Court's statement in *Mobil Oil* regarding the sovereign acts doctrine and numerous cases of this Court, *Amicus* states that "Furthermore, there is no substance to the viewpoint that a finding of a general and public sovereign act is simply the prelude to a determination whether the government is excused from liability based on a traditional impracticability (aka impossibility) contract defense." *Amicus* Br. at 27.

[6] Contrary to the reasoning in *Franconia Associates* and other cases, *Amicus* states that "[t]he unmistakability doctrine provides an independent basis for rejecting a contract claim, even when

be, rather than what the law actually is. Thus, NRDC's essay on government contracts is of little assistance to this Court in deciding this case.

## I. The Sovereign Acts Doctrine

In its brief, *Amicus* rejects the Supreme Court's *Winstar* holding, and asserts instead the novel proposition that "there is no substance to the viewpoint that a finding of a general and public sovereign act is simply the prelude to a determination whether the government is excused from liability based on traditional impracticability (aka impossibility) contract defense." *Amicus* Br. at 27 (citing *Winstar*, 518 U.S. at 904). *Amicus'* bold assertion runs contrary to established precedent regarding the nature of the sovereign acts doctrine and, as a practical matter, makes little sense. Contrary to *Amicus'* assertion, the sovereign acts doctrine is nothing more than exception to the general rule of contracts that the breaching party may not be discharged of its contractual obligations if its own act rendered performance impossible. *Winstar*, 518 U.S. at 904 ("As *Horowitz* makes clear, that defense simply relieves the Government as contractor from the traditional blanket rule that a contracting party may not obtain discharge if its own act rendered performance impossible."); *Horowitz v. United States*, 267 U.S. 458, 461 (1925) ("It has long been held by the Court of Claims that the United States when sued as a contractor cannot be held liable for *an obstruction to the performance* of the particular contract resulting from its public and general acts as a sovereign.") (emphasis added). As *Jones v. United States*, 1 Ct. Cl. 383 (1865), makes clear, the purpose of the sovereign acts doctrine is to put the United States on par with other private contractors: "In this court the United States appear simply as contractors; and they are to be held liable only within the same limits that any other defendant would be in any other court." 1 Ct. Cl. at 384. The sovereign acts doctrine accomplishes this goal by allowing

---

the government action does not involve a central government function, and even when it does not represent a public and general act." *Amicus* Br. at 29.

the United States to assert an impossibility defense where a sovereign act makes performance impossible.

This is the understanding of the majority of the Justices in *Winstar*. *Winstar*, 518 U.S. at 904 (Souter, J., plurality) (holding that even if a sovereign act is implicated, "it does not follow that discharge will always be available, for the common-law doctrine of impossibility imposes additional requirements before a party may avoid liability for breach"); *id*. at 923 (Scalia, J., concurring) ("In my view the 'sovereign acts' doctrine adds little, if anything at all, to the 'unmistakability' doctrine, and is avoided whenever that one would be--i.e., whenever it is clear from the contract in question that the Government was committing itself not to rely upon its sovereign acts in asserting (or defending against) *the doctrine of impossibility* . . . .") (emphasis added). Moreover, this is the view of the court in *Mobil Oil v. United States*, where the court observed that, in *Winstar*, the court characterized the "'sovereign acts' doctrine [as] . . . treat[ing] certain laws as if they simply created conditions of impossibility." 530 U.S. 604, 619 (2000).

Judges of this Court have confirmed that the sovereign acts doctrine is a variant of the impossibility defense. As one judge of this Court recently noted, rejecting NRDC's *amicus* argument in that case, "[a]s a precondition to excusing liability for breach under the sovereign acts doctrine, defendant bears the burden of showing that performance was impossible because of the legislation." *Stockton East Water Dist. v. United States*, --- Fed. Cl. ---, 2006 WL 932374 (2006); *accord Precision Pine & Timber, Inc. v. United States*, 50 Fed. Cl. 35, 72 (2001) ("However, even if a court determines that a breach was a sovereign act, the Government will not have the benefit of the sovereign acts defense if it cannot satisfy the common-law doctrine of impossibility."); *Croman v. United States*, 49 Fed. Cl. 776, 781 (2001) ("[T]he government must show that the impossibility defense is applicable to invoke the sovereign acts doctrine."); *Scott*

*Timber Co. v. United States*, 40 Fed. Cl. 492, 508 (1998) ("If the court finds that the government action which prevents performance of the contract is, in fact, attributable to the government as sovereign, then the court must determine in the second step of its analysis whether the government as contractor should be discharged from liability under the common law doctrine of impossibility.")

Thus, as the Supreme Court and judges of this Court have confirmed, the sovereign acts doctrine is, to quote *Amicus*, "simply the prelude to a determination whether the government is excused from liability based on traditional impracticability (aka impossibility) contract defense." *Amicus* Br. 27. It would make little sense to allow the government to discharge its contractual duties on the basis of sovereign acts that did not affect performance of their contracts. *Amicus'* citation of cases where the doctrine of impossibility of performance was not purportedly applied only reflects that in those cases the objective impossibility of continued performance was unquestionable. *E.g.*, *United States v. Winstar*, 518 U.S. 839 (1996) (fully eliminated supervisory goodwill); *Horowitz*, 267 U.S. 458 (embargo made shipment of silk unquestionably impossible); *Franconia Associates v. United States*, 61 Fed. Cl. 718 (2004) (EHLIPA fully eliminated plaintiff's ability to prepay).

## II. Unmistakability Doctrine

*Amicus* also asserts that the unmistakability doctrine applies and precludes a finding of breach of the contracts at issue in this case. However, as Plaintiffs assert in their opposition to Defendant's motion for summary judgment, the unmistakability doctrine has no application to this case. The doctrine "provides that, absent a clear statement to the contrary, a contract entered into by a private party with the government will not be interpreted to *exempt* the private party from the operation of a subsequent sovereign act by the government." *Centex Corp. v. United*

*States*, 395 F.3d 1283, 1306-07 (Fed. Cir. 2005) (emphasis added). As Plaintiffs, by this breach of contract claim, seek money damages and not to exempt themselves from the ESA, there is nothing in this case for the unmistakability doctrine to guard against. *Winstar*, 518 U.S. at 881 ("[A] requirement to pay money supposes no surrender of sovereign power by a sovereign with the power to contract."); *First Nationwide Bank v. United States*, 431 F.3d 1342, 1351 (Fed. Cir. 2005) ("The issue is not whether Nationwide must comply with the Guarini Legislation, for it has so complied; the issue is whether the government can be held liable in damages for the economic effect of the abrogated contract provisions."); *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1579 (Fed. Cir. 1997) ("[T]he unmistakability doctrine turns on whether enforcement of the contractual obligation would effectively block the exercise of a sovereign power of the Government."); *Winstar Corp. v. United States*, 64 F.3d 1531, 1547 (Fed. Cir. 1995) ("The Supreme Court's decision in POSSE is predicated on the need to protect the sovereign's legislative power and that concern is inapplicable where money damages alone are at issue.") As the Supreme Court ruled in *Winstar*:

> Once general jurisdiction to make an award against the Government is conceded, a requirement to pay money supposes no surrender of sovereign power by a sovereign with the power to contract. *See, e.g., Amino Bros. Co. v. United States*, 178 Ct. Cl. 515, 525, 372 F.2d 485, 491 ("The Government cannot make a binding contract that it will not exercise a sovereign power, but it can agree in a contract that if it does so, it will pay the other contracting party the amount by which its costs are increased by the Government's sovereign act"), *cert. denied*, 389 U.S. 846, 88 S.Ct. 98, 19 L.Ed.2d 112 (1967).

*Winstar*, 518 U.S. at 881-82.

Thus, the award of money in this case would not be tantamount to enjoining the government's sovereign authority. In other words, were Defendant held liable for its breach, and ordered to pay for that breach, the effect would not be equivalent to exempting Plaintiffs from the ESA. This is especially the case where, as here, the sovereign authority that is to be

allegedly infringed expressly authorizes the purchase of water to meet its demands. *See* 16 U.S.C. § 1534(a)(2) (stating that the appropriate Secretary "is authorized to acquire by purchase, donation, or otherwise . . . waters, or interests therein").

Moreover, as Plaintiffs demonstrate in their opposition, the actions taken by Defendant allegedly pursuant to the ESA targeted the contracts at issue in this case and, therefore, were not sovereign acts. *See* Pls.' Opp. at 37. The non-sovereign nature of Defendant's actions provides a further reason why the unmistakability doctrine does not apply to this case—the unmistakability doctrine does not apply to targeted actions.[7] *Franconia Associates v. United States*, 61 Fed. Cl. 718, 734 (2004) ("[I]t appears that every court to consider the issue has concluded that the unmistakability doctrine is inapplicable where Congress, rather than exercising its sovereign powers, targets its preexisting contractual obligations."); *see also Centex*, 395 F.3d at 1307 (citing *Winstar*, 518 U.S. at 879) ("A prerequisite for invoking the unmistakability doctrine is that a sovereign act must be implicated."); *General Dynamics v. United States*, 47 Fed. Cl. 514, 545 (2000) ("[T]he unmistakability doctrine is not applicable in the case at bar because . . . [the Act] is not a 'public and general' act."); *Conoco, Inc. v. United States*, 35 Fed. Cl. 309, 335 (1996) ("The unmistakability doctrine stands or falls with the sovereign acts doctrine.")

In short, the unmistakability doctrine has no application to this case for at least three reasons. First, Plaintiffs only seek to have Defendant pay money for its breach and not an exemption from the ESA. Second, the award of money for Defendant's breach would not be

[7] *Amicus* asserts that "the unmistakability doctrine can appropriately be applied in cases not involving the types of public and general acts covered by the sovereign acts doctrine." *Amicus* is "apparently unwilling to accept that [the government] lost precisely the same argument in *Winstar* and that, as one would expect, its argument has not had success in courts ever since." *Statesman II Apartments, Inc. v. United States*, 66 Fed. Cl. 608, 626 (2005).

tantamount to enjoining the government's sovereign authority. Finally, the targeted nature of the actions Defendant took allegedly pursuant to the ESA make those actions non-sovereign acts and, therefore, not subject to the unmistakability doctrine.

As one of the commentators cited with approval by NRDC states, after *Winstar*:

> [T]he unmistakability doctrine born in *Charles River Bridge* has been gutted. As *Winstar* showed, the Court stands ready to read into contracts implied promises by the government to assume the risk that the law will change in a manner inconsistent with the government's contractual promise. Thus a majority of the Justices in *Winstar* were able to find a contractual commitment on the part of the government not to require more sensible loss reserves even though none of the many written or even alleged oral communications between the banks and regulators contained such an express promise.

David Dana & Susan P. Koniak, *Bargaining in the Shadow of Democracy*, 148 U. PA. L. REV. 473, 492-93 (1999).

Finally, *Amicus* urges this Court to apply the related reserved powers doctrine to this case as a defense to Defendant's breach of the contracts at issue. As *Amicus* notes, the reserved powers doctrine—to the extent it is still a viable doctrine and is a doctrine applicable against the United States—holds that certain core government powers cannot be contracted away. As such, the reserved powers doctrine "ha[s] no force where, as here, the private party to the contract does not seek to stay the exercise of sovereign authority, but merely requests damages for breach of contract." *Winstar*, 518 U.S. at 923 (Scalia, J., concurring). Accordingly, as Plaintiffs do not seek to stay Defendant's sovereign power, but rather seek money damages, the reserved powers doctrine has no application to this case. Moreover, not only do Plaintiffs only seek money damages, but an award of money would not be tantamount to enjoining the exercise of sovereign authority.

In addition, since the United States possesses only delegated powers and not reserved powers, the reserved powers doctrine does not apply to the federal government. *Amicus* is

unable to cite one case where the reserved powers doctrine has been applied against the federal government.[8] This is because, as was noted in *Winstar*, the reserved powers doctrine "holds that a *state* government may not contract away 'an essential attribute of its sovereignty,'" *Winstar*, 518 U.S. at 888 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 23 (1977)) (emphasis added). As the very name of the doctrine itself indicates—the federal government does not have reserved powers, it only has those powers to which it has been expressly delegated—the reserved powers doctrine has no application to the federal government. *See United States v. Lopez*, 514 U.S. 549, 565 (1995) ("The Constitution mandates this uncertainty by withholding from Congress a plenary police power that would authorize enactment of every type of legislation.")

**CONCLUSION**

For the foregoing reasons and the reasons set forth in Plaintiffs' Opposition to Defendant's Motion for Summary Judgment as to Plaintiffs' Contract Claims, Defendant's motion for summary judgment should be denied.

---

[8] *Amicus* attempts to cite *Winstar* as a case where "the reserved powers doctrine has been specifically applied to the federal government." *Amicus* Br. 23. However, even a cursory read of *Winstar* reveals that the reserved powers doctrine was not applied in *Winstar*. *Amicus'* citation to dicta in *Cuyahoga Metr. Housing Auth. v. United States*, 57 Fed. Cl. 751, 766 (2003), is equally unavailing.

Respectfully submitted,

s/ Nancie G. Marzulla

Nancie G. Marzulla
Roger J. Marzulla
Zachary N. Somers
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
202-822-6760
202-822-6774 (fax)

Dated: May 12, 2006

Counsel for Plaintiffs

Of Counsel:

William M. Ganong
General Counsel
Klamath Irrigation District
514 Walnut Avenue
Klamath Falls, OR 97601
Phone: 541-882-7228
Fax: 541-883-1923

Paul S. Simmons
Somach, Simmons & Dunn
813 6th Street, 3rd Floor
Sacramento, CA 95814-2403
Phone: (916) 446-7979
Fax: (916) 446-8199