UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT, et al., | ) | No. 01-591-FMA |
| | ) | |
| Plaintiffs, | ) | Judge Francis M. Allegra |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

INTERVENOR-DEFENDANT PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CONTRACT CLAIMS

# TABLE OF CONTENTS

I. THE WATER USERS' CLAIM THAT KLAMATH PROJECT OPERATIONS ARE NOT SUBJECT TO THE ESA IGNORES THE RELEVANT STANDARD. ........ 2

II. THE AGENCIES COMPLIED WITH THE ESA IN OPERATING THE KLAMATH PROJECT TO PREVENT JEOPARDY TO LISTED SPECIES ........ 5

III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## CASES

Allen v. McCurry,
449 U.S. 90 (1980)....................5

Aluminum Co. v. Bonneville Power Administration,
175 F.3d 1156 (9th Cir.1999) ....................8

Bennett v. Spear,
520 U.S. 154 (1997)....................6, 7

Building Industrial Association of Southern California v. Norton,
247 F.3d 1241 (D.C.Cir.2001)....................9

Crocker v. United States,
125 F.3d 1475 (Fed. Cir. 1997)....................6

Defenders of Wildlife v. Babbitt,
958 F. Supp. 670 (D.D.C.1997)....................8

Greenpeace Action v. Franklin,
14 F.3d 1324 (9th Cir.1992) ....................8, 9

Kandra v. United States,
145 F. Supp.2d 1192 (D. Or. 2001) ....................4, 6, 8

Klamath Water Users Protective Association v. Patterson,
204 F.3d 1206 (9th Cir. 2000) ....................3, 4

O'Neill v. United States,
50 F.3d 677 (9th Cir. 1995) ....................3

Pacific Coast Federation of Fishermen's Associations v. Bureau of Reclamation,
138 F. Supp.2d 1228 (N.D. Cal. 2001)....................4

Pacific Coast Federation of Fishermen's Associations v. Bureau of Reclamation,
426 F.3d 1082 (9th Cir. 2005) ....................4, 5, 10

Pacific Rivers Council v. Thomas,
30 F.3d 1050 (9th Cir. 1994) ....................3

Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation,
143 F.3d 515 (9th Cir. 1998) ....................8

Tennessee Valley Authority v. Hill,
437 U.S. 153 (1978) ........................................ 2, 3

Turtle Island Restoration Network v. National Marine Fisheries Service,
340 F.3d 969 (9th Cir. 2003) ........................................ 3

Ware v. United States,
57 Fed. Cl. 782 (Fed. Cl. 2003) ........................................ 6

STATUTES

5 U.S.C. § 706 ........................................ 1

16 U.S.C. § 1536(a)(2) ........................................ 2, 8

28 U.S.C. § 1491 ........................................ 6

REGULATIONS

50 C.F.R. § 402.02 ........................................ 3

50 C.F.R. § 402.03 ........................................ 3

50 C.F.R. § 402.16 ........................................ 3

In order to avoid duplicative briefing, Intervenor-defendant Pacific Coast Federation of Fishermen's Associations ("PCFFA") joined in the Federal Defendants' Motion for Summary Judgment on Plaintiffs' Contract Claims, but did not file a separate brief in support of that motion. However, in their Opposition to the Motion for Summary Judgment plaintiffs Klamath Irrigation District et al. (hereafter "the Water Users") raise several arguments that specifically implicate PCFFA's previous litigation on the management of the Klamath Project, the scientific reports resulting in part from that litigation, and the interplay of federal reclamation law and the Endangered Species Act. PCFFA therefore files this separate brief to address those specific issues. PCFFA believes the legal arguments involving the sovereign acts and unmistakability doctrines are adequately addressed by the briefs filed by the federal defendant and *amicus curiae* Natural Resources Defense Council, and PCFFA adopts the legal arguments in those briefs.

The Water Users devote the majority of their brief to arguing two mixed legal and factual issues. The Water Users first proffer a number of arguments why, as a matter of law, operations of the Klamath Project are not even subject to the Endangered Species Act. Second, the Water Users ask the Court to find, based on a 2004 report by the National Research Council, that the basis for any curtailments in irrigation deliveries in 2001 was invalid. Based on these assertions, the Water Users conclude that any acts by the federal government were voluntary, rather than the consequence of the mandate to avoid jeopardy to endangered species under the ESA, and thus the sovereign acts defense cannot be asserted.

With respect to the first argument, the Water Users ignore both the fifteen year history of consultation on the Klamath Project and the well-settled legal standards used to determine whether an "agency action" is subject to the ESA. With respect to the second argument, the correct avenue for asserting these arguments was a challenge to the 2001 Biological Opinion

under the Administrative Procedures Act, 5 U.S.C. § 706 et seq., an option which the Water Users elected not to pursue. The simple assertion that a new assessment of the reasonable and prudent alternatives has become available does not convert valid agency actions, never challenged to the point of a final decision on the merits, to simple "voluntary actions."

## I. THE WATER USERS' CLAIM THAT KLAMATH PROJECT OPERATIONS ARE NOT SUBJECT TO THE ESA IGNORES THE RELEVANT STANDARD.

The Water Users posit several reasons why Klamath Project operations are not subject to the ESA. All border on the frivolous.

The Water Users make the blanket assertion that "[a] government agency is not required to consult with respect to binding contracts it has already entered into before passage of the Endangered Species Act." Water Users' Opposition at 19. In essence, the Water Users contend that there is no agency "action" remaining to be taken with respect to operation of the Klamath Project, simply because the contracts under which they assert rights were entered into prior to the passage of the ESA. This is completely inconsistent with the ESA and the caselaw applying it.

16 U.S.C. § 1536(a)(2) provides that Federal agencies "shall, in consultation with and with the assistance of the Secretary, insure that **any action** authorized, funded or carried out by such agency . . . is not likely to jeopardize [the existence of listed species]. . . .") (emphasis added). The United States Supreme Court has stated that "one would be hard pressed to find a statutory provision whose terms were any plainer" than ESA Section 7, and that the statutory language "admits of no exception" in requiring federal agencies to "insure that any action authorized, funded or carried out by them" does not jeopardize listed species. See TVA v. Hill, 437 U.S. 153, 173 (1978). The Court further noted that Congress adopted the ESA "to require agencies to afford first priority to the declared national policy of saving endangered species," and it made a "conscious decision . . . to give endangered species priority over the 'primary missions'

of federal agencies." Id. at 184-86.

In keeping with the breadth of the statutory language, the regulations implementing the ESA define very broadly the range of "actions" that trigger the consultation requirement:

> *Action* means **all activities or programs of any kind** authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas. Examples include, but are not limited to:
>
> (a) actions intended to conserve listed species or their habitat;
>
> (b) the promulgation of regulations;
>
> (c) the granting of licenses, contracts, leases, easements, rights-of-way, permits or grants-in-aid; or
>
> (d) actions directly or indirectly causing modifications to the land, water, or air.

50 C.F.R. § 402.02 (emphasis added).

The lower courts have consistently held that regardless of when a management plan, contract, or other agency action may have been confected initially, the agency is required to comply with the ESA's mandates so long as discretionary action which may affect a listed species remains to be taken. See 50 C.F.R. §§ 402.03, 402.16; Turtle Island Restoration Network v. NMFS, 340 F.3d 969 (9th Cir. 2003) (Section 7 applies to ongoing fisheries management programs); Klamath Water Users Protective Association v. Patterson, 204 F.3d 1206, 1213 (9th Cir. 2000) ("Even in circumstances where the ESA was passed well after the agreement, the legislation still applies as long as the federal agency retains some measure of control over the activity."); O'Neill v. United States, 50 F.3d 677 (9th Cir. 1995) (annual water deliveries through Reclamation project); Pacific Rivers Council v. Thomas, 30 F.3d 1050 (9th Cir. 1994), cert. denied, 115 S.Ct. 1793 (1995) (ongoing management actions under plans governing National Forests). In this case, as all the courts which have reviewed the question have held, operation of the Klamath Project leaves plenty of discretion in the hands of the BOR.

E.g., Klamath Water Users Protective Association v. Patterson, 204 F.3d at 1213; Kandra v. United States, 145 F. Supp.2d 1192 (D. Or. 2001) ("[A]s recognized by this court and the Ninth Circuit, plaintiffs' contract rights to irrigation water are subservient to ESA and tribal trust requirements.").

The Court may also take notice of the practical fact that there is a fifteen year history of consultations on the operations of the Klamath Project,[1] and so far no one has successfully argued that project operations are exempt from the ESA's protective requirements. See PCFFA v. Bureau of Reclamation, 426 F.3d 1082, 1086 n.2 (9th Cir. 2005) (summarizing prior cases dealing with the ESA and water management in the Klamath). The specific argument that the contracts at issue here are not subject to the ESA was raised in PCFFA v. Bureau of Reclamation, 138 F. Supp.2d 1228 (N.D. Cal. 2001), by the Klamath Water Users Association. See Exhibit 1 (excerpts from Intervenor's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment). This entity includes as members most, if not all, of the plaintiff irrigation districts here. The current president of KWUA, according to its website, is Steve Kandra, the plaintiff in Kandra v. United States, 145 F. Supp.2d 1192 (D. Or. 2001). See http://www.kwua.org/index.htm. In PCFFA v. BOR, Judge Armstrong entered a judgment on the merits ordering the BOR to consult on the operational plan for the Klamath Project for the year 2001, and at least implicitly rejected the argument that the contracts at issue are not subject to the ESA. As a consequence, this issue may well be *res judicata* as to those parties who were actually represented in that litigation. "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been

[1] Mark Twain is said to have observed of infant baptism that not only did he believe in it, he had seen it done. That would seem to be the case with respect to the BOR's obligation to comply with the ESA in the operation of the Klamath Project.

raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980).

In addition to arguing that the contracts at issue here are exempted from the ESA, the Water Users argue that stored irrigation water in general is not subject to the ESA, as long as the water is stored at a time "when the river had sufficient flow for the needs of the fish . . . ." Opposition at 24. In essence, the Water Users argue that storage of water and operations of the Klamath Project do not change the "baseline flows" in the basin, and therefore cannot be subject to the ESA. Once again, this argument borders on the frivolous.

The impact to in-stream flows from BOR's operation of the Klamath Project is the very basis for all Klamath Project biological opinions. It is simply untrue that BOR's actions do not change the "baseline flows" in the basin – however those are defined. Indeed, both in the 2001 biological opinion and the 2002-2012 biological opinion, NMFS found that the change in the flow regime caused by BOR's operations would jeopardize the continued existence of threatened coho salmon. See PCFFA v. BOR, 426 F.3d at 1088. BOR's control of the river flows through its decisions about project operations are at the heart of this controversy, for the actions complained about by the Water Users happened because the river did not have "sufficient flow for the needs of the fish." The Water Users cannot change the in-the-river reality of the effect of the Klamath Project operations to justify their positions.

In short, the Water Users' claim that Klamath Project operations are exempt from the statute is patently wrong. When the federal agency retains discretion to take action that may affect listed species – as it has here – the ESA applies with full force.

## II. THE AGENCIES COMPLIED WITH THE ESA IN OPERATING THE KLAMATH PROJECT TO PREVENT JEOPARDY TO LISTED SPECIES

Sections I.B. and I.D. of the Water Users' Opposition make an argument rather breathtaking in its implications: that this Court should, in the context of a claim for breach of

contract, review the underlying scientific basis for agency actions which have never been appealed to a final decision as an initial matter. Folded into this claim is an equally sweeping one: the BOR's failure to implement a long-term plan for the management of the project converts its actions to prevent jeopardy to listed species into voluntary acts, not required by the ESA. These sweeping claims should be rejected for two reasons: first, because it is a collateral attack on a valid agency action, and second, because the 2001 Biological Opinion and the actions taken pursuant to that BO were valid under the ESA.

The Water Users' invitation to review the scientific underpinnings of the 2001 BO must be rejected, because that challenge is properly brought in the district court of an appropriate venue under the federal APA. See Bennett v. Spear, 520 U.S. 154, 174-75 (1997). This Court's jurisdiction does not extend to APA challenges to agency decisions. E.g., Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997); Ware v. United States, 57 Fed. Cl. 782, 786 n.3 (Fed. Cl. 2003) ("It has been consistently held that this Court's principal jurisdictional statute, the Tucker Act, 28 U.S.C. § 1491, does not provide jurisdiction under the APA."). Some of the plaintiffs in this action did in fact challenge the 2001 BO in Kandra v. United States, 145 F. Supp.2d 1192 (D. Or. 2001), but after a preliminary injunction was denied, opted to voluntarily dismiss the case. No other challenge has been filed, and the validity of the BO and its terms cannot now be challenged in this Court.

Even if the Court did decide to undertake a review of the validity of the 2001 BO and its reasonable and prudent alternatives, the BOR was well within the legal guardrails in adopting measures to prevent jeopardy to the listed species in the Klamath basin. To be sure, many of the measures the Water Users posit that the BOR should have taken are good ones, and a long-term plan for operations of the Project would have benefited all the parties. But speculation on what

might have been done better does not undercut the fact that the 2001 BO and the actions taken in reliance on it were valid, and required by the ESA.

The Water Users posit that, in hindsight, there are other measures that BOR might have taken to protect listed fish species, and these measures might have had less impact on the Water Users. This ignores the fact that the measures BOR took were the only reasonable and prudent alternatives cited in the 2001 Biological Opinion. The Water Users' claim that BOR could have simply rejected the findings in the BO ignores the structure of the ESA and the facts. As the Supreme Court has stated, an action agency's discretion to reject a BO is more theoretical than real:

> [T]he action agency must not only articulate its reasons for disagreement (which ordinarily requires species and habitat investigations that are not within the action agency's expertise), but . . . it runs a substantial risk if its (inexpert) reasons turn out to be wrong. A Biological Opinion of the sort rendered here alters the legal regime to which the action agency is subject. . . . The action agency is technically free to disregard the Biological Opinion and proceed with its proposed action, but it does so at its own peril (and that of its employees), for "any person" who knowingly "takes" an endangered or threatened species is subject to substantial civil and criminal penalties, including imprisonment. <u>See</u> § 1540(a) and (b) (authorizing civil fines of up to $25,000 per violation and criminal penalties of up to $50,000 and imprisonment for one year).

<u>Bennett v. Spear,</u> 520 U.S. at 169-70. When the 2001 BO was issued, the BOR was under an injunction to complete a consultation on Klamath Project operations. There was no other reasonable and prudent alternative, nor was there a basis for any other course of action. The BOR had no option but to follow the reasonable and prudent alternative in the BO, and as set out below, that alternative is valid scientifically and legally.

Even assuming that other options were available to the BOR in 2001, PCFFA and its counsel have learned, sometimes the hard way, that agencies like the BOR and the U.S. Fish and Wildlife Service enjoy broad discretion in determining what measures to undertake in complying

with the ESA in the context of ongoing agency actions such as the Klamath Project. The ESA requires federal agencies to "use the best scientific and commercial data available" in carrying out their consultation obligations under the statute. 16 U.S.C. § 1536(a)(2). Decisions based on this information are not subject to de novo review, however, but are reviewed under a familiar and highly deferential administrative review standard: the court looks only at whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." E.g., Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 522 (9th Cir. 1998). As the Ninth Circuit put it in that case, in considering reasonable and prudent alternatives under the ESA, the agency "was not even required to pick the best alternative or the one that would most effectively protect the [endangered species] from jeopardy." Rather the agency was simply required to choose an alternative that complied with the ESA. Id. at 523.

The Oregon district court faced the same contentions made by the Water Users here in the Kandra case, and held as follows:

> The opposing views and supporting evidence of the parties demonstrate that plaintiffs simply disagree with the scientific conclusions reached by FWS and NMFS. See Plaintiffs' Reply in Support of Motion for Preliminary Injunction, pp. 15-20. The fact that such disagreement exists, however, does not render the BiOps arbitrary and capricious. See Aluminum Co. v. Bonneville Power Admin., 175 F.3d 1156, 1162 (9th Cir.1999), cert. denied, 528 U.S. 1138, 120 S.Ct. 983, 145 L.Ed.2d 933 (2000) (NMFS' BiOp was not arbitrary and capricious where differing scientific views were resolved through expert choices and plans for further studies). An agency is not required to rely on evidence that is conclusive or certain; rather, an agency must utilize the best evidence available when preparing BiOps. Greenpeace Action v. Franklin, 14 F.3d 1324, 1336-37 (9th Cir.1992) ("upholding finding of no jeopardy based on admittedly 'weak' evidence"); accord Defenders of Wildlife v. Babbitt, 958 F. Supp. 670, 680 (D.D.C.1997).

145 F. Supp.2d at 210.

Thus, although the 2004 report by the National Research Council differed with the U.S.

Fish and Wildlife Service and National Marine Fisheries Service in its evaluation of some aspects of Klamath Project operations, that report was not before the agencies in 2001. The BOR's obligation was to use the best information available to it at the time, and subsequent review and discussion of that information does not invalidate the agency's actions to protect listed species. See Bldg. Indus. Ass'n of Southern California v. Norton, 247 F.3d 1241, 1246 (D.C.Cir.2001) ("the Service must utilize the 'best scientific ... data *available,*' not the best scientific data *possible* ") (emphasis in original); Greenpeace Action v. Franklin, 14 F.3d 1324, 1337 (9th Cir.1992) ("[NMFS's] decision to go ahead with the [proposed action], despite some uncertainty about the effects of [the proposed action] on the [species], was not a clear error of judgment" where the agency "supported its conclusions with ample data and analysis.").

Indeed, although the Water Users ignore it, the 2004 NRC report recognizes that agencies like the FWS, NMFS, and BOR must make decisions based on the information they have available to them, and rejects the kind of hyperbolic claims the Water Users make in their Opposition:

> The listing agencies have been criticized for using pseudoscientific reasoning ("junk science") in justifying their requirements for the protection of species in the upper Klamath basin. The committee disagrees with this criticism. The ESA allows the agencies to use a wide array of information sources in protecting listed species. The agencies can be expected, when information is scarce, to extend their recommendations beyond rigorously tested hypotheses and into professional judgment as a means of minimizing risk to species."

Endangered and Threatened Fishes in the Klamath River Basin: Causes of Decline and Strategies for Recovery (2004), at 9.

In fact, in its Biological Opinion on Klamath Projects operations for the period 2002-2012, the National Marine Fisheries Service took note of the NRC's interim conclusions, but did not fully adopt those conclusions:

> In its [2002-2012] BiOp, the NMFS attributed the conclusions of the [2002] NRC Report to 'lack of information on distribution and abundance of coho ... and the lack of studies focused on coho and factors limiting its population in the Klamath River Basin.' The NMFS did not dismiss the NRC Report, but it did not adopt its conclusions in full.

PCFFA v. BOR, 426 F.3d at 1088-89.

In short, the BOR took the actions required by the ESA in 2001, and the NRC report does nothing to undermine the legal validity of those actions as they relate to these contract claims.

III. CONCLUSION

In short, the Water Users' Opposition is premised on two claims that are close to frivolous as a matter of law and fact. Operation of the Klamath Project, including water deliveries under the contracts at issue here, is without any question a federal action triggering the ESA's consultation and other protective requirements. As a practical matter, fifteen years of litigation over the Klamath Project without even a hint to the contrary has settled this issue. A collateral attack on the 2001 BO, which was never challenged to the point of a decision on the merits, is likewise without even an arguable legal foundation. The motion for summary judgment should be granted, and the Water Users' contract claims dismissed.

Respectfully submitted this 26th day of June, 2006.

/s/ Todd D. True
TODD D. TRUE (WSB #12864)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340
(206) 343-1526 *[FAX]*
ttrue@earthjustice.org

ROBERT B. WIYGUL (LA BAR #17411)
Waltzer & Associates
1025 Division Street, Suite C
Biloxi, MS 39530
(228) 374-0700
(228) 374-0725 *[FAX]*
robert@waltzerlaw.com

*Attorneys for Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I am a citizen of the United States and a resident of the State of Washington. I am over 18 years of age and not a party to this action. My business address is 705 Second Avenue, Suite 203, Seattle, Washington 98104.

On June 26, 2006, I served a true and correct copy of the following documents on the parties listed below:

1. Intervenor-Defendant Pacific Coast Federation of Fishermen's Associations' Reply in Support of Motion for Summary Judgment on Contract Claims.

| | |
|---|---|
| Roger J. Marzulla | |
| Nancie G. Marzulla | ☐ via facsimile |
| Marzulla & Marzulla | ☐ via overnight courier |
| 1350 Connecticut Avenue, N.W., Suite 410 | ☐ via first-class U.S. mail |
| Washington, D.C. 20036 | ☐ via hand delivery |
| Phone: 202-822-6760 | ☐ via e-mail |
| Fax No. 202-822-6774 | ☒ via electronic service by the Clerk |
| *Attorneys for Plaintiffs* | |

| | |
|---|---|
| Kristine Tardiff | |
| U.S. Department of Justice | ☐ via facsimile |
| Environment & Natural Resources Division | ☐ via overnight courier |
| c/o U.S. Attorney's Office | ☐ via first-class U.S. mail |
| 55 Pleasant Street, Suite 352 | ☐ via hand delivery |
| Concord, NH 03301 | ☐ via e-mail |
| Phone: 603-225-1562 | ☒ via electronic service by the Clerk |
| Fax No. 603-225-1577 | |
| *Attorneys for Federal Defendant* | |



*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

| | |
|---|---|
| Robin L. Rivett<br>Scott Andrew Shepard<br>Pacific Legal Foundation<br>3900 Lennane Drive, Suite 200<br>Sacramento, CA 95834<br>Phone: 916-419-7111<br>Fax No. 916-419-7747<br>*Attorneys for Amicus Curiae Oregon Farm Bureau Federation, California State Grange, Greenhorn Grange and Pacific Legal Foundation* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via electronic service by the Clerk |
| Curtis G. Berkey<br>Alexander, Berkey, Williams & Weathers, LLP<br>2030 Addison Street, Suite 410<br>Berkeley, CA 94704<br>Phone: 510-548-7070<br>Fax No. 510-548-7080<br>*Attorney for Amicus Curiae Yurok Tribe* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via electronic service by the Clerk |
| Carl Ullman<br>Klamath Water Project<br>Box 957<br>Chiloquin, OR 97624<br>Phone: 541-783-3081<br>Fax No. 541-783-2609<br>*Attorney for Amicus Curiae Klamath Tribes* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via electronic service by the Clerk |
| John D. Echeverria<br>Georgetown Environmental Law and Policy Institute<br>600 New Jersey Avenue, N.W.<br>Washington, D.C. 20001-2075<br>Phone: 202-662-9863<br>Fax No. 202-662-9005<br>*Attorney for Amicus Curiae Natural Resources Defense Council* | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via hand delivery<br>☐ via e-mail<br>☒ via electronic service by the Clerk |



*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

Loren William Collins
David E. Leith
Assistant Attorneys General
Oregon Attorney General's Office
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096
Phone: 503-378-6313
Fax No. 503-378-3465
*Attorneys for Amicus Curiae State of Oregon*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☐ via e-mail
☒ via electronic service by the Clerk

I, Catherine Hamborg, declare under penalty of perjury that the foregoing is true and correct.

Executed on this 26th day of June, 2006, at Seattle, Washington.

Catherine Hamborg



*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*