# EXHIBIT 1

SOMACH, SIMMONS & DUNN
A Professional Corporation
PAUL S. SIMMONS, ESQ. (CA Bar #127920)
JOHN A. MENDEZ, ESQ. (CA Bar #095450)
MARSHA A. BURCH, ESQ (CA Bar #170298)
400 Capitol Mall, Suite 1900
Sacramento, California 95814
Telephone: (916) 446-7979

Attorneys for Intervenor
Klamath Water Users Association

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BUREAU OF RECLAMATION,<br><br>Defendant.<br><br>KLAMATH WATER USERS ASSOCIATION,<br><br>Defendant-Intervenor. | CIV No. C001955-SBA<br><br>INTERVENOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date: February 6, 2001<br>Time: 11:30 a.m<br>Courtroom: No. 3<br><br>Honorable Saundra B. Armstrong |

//
//
//
//
//
//
//
//

EARTHJUSTICE
LEGAL DEFENSE FUND
DEC 26 2000
RECEIVED

### 2. The Relief Sought by Plaintiffs Will Not Redress the Alleged Injuries to Listed Species

Plaintiffs demand an injunction curtailing irrigation within the Klamath Project, but provide no information regarding how such an injunction will provide redress for the alleged injury to coho. Plaintiffs' Motion at 18-19. Plaintiffs fail to connect the assumed increase in flow (that may or may not result from the remedy sought) with any undisputed evidence regarding flows "necessary" for coho populations. In fact, so high are the flows which plaintiffs seek to compel, that in many years the flows could not be achieved even if there were no use of water for irrigation and wildlife refuges in the Klamath Project. A.R. 4084.

Plaintiffs rely upon the Phase 1 report and refer to it as the "best science." Plaintiffs' Motion at 19. Plaintiffs' conclusion that only the Phase 1 flows can "ensure no harm comes to fish pending completion of consultation" is without support. *See* Section II.D, Background, *supra*, at 8-11. Plaintiffs' Motion fails to show that the Phase I report is even "good" science with respect to the specific issue of stream flow needed by coho, and certainly fails to show that it represents the "best science." At a bare minimum, there are major disputed factual issues with respect to the relationship between flow at Iron Gate and coho salmon, and summary judgment is improper.

### 3. The Action Plaintiffs Seek to Enjoin Is Not a Federal Action

Plaintiffs' Motion should also be denied because the remedy sought by plaintiffs amounts to a direct injunction against irrigation diversions by private individuals and other non-federal entities who are not subject to section 7 of the ESA. Simply put, agricultural diversions of Klamath Project water occur through non-federally operated and maintained ditches and canals and do not amount to federal agency action subject to section 7 of the ESA.

For example, actions by the Klamath Irrigation District ("KID") are not federal actions. As noted above, KID's contract with USBR transferred full responsibility and authority for the operation and maintenance of the irrigation water delivery facilities to KID. A.R. 193 and 267. Solem Declaration, Exh. A at 4-9. In Article 4 of KID's contract, the operation and maintenance of the Main Canal, or "A" Canal, is transferred to KID. Solem Declaration, Exh. A, at 6-7. This canal begins at the edge of Upper Klamath Lake and is the arterial canal that serves land in KID and

certain other parts of the Klamath Project. Article 13(a) provides that KID *shall take* the water supply for lands in the District, at the A Canal. KID also operates the canals and associated structures that branch off the A Canal to deliver water to irrigated land.[5] Solem Declaration, Exh. A at 6-7. As the KID contract illustrates, USBR does not "deliver" to KID at all. KID itself takes the water, through canals paid for by KID.

The terms of the KID contract provide that KID assumes the responsibility to divert and deliver water to the district land *and* to other landowners and districts with whom USBR previously had entered into contracts or other arrangements. Solem Declaration, Exh. A, Art. 13(b) and 13(e). It also provides that KID will operate the canals that divert and deliver water to land in KID and other areas. Thus, irrigation deliveries by KID do not involve federal action, and therefore are not subject to section 7 of the ESA. *Sierra Club v. Babbitt*, 65 F.3d 1508 (9th Cir. 1995) (distinguishing situations where project's implementation depended on an additional agency action.) This raises the question of whether USBR's obligations under section 7 provide any basis for USBR to dictate actions of the water users in the Klamath Project area. The decision in *Babbitt* supplies the answer.

In *Babbitt*, the Ninth Circuit considered the question of the applicability of section 7 to a contract with a private entity, executed before passage of the ESA. The predecessor of a logging company entered an agreement with the Bureau of Land Management ("BLM") allowing it to construct roads over BLM lands. The agreement required BLM approval of any new road, but limited BLM's right to object or disapprove of the road. Under the agreements, BLM could object or disapprove only based on factors related to interference with BLM's own activities or soil erosion concerns. *Id.* at 1506. After passage of the ESA, the predecessor's rights under the agreement were assigned to the logging company. BLM's approval of the assignment included an "environmental stipulation" that required that the logging company comply with all applicable

---

[5] KID, like other districts, is required to pay USBR for costs of operation and maintenance of certain facilities that are still controlled by USBR ("reserved works"). Solem Declaration, Exh. A at 11. However, the works that actually deliver water to land are operated by KID. KID was also required to repay a portion of the cost of construction of the Project, but, since the time of the contract, has fully satisfied that obligation.

environmental laws, and allowed BLM to discontinue construction by the logging company in the event this environmental stipulation was violated. The logging company proposed to construct a road, and submitted its plans to BLM for approval. The plaintiff environmental groups contended that section 7 of the ESA applied to BLM's approval and, thus, the private entity's proposed action.

As stated by the court, the issue was: "to what extent does section 7 apply where the BLM granted right-of-way by contract to a private entity *before* passage of the ESA *and* the agency's continuing ability to influence the private conduct is limited to three factors unrelated to the conservation of the threatened spotted owl." *Id.* at 1508.

The court held that the requirements of section 7 were inapplicable because of the lack of remaining federal discretionary control relevant to the species listed as threatened. *Id.* at 1509. The court noted that under the pre-ESA agreement, BLM did "not possess the ability to implement the measures that inure to the benefit of the protected species." *Id.* at 1509. It further held that the post-ESA environmental stipulation did not broaden BLM's relevant authority to disapprove of the private action, since it provided for termination only where the lumber company violated an environmental standard applicable to its actions. *Id.* at 1511. Thus, the court held:

> Congress did not intend section 7 to apply to an agreement finalized before passage of the ESA where the federal agency currently lacks the discretion to influence the private activity for the benefit of the protected species.

*Id.* at 1511-1512.

This holding is on all fours with the issue presented here. The KID Contract was finalized before passage of the ESA. As in *Babbitt*, any remaining authority of USBR's under the contract, does not include discretion to influence private activity for the benefit of protected species, nor does it posses under the contract the "ability to implement measures that inure to the benefit of the protected species." *Id.* at 1509. Thus, under the on-point holding of *Babbitt*, the requirements of section 7 do not apply to actions by KID under the contract. Furthermore, at a minimum, plaintiffs have not shown that actions by KID and other nonparties under the hundreds of contracts for the Klamath Project are "federal actions."