**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | No. 01-591 L |
| Defendant, | ) | Hon. Francis M. Allegra |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, | ) | |
| Defendant-Intervenor. | ) | |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CONTRACT CLAIMS**

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

August 11, 2006

Counsel for Plaintiff

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CONTRACT CLAIMS ........ 1

1........ 1

2........ 3

3........ 7

4........ 8

5........ 9

6........ 11

7........ 12

CONCLUSION........ 13

## TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993) ....................10

*American Forest & Paper Ass'n v. United States EPA*, 137 F.3d 291 (5th Cir. 1998) .......5

*Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751 (2003)............................2

*Envtl. Protection Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001)...........6

*Kandra v. United States*, 145 F.Supp.2d 1192 (D. Or. 2001) ............................................9

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 2000)..... 6-7

*Mobil Oil v. United States*, 530 U.S. 604 (2000) ..............................................................11

*Natural Res. Defense Council v. Rodgers*, 381 F.Supp.2d 1212 (E.D. Cal. 2005).......... 5-6

*O'Neill v. United States*, 50 F.3d 677 (9th Cir. 1995) ...........................................7, 12, 13

*Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994).......................................7

*Platte River Whooping Crane Trust v. Federal Energy Regulatory Comm'n*, 962 F.2d 27 (D.C. Cir. 1992) ..........................................................................................................5

*Precision Pine & Timber, Inc. v. United States*, 50 Fed. Cl. 35 (2001) ....................2, 8, 10

*Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109 (10th Cir. 2003)........................3, 4, 5

*Scott Timber Co. v. United States*, 40 Fed. Cl. 492 (1998)...........................................2, 11

*Sierra Club v. Babbitt*, 65 F.3d 1502 (9th Cir. 1995) ........................................................6

*Six v. United States*, No. 04-1727 C, 2006 WL 1836070 (Fed. Cl. June 30, 2006)....... 9-10

*Stockton E. Water Dist. v. United States*, 70 Fed. Cl. 515 (2006) ................................2, 11

*Turtle Island Restoration Network v. NMFS*, 340 F.3d 969 (9th Cir. 2003) .......................6

*United States v. Winstar Corp.*, 518 U.S. 839 (1996)...................................................3, 11

*Western Watersheds Project v. Matejko*, Nos. 05-35178, 05-35208, 2006 WL 2042825 (9th Cir. July 24, 2006).........................................................................................6

**Statutes**

43 U.S.C. § 485f (1945)....................................................................................................12

43 U.S.C. § 485h (1982) ....................................................................................................12

**Other Authorities**

17B C.J.S. *Contracts* § 527 (2006)....................................................................................8

50 C.F.R. § 402.03..........................................................................................................4, 5

National Research Council, *Scientific Evaluation of Biological Opinions on Endangered and Threatened Fishes in the Klamath River Basin* (2002)...............................................10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| KLAMATH IRRIGATION DISTRICT et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | No. 01-591 L |
| Defendant, | ) | Hon. Francis M. Allegra |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, | ) | |
| Defendant-Intervenor. | ) | |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CONTRACT CLAIMS**

Plaintiffs submit this surreply brief to respond to reply briefs filed on June 26, 2006 by the Defendant, the Defendant-Intervenor (hereinafter the Defendants), and *amicus curiae*, the National Resources Defense Council:

1. Defendants' inaccurate oversimplification of Plaintiffs' position regarding the U.S. Bureau of Reclamation's (Reclamation or BOR) obligations under the Endangered Species Act (ESA), leads them to mischaracterize what Plaintiffs have said. Plaintiffs never took the position, incorrectly attributed to them by Defendants, that "BOR was not required to comply with the ESA . . . ." Def.'s Reply Br. at 2; *see also* Def.-Intervenor's Reply Br. at 1 ("The Water Users first proffer a number of arguments why, as a matter of law, operations of the Klamath Project are not even subject to the Endangered Species Act.")

What Plaintiffs actually argue is slightly more sophisticated. For starters, Plaintiffs argue that the ESA did not make 2001 water deliveries from the Klamath

Project impossible, which (contrary to what Defendants and *amicus curiae* argue) this Court recognizes as a defense to the application of the sovereign acts doctrine. *Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751, 776 (2003) (recognizing that the sovereign acts doctrine is part and parcel of the doctrine of impossibility and that where the government targets a contract "the general rule regarding impossibility of performance applies and, to the extent the government renders its own performance impossible, it is liable"); *accord Stockton E. Water Dist. v. United States*, 70 Fed. Cl. 515, 529 (2006) ("As a precondition to excusing liability for breach under the sovereign acts doctrine, defendant bears the burden of showing that performance was impossible because of the legislation."); *Precision Pine & Timber, Inc. v. United States*, 50 Fed. Cl. 35, 72 (2001) ("However, even if a court determines that a breach was a sovereign act, the Government will not have the benefit of the sovereign acts defense if it cannot satisfy the common-law doctrine of impossibility."); *Scott Timber Co. v. United States*, 40 Fed. Cl. 492, 508 (1998) ("If the court finds that the government action which prevents performance of the contract is, in fact, attributable to the government as sovereign, then the court must determine in the second step of its analysis whether the government as contractor should be discharged from liability under the common law doctrine of impossibility.")

For example, as Plaintiffs pointed out in their opposition, Reclamation here had no fewer than eleven alternatives to its decision to cut off water deliveries to Plaintiffs; by adopting one of these other alternatives, Reclamation could have complied with the ESA while avoiding the 2001 breach of contract. *See* Pls.' Opp. at 9-10 (Docket No.

280); *accord id.* at 18 ("Nothing in the Endangered Species Act prohibited Reclamation from delivering water to Plaintiffs in 2001 . . . .")

Defendants do not dispute Plaintiffs' point that Reclamation could have delivered Klamath Project water to Plaintiffs in 2001, both legally and physically (as Upper Klamath Lake was virtually full all summer). Nor do they dispute Plaintiffs' point, supported by the blue ribbon National Academy of Sciences scientific reports commissioned by Defendant itself, that such water deliveries would not have jeopardized the endangered fish. Instead, Defendants take the untenable legal position that impossibility of performance is not an element of their sovereign act defense. On this legal proposition they are incorrect. *See*, *e.g.*, *United States v. Winstar Corp.*, 518 U.S. 839, 904 (1996) ("But even if the Government stands in the place of a private party with respect to 'public and general' sovereign acts, it does not follow that discharge will always be available, for the common-law doctrine of impossibility imposes additional requirements before a party may avoid liability for breach.")

2. Defendants' cavalier assertion that Plaintiffs' claim that Reclamation's binding contractual duty to deliver water deprived it of the requisite ESA discretion "border[s] on the frivolous" (Defendant-Intervenor's Reply Br. at 2) is better addressed to counsel for the United States, for this is a restatement of the precise argument made by the government in the Tenth Circuit. *See Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109 (10th Cir. 2003), where the government argued to the Tenth Circuit:

> As we explain below, Reclamation has no discretion under the terms of the contracts to reduce contract deliveries in order to provide water for endangered species. Nor does the ESA or any other legislation provide Reclamation with discretion to unilaterally reduce SJC and MRG contract deliveries and use water for endangered species, so the doctrine of unmistakable terms does not apply.

Petition for Rehearing of Defendants-Appellees at 6, *Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109 (10th Cir. 2003) (No. 02-2254).[1]

As the United States explicated its position to the Tenth Circuit, ESA does not require Reclamation (or other federal agencies) to breach its contracts:

> Under 50 C.F.R. 402.03, 'Section 7 and the requirements of this part apply to all actions in which there is discretionary Federal involvement or control.' Once a federal agency has entered into a commitment to do a particular thing at a particular time, the physical execution of that commitment will not be regarded as a federal 'action' for purposes of Section 7 unless Reclamation has retained discretion to alter its performance for the benefit of endangered species. Under that reasoning, Reclamation's delivery of water to commercial users pursuant to contract is not a federal 'agency action' for Section 7 purposes because Reclamation had previously relinquished any discretion it might have had to use the water for endangered species. If the delivery of water to contractors is not a federal 'agency action,' it does not violate Section 7(a)(2)'s substantive requirement, even if the consequence is jeopardy to the species. Our argument thus is not that Reclamation's contractual commitments somehow override its obligation to comply with the ESA or excuse the agency's non-compliance. Rather, the argument is that the existence of a binding contract helps to define what Reclamation's ESA obligations are.

Brief of Federal Appellants at *25-*26, *Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109 (10th Cir. 2003), 2002 WL 32879498 at *25-*26 (November 20, 2002). Because a reduction in contract deliveries below what is required to be delivered to contractors and use of that water for endangered species is not within Reclamation's discretion, it could

[1] Defendant does not succeed in its attempt to distinguish its position in *Silvery Minnow*, *see* Def.'s Reply at 4 n.4, from this case. The relevant issue in both this case and *Silvery Minnow* is whether Defendant's contractual duty to deliver water eliminates its discretion not to deliver that water (and, hence, the obligation to consult under the ESA). Defendant's legal arguments in this case and in *Silvery Minnow* are polar opposites: here Defendant argues that it does have discretion not to deliver Plaintiffs' water under the contract (and thus must consult under the ESA), while in *Silvery Minnow* it argued that Reclamation does not have such discretion (and, therefore, need not consult under the ESA). Defendant's legal analysis was either wrong in *Silvery Minnow* or it is wrong in this case.

not form the basis for an RPA, because "alternative actions" that can form the basis of RPAs must be actions in which there is discretionary Federal involvement or control. 50 C.F.R. § 402.03.

Moreover, Judge Paul Kelly, Jr. in his dissenting opinion adopted the government's argument, stating:

> Although I agree with the court that this case is ripe for appellate review, I cannot agree with the court's conclusion that the BOR has discretion to reduce deliveries of available water under its already-negotiated contracts with the various parties in this case. In my view, none of the contract provisions, federal statutes and regulations, or other factors cited by the court provide the BOR with this discretion. Moreover, it is clear that the ESA itself cannot fill this void for the simple reason that the ESA is directed at the exercise of discretionary authority than an agency already possesses, rather than constituting a source of *additional* administrative authority. Nor can I conclude that in the absence of pre-existing BOR discretion, the doctrine of unmistakable terms amends the contracts to allow unilateral reallocation under the guise of compliance with the ESA.

*Silvery Minnow*, 333 F.3d at 1142 (Kelly, J. dissenting) (citing *American Forest & Paper Ass'n v. United States EPA*, 137 F.3d 291, 299 (5th Cir. 1998) ("[T]he ESA serves not as a font of new authority, but as something far more modest: a directive to agencies to channel their *existing* authority in a particular direction."); *see also Platte River Whooping Crane Trust v. Federal Energy Regulatory Comm'n*, 962 F.2d 27, 34 (D.C. Cir. 1992) (holding that the ESA "does not expand the powers conferred on an agency by its enabling act," but rather directs the agencies to "utilize" their existing powers to protect endangered species).

Further, in *Natural Resources Defense Council v. Rodgers*, 381 F.Supp.2d 1212, 1248-49 (E.D. Cal. 2005), the court held that "while there are some provisions of the contract which allow for discretion as to how much water may be delivered, none of those provisions specifically relate to measures to protect endangered species . . . . [O]nce

the contracts were executed, Reclamation lost its discretion to amend them to address the needs of threatened or endangered species." *Id*. at 1248; *see also Western Watersheds Project v. Matejko*, Nos. 05-35178, 05-35208, 2006 WL 2042825 at *7-*8 (9th Cir. July 24, 2006) (explaining that section 7(a)(2) of the ESA only applies to affirmative actions that are within an agency's decision making authority and *unconstrained by earlier agency commitments*); *Sierra Club v. Babbitt*, 65 F.3d 1502, 1508-1510 (9th Cir. 1995) (holding that the Bureau of Land Management (BLM) did not violate Endangered Species Act (ESA) by failing to consult with Fish and Wildlife Service concerning proposed logging road over BLM lands under reciprocal right-of-way agreement executed before enactment of ESA, despite potential impact on spotted owl, in light of BLM's lack of discretion under terms of right-of-way agreement to implement measures for benefit of spotted owl; agreement allowed objection to road only if it was not most direct route, would interfere with existing or planned improvements, or would cause excessive erosion); *Envtl. Protection Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1083 (9th Cir. 2001) ("Because the FWS has not retained discretionary control . . . that would inure to the benefit of the marbled murrelet or the coho salmon, the FWS is not required to reinitiate consultation to consider the permit's effects on those species.")

The cases relied on by Defendants for the contrary proposition have no applicability here. For example, in *Turtle Island Restoration Network v. NMFS*, 340 F.3d 969 (9th Cir. 2003), the court held that the National Marine Fisheries Service retained discretion, under High Seas Fishing Compliance Act, to condition fishing permits in manner that would inure to the benefit of species listed under the Endangered Species Act (ESA). In *Klamath Water Users Protective Association v. Patterson*, 204 F.3d 1206,

1213 (9th Cir. 2000), the sovereign acts doctrine was not even at issue. In *O'Neill v. United States*, 50 F.3d 677 (9th Cir. 1995), the court held that language in the contracts showed that the parties had contemplated future changes in reclamation laws in Article 26, and that in Article 11, the parties had agreed to limit the government's liability for shortages due to any causes. Finally, *Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994), was not a contract case at all.

3. Defendant-Intervenor incorrectly asserts that "the Water Users argue that storage of water and operations of the Klamath Project do not change the 'baseline flows' in the basin, and therefore cannot be subject to the ESA." Def.-Intervenor's Reply Br. at 5 (Doc. No. 290). Plaintiffs make no such argument. Plaintiffs agree with Defendant-Intervenor that when water is stored it reduces the flow that exists under the "environmental baseline"; therefore, there may be times when water cannot be stored. However, this is beside the point—what Plaintiffs argue is that there is no obligation, under the ESA, for Defendant to artificially augment flows with the previously-stored water. Because Reclamation is not required by the ESA to enhance natural flows, Reclamation does not harm the fish by using stored water, even if the natural flow is less than what the fish require, as long as the water was stored at a time when the fish did not require it. As long as the water was stored in the reservoir at a time when the river had sufficient flows for the needs of the fish, merely storing the surplus does not "jeopardize" the species within the meaning of ESA. Nothing in the ESA requires that all natural resources be redirected from their current use to provide benefit (no matter how negligible) to endangered species.

4. Defendants' statement that Plaintiffs ignored that Reclamation was under an injunction to complete Section 7 consultation before delivering any water to Plaintiffs in 2001 (*see*, *e.g.*, Def.'s Reply Br. at 7) is untrue and also beside the point. In truth, Plaintiffs described in detail that injunction and, more importantly, Reclamation's foot-dragging that led to it. *See* Pls.' Opp. at 27-29. Plaintiffs specifically explained that in March 2000, "Reclamation was operating in violation of the Endangered Species Act, precipitating a suit by PCFFA and others that led to Judge Armstrong's issuance of an injunction requiring the 2001 consultation . . . ." *Id.* at 27. Plaintiffs also pointed out that "[t]he Klamath tragedy of 2001 did not have to occur. . . . Had Reclamation prepared its long term operating plan in the 1990s, as sound management principles (not to mention the urging of the district court) required, at least some water would have been available to Klamath farmers in 2001." Pls.' Opp. at 26.

Moreover, since the consultation was completed on April 6, 2001, the conditions of the injunction had been fulfilled and Reclamation was free after that date to deliver water in accordance with Plaintiffs' contracts. Furthermore, "an order or decree which interferes with the performance of the contract is not an excuse . . . if it was caused by defendant's own negligence or breach of duty to others, and means of avoiding such interference with performance are reasonably available." 17B C.J.S. *Contracts* § 527 (2006); *see also Precision Pine & Timber, Inc. v. United States*, 50 Fed. Cl. 35 (2001) (holding that where the Forest Service was responsible for the unreasonable delays in completing the ESA consultation, through series of substantive and procedural blunders, the agency was not shielded from breach of contract liability under the sovereign acts doctrine).

Thus the injunction, which became moot on April 6, 2001, was no excuse for Reclamation's refusal to make water available after that date, and it was Reclamation's own recalcitrance which brought about the injunction in the first place. *Kandra v. United States*, 145 F.Supp.2d 1192, 1206 (D. Or. 2001). Accordingly, Defendant cannot have the benefit of the sovereign acts defense because the facts show that it cannot satisfy the common-law doctrine of impossibility.

5. Defendants inaccurately accuse Plaintiffs of revising their contract claims "for the first time in their response brief" or as disguising the breach of contract claim as a collateral attack on Reclamation's decision making. *See, e.g.*, Def.'s Reply Br. At 2; 9-14; Def.-Intervenor's Reply Br. at 6-10. To begin with, Plaintiffs have never revised their breach of contract claims. Plaintiffs' second amended complaint states: "Beginning on or about April 10, 2001, and continuing through the remainder of water year 2001, defendant breached these contracts by failing and refusing to deliver to plaintiffs, and to the water users whom they represent, the quantities of water required by their written contracts." *Id.* ¶ 47 (January 31, 2005) (Docket No. 210). This remains an accurate statement of Plaintiffs' contract claims.

By attempting to recharacterize Plaintiffs' breach of contract claims as a "collateral attack on the agencies' actions in 2001," Def.'s Reply Br. at 3 n.3, Defendants apparently hope to convince this Court to decide this case under a deferential review standard rather than by the appropriate "preponderance of the evidence" standard. In this case it is Defendant, however, who bears the burden of proving by a preponderance of the evidence its asserted defense that performance of its contractual duties was impossible. *See, e.g.*, *Six v. United States*, No. 04-1727 C, 2006 WL 1836070 at *13 (Fed. Cl. June

30, 2006) ("'The burden of proof is on the party that raises the affirmative defense.'") (quoting *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993)). The facts here show that neither the ESA nor the biological opinions required that Reclamation breach Plaintiffs' contracts.

Of course, to obtain summary judgment, Defendant bears the further burden of demonstrating that there is no triable issue of fact on its impossibility defense. *Precision Pine*, 50 Fed. Cl. at 57 ("The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact.") This Defendant has failed to do. Indeed, the only evidence before the Court on this point is the government's own study, commissioned by the Secretary of Interior, which shows that Reclamation's failure to deliver Plaintiffs' water to them in 2001 did not protect the fish: "Extensive field data on the fish and environmental conditions in Upper Klamath Lake do not provide scientific support for the underlying premise of the RPA that higher lake levels will help maintain or lead to the recovery of [the shortnose and Lost River suckers] . . . [Moreover,] [t]he committee does not find scientific support for the proposed minimum flows as a means of enhancing the maintenance and recovery of the coho population." National Research Council, *Scientific Evaluation of Biological Opinions on Endangered and Threatened Fishes in the Klamath River Basin* at 26-27 (2002). Contrary to Defendants' claim this Court is simply not required to pretend that science supports Reclamation's decision not to deliver Plaintiffs' water just because the biological opinions say so in determining impossibility in the context of a sovereign acts defense.

In sum, Defendants may not shortcut this Court's evidentiary inquiry into whether Defendant's asserted excuse for nonperformance—*i.e.*, that it was necessary to protect the fish—was in fact scientifically based. *See Scott Timber Co. v. United States*, 333 F.3d 1358 (Fed. Cir. 2003) (holding that the reasonableness of the government's suspension of its performance under contract in order to comply with ESA was a factual question that precludes granting of summary judgment). In the end, Defendants' misstatements of Plaintiffs' contract claims are *legerdemain*, intended to divert the Court's attention from Defendant's own failure to demonstrate that performance of its contracts with Plaintiffs in 2001 was impossible. This failure is fatal to the pending motion, which tests Defendant's sovereign acts defense. *See, e.g.*, *Stockton E. Water Dist. v. United States*, 70 Fed. Cl. 515, 529 (2006) ("As a precondition to excusing liability for breach under the sovereign acts doctrine, defendant bears the burden of showing that performance was impossible because of the legislation.") (citing *Mobil Oil v. United States*, 530 U.S. 604, 619 (2000); *United States v. Winstar Corp.*, 518 U.S. 839, 904 (1996)).

6. Plaintiffs' refusal to respond to *amicus curiae*'s sidebar public policy argument over whether Congress should have charged interest on the construction cost of reclamation projects such as Klamath, *see* NRDC Reply Br. at 2-6, should not be interpreted as acquiescence in the relevance of NRDC's position, as *amicus curiae* urges this Court to do. *Id*. at 4. Plaintiffs understand this Court's Order of May 1, 2006 (stating that Plaintiffs' "response shall be restricted to the issues raised in this court's order of December 20, 2005") as limiting their brief to the issues of sovereign acts and unmistakability. The amounts Plaintiffs pay to Reclamation under their contracts is set

by statute as reflected in the contracts. *See*, *e.g.*, 43 U.S.C. § 485f (1945); 43 U.S.C. § 485h (1982). Hence, the price paid by Plaintiffs for water and power (whether above or below market rates) sheds no light on any aspect of the sovereign acts defense and is therefore outside the issues which the Court instructed the parties to brief.[2]

Under the Reclamation Act, Congress has generally required that the Secretary of Interior determine "the part of the estimated cost which can properly be allocated to irrigation and probably be repaid by the water users . . . [and] the part of the estimated cost which can properly be allocated to power and probably be returned to the United States in net power revenues," and that he enter into a contract with the district to recover these costs prior to delivery of any water or power. 43 U.S.C. § 485h(a)(1)(3), (a)(1)(4) (1982). Paradoxically, the Reclamation Act and Plaintiffs' contracts also provide that title to the Klamath facilities remains in the United States, *see*, *e.g.*, Compl. Ex. 2 at 77 (Contract ¶ 39), so that Plaintiffs have purchased no facilities with their millions of dollars in construction cost repayment and ongoing and continuing payments for operation and maintenance of the Klamath Project facilities. Arguably, then, it is Plaintiffs who have subsidized construction of Klamath Project facilities which the United States has chosen to use free of charge for fish recovery, to provide water to lands owned by the United States, and to satisfy the government's treaty obligations.

7. Finally, Defendant inaccurately states that the contracts at issue in *O'Neill v. United States*, 80 F.3d 677 (9th Cir. 1995), have "similar shortage provisions" to

---

[2] *Amicus curiae*'s brief is unclear on whether *amicus curiae* believes that the Secretary made a mistake in allocating Klamath Project water and power costs, or whether *amicus curiae* disagrees with the way Congress has structured the Reclamation Act. Either way, *amicus curiae*'s "subsidy" argument (with which Plaintiffs by no means agree) sheds no light on the affirmative defense of sovereign act/impossibility, which is the sole issue the Court has ordered the parties to brief in this motion.

Plaintiffs', and that *O'Neill* is therefore good authority here. Def.'s Reply Br. at 19 n.18. This is incorrect, however, as the *O'Neill* contract differs markedly from all of the contracts at issue in this case. The *O'Neill* contract relieves the United States of liability for water shortages resulting from any cause whatsoever, language that is not found in Plaintiffs' contracts. *See O'Neill*, 80 F.3d at 686 ("Article 11 limits the government's liability for shortages due to any causes.") Moreover, in *O'Neill* the court expressly did not decide whether the ESA actually imposed a mandatory duty to devote irrigation water to avoiding jeopardy to an endangered species. *Id.* at 682, 688-89 & n.7. Hence, that decision has no application to the present case.

**Conclusion**

Accordingly, and for the reasons stated in their previous briefs, Plaintiffs request that the Court deny Defendant's motion for summary judgment as to Plaintiffs' contract claims.

Respectfully submitted,

s/ Nancie G. Marzulla
Nancie G. Marzulla
Roger J. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
202-822-6760
202-822-6774 (facsimile)

Dated: August 11, 2006

Counsel for Plaintiffs